UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE | § |
| | §  Chapter 11 |
| EPIC COMPANIES, LLC, | § |
| | §  Case No. 19-34752 |
| Debtors. | § |
| | §  (Jointly Administered) |
| | §  (Emergency Hearing Requested) |

**WRIGHT'S WELL CONTROL SERVICES, LLC AND DAVID C. WRIGHT'S JOINT EMERGENCY MOTION TO STAY ORDER [DOC 227] AND OBJECTION TO DEBTORS' EMERGENCY MOTION [DOC 13]**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**
>
> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**MAY IT PLEASE THE COURT:**

Creditors, Wright's Well Control Services, LLC ("WWCS") and David C. Wright ("Mr. Wright") (collectively "the Wright Creditors"), through undersigned counsel, submit the following Joint Emergency Motion to Stay Order (Doc. 227) and Objection to Debtors' Emergency Motion (Doc. 13) to the extent that it still seeks relief to the sale of the Debtors' alleged assets.

The Court's Order (Doc. 227) authorizes an auction for the sale of the Debtors' alleged assets. In addition, Debtors' Emergency Motion (Doc. 13) requested approval for the sale of the Debtors' assets free and clear of all liens, claims, encumbrances, and interests pursuant to 11 U.S.C. § 363(f).

The Wright Creditors request a stay of the Court's Order (Doc. 227) authorizing the sale, and the Wright Creditors object to Debtors' Emergency Motion (Doc. 13) to the extent that it still seeks approval and relief for the sale of the Debtors' alleged assets, because the Debtors seek approval to sell assets they do not own and do not have authority to sell. Accordingly, the Court's Order (Doc. 227) should be stayed and Debtors' Emergency Motion (Doc. 13), with regard to the approval of the sale of the Debtors' assets free and clear of all liens, claims, encumbrances, and interests, should be denied. In the alternative, the Wright Creditors request this Court to vacate their Order (Doc. 227) because the Order is intertwined with the Section 363 Bankruptcy Auction that is based on the sale of assets that Debtors do not own.

**I.      Legal Standard**

Under Texas contract law, an offeror for sale of property must be authorized to sell said property, otherwise the sale is void. *See Lasater v. Vandiver*, 29 S.W.2d 428, 429 (Tex. Civ. App.

1930) (Unauthorized sale of cattle by owner's son relying on dealer's false representation that father authorized sale held void.).

## II.     Procedural and Factual Background

WWCS is a Louisiana Limited Liability Company that provides subsea "plug and abandonment" services for offshore energy companies.[1] Mr. Wright is the president and owner of WWCS.[2] WWCS and Mr. Wright entered into several agreements with EPIC Companies, LLC ("EPIC") in August, 2018 and January, 2019.[3]

### A.     Asset Purchase and Sale Agreement

On August 29, 2018, WWCS and EPIC entered into an Asset Purchase and Sale Agreement ("Asset Purchase Agreement") whereby EPIC purchased certain "Purchased Assets" from WWCS and agreed to pay other earn-out payments to WWCS.[4] The Asset Purchase Agreement is governed by the laws of the State of Texas.[5]

Under the Asset Purchase Agreement, WWCS sold to EPIC certain equipment ("Purchased Assets").[6] Section 1.2 of the Asset Purchase Agreement explicitly states a list of assets that are <u>excluded</u> from the Purchased Assets. Specifically, Section 1.2 states:

> The Purchased Assets shall not include, and Seller is not selling to Buyer and Buyer is not purchasing from Seller any Excluded Assets. The term "Excluded Assets" means any assets of Seller other than Purchased Assets, including without limitation:
>
> . . .
>
> (c)     All patents and intellectual property, including but not limited to the property listed on Schedule 1.2(c) (the "Patented Technology").[7]

---

[1]   Exhibit 5 at § 2 (Affidavit of David C. Wright).
[2]   *Id.*
[3]   *Id.* at § 3.
[4]   *See* Exhibit 1 (Asset Purchase and Sale Agreement); Exhibit 5 at § 4.
[5]   Exhibit 1 at § 9.9.
[6]   Exhibit 5 at § 4.
[7]   Exhibit 1 at § 1.2.

3 | P a g e

Schedule 1.2(c) of the Asset Purchase Agreement is a list of Excluded assets, which includes a list of 29 United States patents, foreign patents, Patent Cooperation Treaty patents, and pending patent applications that are owned by WWCS or Mr. Wright.[8] Schedule 1.2(c) includes U.S. Patent No. 8,746,351 B2 titled "Method for Stabilizing Oilfield Equipment"; U.S. Patent No. 9,273,663 B2 titled "Subsea Power Source, Methods, and Systems"; U.S. Patent No. 9,574,416 B2 titled "Explosive Tubular Cutter and Devices Usable Therewith"; U.S. Patent No. 8,413,725 B2 titled "Subsea Fluid Separator"; and U.S. Patent No. 9,435,185 B2 titled "Subsea Technique for Promoting Fluid Flow" all owned by WWCS.[9] These patents were not assigned or sold to EPIC, despite EPIC's fraudulent representation, and instead were listed as "Excluded Assets."[10]

### B.  License, Manufacturing and Commercialization Agreement

On January 3, 2019 the Wright Creditors and EPIC also entered into a License, Manufacturing and Commercialization Agreement ("License Agreement") whereby EPIC agreed to pay minimum monthly licensing fees and royalty fees to the Wright Creditors in exchange for certain rights under the License Agreement.[11] The License Agreement is governed by the laws of the State of Texas[12], and was set to expire on January 31, 2022[13].

Pursuant to the License Agreement, the Wright Creditors granted EPIC a non-exclusive, non-transferable, and restricted license, under the Patents/Applications owned by the Wright Creditors, to manufacture, use, offer to sell, and/or sell certain "Licensed Products."[14] "Licensed Products" are defined in the License Agreement as "any products developed and/or manufactured

---

[8]  *Id.* at Schedule 1.2(c); Exhibit 5 at § 4.
[9]  Exhibit 1 at Schedule 1.2(c); Exhibit 5 at § 5.
[10] Exhibit 5 at § 5.
[11] *See* Exhibit 2 (License, Manufacturing and Commercialization Agreement); Exhibit 5 at § 6.
[12] Exhibit 2 at § 12.7.
[13] *Id.* at § 9.1.
[14] *Id.* at § 3.1.

by EPIC under this Agreement that embody the disclosure and claims of a Licensed Patent or New Licensed Patent."[15] "Licensed Patent(s)" are defined in the License Agreement as:

> [T]he United States (U.S.) patent application(s) and patents(s) set forth in *Appendix A*, and all related foreign patents thereto that may issue within the term of this Agreement from said patent application(s) and patent(s), including all related continuations, divisionals, continuations-in-part, reissues, re-examinations, and Patent Cooperation Treaty applications, which LICENSOR may add to *Appendix A*, with approval from EPIC, subsequent to the Effective Date of this Agreement and during the term of this Agreement.[16]

Appendix A, attached to the License Agreement, is identical to Schedule 1.2(c) attached to the Asset Purchase Agreement which includes a list of 29 United States patents, foreign patents, Patent Cooperation Treaty patents, and pending patent applications that are owned by either WWCS or Mr. Wright.[17] Appendix A includes U.S. Patent No. 8,746,351 B2 titled "Method for Stabilizing Oilfield Equipment"; U.S. Patent No. 9,273,663 B2 titled "Subsea Power Source, Methods, and Systems"; U.S. Patent No. 9,574,416 B2 titled "Explosive Tubular Cutter and Devices Usable Therewith"; U.S. Patent No. 8,413,725 B2 titled "Subsea Fluid Separator"; and U.S. Patent No. 9,435,185 B2 titled "Subsea Technique for Promoting Fluid Flow," all owned by WWCS.[18] Thus, WWCS licensed these patents to EPIC, but WWCS retained all rights, title, and interest in and to these patents.[19]

    C.    **Lease Agreement**

On August 29, 2018, WWCS and EPIC entered into a Lease Agreement in connection with the Asset Purchase Agreement, whereby EPIC agreed to pay WWCS monthly rental payments to lease WWCS's Lake Charles, Louisiana property.[20] The Lease Agreement is

---

[15] *Id.* at § 1.9.
[16] *Id.* at § 1.8.
[17] *Id.* at Appendix A; Exhibit 5 at § 7.
[18] Exhibit 5 at § 7.
[19] *Id.*
[20] *See* Exhibit 3 (Lease Agreement); Exhibit 5 at § 8.

governed by the laws of the State of Louisiana.[21] The Lease Agreement was to run for a term of two years—from August 29, 2018 to August 29, 2020.[22]

Under the Lease Agreement,

> [a]ll such Alternations shall become part of the Premises at the time of their installation and shall remain in or upon the Premises at the expiration or termination of this Lease without compensation or credit to Tenant, unless otherwise agreed in writing by Landlord and Tenant at the time of Landlord's consent.[23]

As such, any alterations made by EPIC to WWCS's Lake Charles, Louisiana property are owned by WWCS, without compensation to EPIC, unless otherwise agreed in writing.[24] WWCS and EPIC have not agreed in writing to compensate EPIC for any alterations to the Lake Charles, Louisiana property.[25]

### D. The Debtors List Assets Owned by the Wright Creditors for its Section 363 Bankruptcy Auction

The Debtors, through Hilco Industrial, have recently advertised a Section 363 Bankruptcy Auction whereby the Debtors intend to put a list of their assets up for auction.[26] The website advertisement allows viewers to download the Debtors' "Asset List" that will be put up for auction in the Section 363 Bankruptcy Auction, and this "Asset List" was also filed by EPIC in the bankruptcy court proceedings.[27] (Doc. 140-1). Many items listed in the Debtors' "Asset List" are not owned by the Debtors, (e.g. the Wright Creditors have briefly reviewed and identified at

---

[21] Exhibit 3 at § 34.4.
[22] *Id.* at § 2.
[23] *Id.* at § 13.
[24] Exhibit 5 at § 8.
[25] *Id.*
[26] *See* Exhibit 4 (Section 363 Bankruptcy Auction Advertisement); Exhibit 5 at § 9.
[27] Exhibit 5 at § 9.

least 20 items not owned by Debtors), nor do the Debtors have the right or authority to sell said items.[28]

Mr. Wright recently became aware of the Debtors' "Asset List" when he found an advertisement of the Section 363 Bankruptcy Auction on Hilco Industrial's website at https://www.hilcoind.com/sale/well-control/featured.[29] Upon downloading the Debtors' "Asset List," Mr. Wright discovered that the "Asset List" included numerous assets that were not owned by the Debtors. Mr. Wright had received no notice, or any communication, from EPIC in regard to EPIC's bankruptcy proceedings, and in particular, any communication regarding the Debtors' "Asset List" for a Section 363 Bankruptcy Auction.[30] EPIC is fully aware that it does not own the WWCS Patents that are listed in the Debtors' "Asset List."[31] In addition, Mr. Wright did not have any reason to believe that EPIC would offer the WWCS Patents for sale as a part of EPIC's bankruptcy proceedings because WWCS has never transferred ownership of these patents to EPIC.[32]

        **1.**       **Patents Owned by WWCS**

The Debtors list several United States Patents for sale that are owned by WWCS.[33] (Doc. 140-1). Specifically, the Debtors list U.S. Patent No. 8,746,351 B2 titled "Method for Stabilizing Oilfield Equipment"; U.S. Patent No. 9,273,663 B2 titled "Subsea Power Source, Methods, and Systems"; U.S. Patent No. 9,574,416 B2 titled "Explosive Tubular Cutter and Devices Usable Therewith"; U.S. Patent No. 8,413,725 B2 titled "Subsea Fluid Separator"; and U.S. Patent No. 9,435,185 B2 titled "Subsea Technique for Promoting Fluid Flow" (collectively "the WWCS

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] Exhibit 5 at § 10; *see also* Exhibit 7, the assignment record from the United States Patent and Trademark Office for the listed patents showing title in WWCS.

Patents") for sale at the Debtors' Section 363 Bankruptcy Auction.[34] (Doc. 140-1). As explained more fully in Sections (I)(A) and (B), *supra*, these patents are owned by WWCS.[35] When EPIC and the Wright Creditors entered into the Asset Purchase Agreement, these patents, along with several others, were expressly and unambiguously excluded from the Purchased Assets.[36]

## 2. Alterations to the Lake Charles, Louisiana Property

The Debtors also include "Leasehold Improvement – Building" at the Lake Charles Property in their "Asset List" for sale at the Section 363 Bankruptcy Auction.[37] (Doc. 140-1). As explained more fully in Sections (I)(C), *supra*, all improvements made by EPIC to WWCS's Lake Charles, Louisiana property are owned by WWCS, not EPIC.[38] The Lease Agreement expressly and unambiguously gives WWCS ownership of all improvements made by EPIC to WWCS's Lake Charles, Louisiana property without any compensation to EPIC unless stated in writing, and no such writing exists.[39]

## III. Law and Arguments

### A. WWCS and David Wright Have Standing to Object to the Court's Order (Doc. 227) and Debtor's Emergency Motion (Doc. 13)

Under the Bankruptcy Code, "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109. The Wright Creditors have standing to object to the Court's Order (Doc. 227) and Debtor's Emergency Motion (Doc. 13) because they are Creditors in the present

---

[34] *Id.*
[35] Exhibit 5 at §§ 4 and 5.
[36] Exhibit 1 at §§ 9.9 and 1.2; Exhibit 5 at §§ 4 and 5.
[37] Exhibit 5 at § 11.
[38] Exhibit 3 at § 13; Exhibit 5 at § 11.
[39] Exhibit 3 at § 13; Exhibit 5 at § 11.

Chapter 11 Bankruptcy proceedings and because the Debtors seek to sell assets owned by WWCS without authorization or any right to do so.

### B. It is Extremely Difficult or Impossible to Determine Which Assets the Wright Creditors Own Before the November 8, 2019 Deadline

This Court ordered that all objections to the approval of sale of the "Purchased Assets" shall be filed with the Court on or before 5:00 p.m. Central Time on November 8, 2019. (Doc. 227). The Debtors' "Asset List" contains over 1,000 entries of assets the Debtors allegedly own and are offering for sale in the Section 363 Bankruptcy Auction.[40] (Doc. 140-1). It would be extremely difficult or impossible for the Wright Creditors to thoroughly inspect the entire "Asset List" and make a determination as to whether the assets are owned by the Wright Creditors (and thus must be removed from the list) before the proposed November 8, 2019.[41] This is due to the sheer volume of entries on the asset list, the amount of time it takes to inspect each item, the potential location of the items, and because of previous travel arrangements.[42] Therefore, the Court's Order (Doc. 227) should be stayed and the Wright Creditors should be given a reasonable amount of time to thoroughly inspect the Debtors' "Asset List" to make such a determination before the Objection Deadline.

### C. The Debtors' "Asset List" is Not Included in the Asset Purchase Agreement

The "Asset List" the Debtors have filed through in the Bankruptcy Court (Doc. 140-1) was not included in the Asset Purchase Agreement.[43] The Asset Purchase Agreement makes no reference to this "Asset List," and Mr. Wright never reviewed this list with EPIC in connection to the Asset Purchase Agreement.[44] The only list Mr. Wright reviewed with EPIC in connection to

---

[40] Exhibit 5 at § 12.
[41] Id.
[42] Id.
[43] Exhibit 5 at § 13.
[44] Id.

the Asset Purchase Agreement is in a Valuation Report that was drafted by Hilco Valuation Services on July 24, 2018 ("the Hilco Valuation Report").[45] The Hilco Valuation Report omits several assets that are present in the Debtors' "Asset List" such as: Engineering Manufacturing Drawings, Office Equipment, the Welding Machine and Generator, and the Wright Creditors' Patents.[46] These assets were understood by both EPIC and the Wright Creditors to be excluded from the Asset Purchase Agreement, which is supported by Hilco's valuation percentages of 0.0% each.[47] Thus, the Debtors cannot use their current "Asset List" as an advertisement for their assets to be sold in the Section 363 Bankruptcy Auction.

### D. The Debtors Do Not Own and Have No Authority to Sell the WWCS Patents

The Debtors have advertised a list of the assets to be sold through a Section 363 Bankruptcy Auction and have filed the list in the Bankruptcy Court. (Doc. 140-1). This Court ordered (Doc. 227) that the Debtors may sell their assets free and clear of liens pursuant to § 11 U.S.C. 363(f). Section 363(f) provides as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price of which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

---

[45] Exhibit 6, pages 3-4 (July 24, 2018 Valuation Report by Hilco Valuation Services); Exhibit 5 at § 13.
[46] Exhibit 6, pages 3-4; Exhibit 5 at § 13.
[47] Exhibit 6, pages 3-4; Exhibit 5 at § 13.

In their Emergency Motion (Doc. 13), the Debtors fraudulently misinformed the Court that they sought to sell their own assets in the Section 363 Bankruptcy Auction. Specifically, the Debtors fraudulently claimed they were the owners and had the authority to sell the assets listed in the Purchased Assets list. As more fully explained in Sections (I)(A) and (B), *supra*, the Debtors have full knowledge that many assets listed in their list of Purchased Assets, specifically the WWCS Patents, are owned by WWCS and the Debtors have no authority to sell said assets. EPIC entered into an Asset Purchase Agreement with the Wright Creditors whereby it explicitly agreed that the WWCS Patents were excluded from the Asset Purchase Agreement.[48]

The Debtors' knowing and fraudulent conduct is further supported by the License Agreement between EPIC and the Wright Creditors. Under the License Agreement, EPIC agreed to <u>license</u> the WWCS Patents from WWCS in exchange for payment of minimum monthly licensing fees and royalty fees to WWCS.[49] The Debtors clearly have full knowledge that they are not the owners of the WWCS Patents nor have the authority to sell the WWCS Patents because EPIC agreed to license said patents from WWCS. As such, the Court should stay their Order (Doc. 227) and deny the Debtors' Emergency Motion (Doc. 13), to the extent that it still seeks approval and relief for the sale of the Debtors' alleged assets, for fraudulently listing assets for sale that the Debtors do not own and have no authority to sell.

### E. The Debtors Do Not Own and Have No Authority to Sell the Improvements to WWCS's Lake Charles, Louisiana Property

For similar reasons stated in Sections (II)(D), *supra*, the Court should stay their Order (Doc. 227) and deny the Debtors' Emergency Motion (Doc. 13), to the extent that it still seeks approval and relief for the sale of the Debtors' alleged assets. The Debtors fraudulently claimed,

---

[48] Exhibit 1 at § 1.2; *id.* at Schedule 1.2(c); Exhibit 5 at §§ 4 and 5.
[49] *See* Exhibit 2; Exhibit 5 at §§ 6 and 7.

in their Emergency Motion (Doc. 13), they were the owners and had the authority to sell the assets listed in the Purchased Assets list.

As more fully explained in Section (I)(C), *supra*, the Debtors have full knowledge that many assets listed in their list of Purchased Assets, for example the improvements/alterations made by EPIC to WWCS's Lake Charles, Louisiana property, are owned by WWCS, and the Debtors have no authority to sell said assets.[50] EPIC knowingly entered into a Lease Agreement with WWCS whereby it explicitly agreed that any alterations made by EPIC to WWCS's Lake Charles, Louisiana property are owned by WWCS without compensation to EPIC, unless otherwise agreed in writing.[51] WWCS and EPIC have not agreed in writing to compensate EPIC for any alterations to the Lake Charles, Louisiana property.[52] As such, all alterations made by EPIC to WWCS's Lake Charles, Louisiana property are owned by WWCS, and the Debtors knowingly have no rights or authority to sell said improvements in the Section 363 Bankruptcy Auction. Accordingly, the Court should stay their Order (Doc. 227) and deny the Debtors' Emergency Motion (Doc. 13), to the extent that it still seeks approval and relief for the sale of the Debtors' alleged assets, for fraudulently listing assets for sale that the Debtors do not own and have no authority to sell.

F.   **Debtors are Misleading the Public as to the Assets Being Sold**

In Texas, a defendant can be held liable to a plaintiff for invasion of privacy under a theory of misappropriation of name or likeness if: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2) the plaintiff can be identified from the publication; (3) the defendant received some advantage or benefit from the appropriation; and (4) the plaintiff suffered an injury as a result of the defendant's appropriation. *See Express One Int'l,*

---

[50] Exhibit 5 at § 8.
[51] Exhibit 3 at § 13; Exhibit 5 at § 8.
[52] Exhibit 5 at § 8.

*Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App. 2001) (elements 1-3); *K-Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 638 (Tex. App. 1984), writ refused NRE sub nom. Trotti v. K-Mart Corp. No. 7441, 686 S.W.2d 593 (Tex. 1985) (element 4). The Debtors have misappropriated WWCS's name and likeness in order to mislead the public regarding the assets being sold in the Section 363 Bankruptcy Auction and the proper party that filed for Chapter 11 bankruptcy as those of WWCS.

### 1. WWCS Can be Clearly Identified in Debtors' Advertisement on Hilco Industrial's Website

In its advertisement on Hilco Industrial's website for the Section 363 Bankruptcy Auction, the Debtors mislead the public as to: (1) the ownership of the assets to be sold in the auction; and (2) which party filed for Chapter 11 bankruptcy. Specifically, the Debtors titled their advertisement "Well Control Services" which is confusingly similar to WWCS's trade name of "Wright's Well Control Services."[53] The Debtors also use the color scheme associated with WWCS's company, and use pictures of WWCS's equipment and employees in the Debtors' advertisement, and use WWCS's name in the title of Debtors' "Asset List."[54] As explained more fully in Sections 2(D) and 3(D) and (E), *supra*, the Debtors have also wrongfully listed several assets owned by WWCS in their "Asset List" that will be sold in the Section 363 Bankruptcy Auction.

### 2. Debtors Appropriated WWCS's Name and Likeness for the Value Associated with WWCS

The Debtors appropriated WWCS's name and likeness in their advertisement on Hilco Industrial's website for the Section 363 Bankruptcy Auction in order to obtain value associated with WWCS. The Debtors seek to sell assets owned by WWCS that Debtors do not have the right

---

[53] Exhibit 4.
[54] *Id.*

or authority to sell. By appropriating WWCS's name and likeness in their advertisement on Hilco Industrial's website for the Section 363 Bankruptcy Auction, the Debtors are giving the public the impression that they have the right and/or authority to sell WWCS's assets.

### 3. The Debtors Benefitted From Their Appropriation

Debtors' appropriation of WWCS's name and likeness misleads the public into believing WWCS is the party that filed for Chapter 11 bankruptcy, not the Debtors. The appropriation further benefits Debtors because it gives the public impression that Debtors have the right and/or authority to sell WWCS's assets.

The Debtors are aware of WWCS's position that their advertisement is misleading the general public, yet the Debtors continue to intentionally leave the advertisement on Hilco Industrial's website for the public to continue believing WWCS is the party that filed for Chapter 11 bankruptcy. For example, counsel for the Wright Creditors had a telephone conference on October 11, 2019 with several parties involved with the Debtors' bankruptcy including: officers of White Oak Global Advisors, LLC ("White Oak"), a representative for Tom Clark of EPIC, and counsel for EPIC. During that conversation, counsel for the Wright Creditors informed the parties of their concerns with the inaccuracies in the Debtors' "Asset List" and the misleading advertisement on Hilco Industrial's website. The parties agreed to correct the inaccuracies in the Debtors' "Asset List" and also agreed to correct the title of Debtors' "Asset List." Despite these concessions, the Debtors' still have not corrected the inaccuracies in their "Asset List" and they have not removed the "Well Control Services" title from their advertisement.

### 4. WWCS Has Suffered an Injury as a Result of the Debtors' Appropriation

The Debtors' intentional acts have caused harm to WWCS.[55] For example, WWCS's vendors have contacted WWCS and put services on hold until it is clear which entity has filed Chapter 11 Bankruptcy.[56] These vendors discovered the Debtors' advertisement on Hilco Industrial's website and misleadingly believed WWCS, not the Debtors, was the party in Chapter 11 bankruptcy.[57] As such, the Debtors' misleading advertisements have made it difficult for WWCS to conduct its business operations because the public has been intentionally misled into believing that WWCS is the party going through the Chapter 11 bankruptcy, instead of the Debtors.[58] As such, the Wright Creditors respectfully request this Court order the Debtors to remove their advertisement from Hilco Industrial's website, including their "Asset List."

### G. WWCS Exercised its Right to Repurchase the Purchased Assets Pursuant to the Bill of Sale Agreement

In addition, WWCS timely executed its right under the Bill of Sale Agreement[59] to repurchase the Purchased Assets from Epic Applied Technologies, LLC. Specifically, WWCS provided written notice of a Material Uncured Default to EPIC Companies, LLC on June 27, 2019, for failure to make required payments.[60] WWCS then provided written notice of its election to repurchase the Purchased Assets to EPIC Companies, LLC on July 15, 2019[61], and WWCS tendered a five (5) year, interest-free promissory note in an amount equal to the fair market value of the Purchased Assets ($7,017,151.00) to be secured by the repurchased Purchased Assets[62] as

---

[55] Exhibit 5 at § 14.
[56] Id.
[57] Id.
[58] Id.
[59] Exhibit 8 at § 4, (Bill of Sale Agreement).
[60] See Exhibit 9 (June 27, 2019 Letter); Exhibit 5 at § 15.
[61] See Exhibit 10 (July 15, 2019 Letter); Exhibit 5 at § 15.
[62] See Exhibit 11 (Promissory Note); Exhibit 5 at § 15.

entitled to under the Bill of Sale Agreement[63]. As such, WWCS has higher priority to the Purchased Assets than any other security interests in the Purchased Assets.

## IV. Reservation of Rights

The Wright Creditors reserve all rights to supplement or amend this Objection, or to join any other objections.

## V. Conclusion

WHEREFORE, Wrights Well Control Services, LLC and David C. Wright respectfully request that this Court grant emergency relief to stay its Order (Doc. 227) regarding the sale of Debtors' alleged assets and hold a hearing on ownership of Debtors' alleged assets. Wrights Well Control Services, LLC and David C. Wright further request an order Denying Debtor's Emergency Motion (II) For Entry of an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, to the extent that it still seeks approval and relief for the sale of the Debtors' alleged assets. In the alternative, Wrights Well Control Services, LLC and David C. Wright request this Court to vacate their Order (Doc. 227) because the Order is intertwined with the Section 363 Bankruptcy Auction that is based on the sale of assets that Debtors do not own.

Dated: October 18, 2019

/s/ Terry B. Joseph
Terry B. Joseph
TX Bar No. 11029500
John D. Holman
Texas Bar No. 24082232
tjospeh@matthewsfirm.com
jholman@matthewsfirm.com

---

[63] Exhibit 8 at § 4.

>**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH PLLC**
>2000 Bering Dr., Suite 700
>Houston, Texas 77057
>Telephone: (713) 355-4200
>Facsimile: (713) 355-9689
>
>*Attorneys for Creditors Wright's Well Control Services, LLC and David C. Wright*

### Certificate of Service

The undersigned counsel hereby certifies that a true and correct copy of the above and foregoing document has been served on October 18, 2019 to all counsel of record who are deemed to have consented to electronic serve via the Court's CM/ECF system.

>/s/ Terry B. Joseph_____
>Terry B. Joseph