

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § <br> § Chapter 11 <br> § |
| EPIC COMPANIES, LLC, | § Case No. 19-34752 (DRJ) <br> § |
| Debtors.¹ | § (Jointly Administered) <br> § |

**ORDER AUTHORIZING AND APPROVING THE SALE OF CERTAIN ACCOUNTS
RECEIVABLE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**
[Relates to Doc. No. 271]

The above-referenced debtors and debtors-in-possession (collectively, the "Debtors") filed their *Emergency Motion to Sell Certain Accounts Receivable Free and Clear of Liens, Claims, and Encumbrances* (the "Motion")² pursuant to Bankruptcy Code section 363, Bankruptcy Rule 6004, and Bankruptcy Local Rule 9013-1(i) seeking authority to sell the AR Assets free and clear of liens, claims, and encumbrances. The Court has jurisdiction over the Motion and the relief requested in the Motion pursuant to 28 U.S.C. § 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and the Court may enter a final order on the Motion. The relief requested by the Motion is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest and the Debtors gave sufficient and proper notice of the Motion and related hearings. The sale of the AR Assets is an exercise of Debtors' reasonable business judgment. Upon consideration of the Motion and after hearing statements in support of the Motion

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 1080 Eldridge Parkway, Suite 1300, Houston, Texas 77077.

² All terms not expressly defined herein shall have the meaning ascribed to them in the Motion.

1

during proceedings before this Court, the Court finds that good and just cause exists to grant the requested relief.

**IT IS HEREBY ORDERED THAT:**

1. The Debtors are authorized to sell AR Assets, pursuant to the AR Agreement, attached to this Order as **Exhibit A**.

2. The sale shall be free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f). Any lien, claim or encumbrances on the AR Assets shall attach to the proceeds of the sale.

3. Upon the consummation of the sale, all persons holding any lien, claim, interest or encumbrance against or in the AR Assets of any kind or nature whatsoever, including all taxing authorities, are forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such lien, claim, interest or encumbrance against the Agent or the AR Assets.

4. The Debtors shall maintain a matrix/schedule of proceeds received over and above the $3.7 million AR Threshold and provide a copy of such matrix/schedule to the U.S. Trustee and the Committee every 90 days beginning upon entry of this Order.

5. Notwithstanding anything to the contrary contained in this Order and/or the AR Agreement, all rights, counterclaims and defenses, including, but not limited to, contract rights, set off and recoupment, held by any account debtor or its affiliates, including in defense of any affirmative claim or account purchased by the Agent, are fully preserved and shall not be prejudiced or impaired by entry of this Order. For the avoidance of doubt, all rights, counterclaims and defenses currently held by Arena Offshore, LP ("Arena") under any agreement between Arena and the Debtors and/or its affiliates are preserved against the Agent, including all rights, counterclaims and defenses currently held by Arena (if any) pursuant to section 5.2 of the Master

Service Contract between Arena and Epic Companies, LLC dated June 29, 2018 or section 5.2 of the Master Service Contract between Arena and Ranger Offshore Inc. dated March 13, 2018 as applicable, notwithstanding the fact that no agreement between Arena and the Debtors and its affiliates is being assumed and assigned pursuant to this Order.

6. In addition to the conditions to closing included in Section 6.1 of the AR Agreement, prior to the Closing Date the Seller shall obtain a signed agreement from Navarro Capital Partners, LLC ("Navarro") transferring to the Debtors any rights Navarro has in the Arena accounts receivable related to Invoice Nos. G19-1263, G19-1264, G19-1280, G19-1281, G19-1337, G19-1338, and G19-1339 (the "Arena AR"). The Arena AR shall be considered AR Assets under the AR Agreement.

7. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

8. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

9. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any action by any account debtor (i) to seek discovery from the Debtors, (ii) to seek declaratory relief related to the claims or defenses set forth in paragraph 5, above, (iii) to interplead with this Court any amounts owed to the Debtors, or (iv) to seek protection from this Court to the extent necessary to prevent double payment on claims related to AR Assets.

**Signed: October 24, 2019**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

10297847v3

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This Accounts Receivable Purchase Agreement (this "Agreement") is made as of this 15th day of October, 2019 by and among a joint venture composed of Hilco Receivables, LLC, a Delaware limited liability company ("HRV"), and Tiger Capital Group, LLC ("Tiger"), a Massachusetts limited liability company (collectively, the "Agent"), and Epic Companies, LLC, as Debtor-In-Possession ("Seller").

## RECITALS

WHEREAS, on August 26, 2019, Seller filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Seller's chapter 11 case (the "Chapter 11 Case") is pending in the Bankruptcy Court before and administered under Case No. 19-34752.

WHEREAS, Seller desires to sell, assign and convey to Agent and Agent desires to purchase and obtain all of Seller's rights, claims and interests in all of Seller's accounts (as defined in the Uniform Commercial Code) and related assets more fully described on Exhibit A attached hereto as the "AR Assets" (and together with the Non-AR Assets, the "Assets"). Notwithstanding anything to the contrary contained in this Agreement, the sale of the AR Assets (together, the "Sale") shall not include any of the Seller's assets described on Exhibit B attached hereto.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Agent and Seller hereby agree as follows:

Section 1.     Appointment of Agent and Sale of AR Assets.

1.1     At the Closing (as defined below), and upon the terms and conditions herein set forth, and pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Seller shall sell, transfer, assign, convey and deliver to Agent, and Agent shall acquire from Seller, all of Seller's right, title, and interest in, to and under all of AR Assets free and clear of any and all liens, claims, or encumbrances (collectively, a "Lien" or "Liens").

1.2     Within one (1) Business Day of execution of this Agreement, Seller shall file a motion with the Bankruptcy Court for entry of a Final Order seeking approval for Seller to enter into this Agreement and authorizing the sale of the AR Assets to Agent (such Final Order, the "Approval Order"). For purposes of this Agreement, "Final Order" means an order or judgment of the Bankruptcy Court entered on the docket in Seller's Chapter 11 Case that has not been reversed, modified, vacated or stayed.

1.3     Seller shall use reasonable efforts to obtain the Approval Order, in a form reasonably satisfactory to both Seller and Agent, providing among other things, that:

(a)     the terms of this Agreement (and each of the transactions contemplated hereby) are approved and the Agreement shall be binding upon and shall inure to the benefit of the parties and their respective legal representatives, heirs, successor and assigns,

**EXHIBIT A**

including, but not limited to any Chapter 7 or Chapter 11 trustee appointed by the Bankruptcy Court;

(b) Seller and Agent shall be authorized to continue to take any and all commercially reasonable actions as may be necessary or desirable to implement this Agreement and each of the transactions contemplated hereby;

(c) Seller shall sell to Agent the AR Assets pursuant to section 363 of the Bankruptcy Code free and clear of all Liens, with any presently existing Liens encumbering all or any portion of the AR Assets or the proceeds attaching only to the Guaranteed Amount (as defined below) and other amounts received by Seller from Agent under this Agreement;

(d) Seller shall effectuate the transfer to Agent of all subsequently received collections made to "lockbox" bank accounts associated with the collection of proceeds from AR Assets, including, without limitation, all bank accounts that receive checks, ACH payments, and electronic payments related to the AR Assets;

(e) Seller and any successor in interest shall cooperate with Agent to provide reasonable access to Seller's IT systems and necessary software in use by Seller to collect the AR Assets;

(f) the Bankruptcy Court shall retain jurisdiction over the parties to enforce this Agreement;

(g) Agent shall not be liable for any claims (other than claims due to Agent's intentional fraud, gross negligence or willful misconduct) against Seller other than as expressly provided for in this Agreement, and Agent shall have no successor liabilities whatsoever;

(h) Seller's decision to enter into this Agreement and perform under this Agreement (including, but not limited to, making payments provided for in the Agreement) is a reasonable exercise of Seller's sound business judgment consistent with its fiduciary duties and is in the best interests of Seller, its estate, its creditors, and other parties in interest;

(i) this Agreement was negotiated in good faith and at arms' length between Seller and Agent and that Agent is entitled to the protection of section 363(m) of the Bankruptcy Code; and

(j) Agent's performance under this Agreement will be, and payment of the Guaranteed Amounts and sharing of the proceeds under this Agreement will be made, in good faith and for valid business purposes and uses, as a consequence of which Agent is entitled to the protection and benefits of sections 363(m) and 364(e) of the Bankruptcy Code.

Section 2. <u>AR Assets Guaranteed Amount, and Other Payments.</u>

2.1 <u>Purchase Price</u>. Agent shall pay Seller a purchase price of Three Million One Hundred Thousand United States dollars ($3,100,000) less the amount, if any, as calculated as set forth on <u>Exhibit C</u> attached hereto, for the AR Assets (the "<u>Guaranteed Amount</u>").

2.2     Payment of the Guaranteed Amount.  At the Closing, Agent shall pay Seller an amount equal to the Guaranteed Amount to the bank account identified by Seller.

2.3     Sharing.   Subject to any reductions, offsets or adjustments provided for in this Agreement:

(a)     Agent shall retain the first proceeds from the collection of AR Assets equal to Three Million Seven Hundred Thousand United States dollars ($3,700,000), minus any adjustment to the Guaranteed Amount as provided in Schedule C (the "AR Threshold");

(b)     Agent shall retain twenty percent (20%) of the proceeds from the collection of AR Assets over the AR Threshold; and

(c)     Agent shall transfer to Seller the remaining eighty percent (80%) of the proceeds from the collection of AR Assets over the AR Threshold.

Section 3.     Adjustments to the Guaranteed Amount.

3.1     Assumptions. Seller acknowledges and agrees that the Guaranteed Amount is predicated upon the assumption that as of September 17, 2019, the AR Assets totaled no less than Eight Million, Four Hundred and Eight Thousand Nine Hundred and Three United States dollars ($8,408,903) owed and outstanding to Seller as of such date.

3.2     Audits. Prior to the Closing Date, Agent and Seller shall conduct audits of the AR Assets and adjust the Guaranteed Amount pursuant to Exhibit C hereto for AR Assets if and only if Agent and Seller agree in writing that the Guaranteed Amount should be adjusted.

Section 4.     Expenses.

4.1     Agent shall be responsible for all costs related to the collection of the AR Assets.

Section 5.     Sale Proceeds.

5.1     Deposit of Proceeds.  On the Closing Date or as practicable as can be completed following the Closing Date, Seller shall effectuate the transfer to Agent of all received and subsequently received collections made to "lockbox" bank accounts associated with the collection of proceeds from AR Assets, including, without limitation, all bank accounts that receive checks, ACH payments, and electronic payments related to the AR Assets.  All cash related to the AR Assets deposited in such bank accounts shall be held in trust for Agent and transferred to Agent on a daily basis by Seller.  As soon as practicable after the Closing, Seller shall cooperate with Buyer to transfer to Buyer any "lockbox" accounts or other accounts that are solely in place for the deposit of collections related to the AR Assets.

-3-

Section 6.    Conditions Precedent and Closing Date.

6.1    The willingness of Agent and Seller to enter into the transactions contemplated under this Agreement and the occurrence of the Closing Date are directly conditioned upon the satisfaction of the following conditions at the times indicated, unless specifically waived in writing by the applicable party:

(a)    all representations and warranties of Seller and Agent hereunder shall be true and correct in all material respects as of the date hereof and as of issuance of the Approval Order by the Bankruptcy Court;

(b)    Seller having obtained all consents and approvals Seller is required to obtain in order to perform its obligations hereunder, which consents and approvals shall not be subject to the satisfaction of any condition that has not been satisfied or waived and shall be in full force and effect, except to the extent that the requirement for a particular consent or approval is rendered inapplicable by the Approval Order or other order of the Bankruptcy Court, if applicable;

(c)    the AR Assets were, at the time of creation, and are as of the date hereof and Closing, bona fide, existing and enforceable obligations;

(d)    Seller has not entered into any agreement to discount or accelerate the payment of the AR Assets;

(e)    Seller shall have executed and delivered to Agent a bill of sale in a form that is reasonably acceptable to both Agent and Seller, pursuant to which Seller transfers its right, title and interests in and to the AR Assets to Agent;

(f)    Seller shall have delivered Agent a letter for Agent to deliver to Seller's account debtors advising such account debtors that Agent has purchased the AR Assets, amounts related to the AR Assets are then due and owing to Agent and that Agent has full authority to collect the AR Assets, which letter shall be in substantially the same form as the letter set forth on Exhibit D hereto.

(g)    Agent shall have delivered to Seller the Guaranteed Amount as adjusted;

(h)    entry by the Bankruptcy Court of the Approval Order approving this Agreement and the transactions contemplated herein on or before October 25, 2019 and such Approval Order having become a Final Order; and

6.2    The consummation of the transactions contemplated hereby (the "Closing") shall take place electronically by exchange of signed documents sent as "pdf" or similar files attached to emails, on or before October 25, 2019 or on such other date or at such other place and time as may be mutually agreed to by the parties in writing (the date on which the Closing occurs, hereinafter, the "Closing Date").

Section 7.    Representations, Warranties, Covenants, and Agreements.

7.1    Seller's Representations, Warranties, Covenants, and Agreements. Seller hereby represents, warrants, covenants, and agrees in favor of Agent as follows:

(a)    Seller is duly organized, validly existing and in good standing under the laws of the state of its organization stated above.

(b)    Subject to the entry by the Bankruptcy Court of the Approval Order, Seller has all corporate right, power and authority to (i) execute and deliver this Agreement, and (ii) engage Agent hereunder.

(c)    Seller has taken all necessary actions required to authorize the execution, delivery and performance of this Agreement, and no further action, consent or approval is required on the part of such Seller for such Seller to enter into and deliver this Agreement.

(d)    Since September 17, 2019, and through the Closing Date, Seller has not granted or honored any credits, offsets, charge offs, and discounts against the AR Assets such that the only action that would otherwise reduce the face value of the AR Assets would be the receipt of cash in respect of the AR Assets.

7.2    Agent's Representations and Warranties. HRV and Tiger, as members of Buyer, hereby represent, warrant, covenant and agree in favor of Seller as follows:

(a)    Each of HRV and Tiger (i) is duly organized, validly existing and in good standing under the laws of its state of organization; (ii) has all requisite power and authority to consummate the transactions contemplated hereunder; and (iii) shall continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

(b)    Each of HRV and Tiger has the right, power and authority to (i) execute and deliver this Agreement, (ii) make the representations, warranties, covenants and agreements made herein, and (iii) perform fully its obligations hereunder.

(c)    HRV and Tiger have taken all necessary actions required to authorize the execution, delivery, and performance of this Agreement, and no further action, consent or approval is required on the part of HRV or Tiger for Agent to enter into and perform its obligations hereunder.

(d)    HRV and Tiger will take or cause to be taken all actions necessary or advisable to consummate the transactions contemplated by this Agreement, including, but not limited to the section 363 sale, and to assure that as of the Closing, Agent will not be under any restriction that will delay the timely consummation of such transactions.

Section 8.    Further Assurances. From time to time, Agent and each Seller shall, and shall cause their respective affiliates to, (a) execute, acknowledge and deliver all such further conveyances, notices, and such other reasonable instruments, and shall take such further commercially reasonable actions, as may be necessary or appropriate to fully and effectively

transfer, assign and convey unto a purchaser the AR Assets and (ii) to do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement.

Section 9. <u>Miscellaneous</u>.

9.1 <u>Notices</u>. All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, by email, facsimile, or a recognized overnight delivery service, as follows:

> If to Agent:  Hilco Receivables, LLC
> 5 Revere Drive, Suite 206
> Northbrook, IL 60062
> Attn:  Eric W. Kaup, Esq.
> Tel:   (847) 849-2966
> Fax:   (847) 897-0766
> Email: ekaup@hilcoglobal.com
>
> Tiger Capital Group, LLC
> 350 North LaSalle Street, 11th Floor
> Chicago, IL 60654
> Attn:  Mark P. Naughton, Esq.
> Tel:   (312)894-6081
> Fax:   (617) 523-3007
> Email: mnaughton@tigergroup.com
>
> If to a Seller:  Epic Companies, LLC
> c/o G2 Capital Advisors, LLC
> 535 Boylston Street, 11th Floor
> Boston, MA 02116
> Attn:  Jeffrey T. Varsalone
> Tel:   (516) 410-6215
> Email: jvarsalone@g2cap.com

Notices, demands and requests which shall be served in the manner aforesaid shall, except as otherwise provided herein, be deemed to be sufficiently delivered or given for all purposes hereunder (i) in the case of personal delivery, upon such delivery, (ii) in the case of email, upon sending provided that sender does not receive a returned mail notification within twenty-four (24) hours of the send date; and (iii) in case of overnight express delivery, one (1) day after delivery to such delivery service.

9.2 <u>Governing Law; Venue</u>.

(a) This Agreement shall be governed and construed in accordance with the laws of the State of Texas without regard to conflicts of laws principles thereof except where governed by the Bankruptcy Code.

(b) Any action, claim, suit or legal proceeding arising out of, based upon or relating to this Agreement or the transactions contemplated hereby shall be brought solely in the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court).

(c) EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY AND ALL RIGHT SUCH PARTY MAY HAVE TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR LEGAL PROCEEDING BETWEEN THE PARTIES HERETO ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION OR PERFORMANCE HEREOF.

9.3 Entire Agreement. This Agreement and the exhibits and schedules hereto contain the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.

9.4 Amendments. This Agreement may not be modified except in a written instrument executed by each of the parties hereto.

9.5 No Waiver. No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

9.6 Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon Agent and Seller, and their respective successors and assigns.

9.7 Execution in Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one agreement. This Agreement may be executed by facsimile or delivery of a .pdf or equivalent file, and such facsimile signature or .pdf or equivalent file signature shall be treated as an original signature hereunder.

9.8 Section Headings. The headings of sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, Agent and Seller hereby execute this Agreement by their duly authorized representatives as of the day and year first written above.

AGENT:

A JOINT VENTURE COMPOSED OF HILCO RECEIVABLES, LLC AND TIGER CAPITAL GROUP

By: _____
Name: Eric W. Kaup
Title: Authorized Signatory

SELLER:

EPIC COMPANIES, LLC

By: _____
Name: Jeffrey T. Varsalone
Title: Chief Restructuring Officer

# EXHIBIT A

## AR Assets

As used in the Agreement the term "AR Assets" means (for the avoidance of doubt, excluding the Excluded Assets (as defined in Exhibit B)) all of Seller's accounts receivable and with respect thereto: (a) charged off accounts, (b) any and all documents, applications, guaranties, letters of credit or credit insurance (including Seller's rights to make claims thereunder) Seller may have, and (c) any cash received with respect to Seller's accounts receivable but not yet applied to such accounts receivable (collectively, the "AR Assets").

## EXHIBIT B

### Excluded Assets

As used in this Agreement the term "Excluded Assets" means any right, title or interest of Seller in any assets of Seller other than those identified in Exhibit A, with such Excluded Assets including, without limitation, the following:

    (a)    Seller's rights under this Agreement;

    (b)    all cash and cash equivalents, including checks, commercial paper, treasury bills, certificates of deposit and other bank deposits, securities, securities entitlements, instruments and other investments of Seller and all bank accounts and securities accounts, including any cash collateral that is collateralizing any letters of credit, but specifically excluding any and all cash related to Seller's accounts receivable that has been received, but not yet applied to such accounts receivable;

    (c)    all tax refunds or rights to tax refunds of Seller, whenever arising; and

    (d)    any accounts receivable of Navarro Capital Partners, LLC, Epic Alabama Holdings, LLC, Epic Maritime Asset Holdings, LLC or any of their respective subsidiaries, or otherwise arising from the business of any of the foregoing.

## EXHIBIT C

### AR Asset Adjustment

The AR Assets Purchase Price shall be reduced by 100% of the sum of cash received by the Seller in respect of the AR Assets after September 17, 2019 and to and including the Closing Date.

# EXHIBIT D

Letter to Account Debtors

[SEE ATTACHED]

LEGAL_US_W # 100617180.1