

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/23/2019

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| EPIC COMPANIES, LLC, | § Case No. 19-34752 (DRJ) |
| | § |
| Debtors.¹ | § (Jointly Administered) |
| | § |

### ORDER (I) APPROVING BID PROCEDURES, INCLUDING A BREAKUP FEE AND (II) AUTHORIZING AND SCHEDULING AN AUCTION FOR THE SALE OF CERTAIN REAL PROPERTY

[Related to Docket No. 478]

The above-referenced debtors and debtors-in-possession (collectively, the "Debtors") filed their *Emergency Motion to (I) Approve Bid Procedures, Including a Breakup Fee, (II) Authorize and Schedule an Auction for the Sale of Certain Real Property, and (III) Approve the Sale of Certain Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests* (the "Motion").² This Order addresses only the request in the Motion for entry of an order approving an auction and bid procedures, including a breakup fee, authorizing and scheduling an auction for the sale of the Debtor's assets, and granting related relief (the "Relief Requested"). The Court has jurisdiction over the Motion and the Relief Requested in the Motion pursuant to 28 U.S.C. § 1334 and venue is proper in this District pursuant to 11 U.S.C. § 1408. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order on the Motion. The Relief Requested by the Motion related to bid procedures, bid protections, an auction, and related relief

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

² The Motion defines all capitalized terms not otherwise defined in this Order.

is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest and the Debtors gave sufficient and proper notice of the Motion and related hearings. Upon consideration of the Motion and after hearing and considering all evidence in support of the Motion during proceedings before this Court, the Court finds that good cause exists to grant the Relief Requested.

1. Pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

    a. With respect to the Relief Requested, notice of the Motion and the hearing was sufficient under the circumstances of this case and complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas. Accordingly, no further notice of the Motion and any related hearings or this Order is necessary or required with respect to the Relief Requested.

    b. The Bid Procedures were proposed by the Debtors in good faith with the goal of maximizing the value of their assets for the benefit of all creditors of their estates.

    c. The Debtors have demonstrated a compelling and sound business justification both in the Motion and on the record at the hearing for the Court to grant the Relief Requested in the Motion related to the entry of an order approving the Bid Procedures, which justification is incorporated by reference herein.

    d. Entry of this Order is a necessary and appropriate inducement to ensure the Stalking Horse Bidder will continue (1) with its initial offer which serves as a "floor" for bidding at the Auction and (2) to pursue the Purchase Agreement and consummate the transaction contemplated thereby.

> e. All objections, if any, to the Motion that relate to the entry of an order approving the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Bid Procedures or by stipulation filed with the Court are overruled except as otherwise set forth herein.

**IT IS THEREFORE ORDERED THAT:**

1. The Bid Procedures, in the form attached to this Order as **Exhibit 1**, are hereby approved and shall be used in connection with the proposed sale of the Real Property. The form of Purchase Agreement, attached to this Order as **Exhibit 2**, is hereby approved, for the purpose of establishing the stalking horse bid for the Real Property, and the Debtors are authorized to enter into the Purchase Agreement. The form of the Auction Notice, attached to this Order as **Exhibit 3**, is hereby approved.

2. The Debtor's granting of the Breakup Fee pursuant to this Order and the Purchase Agreement: (a) is of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (b) is fair, reasonable, and appropriate, including in light of the size and nature of the proposed transactions, (c) has been negotiated by the parties and their respective advisors at arm's-length and in good faith, and (d) is a material inducement for, and a condition necessary to ensure that, the Stalking Horse Bidder continues to pursue the purchase of the Real Property.

3. No party submitting an offer or a competing Qualified Bid to purchase the Real Property shall be entitled to any expense reimbursement, break-up, termination, or similar fee or payment.

4. Objections (if any) to approval of a sale to the party submitting the Highest and Best Bid or to approval of a proposed sale of the Real Property, shall be in writing, shall set forth

the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Court on or before 5:00 p.m. Central Time on January 6, 2020.

5. Any objection not filed and served in accordance with the preceding paragraph shall be deemed waived and shall be forever barred.

6. The failure of any party to file and serve an objection to the sale as ordered and directed herein shall be deemed the consent of such party to the granting of the Motion and the sale and transfer of the Real Property.

7. The Breakup Fee is hereby approved, authorized, and binding upon the Debtors and their estates. The Debtors' obligation to pay the Breakup Fee shall survive termination of the Purchase Agreement and shall be payable as provided in the Bid Procedures. The Debtors are authorized and directed to pay the Breakup Fee to the Stalking Horse Bidder in accordance with the terms of and upon satisfaction of the conditions set forth in the Bid Procedures without further order of the Bankruptcy Court. For the avoidance of doubt, the Stalking Horse Bidder is not entitled to payment of the Breakup Fee unless and until (i) the Debtors accept as the Highest and Best Bid a Qualified Bid of a Qualified Bidder other than the Stalking Horse Bidder for all of the Real Property; (ii) the Court enters a Final Order approving the sale to such other Qualified Bidder; and (iii) the sale closes and payment is received.

8. The Bid Procedures and the Breakup Fee are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Real Property, and will confer actual benefits upon the Debtors' estates. The Bid Procedures and the Breakup Fee represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

9. The Debtors are hereby authorized to execute any additional or supplemental document incident to the relief granted pursuant to this Order.

10.    Notwithstanding Bankruptcy Rules 6004, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stay described in Bankruptcy Rule 6004(h) is hereby waived.

11.    The terms of this Order shall control to the extent of any conflict with the Motion.

**Signed: December 20, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

# **EXHIBIT 1**

## **BID PROCEDURES**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **EPIC COMPANIES, LLC,** | § | **Case No. 19-34752 (DRJ)** |
| | § | |
| Debtors.¹ | § | **(Jointly Administered)** |
| | § | |

## BID PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On December ___, 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving Bid Procedures, Including a Breakup Fee and (II) Authorizing and Scheduling an Auction for the Sale of Certain Real Property* [Docket No. ___]] (the "Bid Procedures Order"),² which approved the Bid Procedures set forth herein. Accordingly, these Bid Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of certain of the Debtors' real property, as further described below.

1. **Assets to be Sold.** The Debtors seek to sell the following real property (the "Real Property"):

    (1)     168 Menard Road, Houma, Louisiana 70363;

    (2)     306 Menard Road, Houma, Louisiana 70363;

    (3)     403 Menard Road, Houma, Louisiana 70363; and

    (4)     600 Thompson Road, Houma, Louisiana 70363.

2. **Free and Clear of Any and All Claims and Interests.** All of the Debtors' right, title, and interest in and to the Real Property subject thereto shall be sold free and clear of all liens, claims and interests (collectively, the "Encumbrances") to the maximum extent permitted by Section 363 of the Bankruptcy Code.

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

² All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures Order or the Purchase Agreement, as applicable.

10363009v7

3.      **Bid Deadline.** On or before 5:00 p.m. Central Time on January 6, 2020 (the "Bid Deadline"), Qualified Bids must be delivered to (the "Notice Parties"):

(1)     The Debtors' CRO, Attn: Jeffrey Varsalone, G2 Capital Advisors, 535 Boylston St., 11th Floor, Boston, MA 02116, jvarsalone@g2cap.com;

(2)     The Debtors' counsel, Attn: John F. Higgins, Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002, jhiggins@porterhedges.com;

(3)     The Stalking Horse Bidder's counsel, Attn: George Nalley, Nalley and Dew, APLC, 2450 Severn Avenue, Suite 100, Metairie, LA 70001, george@gnalley.com; and

(4)     The Committee's[3] counsel, Jay H. Ong, Munsch Hardt Kopf & Harr, P.C., 303 Colorado Street, Suite 2600, Austin, TX 78701, jong@munsch.com; and Christopher D. Johnson and John Cornwell, Munsch Hardt Kopf & Harr, P.C., 700 Milam Street, Suite 2700, Houston, TX 77002, cjohnson@munsch.com, jcornwell@munsch.com.

4.      **Qualified Bidders and Bid Requirements.** Only Qualified Bidders may participate in the bidding process. Except as otherwise set forth in these Bid Procedures, to become a Qualified Bidder, by the Bid Deadline, a potential bidder must (i) deposit with the Debtors, in cash, 10% of the bidder's proposed purchase price on the applicable assets that are the subject of the bidder's bid (each, "Alternative Bidder's Deposit"), which deposit shall be refundable as described below; (ii) submit to the Debtors an unqualified and binding bid in the amount of $1,200,000.00, and (iii) submit an executed written agreement that is substantially identical to the form of the Purchase Agreement and includes a commitment to serve as the Backup Bidder (as defined below) with a redline showing any changes from such Purchase Agreement (each, a "Qualified Bid"). Regardless of whether a potential bidder ultimately becomes an Approved Bidder or submits a Qualified Bid, the Debtors must promptly provide to the Committee the following information: (a) the name and contact information for every party that submits a bid; and (b) the details of their proposed bids.

5.      **Due Diligence from Bidders.** Each Approved Bidder/Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Approved Bidder/Qualified Bidder to consummate the applicable Sale. Failure by an Approved Bidder/Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, with the consent of the Stalking Horse Bidder and the Committee, that such bidder is no longer an Approved Bidder/Qualified Bidder or that a bid made by such Qualified Bidder is not a Qualified Bid.

---

[3] The "Committee" refers to the Official Committee of Unsecured Creditors appointed by the United States Trustee on or about September 6, 2019.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable Confidentiality Agreement, except as otherwise set forth in these Bid Procedures. Each recipient of confidential information agrees to use, and to instruct its advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with these Chapter 11 Cases or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and their advisors may disclose confidential information: (i) with the prior written consent of such bidder; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

6. **Communications with Qualified Bidders.** Notwithstanding anything to the contrary in these Bid Procedures, all direct communications between and amongst Approved Bidders or Qualified Bidders shall involve the Debtors and the their advisors. No Approved Bidder shall communicate with any other potential bidder or Approved Bidder absent (i) prior written consent from the Debtors and (ii) advance notice to the Committee.

7. **Notice of Qualified Bidders.** Promptly following the bid deadline, the Debtors shall file a notice with the Court identifying all Qualified Bidders. The Debtors shall serve a copy of the notice and the corresponding bids on all Qualified Bidders by (a) facsimile or electronic mail or (b) overnight delivery.

8. **Stalking Horse Bidder.** The Purchase Agreement shall be deemed a Qualified Bid. The Stalking Horse Bidder is and shall be deemed to be a Qualified Bidder. If no other Qualified Bids are received, the Stalking Horse Bidder shall be deemed the Highest and Best Bid (as defined below) for the Assets, and the Debtors shall seek approval of a sale to the Stalking Horse Bidder on the terms of the Purchase Agreement at the Sale Hearing.

9. **Breakup Fee**. The Debtors shall be authorized and obligated to pay a Breakup Fee (as defined below) to the Stalking Horse Bidder if (i) the Debtors accept as the Highest and Best Bid a Qualified Bid of a Qualified Bidder other than the Stalking Horse Bidder for all of the Real Property; (ii) the Court enters a Final Order approving the sale to such other Qualified Bidder; and (iii) the sale closes and payment is received. The breakup fee shall be in the amount $25,000 (the "Breakup Fee").

10. **Auction.** If one or more timely Qualified Bids are received by the Bid Deadline, an auction for the Real Property will be conducted on January 7, 2020, starting at 10:00 a.m. Central Time at the offices of Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002. Only Qualified Bidders may participate in the Auction; *provided*, *however*, that the Committee and its advisors may be present and may participate in any manner other than by bidding on the Real Property. All Qualified Bidders, or their authorized representatives with authority to bind the Qualified Bidder, must be physically present at the Auction. Modern American Recycling Service, Inc. ("MARS"), has made a binding offer of $1,200,000 and the Stalking Horse Bidder has made

3

a binding offer of $1,220,000. MARS shall be afforded the opportunity to bid first at the Auction in excess of its binding offer of $1,200,000. The Stalking Horse Bidder shall then bid second, to be followed by each subsequent Qualified Bidder in the order in which they are designated as Qualified Bidders. Each bid shall be in an incremental amount of not less than $25,000.00, and the Stalking Horse Bidder shall not be allowed to credit bid the Breakup Fee. At the Debtors' discretion, in consultation with the Committee, the Debtors can change or alter any subsequent overbid amount, and allow or disallow Qualified Bidders to pass in any given round and otherwise conduct the Auction in a way that they believe will maximize value. All bidding for the Real Property will be concluded at the Auction and there will be no further bidding at the Sale Hearing.

11. **Selection of the Highest and Best Bid.** At the conclusion of the Auction, in consultation with the Committee, the Debtors will announce the highest and/or best Qualified Bid submitted by a Qualified Bidder (the "Successful Bidder") and the next highest and/or best Qualified Bid (the "Back-Up Bid") submitted by a Qualified Bidder (the "Backup Bidder") for the Real Property, provided that the potential payment of the Breakup Fee to the Stalking Horse Bidder shall not be considered in evaluating whether a Qualified Bidder's Qualified Bid is higher and better when designating the Successful Bidder and the Backup Bidder. The Debtors will seek approval of the Highest and Best Bid(s) at the Sale Hearing. If for any reason, the Qualified Bidder submitting the Highest and Best Bid fails to timely consummate the purchase of the Real Property, the Debtors may seek to consummate a sale based on the Back-Up Bid without further approval by the Court. A Back-Up Bid and the obligation of the party submitting such bid to consummate the purchase of the Real Property shall remain open and in full force, including with respect to the Alternative Bidder's Deposit, until the close of a sale of the Real Property to the party making the Highest and Best Bid or the party making the Back-Up Bid.

12. **Sale Hearing.** A hearing to approve a sale based on the Highest and Best Bid shall take place on January 8, 2020, at 1:30 p.m. in Courtroom 400, on the fourth floor of the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

13. **Deadline to Object to Sale.** All objections to the proposed sale must be filed by January 6, 2020 on or before 5:00 p.m. CT.

14. **Return of Deposits.** Within three (3) business days after the conclusion of the Auction, the Debtors shall return by check or wire the full amount of each Alternative Bidder's Deposit submitted by a party that is not selected as submitting either the Highest and Best Bid or the Back-Up Bid for the Assets. If the sale of the Real Property is consummated with the party submitting the Highest and Best Bid, the Alternative Bidder's Deposit of the party that is declared the Back-Up Bid shall be returned by check or wire transfer within three business days after the closing of the sale to the party submitting the Highest and Best Bid.

15. **Notice of Bid Procedures, Auction, and Sale Hearing.** On the next business day following the entry of the Bid Procedures Order, the Debtors will serve by first-class mail a copy of the Order and a notice containing the date of the Bid Deadline, Auction, the Sale Hearing, and the deadline to file objections to the sale to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel for White Oak Global Advisors, LLC; (d) counsel to Acqua Liana Capital Partners, LLC; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) counsel to Hope; (h) counsel to MARS; (i) counsel to Garber Bros. Inc.;

(j) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; (k) counsel for the Stalking Horse Bidder; and (l) any party required to be served under Bankruptcy Local Rule 9013-1(d); and (m) all known affected federal, state, and local regulatory, and taxing authorities. Such notice shall be sufficient and proper notice of the sale with respect to known interested parties.

Dated: Houston, Texas
December 19, 2019.

**PORTER HEDGES LLP**

By: */s/ John F. Higgins*
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Genevieve M. Graham (TX 24085340)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248

**COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION**

5

# **EXHIBIT 2**

# **PURCHASE AGREEMENT**



|  | Listing Firm | Selling Firm |
|---|---|---|
| Firm: | Keen-Summit Capital Partners, LLC | |
| Agent: | Chris Mahoney | |
| Phone: | ( ) 646-381-9222   C          F | |
| E-mail: | cmahoney@keen-summit.com | |

☐ **DUAL AGENT**

Received By: _____ Date: _____ Time: _____

## AGREEMENT TO PURCHASE OR SELL
## (COMMERCIAL PROPERTY)

Date 12/13/2019

_____Grand Propretes of Houma, LLC_____ (Purchaser) offers and agrees to purchase, and Epic Companies, LLC (Seller), agrees to sell the property located in the Parish of ___Terrebone___ at the Municipal Address of __*__ in the City of Houma Louisiana, with the zip code of 70363, including land and all improvements thereon, together with fences, and all fixtures attached to and servicing the property.

1. **PRICE:** Property to be sold and purchased subject to title and zoning restrictions, servitudes of record, laws, and/or ordinances affecting the property for the sum of _____ One Million Two Hundred Twenty Thousand Dollars ($  1,220,000  ).

2. **FINANCING:** This sale is not subject to any financial terms because it is an **all cash offer**.

3. **DEPOSIT:** Upon acceptance of this offer and subject to approval of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), the SELLER and PURCHASER shall be bound by all terms and conditions. PURCHASER shall deposit within __1__ business day with SELLER'S Agent/Broker the sum of One Hundred Twenty-Two Thousand ($122,000) Dollars

   By **WIRE** to be applied to the sale price and/or closing costs, at Act of Sale. This deposit is not to be considered earnest money.

   Failure to deliver the Deposit shall be considered a breach of this Agreement. If the Deposit is held by the Listing Broker, it must be held in accordance with the rules of the Louisiana Real Estate Commission in a federally insured banking or savings and loan institution without responsibility on the part of the Broker in the case of failure or suspension of such institution.

   **LOUISIANA LAW REGARDING DEPOSIT:** In the event the parties fail to execute an Act of Sale by the date specified herein, and parties do not agree to sign a mutual release of the deposit, then the Broker will disburse the funds in accordance with the Louisiana Real Estate License Law and Chapter 29 of the Rules and Regulations of the Louisiana Real Estate Commission regarding deposits.

   **RETURN OF DEPOSIT:** The Deposit shall be returned to the PURCHASER and this Agreement declared null and void without demand in consequence of the following events:

   1) PURCHASER rejects the property as a result of the inspection during the inspection period;
   2) Property does not appraise to the Sale Price and the SELLER will not reduce the selling price to the appraised value if the offer is conditioned upon an appraisal.

4. **BACKUP BID.** If it is determined at auction that the PURCHASER'S offer is not the highest and best offer, the PURCHASER agrees to serve as the backup bidder and to hold open its offer pending the closing of the sale to another purchaser.

5. **APPRAISAL:** This Agreement is NOT conditioned upon an appraisal being equal to or greater than the sales price. The appraisal ordered by the PURCHASER shall be the appraisal of record.

_____/s/_____ BUYER'S INITIALS                    _JTV_ ____ SELLER'S INITIALS

6. **ABSTRACT**: SELLER ☒ shall not furnish an abstract, ☐ shall furnish an up-to-date, complete abstract, or shall furnish an up-to-date, supplemental abstract. PURCHASER shall reimburse the SELLER for the cost of said abstract should sale not close due to no fault of SELLER.

7. **OTHER COSTS**: The SELLER'S customary closing costs are to be paid by SELLER. Cost of survey, title insurance if required and/or requested, and PURCHASER'S pre-paid items and closing costs are to be paid by the PURCHASER, unless otherwise stated herein.

8. **UCC SEARCH**: Any UCC search (SELLER'S title to furniture, fixtures, equipment or appliances) deemed necessary by the PURCHASER shall be obtained at PURCHASER'S expense. Any encumbrances reflected in the UCC search certificate shall be cancelled in advance of closing or paid out of closing proceeds. SELLER shall pay all costs required to cancel or release any such encumbrances.

9. **OCCUPANCY BY PURCHASER**: Occupancy will be granted to PURCHASER ☒ upon act of sale.

10. **ACT OF SALE**: The act of sale shall be subject to approval of the Bankruptcy Court and shall close before PURCHASER's notary on or before ___January 31,___ 2020. Any extension shall be agreed upon in writing and signed by the parties.

11. **SELLER'S TITLE**: SELLER'S title shall be merchantable and free of all liens, encumbrances, and defects, except those that can be satisfied at the act of sale or insured by title insurance. If curative work in connection with the title is required. The parties agree to extend the time for closing the sale by _15_ calendar days. SELLER shall pay all costs required to make the title merchantable, including all necessary tax and mortgage releases, certificates, and cancellations, if any. In the event the title is not valid or merchantable, this Agreement may be declared null and void at the option of the PURCHASER.

12. **AUTHORITY**: PURCHASER and SELLER agree to provide appropriate resolutions, certificates or other evidence of authority if the individual executing this agreement is acting in a representative capacity within _10_ calendar days of acceptance of this offer.

13. **ZONING**: This offer is subject to the property having a current zoning designation by the proper zoning authority or authorities which allows the property to be used for __industrial/ship repair__ and related facilities. If the zoning designation of the property does not allow for said use and related facilities, then PURCHASER has the right, but not the obligation, to apply, at PURCHASER'S sole cost, for the proper zoning designation. SELLER will reasonably cooperate with the zoning designation request and provide within reason any information PURCHASER requests so that the proper zoning designation application can be made. Should a spew zoning designation be required, the PURCHASER must make formal request with the proper zoning authority within _15_ calendar days of the acceptance of this agreement or this agreement is null and void, and any deposit made herein by PURCHASER shall be returned to PURCHASER immediately In the event that the process to change zoning designation requires additional time, the parties agree to extend the time for closing the Act of Sale by _30_ calendar days.

14. **LEASES**: The property ☐ IS ☒ IS NOT leased currently.

15. **PRORATIONS**: Real estate taxes, rent income, and any similar items are to be prorated to the date of the Act of Sale. Security deposits, keys and all rental agreements are to be transferred to PURCHASER as of day of Act of Sale.

16. **MINERAL RESERVATIONS**: Mineral rights, if any, are conveyed to PURCHASER. Such mineral rights are conveyed without warranty and are to be stated in the deed.

17. **INSPECTIONS**: PURCHASER acknowledges the price of the property was negotiated based upon the property's present condition. Commencing with the first day after acceptance of this agreement, PURCHASER may, at his expense, have an inspection(s) made by experts or others of his choosing. Such inspections may include, but are not limited to: inspections for utility and sewer availability flood zone classifications and current zoning and all insurance cost. All inspector's testing shall be nondestructive testing. Seller agrees to remove all refuse and personal property from the premises prior to the Act of Sale.

    The PURCHASER acknowledges that the benefits of conducting a professional inspection have been explained

    The PURCHASER does desire to conduct an inspection. All of the inspections are to be completed within _10_ calendar days of acceptance of this agreement.

    Upon completion of the inspection(s) and during the inspection period, and if the PURCHASER is not satisfied with the property's present condition as reflected in the inspection report(s), the PURCHASER may reject the property or request that the SELLER remedy the deficiencies. If the PURCHASER rejects the property during the inspection period, the contract is null and void and the deposit returned to the PURCHASER. A copy of the inspection report is to accompany the written rejection of the property.

_____ BUYER'S INITIALS                                              _JTV_ _____ SELLER'S INITIALS

If the PURCHASER requests that the SELLER remedy the deficiencies, the SELLER shall have 72 hours from the PURCHASER'S request to agree to remedy the deficiencies Should the SELLER fail to agree to the remedy the deficiencies listed by the PURCHASER, then the PURCHASER will have 72 hours from receipt of SELLER'S response or non response to do one of the following:
1. Accept the SELLER'S response as written
2. Accept the property in its present condition; or
3. Terminate this contract, and the deposit returned to the PURCHASER

All requests and responses shall be in writing.

PURCHASER'S failure to make inspections or to give written notice of deficiencies and desired remedies to the SELLER (or SELLER'S Agent) within the inspection period shall be deemed as acceptance by the PURCHASER of the property's current condition.

PURCHASER shall have the right to review the property within __5__ calendar days prior to the act of sale or occupancy, whichever occurs first, in order to determine if the property is in the same or better condition as was present at the initial inspection if the property is not in the same or better condition, then SELLER shall be obligated to perform, at SELLER'S sole expense, all work necessary to place the property in the condition that is was in at the time of the initial inspection,

PURCHASER hereby agrees to hold SELLER/BROKERS/AGENTS harmless from any and all losses, liabilities, claims, expenses, costs, damages and mechanic's liens which may be brought or which may be filed against the land by reason of the performance of any of the acts herein mentioned which are performed by PURCHASER or under PURCHASER'S direction end to defend any action brought by reason of any such acts and reimburse SELLER for reasonable attorney's fees and costs incurred by SELLER by reason of any such action.

18. **SEX OFFENDER NOTIFICATION.** The Louisiana State Police maintains a State Sex Offender and Child Predator Registry through the Bureau of Criminal Identification and Information. It is a public access database of the locations of individuals who are required to register pursuant to LA R.S.15:540 et seq. The website for the database is http://lsp.org/socpr/default.html. Sheriff and police departments serving jurisdictions of a population of 450,000 or greater also maintain such information. Inquiries can be made by phone at 1-800-858-0551 or 1-225-925-6100. Send written inquiries to P.O. Box 66614, Box A-6, Baton Rouge, LA 70196

19. ____N/A____ **MOLD DISCLOSURE:** An informational pamphlet regarding common mold related hazards that can affect property is available at the EPA website http://www.eps.gov/iaq/molds/index.html. By initialing this section, Purchaser(s) acknowledges that the real estate agent has provided Purchaser with the EPA website enabling Purchaser(s) to obtain information regarding common mold related hazards.

20. **FLOOD/WETLANDS DISCLOSURE:** PURCHASER acknowledges that it has been made aware by the Broker/Agent that this property is subject to laws governing the use of "Wetlands" as defined by the "Federal Manual for delineating Jurisdictional Wetlands" or by some other governmental rules or regulations; and, is subject to Flood Plain or Floodway laws and regulations as defined by the Federal Emergency Management Agency (FEMA) or other government agencies.

21. **SELLER'S WARRANTY AGAINST HIDDEN DEFECTS.** ONE MUST BE SELECTED. This section becomes effective at close of sale.
    A. ☐ WITH WARRANTIES. SELLER and PURCHASER acknowledge that this sale shall be with full SELLER warranties as to any claims or causes of action for redhibition pursuant to Louisiana Civil Code article 2520, et seq. and article 2541, et. seq.
    B. ☒ AS IS" WITHOUT WARRANTIES. SELLER and PURCHASER hereby acknowledge and recognize that the property being sold and purchased is to be transferred in "as is" condition and PURCHASER does hereby relieve and release SELLER from any claims or causes of action for redhibition pursuant to Louisiana Civil Code article 2520, et seq. and article 2541, et seq. or for reduction of purchase price pursuant to Louisiana Civil Code article 2541, et seq Additionally, PURCHASER acknowledges that this sale is made without warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code article 2524. It is understood that this clause shell be made a part of the deed.

22. **OTHER CONDITIONS OF SALE:** Any conditions or terms indicated in this Section will control and prevail over any pre-printed portions of this Agreement. The property is currently occupied by a ship repair company which must vacate the property and remove all of their equipment, scrap materials and trash prior to the Act of Sale. Purchaser reserves the right to substitute its Designee at the Act of Sale and the Seller reserves the right to credit the Purchase Price for the cost of removing the equipment, scrap materials, and any trash.

23. **DEADLINES:** TIME IS OF THE ESSENCE, and all deadlines are final, except where modifications, changes, or extensions are made in writing and signed by all parties to this agreement. All "calendar days" as used in this Agreement shall end at 12:00 midnight in Louisiana.

The contract date shall be the latest date that either the SELLER or PURCHASER signs on the initial offer or any counter offers.

_____ _____ BUYER'S INITIALS     _JTV_ ____ ____ SELLER'S INITIALS

24. **ACCEPTANCE.** Acceptance must be in writing

25. **COUNTERPARTS:** This agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall be binding on the parties hereof

26. **AUTHORIZATION:** It is agreed that facsimile and email signatures will be accepted as original signature/s.

27. **BROKERAGE FEES:** The PURCHASER and SELLER are each responsible for their own broker fees. The Listing Broker will be paid pursuant to the Bankruptcy Court order approving its retention.

28. **BREACH OF AGREEMENT BY EITHER PARTY:** In the event of default by either party, the non-defaulting party shall have the right to demand specific performance and/or damages, at his option. The defaulting party shall also be liable for the brokerage fees and all costs and fees, including reasonable attorney's fees, incurred as a result of the breach of this agreement, unless this is an earnest money contract.

29. **PURCHASER/SELLER:** Agent/Broker(s) are not responsible for any agreement made by PURCHASER or SELLER, and PURCHASER and SELLER acknowledge, that they had an opportunity to investigate all pertinent facts and to seek advice from any other PROFESSIONALS. This contract and its addenda shall constitute, and do contain, all of the terms and conditions of the Agreement reached between the PURCHASER and SELLER.

30. **GOVERNING LAW:** The laws of the State of Louisiana shall govern the validity, construction, enforcement and interpretation of this Agreement.

31. This offer remains binding and irrevocable until: DATE _____, 20 ___ TIME _____

    This offer is:
    1) ☒ ACCEPTED AS WRITTEN
    2) ☐ ACCEPTED AS AMENDED
    3) ☐ rejected

PURCHASER/S: _____[signature]_____ 12/13/19 11:17    SELLER/S: _____[signature]_____ 12/13/19
Signature                    Date/Time                 Signature                 Date/Time
For Grand Proptetes of Houma, LLC

Signature _____ Date/Time _____    Signature _____ Date/Time _____

Signature _____ Date/Time _____    Signature _____ Date/Time _____

Signature _____ Date/Time _____    Signature _____ Date/Time _____

Address _____       Address _____

Telephone () _____ H: _____          Telephone () _____ H: _____

Address of Properties - P. 1

* 168 Menard Rd., Houma – APN 41007
  306 Menard Rd., Houma – APN 41002
  403 Menard Rd., Houma – APN 41006
  600 Thompson Rd., Houma - APN 27997

___[initials]___ BUYER'S INITIALS                JTV___ SELLER'S INITIALS

Manual Version-Revised DRAFT, Jan. 25, 2010                                  Page 4 of 4
10370630v3

# **EXHIBIT 3**

# **AUCTION NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **EPIC COMPANIES, LLC,** | § | **Case No. 19-34752 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

## NOTICE OF AUCTION FOR THE SALE OF DEBTORS' REAL PROPERTY

**PLEASE TAKE NOTICE** that on December __, 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving Bid Procedures, Including a Breakup Fee and (II) Authorizing and Scheduling an Auction for the Sale of Certain Real Property* [Docket No. [___]] (the "Bid Procedures Order")[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction") to select the party to purchase the Debtors' assets. The Auction will be governed by the bid procedures approved pursuant to the Bid Procedures Order (attached to the Bid Procedures Order as **Exhibit 1**, the "Bid Procedures").

> Copies of the Bid Procedures Order, the Bid Procedures, or other documents related thereto are available upon request to Epiq by calling (855) 958-0575 (United States and Canada) and (503) 597-5530 (International) or visiting the Debtors' restructuring website at https://dm.epiq11.com/case/Epic.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **January 6, 2020, at 5:00 p.m. (Prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider any Qualified Bid submitted to the Debtors and their professionals, by and pursuant to the Bid Procedures as set forth in the Bid Procedures Order, on **January 7, 2020, at 10:00 a.m. (Prevailing Central Time)** at the offices of Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order or the Bid Procedures, as applicable.

1

10363732v1

**PLEASE TAKE FURTHER NOTICE** that a hearing to approve a sale based on the Highest and Best Bed shall take place on **January 8, 2020, at 1:30 p.m. (Prevailing Central Time) in Courtroom 400, 4th Floor, United States Courthouse, 515 Rusk Street, Houston, Texas 77002**.

Dated: Houston, Texas
December 13, 2019.

        **PORTER HEDGES LLP**

By:   */s/ John F. Higgins*
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Genevieve M. Graham (TX 24085340)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248

**COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION**