# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EPIC COMPANIES, LLC, *et al.*[1] | § | Case No. 19-34752 (DRJ) |
| | § | |
| Debtors | § | (Jointly Administered) |
| | § | |

### OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF
**[Relates To Docket No. 476]**

The Official Committee of Unsecured Creditors (the "Committee"), appointed in the above-captioned, jointly administered Chapter 11 cases (collectively, the "Bankruptcy Cases") of Epic Companies, LLC and its affiliated debtors-in-possession (collectively, the "Debtors"), files this objection (the "Objection") to the *Debtors' Motion for Entry of an Order Extending Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 476] (the "Exclusivity Motion"), and in support hereof would respectfully show the Court as follows:

## I. BACKGROUND

1. On August 26, 2019, each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court, and by order of this Court, their corresponding Bankruptcy Cases are jointly administered under Chapter 11 Case No. 19-34752 [Docket No. 19].

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 1080 Eldridge Parkway, Suite 1300, Houston, Texas 77077.

2.     On September 6, 2019, the United States Trustee filed its notice of appointment of the Committee [Docket No. 78].

3.     On October 4, 2019, this Court entered its *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of Bankruptcy Code and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 234] (the "Final DIP Financing Order").

4.     The Final DIP Financing Order, as agreed among the Debtors', their senior, pre-petition secured lender White Oak Global Advisors, LLC ("White Oak"), and the Committee, contains a "Challenge Deadline" by which the estates, including but not limited to the Committee, must seek to object to or challenge the claims of the Debtors' "Prepetition Secured Lenders" (as defined therein), or to otherwise assert claims held by the estates against any such Prepetition Secured Lenders.  Final DIP Financing Order, at ¶ 29.

5.     Following prior consensual extensions of the Challenge Deadline, on December 10, 2019, the Committee was forced to file its *Motion to Compel Rule 2004 Examination of White Oak Global Advisors, LLC, and for Relief from Challenge Deadline* [Docket No. 465] ("Motion to Compel"), due to White Oak's refusal to reasonably cooperate with the Committee's requested examination.

6.     Following a hearing held on December 11, 2019, this Court ruled that White Oak's representative must submit to the examination by no later than January 16, 2020, and determined to extend the Challenge Deadline through January 20, 2020.

7.     Meanwhile, the Debtors continued to administer their estates under the Final DIP Financing Order, and pursuant to those efforts, sold substantially all of their assets to White Oak

pursuant to Court approved bid procedures and specific authorization for the sale. *See* Docket Nos. 13, 227, 418.[2]

8. Similarly, the Debtors have also accomplished separate sales of their accounts receivables and remaining, *de minimus* assets, and on January 8, 2020, obtained this Court's authorization for the sale of most of the Debtors remaining, unencumbered real property interests. *See, e.g.*, Docket Nos. 268, 271, 278, 323, 478, 494.

9. Accordingly, the Debtors' estates are very nearly, completely liquidated. The Debtors no longer have any operations nor employees. Most all of their remaining, tangible assets have previously been sold or now been finally approved for sale.

10. With the sale to White Oak having been approved, White Oak now asserts that the post-petition credit facility approved by this Court has terminated such that the Debtors have no ability to make further draws for advances thereunder. Therefore, the post-petition financing obtained by and approved for the Debtors and their estates has also now been previously funded and concluded.[3] However, what the Debtors' estates do have remaining are significant potential claims against White Oak.

11. Since its formation, the Committee has investigated the estates' potential claims against White Oak while the Debtors' professionals have been working to formulate a consensual plan of liquidation that would accommodate a potential, proposed compromise among the Debtors, their lenders and the bankruptcy estates. In early December 2019, due to the Challenge Deadline imposed by White Oak as well as the exigent need to expeditiously conclude the administration of

---

[2] The Court's order approving the sale to White Oak expressly preserves the estates' claims against White Oak. *See* Docket No. 418 (at ¶ 32). This sale has not yet closed due to White Oak's failure to close its follow-on transaction with Alliance Energy Services, LLC ("Alliance").

[3] The Committee reserves all of its and the estates' rights regarding the performance and administration of the Debtors' approved, post-petition financing.

these estates, the Committee made demand upon the Debtors to either pursue the claims against the lenders that the Committee has identified through its continuing investigation, or inform the Committee that they would not do so. In order to expeditiously initiate discussions, and notwithstanding that the Committee's investigation remains ongoing, the Committee simultaneously provided to both the Debtors and White Oak a draft complaint setting out the estates' claims and causes of action. The Debtors and Committee remain in discussions but the Debtors have not formally responded to the Committee's request.

12. However, following the proceedings conducted by this Court to resolve the Committee's motion to compel White Oak to cooperate in discovery, and after the Committee initially conveyed its consent to the Debtors' Exclusivity Motion and agreed to judicial or other mediation at the Debtors' suggestion, White Oak has terminated all discussions with the Committee, refused mediation, and declined to respond to the Committee's most recent offer, other than to reject same.[4] Accordingly, it now clearly appears that no consensual plan involving a compromise between the estates and lenders is reasonably likely.

13. Depending to an extent on the results of the White Oak examination, the Committee anticipates shortly thereafter filing its motion seeking this Court's leave to formally assert the estates' claims and causes of action against the lenders. The Committee strongly believes that the estates' claims and causes of action that the Committee has formulated are colorable, and that this Court should not determine any plan that proposes to release those claims over the Committee's objection to be confirmable as being in the best interests of the Debtors' estates.

---

[4] White Oak has indicated that it would be willing to continue discussions only if the Committee agrees to seek no damages from White Oak. In other words, White Oak's position is tantamount to a willingness to negotiate, only if the Committee will first accept White Oak's terms.

14. As a result, given that the estates' claims identified by the Committee will not be consensually compromised, there is only one basic plan structure that remains reasonably viable for the estates and capable of confirmation: a liquidating plan that provides the estates and their constituency the opportunity to pursue the claims for their own, collective benefit. At the same time, the current impasse and any protracted period during which the Debtors remain in their pre-confirmation Bankruptcy Cases is detrimental to the estates and their creditors, especially with White Oak having cut off all further funding of the post-petition financing facility.

15. While exclusivity persists, White Oak's position and approach will not change. The Court should deny the Exclusivity Motion, allow exclusivity to terminate, and allow the Committee to propose a plan for the benefit of the Debtors' estates.

16. Concurrently, the Committee has attempted to negotiate a settlement with White Oak, and at the Debtors' suggestion, agreed to mediate with White Oak and Debtors. White Oak has refused to provide any counterproposal in response to the Committee's most recent proposal to White Oak, and has since refused to mediate, effectively terminating all discussions (while, as this Court knows, White Oak continued to resist the Committee's discovery efforts). The Committee has also attempted to work with the Debtors' on a plan of liquidation that preserves the estates' claims. The Debtors' have been unwilling to do so while they continue to investigate the estates' claims against White Oak. Given the parties' positions there is no path to a settlement with White Oak and a consensual plan of liquidation involving the Debtors, Committee and White Oak.

## II.    OBJECTIONS

### A.    Standard applicable to requests for an extension of exclusivity

17. Section 1121(d) of the Bankruptcy Code provides that the Court may reduce or increase the 120-day or 180-day exclusive periods for a debtor to file and solicit acceptances of its

reorganization/liquidation plan if "cause" exists. Requests to extend or reduce a period of exclusivity should "be granted neither routinely nor cavalierly." *In re McLean Indus., Inc.,* 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Pine Run Trust, Inc.* 67 B.R. 432, 434 (Bankr. E.D. Pa. 1986) ("Furthermore, both the language and purpose of this statutory provision require that an extension not be granted routinely."). The burden is on the Debtors to demonstrate the existence of good "cause" warranting an extension of the exclusive periods. Under the particular circumstances, cause does not exist to grant the Debtors' Motion.

**B.     Complexity of these Bankruptcy Cases does not constitute cause**

18.     The first factor cited by the Debtors – the complexity of these bankruptcy cases – do not support an extension of exclusivity. Motion, at ¶¶17-18. These cases are no longer complex. The Debtors have no operations or employees. They sold substantially all their assets to White Oak. White Oak's failure to close a subsequent transaction to Alliance is not sufficient cause to justify extending exclusivity.

19.     These Debtors have no intention nor ability to reorganize. All parties agree that liquidation of the remaining assets is the only end for these cases. Moreover, to the extent that these cases continue to implicate complex, unresolved contingencies, no extension of exclusivity can be expected to alleviate or accommodate those concerns because any such matter is comprised of these very disputes between the estates and lenders. As a result of White Oak's refusal to engage in good faith discussions the Debtors' progress towards a consensual plan has stalled and maintaining the *status quo* will not improve the situation.

20.     With White Oak refusing to mediate or otherwise negotiate any resolution but a complete capitulation by the estates, the Debtors simply do not require an additional 60 days to

propose a liquidating plan.  Such delay will only increase the burden an expense on the estates', particularly their unsecured creditors, and strengthen White Oak's leverage.

**C.   The Debtors do not reasonably require an extension of exclusivity merely to formulate adequate disclosures, and there are no continuing negotiations**

21.    The Debtors' next basis under their motion also falls short of constituting cause. Here, they argue that given the progress and duties they have managed during the initial phases of their Bankruptcy Cases, they should be afforded additional time to negotiate a Chapter 11 plan and to formulate requisite disclosures relating to same.  Motion, at ¶¶ 19-21.

22.    The Committee does not dispute that the Debtors have accomplished much during the pendency of these cases, but that consideration weighs against granting the motion because, as discussed above, the Debtors have reached a juncture at which their cases have now been substantially administered, and very little remains for the Debtors to complete their liquidation. *See also In re Southwest Oil Co.*, 84 B.R. 448, 450 (Bankr. W.D. Tex. 1987) (questioning whether exclusivity may be extended where the debtors have no viable prospect for reorganization).  Also as discussed above, the Debtors' desire to continue negotiations cannot constitute cause because the lenders refuse to engage in any discussions with the Committee as the fiduciary of the estates' general unsecured creditors.  Despite the Debtors' and Committee's hopes, they have no good faith counterparty with which to negotiate.

**D.   There is no budget to fund an extension of exclusivity**

23.    The Debtors' next argument is that they have paid their bills as they come due – these estates remain administratively solvent.  The Committee concedes that this is also accurate,

but not for long.  The Debtors will not be able to pay post-petition obligations in the future.  White Oak has taken the position that they have fully funded their obligations under the Final DIP Order.[5]

24. Because White Oak has terminated the post-petition financing facility and the Debtors have no continuing operations, there are no funds available to fund the continued administration of these cases other than the proceeds of pre-petition unencumbered property and the limited wind down budget negotiated to conclude these cases.  That wind down budget was negotiated at a time when the sale of substantially all assets were anticipated to conclude in late November, which it did not, and to fund the continuing administration of these causes under a schedule that does not contemplate the additional sixty (60) day period sought by the Debtors.  In other words, the estates are rapidly nearing the juncture at which the continued administration of these cases will begin to erode and eventually consume what funds would have been available to the estate of unsecured creditors as of the Petition Date.

25. It appears that this dynamic is a part of White Oak's intentional strategy: to delay and prevent progress in the resolution of the estates' claims until the estates' condition becomes exigent.  Based on this consideration alone, exclusivity should be allowed to expire.

**E.    Extending exclusivity now would be counterproductive to the Debtors' and estates' remaining objectives**

26. These same considerations also refute the Debtors' remaining arguments in their Motion, that little time has elapsed in the cases and an extension of exclusivity arguably would not be prejudicial to the estates.  While the cases are admittedly not old, the opposite of the second proposition is true: continuing to delay the resolution of these cases while the estates'

---

[5] Docket No. 11, *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief*

unencumbered assets are consumed to fund such continued administration would be extremely prejudicial to the estates. This is especially true given that delaying plan proceedings in favor of further administration could only be properly directed towards attempting to resolve the estates' remaining disputes with the lenders, and that prospect is dead.

27. Therefore, the Debtors' final argument, that their request to extend exclusivity is not intended to pressure creditors, misses the mark. The Committee understands the Debtors' desire for a consensual plan that releases the estates' disputes with the lenders, but notwithstanding, the Debtors have no basis to force their preferred resolution on the true estate stakeholders in this dispute, nor any ability to force White Oak to participate in any such discussions. Therefore, as discussed above, extending exclusivity only prejudices the estates' interests and strengthens and emboldens White Oak's strategy. *See also In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (Section 1121 should be faithfully interpreted to limit the delay that makes creditors hostages to the plan process); *Miller v. Broadway*, 2007 WL 4561119, *2 (W.D. La. 2007) (section 1121 allows the debtors the first option to formulate a plan, while ensuring the ability of creditors to pursue viable alternatives if the debtors face unresolved difficulties formulating a plan); *In re Washington-St. Tammany Electric Cooperative, Inc*., 97 B.R. 852, 854-55 (E.D.La. 1989) (exclusivity should not be used as a mechanism to allow debtors to force a settlement from unwilling creditors). Until White Oak is faced with the imminent risk that a Chapter 11 plan providing for the pursuit of the estates' causes of action against it will be proposed and confirmed by this Court, White Oak's position obviously will not change.

28. The Committee acknowledges the Debtors' argument that the Committee previously agreed to the relief requested in the Motion prior to its filing. The Committee did so in

good faith with the expectation of continuing to work with the Debtors and White Oak to consensually resolves these estates.

29. However, it was only subsequently that White Oak declined mediation and affirmed its unwillingness to continue negotiations. As this Court is well aware, while exclusivity may be extended, the Bankruptcy Code also expressly provides that any plan exclusivity may be terminated for cause. 11 U.S.C. 1121(d). Therefore, it is *always* the case that the Debtors are exposed to such a determination by this Court even if the Court had previously granted an extension of exclusivity. Furthermore, given that section 1121 of the Bankruptcy Code – absent exclusivity – allows "any party in interest" to propose a plan, the Debtors could not as a matter of law establish any detrimental reliance upon the Committee's prior consent, in order to attempt to apply estoppel, because regardless of whether the Committee consented, the Debtors obviously would have proceeded with their motion all the same in order to attempt to maintain exclusivity generally.

30. The Committee also appreciates that its underlying disputes are not, in fact, with the Debtors and believes that the Debtors and Committee should work cooperatively towards to formulation and proposal of a liquidating plan. Notwithstanding, since the Debtors are liquidating, the true principal party on the side of the estates in the primary dispute that remains unresolved in these cases is the Committee (or, in fact, the estates themselves).

31. Given the foregoing, since it is only the unsecured creditors of the estates whose interests must substantially depend on the liquidation of the estates' remaining assets – their claims against White Oak – any such plan should leave for the Debtors' estates and their creditors the determination of whether to grant releases of the estates' claims against White Oak.

32. As the parties with the largest stake in the litigation against White Oak, under the specific circumstances of these cases and in response to White Oak's bad faith, the Committee and its creditor constituency must be allowed to propose their own plan and determine how those claims are pursued.

### III. CONCLUSION

33. There is no longer any basis here that warrants an extension of exclusivity. The Debtors are unlikely to make any progress on a plan that is acceptable to both White Oak and the Committee. An extension of exclusivity would be counterproductive and should be denied. Denial of the Exclusivity Motion will level the playing field and allow the Committee to pursue a competing plan and move these cases to conclusion.

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Motion; and (ii) grant such other and further relief as may be just and appropriate.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/  Jay H. Ong*
Jay H. Ong
Tex. Bar No. 24028756
Christopher D. Johnson
Tex. Bar No. 24012913
John D. Cornwell
Tex. Bar No. 24050450
700 Milam Street, Suite 2700
Houston, Texas 77002
713-222-1470 (tel.)
713-222-1475 (fax)
jong@munsch.com
cjohnson@munsch.com
jcornwell@munsch.com

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

## CERTIFICATE OF SERVICE

I certify that on this the 9th day of January 2020, I personally caused a copy of the foregoing document to be served by filing same through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jay H. Ong*
Jay H. Ong