# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **EPIC COMPANIES, LLC,** | § **Case No. 19-34752** |
| | § |
| **Debtors.[1]** | § **(Jointly Administered)** |
| | § |

# DISCLOSURE STATEMENT FOR
## JOINT PLAN OF LIQUIDATION OF EPIC COMPANIES, LLC
## AND ITS DEBTOR SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Genevieve M. Graham (TX 24085340)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
Email:  jhiggins@porterhedges.com
          eenglish@porterhedges.com
          sjohnson@porterhedges.com
          ggraham@porterhedges.com

*Counsel to the Debtors and Debtors in Possession*

**MUNSCH HARDT KOPF & HARR, P.C.**
Jay H. Ong (TX 24028756)
Christopher D. Johnson (TX 24012913)
John D. Cornwell (TX 24050450)
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
Email:  jong@munsch.com
          cjohnson@munsch.com
          jcornwell@munsch.com

*Counsel to the Official Committee of Unsecured Creditors*

Dated: February 13, 2020

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

THIS SOLICITATION OF VOTES (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN SUFFICIENT ACCEPTANCES OF THE PLAN (AS DEFINED HEREIN) UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE"). [THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.] FOLLOWING THE SOLICITATION OF VOTES, THE PLAN PROPONENTS EXPECT TO PROMPTLY SEEK AN ORDER CONFIRMING THE PLAN.

> THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS MARCH 24, 2020, UNLESS EXTENDED BY THE PLAN PROPONENTS (AS DEFINED HEREIN). THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS OR INTERESTS MAY VOTE ON THE PLAN IS FEBRUARY 14, 2020 (THE "VOTING RECORD DATE").

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE VOTING ON THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

IN PREPARING THIS DISCLOSURE STATEMENT, THE PLAN PROPONENTS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES. WHILE THE PLAN PROPONENTS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES AND THEIR FUTURE RESULTS AND OPERATIONS. THE PLAN PROPONENTS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD LOOKING STATEMENTS CONTAINED HEREIN.

ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................................ 1

II. OVERVIEW OF THE DEBTORS' OPERATIONS ................................................................. 5

    A.     The Debtors' Business ........................................................................................ 5

    B.     The Debtors' Organizational Structure ............................................................. 5

    C.     The Debtors' Capital Structure .......................................................................... 7

III. KEY EVENTS LEADING TO THE COMMENCEMENT OF CHAPTER 11 CASES .................. 11

    A.     Involuntary Bankruptcy Case ........................................................................... 11

    B.     Litigation and Arrest of the Debtors' Vessels ................................................. 11

    C.     Decision to File for Bankruptcy ...................................................................... 11

IV. MATERIAL EVENTS DURING THE CHAPTER 11 CASES ............................................. 12

    A.     Commencement of Chapter 11 Cases and First Day Motions ......................... 12

    B.     Dismissal of the Involuntary Case ................................................................... 13

    C.     Appointment of the Committee ........................................................................ 13

    D.     Retention of Professionals ............................................................................... 13

    E.     Debtor in Possession Financing and Cash Collateral ...................................... 14

    F.     Bar Date ........................................................................................................... 15

    G.     Sale of Certain Accounts Receivable Free and Clear of Liens, Claims, and Encumbrances .................................................................................................. 15

    H.     Bid Procedures Order and Sale Order .............................................................. 15

    I.     Proposed Auction and Subsequent Sale ........................................................... 15

    J.     Committee's Standing Motion .......................................................................... 16

V. SUMMARY OF THE PLAN .................................................................................................. 16

    A.     Administrative Claims, Priority Claims, and Intercompany Claims ................ 16

    B.     Classification and Treatment of Claims and Interests ..................................... 18

    C.     Treatment of Claims and Interests ................................................................... 18

    D.     Acceptance Requirements ................................................................................. 21

    E.     Means for Implementation of the Plan ............................................................. 22

    F.     Treatment of Executory Contracts and Unexpired Leases .............................. 31

    G.     Provisions Governing Distributions ................................................................. 32

    H.     Procedures for Resolving Contingent, Unliquidated and Disputed Claims and Disputed Equity Interests ............................................................................. 36

    I.     Conditions Precedent to Confirmation of the Plan and the Effective Date ...... 37

    J.     Settlement, Release, Injunction and Related Provisions .................................. 38

    K.     Binding Nature of Plan ..................................................................................... 42

L. Retention of Jurisdiction. ....................................................................................... 43

M. Preservation of Causes of Action ........................................................................... 44

N. Modification, Revocation or Withdrawal of the Plan .............................................. 45

O. Miscellaneous Provisions ....................................................................................... 46

VI. CERTAIN TAX CONSEQUENCES OF THE PLAN ........................................................ 48

A. In General ............................................................................................................... 48

B. Certain U.S. Federal Income Tax Consequences to the U.S. Holders of Other
   Priority Claims, Other Secured Claims, Prepetition Senior Credit Agreement
   Claims, Prepetition Junior Credit Agreement Claims, General Unsecured Claims,
   and Subordinated Claims ........................................................................................ 50

C. Certain U.S. Federal Income Tax Considerations for Non-U.S. Beneficiaries of
   the Liquidating Trust .............................................................................................. 51

D. Backup Withholding and Information Reporting ..................................................... 51

VII. CERTAIN RISK FACTORS TO BE CONSIDERED ....................................................... 51

A. Certain Bankruptcy Law Considerations ................................................................ 51

B. Additional Factors Affecting Recoveries................................................................ 52

C. Risks of Litigation .................................................................................................. 52

D. Additional Factors................................................................................................... 52

VIII. VOTING PROCEDURES AND REQUIREMENTS ......................................................... 53

A. Parties Entitled To Vote.......................................................................................... 53

B. Voting Deadline ...................................................................................................... 54

C. Voting Procedures................................................................................................... 55

D. Opt-Out of Releases on Ballots and Notices of Non-Voting Status ........................ 55

E. Waivers of Defects, Irregularities, etc. ................................................................... 55

IX. CONFIRMATION OF THE PLAN .................................................................................. 56

A. Confirmation Hearing ............................................................................................. 56

B. Requirements for Confirmation of the Plan............................................................. 56

X. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ..................... 59

A. Alternative Plan ...................................................................................................... 59

B. Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law.......................... 59

XI. CONCLUSION AND RECOMMENDATION....................................................................... 59

## **EXHIBITS**

**Exhibit A**      **Plan**
**Exhibit B**      **Liquidation Analysis**

# I.
# INTRODUCTION

The Plan Proponents submit this Disclosure Statement in connection with the solicitation of votes on the *Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated February 13, 2020 (as may be amended from time to time, the "Plan," attached hereto as **Exhibit A**). The Debtors under the Plan are Epic Companies, LLC; Epic Diving & Marine Services, LLC; Epic Applied Technologies, LLC; Epic Specialty Services, LLC; Epic Alabama Steel, LLC; Epic San Francisco Shipyard, LLC; and Zuma Rock Energy Services, LLC (collectively, the "Debtors"). Capitalized terms used in this Disclosure Statement, but not otherwise defined herein, have the meanings ascribed to such terms in the Plan. To the extent any inconsistencies exist between this Disclosure Statement and the Plan, the Plan governs.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Plan Proponents are commencing this Solicitation after the sale of substantially all the Debtors' assets and the winding down of their operations. The Plan is supported by the Official Committee of Unsecured Creditors (the "Committee"), as co-proponent. The purpose of the Plan is to distribute reserved amounts to the Holders of Allowed Administrative, Secured, and Priority Claims, and to create a Liquidating Trust for the benefit of General Unsecured Creditors that will be assigned the Retained Causes of Action and Liquidating Trust Assets to be administered under a Liquidating Trust.

The Liquidating Trust is to be managed by the Liquidating Trustee and an Oversight Board will authorize or approve certain actions taken by the Liquidating Trustee. The Liquidating Trustee will be responsible for taking the necessary and appropriate actions to liquidate the remaining assets of the Debtors' Estates, make distributions to holders of Allowed Claims, and to proceed with an orderly, expeditious, and efficient wind-down of the Debtors' Estates in accordance with the terms of the Plan.

The Plan Proponents believe that the Distributions under the Plan will provide all Holders of Claims against and Interests in the Debtors at least the same recovery on account of Allowed Claims and Interests as would a liquidation of the Debtors' assets conducted under chapter 7 of the Bankruptcy Code. Furthermore, Distributions under the Plan to Holders of Claims would be made more quickly than Distributions by a chapter 7 trustee and a chapter 7 trustee would charge a substantial fee, reducing the amount available for Distribution on account of Allowed Claims. Thus, the Plan Proponents believe that confirmation and consummation of the Plan, is in the best interests of all Holders of Claims and Interests.

**THE DEBTORS AND THE COMMITTEE SUPPORT CONFIRMATION OF THE PLAN AND URGE ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN. THE PLAN PROPONENTS BELIEVE THAT THE PLAN PROVIDES THE HIGHEST AND BEST RECOVERY FOR ALL CREDITORS AND INTEREST HOLDERS.**

Under the Bankruptcy Code, only Holders of Claims in certain "impaired" Classes are entitled to vote on the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under the Plan unless (a) the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (b) notwithstanding any legal right to an accelerated payment of such claim or interest, the Plan, among other things, cures all existing defaults

(other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

Class 3 (Prepetition Senior Credit Agreement Claims), Class 4 (Prepetition Junior Credit Agreement Claims), and Class 5 (General Unsecured Claims), are Classes that are impaired and whose votes to accept or reject the Plan are being solicited.

The following table summarizes (a) the treatment of Claims and Interests under the Plan, (b) which Classes are impaired by the Plan, (c) which Classes are entitled to vote on the Plan, and (d) the estimated recoveries for holders of Claims and Interests. The table is qualified in its entirety by reference to the full text of the Plan.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive either (i) Cash from the Claims Reserve in an amount equal to the proceeds of the collateral securing such Holder's Allowed Other Secured Claim after satisfaction in full of all superior liens up to the amount of the Allowed Other Secured Claim; or (ii) solely to the extent the amount of an Allowed Other Secured Claim is greater than the value of the collateral securing such Allowed Other Secured Claim and there are no Liens on such collateral senior to the Lien held by or for the benefit of the Holder of such Allowed Other Secured Claim, the collateral securing such Allowed Other Secured Claim in full and final satisfaction of such Claim. Any purported Secured Claim on the Prepetition Credit Agreement Collateral that is not senior to the Prepetition Credit Agreement Claims under applicable state or federal law shall be a General Unsecured Claim. | Unimpaired | No (Deemed to Accept) | 100% |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive Cash first from the Claims Reserve equal to the unpaid portion | Unimpaired | No (Deemed to Accept) | 100% |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | of the Allowed Other Priority Claim. | | | |
| 3 | Prepetition Senior Credit Agreement Claims | The Prepetition Senior Credit Agreement Claims are subject to the Challenge. The Holders of the Prepetition Senior Credit Agreement Claims (i) received, in exchange for their credit bid of $50 million of their Prepetition Senior Credit Agreement Claims, the Prepetition Senior Credit Agreement Collateral included in the Sale pursuant to the Purchase Agreement, and (ii) following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (x) any proceeds from any Prepetition Senior Credit Agreement Collateral not included in the Sale; and (y) with respect to any Allowed Prepetition Senior Credit Agreement Deficiency Claim, the same treatment as Class 5 (General Unsecured Claims). | Impaired | Yes | 91-94% |
| 4 | Prepetition Junior Credit Agreement Claims | The Prepetition Junior Credit Agreement Claims are subject to the Challenge. Following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, the Holders of the Prepetition Junior Credit Agreement Claims not otherwise assumed pursuant to the Sale shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (i) any proceeds from any Prepetition Junior Credit Agreement Collateral not included in the Sale after the Prepetition Senior Credit Agreement Claims are paid in full; and (ii) with respect to any Allowed Prepetition Junior Credit Agreement Deficiency Claims, the same treatment as Class 5 (General Unsecured Claims). | Impaired | Yes | 61-66% |
| 5 | General Unsecured Claims | Each Holder of an Allowed Class 5 General Unsecured Claim shall receive its Pro Rata share of the Liquidating Trust Cash available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of the Plan and the Liquidating Trust Agreement. | Impaired | Yes | 1.0-11.3% |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| 6 | Subordinated Claims | Each Holder of an Allowed Class 6 Subordinated Claim, to the extent Allowed and only following the payment in full of all Allowed Claims in Class 5, shall receive its share of any remaining Liquidating Trust Cash, Pro Rata with all other Allowed Class 6 Subordinated Claims, available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of the Plan and the Liquidating Trust Agreement. | Impaired | No | 0% |
| 7 | Intercompany Claims | Class 7 Intercompany Claims shall be cancelled and discharged, with the Holders of such Class 7 Intercompany Claims receiving no Distribution on account of such Intercompany Claims. | Impaired | No (Deemed to Reject) | 0% |
| 8 | Intercompany Interests | Class 8 Intercompany Interests shall be cancelled and discharged, with the Holders of such Class 8 Intercompany Interests receiving no Distribution on account of such Intercompany Interests. | Impaired | No (Deemed to Reject) | 0% |
| 9 | Epic Interests | Class 9 is Impaired. Holders of Class 9 Epic Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Epic Interests are not entitled to vote to accept or reject the Plan. | Impaired | No (Deemed to Reject) | 0% |

**PLEASE TAKE NOTE OF THE FOLLOWING KEY DATES AND DEADLINES RELATED TO THE PLAN:**

| | |
|---|---|
| Deadline to vote to accept or reject the Plan and to object to confirmation of the Plan | **March 24, 2020** |
| Deadline to file Administrative Claims | **30 days after the Effective Date** |

## II.
## OVERVIEW OF THE DEBTORS' OPERATIONS

The historical background recitals and information set forth in this Article II were provided by the Debtors, including from documents that were created prior to August 10, 2019, as well as information which the Debtors' chief restructuring officer and professionals have not independently verified, and are not intended to constitute and may not be construed as any admissions, and are all in respects and for all purposes qualified by, and subject to, the allegations made by the Committee under the Challenge.

### A.      The Debtors' Business

The Debtors were a full service provider to the offshore oil and gas, decommissioning, installation, and maintenance markets. The Debtors' services included heavy lift crane operations, diving and marine, specialty cutting, and well plugging and abandonment services.

As part of their operations, the Debtors employed a fleet of vessels that included two barges and one diving vessel. The *D/B Hedron* is a powerful derrick barge, with a 1,763-ton (1,600-metric) capacity, fully revolving crane, and accommodations for 300 personnel. The *Hedron* offers valuable solutions for heavy lift, decommissioning, construction, and installation projects. The *D/B Arapaho* is an 800-ton (726-metric) capacity conventional derrick barge that is ideal for a variety of offshore projects. The *Epic Explorer* is a 4-point anchor vessel with saturation diving capabilities that assists in various operations such as turnkey wellhead removals, mudline tree abandonments and removals, and site clearance as well as pipeline reroutes, spool installations, and hurricane remediation work. The Debtors also employed a host of other equipment in their operations such as the SAT6 / HOSS 2 Saturation Diving System, well services equipment, coil tubing units, EOT cutting tools, and well equipment.

### B.      The Debtors' Organizational Structure

Epic Companies, LLC ("Epic") was formed in March 2018 through the acquisition of Tetra Technologies' ("Tetra") offshore services division, which included Tetra Applied Technologies (now known as Epic Applied Technologies, LLC, "Epic Applied") and Epic Diving & Marine Services, LLC ("Epic Diving"). Epic later expanded its service lines by acquiring certain assets from Wright's Well Control Services, Inc. ("WWCS") and Ranger Offshore, Inc. ("Ranger Offshore") in August 2018. Later in 2018, Epic acquired BAE Mobile, Alabama Shipyard (since renamed Epic Alabama Shipyard, LLC, "Epic Alabama Shipyard"). In February 2019, Epic entered the metals recycling business and formed Epic Recycling Services, LLC ("Epic Recycling") and Epic Alabama Recyclers, LLC ("Epic Alabama Recyclers"). In June 2019, Epic modified its corporate structure after spinning off TSB Offshore, Inc.



As described in greater detail below, in July 2019, Epic's Senior Lenders acquired Epic's membership interests in Epic Alabama Holdings, LLC ("Alabama Holdings"), Epic Maritime Asset Holdings, LLC ("Epic Maritime"), and Navarro Capital Partners, LLC ("Navarro"). The Senior Lenders then transferred their interests in Alabama Holdings and Epic Maritime to Orinoco Natural Resources, LLC ("Orinoco"), while the Senior Lenders' interest in Navarro was transferred to Oakridge Energy Partners, LLC ("Oakridge") as depicted below.



Epic is currently a privately-held limited liability company based in Houston, Texas. Epic is owned in equal parts by Orinoco and Oakridge. In turn, the remaining Debtor affiliates are all directly owned subsidiaries of Epic, as depicted below.



### C.     The Debtors' Capital Structure

As of the Petition Date, the Prepetition Senior Agent and Prepetition Junior Agent assert that the Debtors had outstanding debt obligations in the aggregate amount of approximately $145 million, which consisted of (a) approximately $50,295,463.69 in secured borrowings under the Prepetition Senior Credit Agreement (as defined below), plus interest, fees and other obligations; (b) approximately $65,340,299 in secured borrowings under the Prepetition Junior Credit Agreement (as defined below), plus interest, fees and other obligations; and (c) approximately $30,000,000 in trade debt and other claims that were either unsecured or secured by alleged maritime liens on the Debtors' vessels.

1.      **Prior Senior Loan Agreement**

Epic and Epic Maritime are borrowers under the Loan and Security Agreement, dated July 20, 2018 (as amended, the "Prior Senior Loan Agreement"), with White Oak Global Advisors, LLC ("White Oak") as administrative agent. The obligations under the Prior Senior Loan Agreement were secured by a lien on substantially all of the Debtors' assets. Several of Epic's subsidiaries also served as guarantors: (i) Epic Diving, (ii) Epic Applied, (iii) TSB Offshore, (iv) Epic Alabama Holdings, (v) Epic Alabama Maritime, (vi) Epic Alabama Shipyard, (vii) Epic Recycling, (viii) Epic Alabama Recyclers, (ix) Cedar Creek Aviation, LLC ("Cedar Creek"), (x) Epic Specialty Services, (xi) King Aire, Inc. ("King Aire"), (xii) Zuma Rock Energy Services, LLC ("Zuma"), (xiii) Navarro, (xiv) Ranger Offshore, (xv) TSB Holding Company, LLC ("TSB HoldCo"), and (xvi) ERP Environmental Fund, Inc. ("ERP"). Thomas Clarke, Ana M. Clarke, and David Wiley also personally guaranteed the obligations under the Prior Senior Loan Agreement.

2.      **Prior Junior Loan Agreement**

Epic and certain affiliates were also parties to a Second Amended and Restated Loan and Security Agreement dated April 5, 2019 (as amended, the "Prior Junior Loan Agreement"), with Acqua Liana Capital Partners, LLC ("Acqua Liana") as administrative agent. The borrowers were Ranger Offshore, Navarro, and Zuma whose obligations under the Prior Junior Loan Agreement were secured by a lien on substantially all of the Debtors' assets. Epic served as parent guarantor, with the following subsidiaries of Epic as guarantors: (i) Epic Diving, (ii) Epic Applied Technologies, (iii) TSB Offshore, (iv) Epic Alabama Holdings, (v) Epic Alabama Maritime, (vi) Epic Alabama Shipyard, (vii) Cedar Creek, (viii) Epic Specialty Services, (ix) King Aire, (x) Ranger Offshore, (xi) Epic Maritime, and (xii) Ranger International, Ltd.

3.      **Prepetition Transfer of Equity Interests in Epic Alabama Holdings, Epic Maritime and Navarro Capital Partners, LLC**

On July 22, 2019, as evidenced by the *Proposal Under Sections 9-620 and 9-621 of the New York Uniform Commercial Code—Secured Transactions to Accept Certain Collateral in Partial Satisfaction of the Obligation it Secures*, Epic's equity interests were transferred to White Oak in exchange for the reduction of $100,000 in debt obligations Epic owed White Oak. White Oak then transferred the equity interests in Epic Alabama Holdings and Epic Maritime to Orinoco and the equity interests in Navarro to Oakridge. As a result, Epic no longer owned (either directly or indirectly) the following entities: (i) Epic Alabama Holdings, (ii) Epic Maritime, (iii) Epic Alabama Maritime, (iv) Epic Alabama Shipyard, (v) Epic Recycling, (vi) Epic Alabama Recyclers, (vii) Cedar Creek, (viii) Navarro, (ix) Ranger Offshore, (x) Ranger Offshore Mexico, S. de R.L. de C.V., (xi) Remuda Shipping S. de R.L. de C.V., and (xii) Remuda Offshore S. de R.L. de C.V.

4.      **Restated Prior Senior Loan Agreements**

On July 22, 2019, White Oak agreed to allocate the existing obligations under the Prior Senior Loan Agreement to Epic and certain subsidiaries pursuant to three separate senior loan agreements:

a.   Amended and Restated Loan and Security Agreement, dated as of July 22, 2019, as further amended from time to time (the "Prepetition Senior Credit Agreement"), among White Oak, Epic, as borrower, and the following entities as guarantors: (i) Epic Diving, (ii) Epic Applied Technologies, (iii) TSB Offshore, (iv) Epic Specialty Services, LLC, (v) Epic San Francisco Shipyard, LLC, (vi) King Aire, (vii) Zuma, (viii) Epic Alabama Steel, LLC, (ix) TSB HoldCo, and (x) ERP. The Prepetition Senior Credit Agreement

provides that White Oak is deemed to have made (a) a term loan in the amount of $45,432,831.78 and (b) protective advances in the amount of $1,469,611.08.

b. Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 (the "Shipyard Restated Senior Loan"), among White Oak, Epic Alabama Maritime, as borrower, and the following entities as guarantors: (i) Epic Alabama Holdings, (ii) Epic Maritime, (iii) Epic Alabama Shipyard, (iv) Epic Recycling, (v) Epic Alabama Recyclers, and (v) ERP. The Shipyard Restated Senior Loan provides that White Oak is deemed to have made a term loan in the amount of $45,000,000.

c. Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 (the "Navarro Restated Senior Loan," collectively with the Prepetition Senior Credit Agreement and the Shipyard Restated Senior Loan, the "Restated Senior Loans"), among White Oak, Navarro, as borrower, and the following subsidiaries of Epic as guarantors: (i) Ranger Offshore and (ii) ERP. The Navarro Restated Senior Loan provides that White Oak is deemed to have made a term loan in the amount of $15,000,000.

Each of the Restated Senior Loans was secured by a security interest in substantially all of the assets of the borrowers and the guarantors, as well as a pledge of the equity interests in the borrowers and guarantors. Each of the Restated Senior Loans was also personally guaranteed by Thomas Clarke, Ann M. Clarke, and David A. Wiley.

**5.      Subsequent Amendments to the Prepetition Senior Credit Agreement**

The Prepetition Senior Credit Agreement was subsequently amended six times to provide funding via protective advances for certain of the Debtors' payables.

a. First Amendment dated July 26, 2019: White Oak provided protective advances in the aggregate principal amount of $357,340.68.

b. Second Amendment dated August 5, 2019: White Oak provided protective advances in the aggregate principal amount of $872,220.36.

c. Third Amendment dated August 8, 2019: White Oak provided protective advances in the aggregate principal amount of $2,143,150.72.

d. Fourth Amendment dated August 14, 2019: White Oak provided protective advances in the aggregate principal amount of $718,372.75.

e. Fifth Amendment dated August 22, 2019: White Oak provided protective advances in the aggregate principal amount of $1,000,000.00.

f. Sixth Amendment dated August 26, 2019: White Oak provided protective advances in the aggregate principal amount of $462,431.35.

**6.      Restated Junior Loan and Security Agreements with Acqua Liana Capital Partners, LLC**

On July 22, 2019, Acqua Liana agreed to allocate the existing obligations under the Prior Junior Loan Agreement to Epic and its subsidiaries pursuant to three separate restated junior loan agreements:

a. Third Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 (the "Prepetition Junior Credit Agreement"), among Acqua Liana, Epic, as borrower, and the following entities as guarantors: (i) Epic Diving, (ii) Epic Applied Technologies, (iii) TSB Offshore, (iv) Epic Specialty Services, LLC, (v) Epic San Francisco Shipyard, LLC, (vi) King Aire, (vii) Zuma, (viii) Epic Alabama Steel, LLC, (ix) TSB HoldCo, and (x) ERP. The Prepetition Junior Credit Agreement provides that Acqua Liana was deemed to have made a term loan in the amount of $64,827,970.24.

b. Third Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 (the "Shipyard Restated Junior Loan"), among Acqua Liana, Epic Alabama Maritime, as borrower, and the following entities as guarantors: (i) Epic Alabama Holdings, (ii) Epic Maritime, (iii) Epic Alabama Shipyard, (iv) Epic Recycling, (v) Epic Alabama Recyclers, and (vi) ERP. The Shipyard Restated Junior Loan provides that Acqua Liana was deemed to have made a term loan in the amount of $35,000,000.

c. Third Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 (the "Navarro Restated Junior Loan," and collectively with the Prepetition Junior Credit Agreement and the Shipyard Restated Junior Loan, the "Restated Junior Loans"), among Acqua Liana, Navarro, as borrower, and the following entities as guarantors: (i) Ranger Offshore and (ii) ERP. The Navarro Restated Junior Loan provides that Acqua Liana was deemed to have made a term loan in the amount of $25,000,000.

Each of the Restated Junior Loans was secured by a security interest in substantially all of the assets of the borrower and guarantors, as well as a pledge of the equity interests in the borrower and guarantors. Further, the obligations under the Prepetition Junior Credit Agreement were secured by a mortgage of certain shipyard property granted by Epic Alabama Maritime. The obligations under the Restated Junior Loans were further secured by a pledge by Stockbridge Natural Resources, LLC of the equity interests in Sanare Energy Partners, LLC.

### 7. Note Payable from Acqua Liana to White Oak

Pursuant to the Third Amended and Restated Senior Secured Promissory Note of Acqua Liana Capital Partners, LLC dated July 22, 2019, Acqua Liana promised to pay White Oak, $124,827,970.24, which is the aggregate principal amount outstanding under the Restated Junior Loans, for the benefit of certain holders.

Acqua Liana's obligations under the Third Amended and Restated Senior Secured Promissory Note were personally guaranteed by Thomas Clarke, Ann M. Clarke and David A. Wiley and were secured by substantially all of the assets of Acqua Liana as well as a collateral assignment of the Restated Junior Loans.

### 8. Trade and Other Unsecured Claims

The Debtors estimate that trade and other unsecured claims total in excess of $30 million as of the Petition Date. Some of the Debtors' trade creditors claim to hold maritime liens against the Debtors' vessels. As of the November 6, 2019 Claims Bar Date, filed general unsecured claims (excluding duplicates) totaled approximately $98.5 million.

### III.
### KEY EVENTS LEADING TO THE COMMENCEMENT OF CHAPTER 11 CASES

On July 10, 2019, White Oak informed the Debtors' management that it was considering suspending any additional funding to the Debtors. As a result, on July 15, 2019, the Debtors terminated approximately 400 employees.

On or around July 19, 2019, the Debtors defaulted under the terms of the prior loan agreements and White Oak swept the Debtors' bank accounts and continued to sweep the Debtors' bank accounts daily. Since that time, White Oak has made a number of protective advances, described above, which the Debtors' used to fund certain payables.

### A.   Involuntary Bankruptcy Case

On August 2, 2019, Scurlock Electric, LLC, Preferred Sandblasting, LLC, and Top Drive Services, LLC filed an involuntary chapter 7 petition against Epic in the United States Bankruptcy Court for the Eastern District of Louisiana (the "Louisiana Bankruptcy Court") in Case No. 19-12086 (the "Involuntary Case"). Epic was the only proposed debtor in the Involuntary Case. On August 26, 2019, contemporaneous with the filing of the Debtors' voluntary petitions, Epic filed its *Motion for Entry of an Order Dismissing the Involuntary Case or Transferring Venue to the Southern District of Texas* (the "Motion to Dismiss").

### B.   Litigation and Arrest of the Debtors' Vessels

Prior to the filing of the Debtors' petitions, the Debtors were involved in various lawsuits including several suits against the Debtors' vessels, which are summarized below:

a.   *Dan Bunkering (America), Inc. v. Epic Hedron*, *In rem*, case no. 2019-cv-00413, pending in the United States District Court for the Southern District of Alabama, for the arrest of the *Epic Hedron*. The Arrest warrant was served on July 24, 2019.

b.   *Dan Bunkering (America), Inc. v. Epic Arapaho*; *In rem*, case no. 2019-cv-11897, pending in the United States District Court for the Eastern District of Louisiana, for the arrest of the *Epic Arapaho*.

c.   *Garber Bros. Inc. v. D/B Arapaho; et al. / Epic Companies, LLC*, case no. 2019-cv-11786, pending in the United States District Court for the Eastern District of Louisiana, for the arrest of the *Epic Arapaho* and various scrap assets.

d.   *Dan Bunkering (America), Inc. v. Epic Explorer*, *In rem*, case no. 2019-cv-11741, pending in the United States District Court for the Eastern District of Louisiana, for the arrest of the *Epic Explorer*.

### C.   Decision to File for Bankruptcy

As discussed earlier, in July 2019 the Debtors were faced with a serious liquidity crisis that was precipitated by: (i) their defaults under the terms of the Prior Senior Loan Agreement and Existing Junior Loan Agreement; (ii) White Oak's daily sweep of the Debtors' accounts and decision to end further protective advances; and (iii) the arrest of their vessels, the *Hedron*, the *Arapaho*, and the *Explorer*. In response, the Debtors began preparing to file for bankruptcy protection under chapter 11 of the Bankruptcy Code.

Prior to the filing of the voluntary bankruptcy petitions, to provide the resources required to prosecute the Debtors' bankruptcy cases, the Debtors and White Oak agreed to a $9.5 million debtor in possession credit facility (the "DIP Facility") in exchange for granting White Oak priming liens on the Debtors' assets. During the course of the Chapter 11 Cases the Debtors drew approximately $5.2 million on the DIP Facility.

This was the only option available to the Debtors and, absent the DIP Facility, the Debtors would have ceased to operate as a going concern, resulting in a forced liquidation with no opportunity to realize greater enterprise value through an organized liquidation to provide additional recoveries for creditors.

## IV.
## MATERIAL EVENTS DURING THE CHAPTER 11 CASES

The Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code on August 26, 2019 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). Set forth below is a summary of certain material events that occurred since the Petition Date.

### A.      Commencement of Chapter 11 Cases and First Day Motions

The Debtors' voluntary Chapter 11 Cases were assigned to Chief Bankruptcy Judge David R. Jones, and are jointly administered. The Debtors filed various motions seeking relief from the Bankruptcy Court to facilitate a smooth transition through the Chapter 11 Cases, and to minimize any disruption to the Debtors' remaining operations (the "First Day Motions"). The following is a brief overview of the relief the Bankruptcy Court granted shortly after the Petition Date in order to maintain the Debtors' operations in the ordinary course.

#### 1.      Cash Management System

Prior to the Petition Date, the Debtors maintained a cash management system, which facilitated cash flow between the Debtor entities. The Debtors sought to simplify that system by reducing the number of accounts to two accounts at a single bank under Epic's control. The Bankruptcy Court granted the Debtors authority to continue to use or open new bank accounts as needed, continue the use of related business forms to avoid a disruption in the Debtors' operations and facilitate the efficient administration of the Chapter 11 Cases, and engage in Intercompany Transactions in the ordinary course of the Debtors' business.

#### 2.      Utilities

In the ordinary course of business, the Debtors incurred certain expenses related to essential utility services, such as electricity, water, telecommunications, and internet. The Debtors were granted (i) authority from the Bankruptcy Court to continue payments to such utility providers in the ordinary course and (ii) approval of procedures to provide such utility providers with adequate assurance that the Debtors will continue to honor their payment obligations in the ordinary course.

#### 3.      Employee Wages and Benefits

To ensure prompt payment of the Debtors' employees, which in turn minimized the uncertainty and potential distractions and disruption of the Debtors' operations, the Debtors were granted authority to continue honoring their obligations to their workforce in the ordinary course of business, including (i) the

payment of prepetition wages, and other reimbursable employee expenses, and (ii) assume new workforce benefit programs and policies to reduce expenses, while maintaining coverage.

### 4.     Insurance

The Debtors had a variety of insurance policies in place before the Petition Date, which required the payment of premiums to provide insurance such as workers' compensation insurance, business property insurance, general liability insurance, Marine Hull insurance, and contractors' equipment offshore insurance, among others. The Debtors previously obtained insurance through a Premium Finance Agreement, but sought to replace that agreement with individual policies. The Debtors were granted authority to maintain their existing insurance policies and pay insurance obligations as they become due and remove policies from the Premium Finance Agreement and enter into new single policies.

### B.     Dismissal of the Involuntary Case

The Involuntary Case was filed on August 2, 2019 in the Louisiana Bankruptcy Court. Epic filed its Motion to Dismiss on August 26, 2019 and the Louisiana Bankruptcy Court held a hearing regarding Epic's Motion to Dismiss on September 3, 2019. In a written order, the Louisiana Bankruptcy Court denied Epic's request to dismiss the Involuntary Case, but granted the request to transfer venue of the Involuntary Case to the Bankruptcy Court (the "Transfer Order") [Case No. 19-12086; Docket No. 69].

The Involuntary Case was transferred on September 10, 2019, and assigned to Chief Bankruptcy Judge David R. Jones under case number 19-35106. On September 30, 2019, the Debtors filed an *Emergency Motion for Entry of an Order (I) Dismissing the Involuntary Bankruptcy Case, (II) Incorporating the Transfer Order in Jointly Administered Voluntary Cases, and (III) Preserving all Parties' Rights Under the Transfer Order* [Case No. 19-35106; Docket No. 80]. The Bankruptcy Court granted the Debtors' motion and dismissed the Involuntary Case with prejudice on October 3, 2019. The terms of the order specifically incorporated the Louisiana Bankruptcy Court's Transfer Order into the Debtors' jointly administered cases and preserved all parties' rights, including White Oak's Motion for Reconsideration [Case No. 19-35106; Docket No. 74] and the Committee's Objection [Case No. 19-35106; Docket No. 75].

### C.     Appointment of the Committee

On September 6, 2019, the United States Trustee for the Southern District of Texas ("U.S. Trustee") duly appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. The Committee currently consists of the following members: (a) Tetra Technologies, Inc.; (b) Goliath Offshore Holdings Pte, Ltd.; (c) Cashman Equipment Corp.; (d) Offshore Technical Solutions, LLC; and (e) Mule Services, LLC. The Committee is represented by Munsch, Hardt, Kopf & Harr, P.C. as its counsel.

Since the formation of the Committee, the Committee has been an active participant in the Chapter 11 Cases as a fiduciary for all unsecured creditors and has worked closely and cooperatively with the Debtors on all aspects of the Chapter 11 Cases.

### D.     Retention of Professionals

Throughout their bankruptcy case, the Debtors have utilized various professionals to assist them in the successful liquidation of their assets and completion of their bankruptcy case. The Court authorized the employment and compensation of professionals utilized in the ordinary course of business in an order issued on October 17, 2019 [Docket No. 281]. The Court authorized the Debtors' retention of S3

Advisors, LLC (known as "G2") along with the employment of Jeffrey T. Varsalone as the Debtors' Chief Restructuring Officer on September 9, 2019 [Docket No. 98].

The Debtors also selected two law firms to provide them with legal services during their bankruptcy case. The Debtors retained Porter Hedges, LLP as their bankruptcy counsel, which the Court approved on October 17, 2019 [Docket No. 280]. To assist with the Involuntary Case, the Debtors also retained Lughenbuhl, Wheaton, Peck, Rankin & Hubbard ("Lugenbuhl") to serve as special counsel to the Debtors. The Court approved Lugenbuhl's employment on October 17, 2019 [Docket No. 279].

The retention of sales and marketing professionals was also required in order to accomplish the Debtors' goal of a value-maximizing liquidation under the particular circumstances. To that end, the Debtors employed Kennedy Marr Ltd. ("Kennedy Marr") to serve as the Debtors' ship broker and assist with the valuation and marketing of the Debtors' vessels. The Court approved Kennedy Marr's employment on September 24, 2019 [Docket No. 175]. Similarly, Hilco Valuation, LLC ("Hilco") served as the Debtors' valuation and marketing agent for the Debtors' other equipment and assets. Hilco's employment was authorized on October 2, 2019 [Docket No. 207]. The Court authorized the Debtors' employment of Keen-Summit Capital Partners ("Keen Summit") to assist the Debtors with the sale of its real estate on September 24, 2019 [Docket No. 172]. The Court later authorized expanding the scope of Keen Summit's engagement to allow Keen Summit to market property located in New Iberia, Louisiana, which the Debtors discovered they owned during the pendency of their bankruptcy case [Docket No. 398].

### E.   Debtor in Possession Financing and Cash Collateral

#### 1.   Interim Order

On August 27, 2019, the Debtors obtained interim approval to enter into a DIP Facility with a maximum borrowing of $9.5 million, of which $2,250,000 was available to draw on an interim basis. The DIP Facility was provided by White Oak (the "DIP Lender"). The DIP Facility was provided in order to allow a sale process in which White Oak agreed to serve as the stalking horse bidder.

The DIP Facility provided liquidity that was unavailable from any other source and allowed the Debtors to transition into bankruptcy while marketing their assets. The DIP Facility was drawn upon to pay ordinary operating expenses, employee(s), critical vendor claims and administrative expenses in accordance with the DIP Budget.

#### 2.   Final Order

On October 4, 2019, the Bankruptcy Court entered an order approving the DIP Facility on a final basis [Docket No. 234] (the "Final DIP Order"). This resolved objections raised by Arena Offshore, LP, Taylors International Services, Inc., Curtin Maritime Corporation, and Garber Bros., Inc.

The Final DIP Order approved the $9.5 million in funding commitments from the DIP Lender as well as the *Senior Secured Super-Priority Priming Debtor-In-Possession Loan and Security Agreement* between Epic, Epic Applied, and Epic Diving as borrowers, Epic Specialty, Epic San Francisco Shipyard, Zuma Rock, and Epic Alabama Steel as guarantors, and White Oak as the DIP Agent. The Final DIP Order also established the following deadlines for the Debtors to comply with regarding the auction and sales process (collectively, the "DIP Milestones"):

- Entry of the final DIP Order by October 4, 2019;

- Entry of the Bid Procedures Order (defined below) by October 4, 2019;

- Entry of an Order granting relief requested in the Debtors' Sale Motion (defined below) by November 18, 2019; and

- Consummation of the sale of the Debtors' assets by December 2, 2019.

The Final DIP Order preserved the Challenge so long as it was timely asserted, and which the Committee fulfilled by filing its *Motion for Authority to Pursue Claims and Causes of Action on Behalf of the Estates* [Docket No. 546] (the "Standing Motion"), filed on January 20, 2020.

### F.      Bar Date

On October 3, 2019, the Bankruptcy Court entered the Claims Bar Date Order, which established November 6, 2019, as the deadline for submitting proofs of claim on account of claims against the Debtors, and February 24, 2020, as the deadline for governmental units to submit proofs of claim on account of claims against the Debtors.

### G.      Sale of Certain Accounts Receivable Free and Clear of Liens, Claims, and Encumbrances

To avoid the time and expense associated with collecting various accounts receivable, the Debtors filed a motion to sell certain accounts receivable free and clear of liens, claims and encumbrances (the "AR Sale") on October 16, 2019. Under the terms of the AR Sale, a joint venture comprised of Hilco Receivable, LLC and Tiger Capital Group, LLC (the "Agent") paid the Debtors $3,100,000 for the right to collect certain accounts receivable. After the initial payment, the Agent was allowed to collect up to $3,700,000. Any amounts collected above $3,700,000 would be split 80% to the Debtors while the Agent received the remaining 20%. Arena Offshore filed an objection to the Debtors' proposed AR Sale. However, this objection was resolved by agreement of the parties and the Court entered its order authorizing the AR Sale on October 24, 2019 [Docket No. 323]. As of the date of this Disclosure Statement the Agent has collected approximately $4 million and has paid the Debtors $208,507 (net of post-closing adjustments) on account of its 80% interest in collections above $3.7 million.

### H.      Bid Procedures Order and Sale Order

To implement the post-petition marketing and sale process, the Debtors filed an emergency motion seeking entry of two orders [Docket No. 13] (the "Bid Procedures and Sale Motion"). First, the Debtors sought entry of the an order authorizing bidding procedures, approving, among other things, (i) proposed bidding procedures and bid protections in favor of the Stalking Horse Bidder, (ii) the form and manner of notice of the proposed sale transactions, the bidding procedures, the Auction, and the Sale Hearing, and (iii) dates for the Auction, the Sale Hearing, and related dates and deadlines. In addition, the Bid Procedures Order included a Notice regarding the possible assumption and assignment of unexpired leases and cure amounts. The Bankruptcy Court entered this order on October 3, 2019 [Docket No. 227] (the "Bid Procedures Order").

### I.      Proposed Auction and Subsequent Sale

The Bid Procedures Order established 5:00 p.m. Central Time on November 8, 2019, as the deadline for submitting Qualified Bids and scheduled the Auction for November 12, 2019. The Debtors did not receive any Qualified Bids by the deadline and filed a *Notice of Cancellation of Auction* [Docket No. 397] on November 11, 2019.

Prior to the hearing authorizing the Debtors' sale of assets, the Debtors received objections to entry of the proposed Sale Order from Garber Bros., Inc., Blue Cross Blue Shield of Texas, Curtin Maritime Corporation, David C. Wright and WWCS, and Triton Heavy Lift Services, LLC. The Bankruptcy Court held a hearing on November 15, 2019, approved the Debtors' proposed sale and overruled the remaining objections, and entered an order authorizing the sale of the Debtors' assets to White Oak and the assumption and assignment of contracts therewith, free and clear of liens, subject to certain exceptions and as set forth in the applicable purchase agreements [Docket No. 418]. The sale to White Oak closed on January 13, 2020 [Docket No. 536].  The Bankruptcy Court's order approving the sale preserved the Challenge so long as the Standing Motion was timely filed.

### J.      Committee's Standing Motion

On January 20, 2020, the Committee timely filed its Standing Motion. The Standing Motion seeks standing to assert various claims and causes of action against Acqua Liana, White Oak, and related parties that the Debtors are precluded from asserting under the Final DIP Order. If the Committee is granted standing, the Plan will preserve the causes of action encompassed under the the Committee's Standing Motion.

### V.
### SUMMARY OF THE PLAN

This section of the Disclosure Statement summarizes the Plan, a copy of which is attached hereto as **Exhibit A**. This summary is qualified in its entirety by reference to the Plan.

### A.      Administrative Claims, Priority Claims, and Intercompany Claims

#### 1.      *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Plan Proponents or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Administrative Claim, and to the extent not paid before the Effective Date, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the Claims Reserve on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

Except as otherwise provided in Article II.A of the Plan and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Administrative Claims arising between the Petition Date and the Effective Date must be Filed and served on the Liquidating Trustee pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the requesting party no later than 90 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

### 2. *Professional Compensation*

#### (a) <u>Final Fee Application</u>

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash first from the Professional Fee Account, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim shall be Filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules. Upon payment in full of all Allowed Professional Fee Claims, any balance of Cash remaining in the Professional Fee Account shall become Liquidating Trust Cash and shall be transferred to the Liquidating Trustee.

#### (b) <u>Professional Fee Account and Reserve</u>

On the Effective Date, the Debtors and Liquidating Trustee shall establish and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve. The Professional Fee Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals. The funds in the Professional Fee Account shall not be considered property of the Estates or of the Debtors, *provided, however,* that following the payment in full of all Allowed amounts owing to Professionals, any remaining amount in the Professional Fee Account shall promptly be turned over to the Liquidating Trustee without any further action or order of the Bankruptcy Court.

Professionals shall reasonably estimate their unpaid Professional Fee Claims before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) Business Days after the Confirmation Date, provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

### 3. *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Plan Proponents or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

### 4. *Statutory Fees*

All fees due and payable pursuant to section 1930 of the Judicial Code prior to the Effective Date shall be paid by the Debtors on the Effective Date or as soon as reasonably practicable thereafter. After the Effective Date, the Liquidating Trustee shall pay any and all post-Effective Date fees pursuant to section 1930 of the Judicial Code when due and payable from Liquidating Trust Cash. The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall File with the Bankruptcy Court quarterly post-confirmation operating reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trustee during the applicable period, attested to by an authorized representative of the Liquidating Trustee.

**B.     Classification and Treatment of Claims and Interests**

    **1.     *Introduction***

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

    **2.     *Summary of Classification***

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Interest | Status | Voting Rights |
|:---:|---|:---:|:---:|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition Senior Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Junior Credit Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Subordinated Claims | Impaired | Not Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Epic Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**C.     Treatment of Claims and Interests**

    **1.     *Class 1: Other Secured Claims***

        (a)     *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive either (i) Cash from the Claims Reserve in an amount equal to the proceeds of the collateral securing such Holder's Allowed Other Secured Claim after satisfaction in full of all superior liens up to the amount of the Allowed Other

Secured Claim; or (ii) solely to the extent the amount of an Allowed Other Secured Claim is greater than the value of the collateral securing such Allowed Other Secured Claim and there are no Liens on such collateral senior to the Lien held by or for the benefit of the Holder of such Allowed Other Secured Claim, the collateral securing such Allowed Other Secured Claim in full and final satisfaction of such Claim. Any purported Secured Claim on the Prepetition Credit Agreement Collateral that is not senior to the Prepetition Credit Agreement Claims under applicable state or federal law shall be a General Unsecured Claim.

(b)     *Voting*: Class 1 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

### 2.     *Class 2: Other Priority Claims*

(a)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive Cash first from the Claims Reserve equal to the unpaid portion of the Allowed Other Priority Claim.

(b)     *Voting*: Class 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 3.     *Class 3: Prepetition Senior Credit Agreement Claims*

(a)     *Treatment*: The Prepetition Senior Credit Agreement Claims are subject to the Challenge. The Holders of the Prepetition Senior Credit Agreement Claims (i) received, in exchange for their credit bid of $50 million of their Prepetition Senior Credit Agreement Claims, the Prepetition Senior Credit Agreement Collateral included in the Sale pursuant to the Purchase Agreement, and (ii) following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (x) any proceeds from any Prepetition Senior Credit Agreement Collateral not included in the Sale; and (y) with respect to any Allowed Prepetition Senior Credit Agreement Deficiency Claim, the same treatment as Class 5 (General Unsecured Claims).

(b)     *Voting*: Class 3 is Impaired. The Holder of the Class 3 Prepetition Senior Credit Agreement Claims, to the extent not Disallowed is entitled to vote to accept or reject the Plan.

4.     *Class 4: Prepetition Junior Credit Agreement Claims*

    (a)    *Treatment*: The Prepetition Junior Credit Agreement Claims are subject to the Challenge. Following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, the Holders of the Prepetition Junior Credit Agreement Claims not otherwise assumed pursuant to the Sale shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (i) any proceeds from any Prepetition Junior Credit Agreement Collateral not included in the Sale after the Prepetition Senior Credit Agreement Claims are paid in full; and (ii) with respect to any Allowed Prepetition Junior Credit Agreement Deficiency Claims, the same treatment as Class 5 (General Unsecured Claims).

    (b)    *Voting*: Class 4 is Impaired. The Holder of the Class 4 Prepetition Junior Credit Agreement Claims, to the extent not Disallowed is entitled to vote to accept or reject the Plan.

5.     *Class 5: General Unsecured Claims*

    (a)    *Treatment*: Each Holder of an Allowed Class 5 General Unsecured Claim shall receive its Pro Rata share of the Liquidating Trust Cash available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of the Plan and the Liquidating Trust Agreement.

    (b)    *Voting*: Class 5 is Impaired. Holders of Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.     *Class 6: Subordinated Claims*

    (a)    *Treatment*: Each Holder of an Allowed Class 6 Subordinated Claim, to the extent Allowed and only following the payment in full of all Allowed Claims in Class 5, shall receive its share of any remaining Liquidating Trust Cash, Pro Rata with all other Allowed Class 6 Subordinated Claims, available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of the Plan and the Liquidating Trust Agreement.

    (b)    *Voting*: Class 6 is Impaired. As of the date of the Plan, the Plan Proponents are not aware of any Class 6 Subordinated Claims. Accordingly, Class 6 is a vacant class as provided in Article IV.A.5 of the Plan and is, therefore, deemed eliminated from the Plan for the purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

7. ***Class 7: Intercompany Claims***

    (a)    *Treatment*: Class 7 Intercompany Claims shall be cancelled and discharged, with the Holders of such Class 7 Intercompany Claims receiving no Distribution on account of such Intercompany Claims.

    (b)    *Voting*: Class 7 is Impaired. Holders of Class 7 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8. ***Class 8: Intercompany Interests***

    (a)    *Treatment*: Class 8 Intercompany Interests shall be cancelled and discharged, with the Holders of such Class 8 Intercompany Interests receiving no Distribution on account of such Intercompany Interests.

    (b)    *Voting*: Class 8 is Impaired. Holders of Class 8 Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9. ***Class 9: Epic Interests***

    (a)    *Treatment*: Class 9 Epic Interests shall be cancelled and discharged, with the Holders of such Class 9 Epic Interests receiving no Distribution on account of such Epic Interests.

    (b)    *Voting*: Class 9 is Impaired. Holders of Class 9 Epic Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Epic Interests are not entitled to vote to accept or reject the Plan.

10. ***Provision governing Unimpaired Claims***

Nothing under the Plan shall affect the Debtors', the Estates', or the Liquidating Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

**D.** **Acceptance Requirements**

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

1.      *Acceptance or Rejection of the Plan*

(a)      Deemed Acceptance of the Plan

Classes 1 and 2 are Unimpaired under the Plan. Therefore, Classes 1 and 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)      Voting Classes

Classes 3, 4, and 5 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

(c)      Deemed Rejection of the Plan

Classes 7, 8, and 9 are Impaired under the Plan and are not entitled to receive or retain any property on account of the Claims and Interests in Classes 7, 8, and 9. Therefore, Classes 7, 8, and 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

(d)      Deemed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

(e)      Elimination of Vacant Classes

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of Confirmation shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Class 6 (Subordinated Claims) shall be deemed eliminated for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

2.      *Confirmation of the Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Plan Proponents reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

3.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

E.      **Means for Implementation of the Plan**

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of the Plan.

1.  ***Deemed Consolidation***

The Plan constitutes a motion for the deemed consolidation of the Debtors and their respective Estates solely for purposes of voting on the Plan, confirming the Plan, and making Distributions pursuant to the Plan. Deemed consolidation solely for the purposes of voting on the Plan, confirming the Plan and making Distributions pursuant to the Plan is a condition precedent to the Effective Date. Accordingly, voting on the Plan shall be conducted and counted on a consolidated basis. On the Effective Date, (a) the assets of the Debtors will be merged and/or treated as if they are merged for the purpose of paying Allowed Claims against the Debtors; (b) any Claim Filed or asserted against any of the Debtors will be deemed a Claim against all of the Debtors (and any duplication of claims arising from both primary operative documents and guaranty and/or other secondary obligations shall be eliminated and all such claims against the Debtors shall be treated as a single claim that eliminates such duplications); (c) all Intercompany Claims and Interests will be eliminated; and (d) any obligation of any of the Debtors will be deemed to be an obligation of each of the Debtors. Except as set forth in this paragraph, such deemed consolidation shall not affect the legal and corporate structure of the Debtors nor affect Retained Causes of Action, including Avoidance Actions. Notwithstanding anything to the contrary in the Plan, all Retained Causes of Action are preserved as they existed immediately before the Effective Date for the Liquidating Trustee to prosecute on behalf of the Liquidating Trust. The deemed consolidation under the Plan shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of deemed consolidation under the Plan; *provided, however*, the deemed consolidation shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such deemed consolidation. Holders of Allowed Claims who assert identical Claims against multiple Debtors shall be entitled to only a single satisfaction of such Claims.

2.  ***Transactions Effective as of the Effective Date***

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other Entity.

3.  ***Cancellation of Securities and Agreements***

On the Effective Date, except as otherwise specifically provided for in the Plan, (1) the obligations of the Debtors under the Prepetition Credit Agreements, and any other membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest, shall be cancelled solely as to the Debtors, and the Liquidating Trustee shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; *provided, however*, notwithstanding Confirmation or the occurrence of the Effective Date, that any such agreement that governs the rights of the holder of a Claim or the rights of a Prepetition Agent shall, as the case may be and unless the Bankruptcy Court separately, expressly orders otherwise, continue in effect solely for purposes of (a) allowing Holders of Prepetition Credit Agreement Claims (as applicable) to receive Distributions under the Plan and the Liquidating Trust Agreement as provided in the Plan, (b) allowing the Prepetition Agents to distribute Plan proceeds available to Holders of Prepetition Senior Credit Agreement Claims and Prepetition Junior Credit Agreement Claims, as applicable, as provided in the Plan and in the Liquidating Trust Agreement, and to perform such other related

administrative functions with respect thereto, including, without limitation, reducing the amount of Plan proceeds available to Holders of Allowed Prepetition Credit Agreement Claims for the compensation, fees and expenses (including the reasonable fees and out-of-pocket expenses of counsel) due the Prepetition Agents under the Prepetition Credit Agreements, and (c) allowing the Prepetition Agents to continue to maintain their liens on the Prepetition Credit Agreement Collateral and, if necessary, release or take other action with respect to such liens, in all cases subject to the terms and conditions in the Prepetition Credit Agreements, the Challenge, and any orders of this Bankruptcy Court; *provided, further,* that the Prepetition Agents shall be relieved of all duties and obligations under the Prepetition Credit Agreements upon the Debtors or the Liquidating Trustee making all required Distributions to the Prepetition Agents under the Plan.

### 4. *The Liquidating Trust*

On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the applicable Liquidating Trust Beneficiaries, the Liquidating Trust Assets, including but not limited to, (a) all Liquidating Trust Cash, (b) the Retained Causes of Action, (c) the Reserves, and (d) any other assets vested in the Liquidating Trust pursuant to the terms of the Plan and the Liquidating Trust Agreement. As of the Effective Date, the Liquidating Trust Assets shall be vested in the Liquidating Trust free and clear of all Liens, Claims, Interests and encumbrances to the fullest extent possible under applicable law, except as otherwise specifically provided in the Plan, the Confirmation Order, or the Final DIP Order.

On the Effective Date, the Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidating Trust shall be established for the primary purpose of reasonably maximizing the proceeds from liquidation of its assets (as applicable) for the benefit of Liquidating Trust Beneficiaries, and for making Distributions in accordance with the Plan and the Liquidating Trust Agreement, including Distributions to Allowed Professional Fee Claims and other Allowed Administrative Claims, statutory fees in accordance with Article II.D, Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed General Unsecured Claims and Allowed Subordinated Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

Subject to Article V.F. of the Plan and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be the sole entity responsible for, (a) administering the Liquidating Trust Assets; (b) adjudicating, objecting to, settling, compromising or otherwise liquidating General Unsecured Claims and other Claims for all purposes; (c) prosecuting, compromising, and resolving the Retained Causes of Action; and (d) defending compromising, and resolving any Causes of Action against the Debtors.

### 5. *The Liquidating Trustee*

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Any successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement.

Pursuant to 11 U.S.C §§ 1123(a)(5)(B), 1123(b)(3), and 1123(b)(6), the Liquidating Trustee shall be the successor to the Debtors for all purposes. The Liquidating Trustee shall also be the successor to the Committee for all purposes.

Compensation of the Liquidating Trustee shall be at the rate of $750 per hour, and such compensation and the actual costs and expenses of the Liquidating Trustee and the Liquidating Trust

(including without limitation, the actual fees and expenses of the Liquidating Trustee Professionals) shall be paid from Liquidating Trust Cash. The Liquidating Trustee shall be compensated in the manner set forth in the Liquidating Trust Agreement.

Subject to Article V.F. of the Plan and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to exercise all powers and duties as set forth in the Liquidating Trust Agreement, including, but not limited to: (i) entering into and granting settlements, releases, and compromises, for which approval from the Bankruptcy Court shall not be required; and (ii) retaining professionals and advisors, attorneys and accountants, including but not limited to Porter Hedges LLP and/or G2 Capital Advisors, as the Liquidating Trustee deems appropriate and advisable, and to pay such professionals as professionals and expenses of administration of the Liquidating Trust, without the need for Bankruptcy Court approval or authorization.

### 6.   *Liquidating Trust Oversight Board*

(a)   Appointment and Creation of Oversight Board

On the Effective Date, an Oversight Board for the Liquidating Trust shall be created. The Oversight Board shall be comprised of three members (each a "Board Member"): (a) one member selected by the Committee, (b) one member selected by the Debtors, and (c) an independent member that the Committee and the Debtors shall agree upon (the "Jointly Designated Member"). The Committee shall also select a successor member (the "Designated Successor") in case the term of the initial Board Member selected by the Committee ends pursuant to the Plan and the Liquidating Trust Agreement. The initial members of the Oversight Board are set forth on Exhibit A to the Liquidating Trust Agreement.

(b)   Duties and Powers of Oversight Board

The Oversight Board shall be responsible for (a) approving any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties; (b) determining to abandon, not pursue or cease pursuit of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties, including approving the filing of any complaint, claim objection or amendment thereof; (c) approving the Liquidating Trustee's decision to hire or replace any Liquidating Trust Professional employed to prosecute a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties, *provided, however,* that no action of the Oversight Board shall be required for the Liquidating Trustee to engage the Liquidating Trust Professionals identified in Article V.I of the Plan; (d) approving the termination or dissolution of the Liquidating Trust and the Liquidating Trust Agreement; (e) approving any proposed agreement or expenditure exceeding $350,000.00; (f) approving whether to remove a Board Member; and (g) consenting to any amendment to the Liquidating Trust Agreement or modification of the Plan.

(c)   Compensation of Oversight Board

Each Board Member shall receive compensation not to exceed $15,000 per month or $675 per hour and be entitled to reimbursement of reasonable, out of pocket expenses until the Liquidating Trust Agreement and the Liquidating Trust are terminated and dissolved pursuant to the Plan and the Liquidating Trust Agreement.

(d)   Term of Board Members

The Board Members shall serve until death, resignation, or removal.

<p style="text-align:center">(i) Resignation / Successors</p>

A Board Member may resign at any time by providing a written notice of resignation to the Liquidating Trustee and remaining members of the Oversight Board. Such resignation shall be effective after such notice is delivered and the resigning Board Member's successor is designated. In the event of resignation or removal of a Board Member, the exiting member shall designate its replacement, provided, however, that: (i) in the case of the Committee-appointed Board Member, if the exiting Board Member is unable to select a successor, the Designated Successor shall be appointed; and (ii) if a Board Member's term expires because of death or incapacity without the Board member's designation of a successor, the remaining Board members shall agree upon the successor. Any Board Member designated to replace the Jointly Designated Member shall be a bankruptcy professional with no connection with the Debtors, Committee members, any Insiders, a Prepetition Agent, or any Prepetition Secured Parties. A notice shall be Filed with the Bankruptcy Court if any successor Board Member is appointed.

<p style="text-align:center">(ii) Removal</p>

A board member may be removed only for fraud, gross negligence, or willful misconduct.

<p style="text-align:center">(e) Voting</p>

The affirmative vote of a majority of the Board Members is required with respect to any matter listed in Article V.F.2 that requires the determination, consent, approval or agreement of the Oversight Board, *provided, however*, that amendments to the Liquidating Trust Agreement following the Effective Date are governed by Section 11.11 of the Liquidating Trust Agreement and must be approved by: (i) unanimous consent of the Oversight Board; or (ii) an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

**7. *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations***

For U.S. federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received a Distribution from the Estates of an undivided interest in each of the assets of the Liquidating Trust (to the extent of the value of their respective shares therein) and then contributed such interests to the Liquidating Trust.

<p style="text-align:center">26</p>

(a)    Liquidating Trust Assets Treated as Owned by Beneficiaries of Liquidating Trust

For all U.S. federal income tax purposes, all parties shall treat the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the Liquidating Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Liquidating Trust (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Liquidating Trust (net of any applicable liabilities) by the beneficiaries of the Liquidating Trust (to the extent of the value of their respective share in the assets of the Liquidating Trust) to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and the owners of the assets thereof.

(b)    Tax Reporting

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors and the Liquidating Trust. The Liquidating Trustee shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with Article V of the Plan. Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns. The Liquidating Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidating Trust with respect to each holder of a beneficial interest to the extent required by the IRC and applicable law.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority.

The Liquidating Trustee may request an expedited determination of the tax obligations of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

(c)    Payment of Taxes

The Liquidating Trustee shall be responsible for payments of all Allowed tax obligations of the Debtors including Priority Tax Claims, Other Secured Claims and Administrative Claims, in addition to any taxes imposed on the Liquidating Trust or its assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Claims Reserve associated with the Liquidating Trust is insufficient

to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Liquidating Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

### 8.        *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

Except as set forth in Article V.F of the Plan, from and after the Effective Date, (i) the Liquidating Trust shall be solely responsible for prosecution and settlement of all Retained Causes of Action pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement and (ii) the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless the Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action. Notwithstanding the foregoing, the Oversight Board must approve any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties.

**The Liquidating Trust reserves and retains any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Liquidating Trust may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; (ii) any recipient of a transfer identified in the Debtors' Statements of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Cases based on Retained Causes of Action under chapter 5 of the Bankruptcy Code; or (iii) any Insiders, Prepetition Agent, or any Prepetition Secured Parties. THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE LIQUIDATING TRUSTEE RELATING TO RETAINED CAUSES OF ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.**

**On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors or their Estates without need for further order of the Bankruptcy Court.**

**The Schedule of Retained Causes of Action, listing Causes of Action known by the Debtors to be retained by the Liquidating Trustee is included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

9.     ***Engagement for Causes of Action v. Insiders, Prepetition Agents, and any Prepetition Secured Parties***

Promptly following the latter of the date on which the Bankruptcy Court has authorized the Challenge to proceed and the Effective Date, the Liquidating Trustee shall engage the Designated Litigation Counsel to pursue Retained Causes of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties.  Solely in the event that the Liquidating Trustee's engagement of an expert in connection with the Liquidating Trustee's pursuit of Retained Causes of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties is determined to be necessary or appropriate pursuant to the provisions of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall retain GlassRatner Advisory & Capital Group LLC for such purposes.

10.     ***Filing of Monthly and Quarterly Reports***

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee until such time as the Liquidating Trust terminates.

11.     ***Directors and Officers of the Debtors***

On and after the Effective Date, the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable.

12.     ***Books and Records***

Upon the Effective Date, the Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors. Upon the Effective Date, the Committee shall transfer and assign to the Liquidating Trust the books and records related to the Committee's investigations of Causes of Action during the Chapter 11 Cases. Any such books and records transferred by either the Debtors or the Committee shall be protected by the attorney-client privilege. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records transferred under the Plan for the duration of the Liquidating Trust as specified in Article V.Q of the Plan, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtors shall cooperate with the Liquidating Trustee to facilitate the delivery and storage of their books and records in accordance with the Plan. The Debtors (as well as their current and former officers and directors) shall be entitled to reasonable access to any books and records transferred in accordance with the Plan for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing tax returns, and addressing personnel matters. For purposes of Article V.L of the Plan, books and records include computer-generated or computer maintained books and records and computer data, as well as electronically-generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all the claims and rights of the Debtors in and to their books and records, wherever located.

The Committee and its advisors, notwithstanding the Committee's dissolution following the Effective Date, are permitted to share any discovery obtained relating to the Debtors or Retained Causes of Action with the Liquidating Trustee and his representatives without waiver of any privileges. The Liquidating Trustee shall automatically succeed to the Committee's rights and duties under any protective order applicable to any such discovery, without the need for any further order of the Bankruptcy Court or action by any other Entity.

13. *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the stockholders, directors, members, or managers of the Debtors. After the Effective Date, to the extent necessary, the Liquidating Trustee shall have all authority, subject to the terms of the Plan and the Liquidating Trust Agreement, to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of one or more of the Debtors.

14. *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Plan Proponents shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

15. *Employee Agreements*

All employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place with the Debtors' employees that have not been previously terminated shall be terminated as of the Effective Date.

16. *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

17. *Duration of the Liquidating Trust*

The Liquidating Trust shall have an initial term of five (5) years from the Effective Date, *provided*, *however*, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the purpose of the Liquidating Trust, the Liquidating Trustee shall be authorized, on two or more successive occasions, to extend the Liquidating Trust for six (6) months or longer *provided* that such extension is formally requested by motion before the Bankruptcy Court prior to the beginning of such requested, extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by the Plan and the Liquidating Trust Agreement.

18.    *Wind Down of Liquidating Trust*

After the termination of the Liquidating Trust and for the purpose of liquidating and winding down the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed. Upon termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of one year the books, records, lists of the Liquidating Trust Beneficiaries, the registry of claims and Liquidating Trust Beneficiaries, and other documents and files that have been delivered to or created by the Liquidating Trustee. Except as otherwise specifically provided in the Plan, upon the termination of the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust's professionals and agents shall have no further duties or obligations hereunder.

**F.    Treatment of Executory Contracts and Unexpired Leases**

1.    *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected (including by operation of section 365(d)(4) of the Bankruptcy Code), assumed, or assumed and assigned, including in connection with the Sale, and (2) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

2.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.

3.    *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 5 General Unsecured Claim. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Liquidating Trust, without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity**.

4.    *Reservation of Rights*

Nothing contained in the Plan shall constitute an admission by the Plan Proponents that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Estate has any liability thereunder.

G.      **Provisions Governing Distributions**

      1.      ***Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions***

      (a)      <u>Timing and Calculation of Amounts to Be Distributed</u>

Except as otherwise provided in the Plan, and only after the funding of the Reserves, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on a Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreement. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; (iii) is the subject of a pending and unresolved claim objection; or (iv) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries consistent with the requirements of the Plan and the Liquidating Trust Agreement. In connection with each Distribution to Holders of General Unsecured Claims, the Liquidating Trustee shall withhold from property that would otherwise be distributed on account of Class 5 General Unsecured Claims entitled to Distributions, in the Disputed General Unsecured Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions (minus the Liquidating Trust Operating Reserve) to which Holders of Disputed General Unsecured Claims would be entitled under the Plan if such Disputed General Unsecured Claims were Allowed in their Disputed Claim Amount. The Liquidating Trustee may request, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, and shall withhold the applicable portion of the Disputed General Unsecured Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.

      (b)      <u>Entitlement to Distributions</u>

On and after the Effective Date, the Liquidating Trustee shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date and those Holders of Claims that Filed Proofs of Claims by the Claims Bar Date. Accordingly, the Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes in the Plan to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

      2.      ***Liquidating Trustee to make Distributions***

All Distributions under the Plan shall be made by the Liquidating Trustee in accordance with the Plan. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

3. *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If as of the date of the final Distribution the Liquidating Trustee is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article VII.E.2 of the Plan.

4. *Distributions on Account of Claims Allowed After the Effective Date*

(a) Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

(b) Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Liquidating Trustee, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

5. *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

(a) Delivery of Distributions in General

Except as provided below, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address, or (d) at the addresses set forth in the other records of the Debtors or the Liquidating Trustee at the time of the Distribution.

Distributions shall be made by the Liquidating Trust in accordance with the terms of the Plan and, if applicable, the Liquidating Trust Agreement.

In making Distributions under the Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Notice and Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

For the avoidance of doubt, Holders of the Prepetition Credit Agreement Claims were not required to File a Proof of Claim with the Bankruptcy Court pursuant to the Claims Bar Date Order.

(b)      Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trustee (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) and shall be distributed in accordance with the terms of the Plan and the Liquidating Trust Agreement, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

(c)      Failure to Present Checks

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtors and their Estates, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder with respect thereto. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

**6.      *Compliance with Tax Requirements/Allocations***

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The Liquidating Trustee shall have the authority to condition any Distribution upon the receipt of a completed IRS Form W-9 or applicable IRS Form W-8.

**7.      *Claims Paid or Payable by Third Parties***

(a)      Claims Paid by Third Parties

The Debtors or the Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, such

Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Effective Date.

(b)      Claims Payable by Third Parties

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

(c)      Applicability and Preservation of Insurance Policies

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**8.      *Claims Already Satisfied***

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors or any third party prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules shall be deemed amended and reduced to reflect that such payments were made. The Liquidating Trustee is authorized, and without any further notice to or action, order or approval of the Bankruptcy Court, to direct the Notice and Claims Agent to update the official claims register maintained in the Chapter 11 Cases in accordance with any Claims satisfied or reduced pursuant to the Plan. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

**9.      *Allocation of Plan Distributions between Principal and Interest***

Each Holder of an Allowed Claim shall have the option to apply such Holder's Pro Rata share of consideration distributed under the Plan (cash or value) to satisfy outstanding principal of or accrued interest on such Holder's Allowed Claim, as such allocation is determined by such Holder in its sole discretion.

10.     *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

H.     **Procedures for Resolving Contingent, Unliquidated and Disputed Claims and Disputed Equity Interests**

1.     *Allowance and Disallowance of Claims*

Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Liquidating Trust after Consummation will have and retain any and all rights, objections, and defenses the Debtors or the Estates had with respect to any Claim as of the Petition Date.

**Except as provided in the Plan or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

2.     *Prosecution of Objections to Claims*

The Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. From and after the Effective Date and subject to Article V.F of the Plan and the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim. The Liquidating Trustee may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

3.     *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall File all objections to Claims by no later than one year after the Effective Date, except to the extent that such Claims are Filed on or after the Effective Date, in which case, the Liquidating Trustee shall have until the later of one year after the Effective Date or 90 days after such claim is Filed to File an objection to such claim. Notwithstanding the foregoing, if the Liquidating Trustee determines that an extension of time is warranted, the Liquidating Trustee may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to the Liquidating Trustee's request to seek additional extensions from the Bankruptcy Court.

4.     *Estimation of Claims*

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court

has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

### 5.    *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Liquidating Trustee, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

### 6.    *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, and subject to the administration of the Reserves and Liquidating Trust in the Liquidating Trustee's discretion, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date.

### I.    **Conditions Precedent to Confirmation of the Plan and the Effective Date**

### 1.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1.    All provisions, terms and conditions hereof are approved in the Confirmation Order.

2.    A Confirmation Order shall have been entered by the Bankruptcy Court, in form and substance acceptable to the Plan Proponents.

3.    The Confirmation Order shall provide that, among other things, the Plan Proponents and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in the Plan.

4.    All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

5.    All required consents, approvals, and authorizations, if any, have been obtained.

### 2. *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article IX.C of the Plan), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.   The Debtors shall have fully funded (a) the Claims Reserve with all amounts that may be paid to Holders of Disputed Administrative Claims, Disputed Other Secured Claims, Disputed Priority Tax Claims, or Disputed Other Priority Claims under the Plan; and (b) the Professional Fee Account with all amounts contemplated to be paid to Holders of Professional Claims under the Plan**.**

2.   The Confirmation Order shall be a Final Order in form and substance acceptable to the Plan Proponents, each in their sole discretion. The Confirmation Order shall provide that, among other things, the Plan Proponents and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in the Plan**.**

3.   The Liquidating Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof**.**

4.   All actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

### 3. *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in Article IX of the Plan may be waived with the consent of the Plan Proponents without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

### 4. *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur within six months from the date the Plan was Filed, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Committee, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, Committee, the Estates, any Holders or any other Entity in any respect.

### J. **Settlement, Release, Injunction and Related Provisions**

### 1. *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the

best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan and except as otherwise provided in the Plan and in the Liquidating Trust Agreement, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtors or their Estates and Causes of Action against other Entities.

### 2.     *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. The foregoing "*Discharge of Claims and Termination of Interests*" shall not operate to waive, release or adversely impact any Retained Causes of Action, or any Claims or Causes of Action held by creditors, against any Insiders, Prepetition Agents, or any Prepetition Secured Parties, and shall be deemed limited solely to any extent necessary to prevent any such adverse impact.

### 3.     *Releases by the Debtors*

**Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively, "*Debtor Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the**

Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; *provided*, *however*, that the foregoing "*Debtor Releases*" shall not operate to waive, release or adversely impact (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of such Released Party's actual fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan, or (iii) any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties.

### 4. *Releases by Holders of Claims*

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the other Released Parties from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively "Third Party Released Claims") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any other Released Party, on one hand, and any Releasing Party, on the other hand, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; provided, however, that the foregoing "Third Party Releases" shall not operate to waive or release (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of such Released Party's actual fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed

in connection with the Plan, or (iii) any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties; **provided, further**, that nothing contained in these provisions or in this Release shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots.

### 5. *Exculpation*

Notwithstanding anything contained in the Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for (a) any prepetition act taken or omitted to be taken in connection with, related to or arising from the Debtors' out-of-court restructuring efforts, including authorizing, preparing for or Filing the Chapter 11 Cases and the Sale, or (b) any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, or the Chapter 11 Cases, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the Chapter 11 Cases, or the confirmation or consummation of the Plan, including but not limited to (i) the Sale; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof if necessary), the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with the Plan; or (iii) any Distribution made pursuant to the Plan, except for acts determined by a Final Order to constitute actual fraud, willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under or in connection with the Plan. Notwithstanding the foregoing, for the avoidance of doubt, this section of the Plan shall not (i) exculpate or release any Exculpated Party from anything other than as expressly identified in the preceding sentence, (ii) prevent or limit the ability of the Debtors, the Estates or the Liquidating Trustee to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, or (iii) prevent or limit the ability of the Debtors, the Estates or the Liquidating Trustee to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party. The foregoing exculpation shall not operate to waive or release any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties.

### 6. *Injunction*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors, the Released Parties, the Exculpated Parties, the Liquidating Trust and/or the Liquidating Trustee: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has

**Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to the Final DIP Order, or the Plan, which for the avoidance of doubt include the Third Party Releases, Debtor Releases and Exculpated Claims set forth in the Plan;** *provided, however*, **that nothing contained in these provisions or in this Injunction shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots, against any parties other than the Debtors, the Exculpated Parties, the Liquidating Trust and/or the Liquidating Trustee.**

### 7. *Terms of Injunctions or Stays*

Unless otherwise provided in the Plan or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

### 8. *Setoffs*

Except as otherwise expressly provided for in the Plan, each Debtor, Estate and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Cause of Action of any nature that such Debtor and/or its Estate, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor, Estate or Liquidating Trustee of any such Retained Causes of Action that such Debtor, Estate or Liquidating Trustee may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Retained Cause of Action unless such Holder has obtained an authorizing order from the Bankruptcy Court pursuant to a motion Filed on or before the Confirmation Date with the Bankruptcy Court and requesting the authority to perform such setoff.

### 9. *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Retained Cause of Action, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### K. **Binding Nature of Plan**

THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS OR THEIR ESTATES TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

L.        **Retention of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, their Estates, and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to: (a) rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4.        ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to Retained Causes of Action;

7.        adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the administration of the Liquidating Trust, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, administration, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article X of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VII of the Plan;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, Liquidating Trust Agreement, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, Disclosure Statement, or Liquidating Trust Agreement;

15.     enter an order or final decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

17.     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     enforce all orders previously entered by the Bankruptcy Court; and

22.     adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

**M.     Preservation of Causes of Action**

Except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are otherwise disposed of in the Plan, or are expressly and specifically released in connection with the Plan, and/or Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b): (i) any and all rights, Claims, Causes of Action (including Avoidance Actions and Retained Causes of Action), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be automatically preserved, reserved and transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, whether or not such rights, Claims, Causes of Action, defenses, and counterclaims may be asserted or are assertable against the Holder of an Allowed Claim, and whether or not any such rights, Claims, Causes of Action, defenses and counterclaims have been scheduled, listed or referred to in the Plan, the Disclosure Statement, the Plan Supplement, the bankruptcy schedules, or any other document Filed with the Bankruptcy Court; and (ii) neither the Debtors, the Committee, nor the Liquidating Trustee waives, relinquishes, or abandons (nor shall any of them be be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates or any of them:   (A) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan,

44

the Debtors' bankruptcy schedules, the Debtors' bankruptcy statement of financial affairs, or any other document Filed with the Bankruptcy Court; (B) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtors, the Committee, or the Liquidating Trustee; and (C) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.

Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, Cause of Action, defense, or counterclaim, or potential right, claim, Cause of Action, defense, or counterclaim, in the Plan, this Disclosure Statement, the Plan Supplement, the bankruptcy schedules, the bankruptcy SOFAs or any other document filed with the Bankruptcy Court, and/or the scheduling of a Claim in the bankruptcy schedules as undisputed, liquidated and noncontingent, shall in no manner waive, eliminate, modify, release, or alter any Debtor's, Estate's or the Liquidating Trust's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, Causes of Action (including Avoidance Actions and the Retained Causes of Action), defenses, or counterclaims that a Debtor or the Liquidating Trustee has, or may have, as of the Effective Date. The Liquidating Trustee may, subject to the Plan and the Liquidating Trust Agreement, commence, prosecute, defend against, settle, and realize upon any rights, claims, Cause of Action, defenses, and counterclaims assigned and contributed to it, as provided in the Plan, the Confirmation Order, and the Liquidating Trust Agreement, in accordance with what is in the best interests, and for the benefit of, the Liquidating Trust Beneficiaries.

The Causes of Action preserved in the Plan, as provided by the Plan and the Liquidating Trust Agreement, include, but are not limited to, the Retained Causes of Action. For the avoidance of doubt, all Claims and Causes of Action asserted or assertable by the Debtors, the Estates, the Committee, or the Liquidating Trustee against any Insider, whether or not otherwise listed, scheduled, or disclosed, are preserved.

## N. Modification, Revocation or Withdrawal of the Plan

### 1. *Modifications and Amendments*

Subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided, however,* that such modifications do not modify the treatment of General Unsecured Claims as provided in the Plan without the consent of the Committee. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their right to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. After the Effective Date any modifications to the Plan must be approved by an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

### 2. *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not *require additional disclosure or resolicitation under Bankruptcy Rule 3019.*

### 3. **Revocation or Withdrawal of the Plan**

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Plan Proponents revoke or withdraw the Plan subject to the terms hereof, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor, Estate or any other Entity; (y) prejudice in any manner the rights of the Debtors, the Estates, the Committee, or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, the Committee, or any other Entity.

### 4. *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

### O. **Miscellaneous Provisions**

### 1. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

### 2. *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor or the Committee with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, its Estate, or the Committee with respect to the Holders of Claims or Interests before the Effective Date.

### 3. *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or the Liquidating Trustee shall be sent by overnight mail to:

G2 Capital Advisors
535 Boylston Street
11th Floor
Boston, Massachusetts 02116
Attn:      Jeffrey T. Varsalone
Phone:    (617) 918-7928
Email:     jvarsalone@g2cap.com

with copies to:

Porter Hedges LLP
1000 Main, 36th Floor
Houston, Texas 77002
Attn:      John F. Higgins
Phone:    (713) 226-6000
Fax:       (713) 226-6628
Email:     jhiggins@porterhedges.com

### 4.      *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except for purposes of filing applications for Professional compensation in accordance with Article II.B of the Plan.

### 5.      *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponents; *provided, further*, that the Plan Proponents may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified prior to the Effective Date without the Plan Proponents' consent, or after the Effective Date without the Liquidating Trustee's (and Oversight Board's) consent; and (3) nonseverable and mutually dependent.

### 6.      *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Entity at any time after the Petition Date shall be returned to the Liquidating Trustee within twenty (20) days after the Effective Date, without deduction or offset of any kind.

7.      *Entire Agreement*

Except as otherwise indicated in the Plan, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

8.      *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

9.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Plan Proponents and each of their respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

10.     *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## VI.
## CERTAIN TAX CONSEQUENCES OF THE PLAN

### A.      In General

The following discussion summarizes certain material U.S. federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "Service"). There can be no assurance that the Service will not take a contrary view or that such a contrary view would not be sustained by a court. No ruling from the Service has been or will be sought, nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth in the Plan. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to U.S. Holders (as defined below) or the Debtors. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described in the Plan.

The following summary is for general information only. The tax treatment of a U.S. Holder may vary depending upon such U.S. Holder's particular situation. This summary does not address the tax

consequences of receiving distributions of property with respect to a Claim in multiple tax years. This summary addresses only to a limited extent the tax consequences of the disposition of assets held by the Liquidating Trust and tax consequences that may be relevant to holders other than U.S. Holders. This summary does not address all of the tax consequences that may be relevant to a U.S. Holder, including any alternative minimum tax consequences, and does not address the tax consequences to a U.S. Holder that has made an agreement to resolve its Claim in a manner not explicitly provided for in the Plan. This summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on the Plan or U.S. Holders subject to special treatment under the U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, partnerships and other pass-through entities, U.S. Holders that hold Claims as a position in a "straddle" or as part of a "synthetic security," "hedging," "conversion" or other integrated transaction, U.S. Holders that have a "functional currency" other than the United States dollar, U.S. Holders subject to special tax accounting rules as a result of any item of gross income with respect to the Claims being taken into account in an applicable financial statement and U.S. Holders that have acquired Claims in connection with the performance of services. The following summary assumes that the Claims are held by U.S. Holders as "capital assets" within the meaning of Section 1221 of the IRC and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

The tax treatment of U.S. Holders and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan may vary, depending upon, among other things: (i) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the U.S. Holder in exchange for the Claim and whether the U.S. Holder receives distributions under the Plan in more than one taxable year; (iii) whether the U.S. Holder falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the U.S. Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the U.S. Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the U.S. Holder has previously included in income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the U.S. Holder; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the U.S. Holder. Therefore, each U.S. Holder should consult its tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such U.S. Holder of the transactions contemplated by the Plan.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of a Claim that for U.S. federal income tax purposes, is or is treated as:

> an individual who is a citizen or resident of the United States;

> a corporation created or organized under the laws of the United States, any state thereof, or the District of Columbia;

> an estate, the income of which is subject to U.S. federal income tax regardless of its source; or

> a trust that (1) is subject to the primary supervision of a U.S. court and the control of one or more "United States persons" (within the meaning of Section 7701(a)(30) of the IRC), or (2) has a valid election in effect to be treated as a United States person for U.S. federal income tax purposes.

THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOLLOWING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN.

### B. Certain U.S. Federal Income Tax Consequences to the U.S. Holders of Other Priority Claims, Other Secured Claims, Prepetition Senior Credit Agreement Claims, Prepetition Junior Credit Agreement Claims, General Unsecured Claims, and Subordinated Claims

A U.S. Holder of an Other Priority Claim, an Other Secured Claim, a Prepetition Senior Credit Agreement Claim, a Prepetition Junior Credit Agreement Claim, a General Unsecured Claim, or a Subordinated Claim should generally be treated as receiving its distributions of Cash and, if applicable, other property under the Plan (including deemed distributions associated with receiving an interest in the Liquidating Trust) in a taxable exchange under Section 1001 of the IRC. Other than with respect to any amounts received that are attributable to accrued but untaxed interest (or original issue discount), each U.S. Holder of such Claims should recognize gain or loss equal to the difference between the (a) amount of Cash and fair market value of other property actually or constructively received in exchange for the Claim, and (b) such U.S. Holder's adjusted basis, if any, in such Claim. A U.S. Holder's ability to deduct any loss recognized on the exchange of its Claims will depend on such U.S. Holder's own circumstances and may be restricted under the IRC.

The character of any gain or loss as capital gain or loss or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim; (ii) the tax status of the U.S. Holder of such Claim; (iii) whether such Claim has been held for more than one year; (iv) the extent to which the U.S. Holder previously claimed a loss or bad debt deduction with respect to such Claim; and (v) whether such Claim was acquired at a market discount. A U.S. Holder that purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the IRC. Under those rules (subject to a *de minimis* exception), assuming that such U.S. Holder has made no election to accrue the market discount and include it in income on a current basis, any gain recognized on the exchange of such Claim generally would be characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

U.S. Holders, including U.S. Holders of Disputed Claims after such Claims become Allowed Claims, should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidating Trust on an annual basis. Additionally, although not free from doubt, U.S. Holders of Disputed Claims should generally recognize gain or loss in an amount equal to the amount deemed realized on the date such Claim becomes an Allowed Claim, less the adjusted tax basis of such Claim. However, it is possible that, on the Effective Date, U.S. Holders of Disputed Claims may be required to recognize such U.S. Holders' allocable shares of (i) the Liquidating Trust Cash and (ii) the fair market value of the Liquidating Trust assets as an amount received for purposes of computing gain or loss.

### C.     Certain U.S. Federal Income Tax Considerations for Non-U.S. Beneficiaries of the Liquidating Trust

Depending on the specific nature of the assets and activities of the Liquidating Trust, non-U.S. beneficiaries may be considered to be engaged in a trade or business within the United States and therefore obligated to file U.S. federal income tax returns (and possibly state and local income tax returns) and pay tax on their share of the net income derived from the Liquidating Trust Assets. Alternatively, non-U.S. beneficiaries of the Liquidating Trust may be subject to U.S. federal withholding tax at a rate of 30% (subject to reduction by applicable treaties) on their share of the gross income derived from certain assets of the Liquidating Trust. Non-U.S. holders of Claims should consult their tax advisors concerning the tax consequences of the Plan.

### D.     Backup Withholding and Information Reporting

A U.S. Holder of an Allowed Claim may be subject to backup withholding (currently at a rate of 24%) with respect to distributions or payments made pursuant to the Plan. Certain Holders (including corporations) generally are not subject to backup withholding. A U.S. Holder that is not otherwise exempt generally may avoid backup withholding by providing such Holder's taxpayer identification number and certifying, under penalties of perjury, that the taxpayer identification number provided is correct and that the U.S. Holder has not been notified by the IRS that it is subject to backup withholding.

Backup withholding is not an additional tax. Taxpayers may use amounts withheld as a credit against their federal income tax liability or may claim a refund of any excess amounts withheld by timely filing an appropriate claim for refund with the IRS.

THE FOREGOING DISCUSSION OF U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. EACH HOLDER SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN. NEITHER THE DEBTORS, THE COMMITTEE, NOR THEIR PROFESSIONALS WILL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.

### VII.
### CERTAIN RISK FACTORS TO BE CONSIDERED

Prior to voting to accept or reject the Plan, holders of Claims should read and carefully consider the risk factors set forth below, in addition to the information set forth in this Disclosure Statement together with any attachments, exhibits, or documents incorporated by reference hereto. The factors below should not be regarded as the only risks associated with the Plan or its implementation.

### A.     Certain Bankruptcy Law Considerations

### 1.     Risk of Non-Confirmation of the Plan

Although the Plan Proponents believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes. Moreover, the Plan Proponents can make no assurances that they will receive the requisite acceptances to confirm the Plan, and even if all Voting Classes voted in favor of the Plan or the requirements for "cramdown" are met with respect to any Class

that rejected the Plan, the Bankruptcy Court, which may exercise substantial discretion as a court of equity, may choose not to confirm the Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan or other proceeding.

### 2.      Risk of Non-Occurrence of the Effective Date

Although the Plan Proponents believe that the Effective Date will occur within 30 calendar days after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Plan Proponents and all holders of Claims or Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtors' obligations with respect to Claims and Interests would remain unchanged.

### 3.      Conversion to Chapter 7 Cases

If no chapter 11 plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interests of holders of Claims and Interests, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. See the Liquidation Analysis attached hereto as **Exhibit B**, for an analysis of the effects that a chapter 7 liquidation would have on the recoveries of holders of Claims and Interests.

### B.      Additional Factors Affecting Recoveries

### 1.      Claims Could Be More than Projected

There can be no assurance that the estimated Allowed amount of Claims in certain Classes will not be significantly more than projected, which, in turn, could cause the value of distributions to be reduced substantially. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the assumptions underlying the projected recoveries discussed in this Disclosure Statement, and the variation may be material.

### C.      Risks of Litigation

Distributions under the Plan may be materially impacted by the results of litigation, whether over the administration of the Plan or relating to the pursuit of Retained Causes of Action.  Litigation is inherently uncertain and therefore, no results from the pursuit and/or liquidation any particular Retained Cause of Action may be presumed or assured in any respect.

### D.      Additional Factors

### 1.      Plan Proponents Could Withdraw Plan

The Plan may be revoked or withdrawn prior to the Confirmation Date by the Plan Proponents.

### 2.      Plan Proponents Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Plan Proponents as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date

does not imply that there has been no change in the information set forth herein since that date. The Plan Proponents have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

### 3. No Representations Outside this Disclosure Statement Are Authorized

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

### 4. No Legal or Tax Advice Is Provided by this Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or Interest should consult its own legal counsel and accountant as to legal, tax, and other matters concerning its Claim or Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### 5. No Admission Made

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtors, the Committee, the Liquidating Trustee, or Holders of Claims or Interests.

### 6. Certain Tax Consequences

For a discussion of certain tax considerations to the Debtors and certain holders of Claims in connection with the implementation of the Plan, see Section VI hereof.

## VIII.
## VOTING PROCEDURES AND REQUIREMENTS

### A. Parties Entitled To Vote

Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on a plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not vote on the plan. If a claim or interest is not impaired by the plan, the Bankruptcy Code conclusively presumes the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims that cast ballots for acceptance or rejection of the plan; and (ii) interests as acceptance by interest holders in that class that hold at least two-thirds (2/3) in dollar amount of the interests that cast ballots for acceptance or rejection of the plan.

Classes 3, 4, and 5 are Impaired under the Plan and entitled to vote to accept or reject the Plan.

**B.** **Voting Deadline**

Before voting to accept or reject the Plan, each holder of a Claim entitled to vote (an "Eligible Holder") should carefully review the Plan attached hereto as **Exhibit A**. All descriptions of the Plan set forth in this Disclosure Statement are subject to the terms and conditions of the Plan.

Ballots will be provided for holders of Voting Claims as of the Voting Record Date (*i.e.*, February 14, 2020) to vote to accept or reject the Plan.

Each Ballot contains detailed voting instructions and sets forth in detail, among other things, the deadlines, procedures, and instructions for voting to accept or reject the Plan, the Voting Record Date for voting purposes, and the applicable standards for tabulating Ballots. The Plan Proponents have engaged Epiq Corporate Restructuring, LLC as their voting agent (the "Voting Agent") to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan.

FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW ON OR BEFORE THE VOTING DEADLINE OF MARCH 24, 2020 AT 5:00 P.M. CENTRAL, UNLESS EXTENDED BY THE PLAN PROPONENTS.

Delivery of a Ballot by facsimile, e-mail or any other electronic means will not be accepted. If you vote by mail, your Ballot must be returned by the Voting Deadline with an original signed copy, by first class mail, overnight courier, or personal delivery, to:

| By first class mail to: | Via overnight courier or hand delivery to: |
| --- | --- |
| Epic Companies, LLC – Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Epic Companies, LLC - Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE. ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED. THE PLAN PROPONENTS MAY REQUEST THAT THE VOTING AGENT ATTEMPT TO CONTACT SUCH VOTERS TO CURE ANY SUCH DEFECTS IN THE BALLOTS. THE FAILURE TO VOTE DOES NOT CONSTITUTE A VOTE TO ACCEPT OR

REJECT THE PLAN. AN OBJECTION TO THE CONFIRMATION OF THE PLAN, EVEN IF TIMELY SERVED, DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN.

### C.      Voting Procedures

The Plan Proponents are providing copies of this Disclosure Statement (including all exhibits and appendices) and related materials and a Ballot (collectively, a "Solicitation Package") to each Eligible Holder.

Except as provided below, unless the Ballot is timely submitted to the Voting Agent before the Voting Deadline, together with any other documents required by such Ballot, the Plan Proponents may reject such Ballot as invalid, and therefore decline to utilize it in connection with seeking confirmation of the Plan.

The delivery of an accepting Ballot pursuant to the procedures set forth above will constitute the agreement of the creditor with respect to such Ballot to accept (i) all of the terms of, and conditions to, this Solicitation; and (ii) the terms of the Plan including the injunction, releases, and exculpations set forth therein. All parties in interest that do not vote to accept the Plan retain their right to object to confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent, properly completed Ballot for acceptance or rejection of the Plan.

The Plan Supplement, once filed, will be made available for review on the website of the Voting Agent at https://dm.epiq11.com/ECL. The Plan Proponents reserve the right to modify, amend, supplement, restate or withdraw the Plan Supplement after it is filed. The Plan Proponents will file and make available on the Voting Agent's website site any modified, amended, supplemented or restated Plan Supplement as promptly as possible.

### D.      Opt-Out of Releases on Ballots and Notices of Non-Voting Status

Article X of the Plan contains releases that are described in detail in that section of the Plan and in the definitions of "Released Parties" and "Releasing Parties." Parties should carefully review these release provisions. The Ballots contain a section titled "Optional Opt Out Release Election." Checking the OPT OUT box is an election to not grant the releases contained in Article X of the Plan. If you do not submit a Ballot that checks the box, you will be deemed to consent to the releases contained in Article X of the Plan to the fullest extent permitted by applicable law. By submitting a Ballot and checking the box electing not to grant the releases contained in Article X of the Plan, you are not forfeiting your right to receive a recovery provided that the Plan is otherwise confirmed by the Bankruptcy Court.

### E.      Waivers of Defects, Irregularities, etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Voting Agent and/or the Plan Proponents, as applicable. The Plan Proponents reserve the right to reject any Ballot submitted by any of the Debtors' respective creditors not in proper form, the acceptance of which would, in the opinion of the Plan Proponents or their counsel, as applicable, be unlawful. The Plan Proponents further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Debtors' creditors. The interpretation

(including the Ballot and the respective instructions thereto) by the Committee and the applicable Debtor unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Plan Proponents (or the Bankruptcy Court) determines. Neither the Plan Proponents nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

## IX.
## CONFIRMATION OF THE PLAN

### A.        Confirmation Hearing

A hearing is scheduled for April [2], 2020 at [__:00 a/p.m.] (prevailing Central time) to consider confirmation of the Plan (the "Confirmation Hearing").

### B.        Requirements for Confirmation of the Plan

#### 1.        Requirements of Section 1129(a) of the Bankruptcy Code

(a)        General Requirements.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied including, without limitation, whether:

(i)        All provisions, terms and conditions hereof are approved in the Confirmation Order.

(ii)        the Plan complies with the applicable provisions of the Bankruptcy Code;

(iii)        the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code;

(iv)        the Plan has been proposed in good faith and not by any means forbidden by law;

(v)        any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(vi)     with respect to each Class of Claims or Interests, each Holder of an impaired Claim or impaired Interest has either accepted the Plan or will receive or retain under the Plan, on account of such Holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code;

(vii)    except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not impaired under the Plan;

(viii)   except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claims;

(ix)     at least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class; and

(x)      all fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

(b)      Best Interests Test

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test."

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Plan Proponents believe that under the Plan all Holders of Impaired Claims and Interests will receive property with a value not less than the value such Holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Plan Proponents' belief is based primarily on (i) consideration of

the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Holders of Impaired Claims and Interests and (ii) the Liquidation Analysis attached hereto.

The Plan Proponents believe that any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Plan Proponents. The Liquidation Analysis is solely for the purpose of disclosing to Holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that the Bankruptcy Court will accept the Plan Proponents' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

<div align="center">(c)     Feasibility</div>

Also as noted above, section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Plan Proponents have analyzed the Debtors' ability to meet their obligations under the Plan. The Plan provides for appropriate reserves for payment of Other Secured Claims and administrative and priority claims and mechanisms for consummation of distributions to all Holders of Claims entitled to them. Thus, the Plan Proponents believe that, following consummation of the Plan, there will be no need for further liquidation or reorganization.

<div align="center">2.     <strong>Additional Requirements for Non-Consensual Confirmation</strong></div>

The Bankruptcy Court may still confirm the Plan at the request of the Plan Proponents if, as to each impaired Class that rejects or is presumed to reject the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes, pursuant to section 1129(b) of the Bankruptcy Code. Both of these requirements are in addition to other requirements established by case law interpreting the statutory requirements.

<div align="center">(a)     Unfair Discrimination Test</div>

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Plan Proponents believe the Plan satisfies the "unfair discrimination" test. Claims of equal priority are receiving comparable treatment.

<div align="center">(b)     Fair and Equitable Test</div>

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class. As to dissenting classes, the test sets different standards depending on the type of claims in such class. The Plan Proponents submit that if the Plan Proponents "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it

satisfies the "fair and equitable" requirement. The Plan Proponents believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for nonconsensual Confirmation of the Plan.

## X.
## ALTERNATIVES TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

The Plan Proponents have evaluated several alternatives to the Plan. After studying these alternatives, the Plan Proponents have concluded that the Plan is the best alternative and will maximize recoveries to parties in interest, assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan are (i) the preparation and presentation of an alternative plan of reorganization or liquidation, or (ii) a liquidation under chapter 7 of the Bankruptcy Code.

### A.      Alternative Plan

If the Plan is not confirmed, the Debtors (or if the Debtors' exclusive period in which to file a chapter 11 plan has expired, any other party in interest) could attempt to formulate a different plan. Such a plan would likely be an orderly liquidation of the Debtors' remaining assets. The Plan Proponents, however, submit that the Plan, as described herein, enables their creditors to realize the most value under the circumstances.

### B.      Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law

If no plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to their creditors in accordance with the priorities established by the Bankruptcy Code. The effect a chapter 7 liquidation would have on the recovery of holders of allowed Claims and Interests is set forth in the Liquidation Analysis attached hereto.

The Plan Proponents believe that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan because of the delay resulting from the conversion of the cases and the additional administrative expenses associated with the appointment of a trustee and the trustee's retention of professionals who would be required to become familiar with the many legal and factual issues in the Debtors' Chapter 11 Cases.

## XI.
## CONCLUSION AND RECOMMENDATION

The Plan Proponents believe the Plan is in the best interests of all stakeholders and urge the Holders of Claims in Classes 3, 4, and 5 to vote in favor thereof.

Dated:  February 13, 2020
          Houston, Texas

Respectfully submitted,

**EPIC COMPANIES, LLC**
a Delaware corporation,
on behalf of itself and the other Debtors


By:  */s/ Jeffrey T. Varsalone*                              
          Jeffrey T. Varsalone
          Chief Restructuring Officer


**TETRA TECHNOLOGIES INC.**, in its capacity as the Chairperson of **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EPIC COMPANIES, LLC, ET AL.**



          Carlos Longoria
Title:    Chief Compliance Officer and Assistant General
          Counsel - International

**EXHIBIT A**

**<u>Plan</u>**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **EPIC COMPANIES, LLC,** *et al.*, | § | **Case No. 19-34752** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

---

### JOINT PLAN OF LIQUIDATION OF EPIC COMPANIES, LLC
### AND ITS DEBTOR SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

**PORTER HEDGES LLP**
John F. Higgins
Eric M. English
M. Shane Johnson
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:(713) 226-6648
Facsimile: (713) 226-6628
Email:     jhiggins@porterhedges.com
           eenglish@porterhedges.com
           sjohnson@porterhedges.com

*Counsel to the Debtors and Debtors in Possession*

**MUNSCH HARDT KOPF & HARR, P.C.**
Jay H. Ong
Christopher D. Johnson
John D. Cornwell
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
Email:     jong@munsch.com
           cjohnson@munsch.com
           jcornwell@munsch.com

*Counsel to the Official Committee of Unsecured Creditors*

Dated: February 13, 2020

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

**TABLE OF CONTENTS**

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME
AND GOVERNING LAW.........................................................................................1
    A.    Defined Terms ....................................................................................................1
    B.    Rules of Interpretation ......................................................................................12
    C.    Computation of Time ........................................................................................13
    D.    Governing Law .................................................................................................13
    E.    Reference to Monetary Figures ........................................................................13
    F.    Controlling Document ......................................................................................13

ARTICLE II. ADMINISTRATIVE CLAIMS and PRIORITY CLAIMS...............................13
    A.    Administrative Claims ......................................................................................14
    B.    Professional Compensation ..............................................................................14
    C.    Priority Tax Claims ..........................................................................................15
    D.    Statutory Fees ...................................................................................................15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS....15
    A.    Introduction ......................................................................................................15
    B.    Summary of Classification ...............................................................................15
    C.    Treatment of Claims and Interests ...................................................................16
    D.    Provision Governing Unimpaired Claims ........................................................19

ARTICLE IV. ACCEPTANCE REQUIREMENTS..................................................................19
    A.    Acceptance or Rejection of this Plan ................................................................19
    B.    Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code ........20
    C.    Controversy Concerning Impairment ...............................................................20

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................20
    A.    Deemed Consolidation .....................................................................................20
    B.    Transactions Effective as of the Effective Date...............................................21
    C.    Cancellation of Securities and Agreements ......................................................21
    D.    The Liquidating Trust ......................................................................................21
    E.    The Liquidating Trustee ...................................................................................22
    F.    Liquidating Trust Oversight Board...................................................................22
    G.    Federal Income Tax Treatment of the Liquidating Trust for the Liquidating
Trust Assets; Tax Reporting and Tax Payment Obligations............................24
    H.    Authority to Pursue, Settle, or Abandon Retained Causes of Action ..............25
    I.    Engagement for Causes of Action v. Insiders, Prepetition Agents, and any
Prepetition Secured Parties..............................................................................26
    J.    Filing of Monthly and Quarterly Reports ........................................................26
    K.    Directors and Officers of the Debtors...............................................................26
    L.    Books and Records ...........................................................................................26
    M.    Corporate Authorization ...................................................................................27
    N.    Effectuating Documents and Further Transactions ..........................................27
    O.    Employee Agreements......................................................................................27
    P.    Exemption from Certain Taxes and Fees..........................................................27
    Q.    Duration of the Liquidating Trust.....................................................................28
    R.    Wind Down of Liquidating Trust .....................................................................28

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............28
    A.    Treatment of Executory Contracts and Unexpired Leases ............................28
    B.    Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases ...........................................................................................28
    C.    Rejection Damages Claim ..............................................................................28
    D.    Reservation of Rights .....................................................................................29

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................29
    A.    Timing and Calculation of Amounts to Be Distributed; Entitlement to
        Distributions ..................................................................................................29
    B.    Liquidating Trustee to make Distributions ....................................................30
    C.    No De Minimis Distributions Required...........................................................30
    D.    Distributions on Account of Claims Allowed After the Effective Date ........30
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ....30
    F.    Compliance with Tax Requirements/Allocations............................................31
    G.    Claims Paid or Payable by Third Parties .......................................................31
    H.    Claims Already Satisfied ................................................................................32
    I.    Allocation of Plan Distributions between Principal and Interest....................32
    J.    No Postpetition Interest on Claims .................................................................32

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
            DISPUTED CLAIMS..............................................................................33
    A.    Allowance and Disallowance of Claims..........................................................33
    B.    Prosecution of Objections to Claims ..............................................................33
    C.    Deadline to Object to Claims..........................................................................33
    D.    Estimation of Claims ......................................................................................33
    E.    Amendments to Claims ...................................................................................34
    F.    Distributions After Allowance........................................................................34

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE
            EFFECTIVE DATE .................................................................................34
    A.    Conditions Precedent to Confirmation ...........................................................34
    B.    Conditions Precedent to the Effective Date....................................................35
    C.    Waiver of Conditions......................................................................................35
    D.    Effect of Nonoccurrence of Conditions .........................................................35

ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS.................35
    A.    Compromise and Settlement of Claims, Interests, and Controversies............35
    B.    Discharge of Claims and Termination of Interests ........................................36
    C.    Releases by the Debtors...................................................................................36
    D.    Releases by Holders of Claims .......................................................................37
    E.    Exculpation.....................................................................................................38
    F.    Injunction.......................................................................................................38
    G.    Term of Injunctions or Stays .........................................................................39
    H.    Setoffs.............................................................................................................39
    I.    Recoupment ....................................................................................................39

ARTICLE XI. BINDING NATURE OF PLAN .................................................................................39

ARTICLE XII. RETENTION OF JURISDICTION.......................................................................40

ARTICLE XIII. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ...................41
  A. Modifications and Amendments........................................................................41
  B. Effect of Confirmation on Modifications ........................................................42
  C. Revocation or Withdrawal of the Plan.............................................................42
  D. Substantial Consummation of the Plan.............................................................42

ARTICLE XIV. MISCELLANEOUS PROVISIONS .....................................................................42
  A. Successors and Assigns .....................................................................................42
  B. Reservation of Rights ........................................................................................42
  C. Service of Documents........................................................................................43
  D. Dissolution of Committee..................................................................................43
  E. Nonseverability of Plan Provisions ..................................................................43
  F. Return of Security Deposits...............................................................................44
  G. Entire Agreement...............................................................................................44
  H. Exhibits..............................................................................................................44
  I. Votes Solicited in Good Faith ...........................................................................44
  J. Filing of Additional Documents ........................................................................44

## INTRODUCTION

Epic Companies, LLC and certain of its subsidiaries in the above-captioned Chapter 11 Cases, together with the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, respectfully propose the following joint plan of liquidation under Chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I hereof. As a Co-Proponent, the Committee supports this Plan.

## DEEMED CONSOLIDATION

The Plan is being proposed as a joint plan of liquidation for all of the Debtors. The Plan also constitutes and incorporates a motion requesting that the Bankruptcy Court substantively consolidate the Debtors' Estates solely for purposes of voting and making Distributions as more fully set forth below. Thus, the Plan must meet the requirements for section 1129 of the Bankruptcy Code with respect to the Debtors on a consolidated basis in order to be confirmed.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms*

Unless the context otherwise requires and subject to the Challenge, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Acqua Liana*" means Acqua Liana Capital Partners, LLC, including its current subsidiaries, and its and their managed accounts or funds, and its current officers, directors, and agents, in their capacities as such, and predecessors and successors in interest of any such Entity.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code to the extent such request is granted by the Bankruptcy Court. With respect to Administrative Claims that are allowed pursuant to sections 503(b)(1), 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claims Bar Date.

3.    "*Administrative Claims Bar Date*" means (other than for (i) quarterly U.S. Trustee fees and (ii) Professional Fee Claims) the 30th day after the Effective Date unless otherwise established by a Final Order.

1

4.  "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.  "*Allowed*" means, with reference to any Claim or Interest: (a) any Claim or Interest as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, either before or after the Effective Date, to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, either before or after the Effective Date; (c) any Claim or Interest expressly deemed Allowed by the Plan; or (d) any Claim or Interest affirmatively Allowed by the Debtors, or following the Effective Date, by the Liquidating Trustee.

6.  "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of an interest in property or an obligation incurred by the Debtors, the Debtors in Possession, the Estates, or other appropriate party arising under Chapter 5 of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, or 547 through 553, or under similar or related state or federal statutes and/or common law, including without limitation, fraudulent transfer laws, and including without limitation, Claims or Causes of Action to recover preferences and fraudulent transfers from any entity that received cash or other property from any Debtor as identified in the Plan, Disclosure Statement, any schedule or exhibit thereto, a Debtor's Statement of Financial Affairs or as identified in the Debtors' accounts payable system.

7.  "*Ballots*" means the ballots approved by the Bankruptcy Court in the Disclosure Statement Order upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Notice and Claims Agent on or before the Voting Deadline.

8.  "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended, and as applicable to the Chapter 11 Cases.

9.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

10.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

11.  "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.  "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

13.  "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, claims for relief, rights, suits, debts, dues, damages, reckonings, accounts, rights to legal remedies, rights to equitable remedies, rights to payment, controversies, agreements, covenants, promises, judgments of every type, responsibilities, disputes, assertions, allegations, proceedings, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity

claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date and also includes, without limitation: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or federal law fraudulent transfer claim.

14.    "*Challenge*" has the meaning set forth in the Final DIP Order, and is comprised of the Retained Causes of Action preserved under the Committee's *Motion for Authority to Pursue Certain Claims and Causes of Action on Behalf of the Estates* [Docket No. 546], to the extent granted by the Bankruptcy Court.

15.    "*Chapter 11 Cases*" means the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16.    "*Chief Restructuring Officer*" means Jeffrey T. Varsalone.

17.    "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

18.    "*Claims Bar Date*" means the applicable deadline by which proofs of Claim must be Filed under the Claims Bar Date Order or under this Plan.

19.    "*Claims Bar Date Order*" means the order of the Bankruptcy Court establishing the deadline by which proofs of Claim must be Filed [Docket No. 226].

20.    "*Claims Reserve*" means a reserve to be established by the Debtors into which Cash in an amount that the Liquidating Trustee reasonably estimates to satisfy Disputed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D, Disputed Other Secured Claims, Disputed Priority Tax Claims and Disputed Other Priority Claims shall be deposited on or before the Effective Date, which account shall vest in the Liquidating Trust as of the Effective Date; *provided* that any amounts in the Claims Reserve not required to pay Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D, Allowed Other Secured Claims, Allowed Priority Tax Claims or Allowed Other Priority Claims shall constitute Liquidating Trust Cash. For the avoidance of doubt, the Claims Reserve does not include funds for Disputed General Unsecured Claims unless and until the Liquidating Trustee pursuant to the Liquidating Trust Agreement determines to release such funds from the Claims Reserve as Liquidating Trust Cash (*See also* Art.I.A.36 - Disputed General Unsecured Claims Reserve).

21.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

22.    "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 78], as such committee may be reconstituted from time to time.

23.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

24.     "*Confirmation Date*" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25.     "*Confirmation Hearing*" means the hearing or hearings held by the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time in the Debtors' sole discretion.

26.     "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.     "*Consummation*" means the occurrence of the Effective Date.

28.     "*Debtor*" or "*Debtor in Possession*" means one of the Persons in the above-captioned Chapter 11 Cases, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

29.     "*Debtor Party Released Claims*" shall have the meaning set forth in Article X.B.

30.     "*Debtor Releases*" shall have the meaning set forth in Article X.B of the Plan.

31.     "*Designated Litigation Counsel*" means the legal counsel designated by the Plan Proponents in the Plan Supplement to pursue Retained Causes of Action against Insiders, the Prepetition Agents, and/or any Prepetition Secured Parties.

32.     "*Disallowed*" means, with reference to any Claim, a finding or determination of the Bankruptcy Court in a Final Order, including the Bar Date Order, or a provision of the Plan, providing that a Claim shall not be Allowed, or as to which the Bankruptcy Court has otherwise ruled or ordered that such Claim should be temporarily disallowed pursuant to section 502(d) of the Bankruptcy Code.

33.     "*Disclosure Statement*" means the *Disclosure Statement for Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated February 13, 2020, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

34.     "*Disclosure Statement Order*" means the *Order (I) Conditionally Approving Disclosure Statement, (II) Approving Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, and (III) Granting Related Relief* [Docket No. [___]].

35.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

36.     "*Disputed General Unsecured Claims Reserve*" means the Reserve established and maintained by the Liquidating Trustee in accordance with Article VII.A.1 hereof.

37.     "*Distribution*" means the payment of Cash or other property, as the case may be, in accordance with the Plan, the Confirmation Order, and, if applicable, the Liquidating Trust Agreement.

38.     "*Distribution Date*" means (a) the Effective Date or (b) any Subsequent Distribution Date.

39.     "*Distribution Record Date*" means the date on which the Confirmation Order is entered or such other date that is designated by the Plan Proponents or following the Effective Date, the Liquidating Trustee.

40.     "*Effective Date*" means the date declared by the Plan Proponents, after consultation with the Liquidating Trustee, on which the Confirmation Order becomes a Final Order and all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

41.     "*Epic Interests*" means any Interests in Epic Companies, LLC.

42.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

43.     "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

44.     "*Exculpated Party*" means each of (a) the Debtors, (b) the Chief Restructuring Officer, (c) G2 Capital Advisors, LLC (d) the Committee and the Committee's members, (e) Kelton C. Tonn, and (f) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's current subsidiaries, and its and their officers, directors, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals in any such persons' capacity as such. Notwithstanding anything herein to the contrary, the definition of "Exculpated Party" shall not include any Insiders, either of the Prepetition Agents, nor any Prepetition Secured Parties.

45.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

46.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in or in connection with the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent or the Bankruptcy Court through the PACER or CM/ECF website.

47.     "*Final DIP Order*" means the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of Bankruptcy Code and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 234].

48.     "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and

5

no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule may be Filed with respect to such order and shall not cause such order not to be a Final Order.

49.     "*General Unsecured Claim*" means any Unsecured Claim against any Debtor (including, for the avoidance of doubt, any Claim arising from the rejection of an Executory Contract or Unexpired Lease and any Prepetition Credit Agreement Deficiency Claim) that is not otherwise paid in full or otherwise satisfied during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court, other than an Administrative Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, or an Intercompany Claim.

50.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

51.     "*Holder*" means any Entity holding a Claim or an Interest.

52.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

53.     "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

54.     "*Insiders*" means an entity as defined in section 101(31) of the Bankruptcy Code, and includes, without limitation, Thomas Clarke, Ana Clarke, David Wiley, Orinoco Natural Resources, LLC, Oakridge Energy Partners LLC, or Clarke Investments, LLC, or any such Entity's current or former Affiliates (other than the Debtors). Notwithstanding anything herein to the contrary, the definition of "Insiders" shall not include Kelton C. Tonn.

55.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

56.     "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

57.     "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests in any Debtor, including, without limitation, any options, warrants, rights, or other securities or agreements to acquire any common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing, or to a Final Order providing for the recharacterization thereof.

58.     "*Interim Compensation Order*" means the *Order Granting Debtors' Motion for an Order under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 313].

59.     "*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

60.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

61.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

62.     "*Liquidating Trust*" means the "Liquidating Trust" established under the Plan pursuant to the Liquidating Trust Agreement.

63.     "*Liquidating Trust Agreement*" means the agreement creating the Liquidating Trust in a form and substance acceptable to the Debtors and the Committee to be Filed as part of the Plan Supplement, which will, among other things: (a) establish and govern the Liquidating Trust; (b) set forth the powers and duties of the Liquidating Trustee; (c) provide for Distribution of the Liquidating Trust Cash and amounts in the Disputed General Unsecured Claims Reserve to the Holders of Allowed General Unsecured Claims; (d) provide for Distribution, first from the amounts in the Claims Reserve, to Holders of Allowed Other Secured Claims, Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D and Allowed Priority Tax Claims; and (f) provide for Distribution, first from the amounts in the Professional Fee Account, to Holders of Allowed Professional Fee Claims.

64.     "*Liquidating Trust Assets*" means all of the Debtors' and Estates' assets on the Effective Date and the proceeds from such assets, including but not limited to the Liquidating Trust Cash, the Reserves, the Unencumbered Real Property (subject to TETRA Technologies, Inc.'s right to assert an interest in the real property located at 3019 West Admiral Doyle Drive, New Iberia, Louisiana 70560), and the Retained Causes of Action.

65.     "*Liquidating Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims.

66.     "*Liquidating Trust Cash*" means (i) any remaining funds in the Professional Fee Account after the payment of Allowed Professional Fee Claims, (ii) any amounts remaining in the Claims Reserve after the payment of Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D hereof, Allowed Other Secured Claims, Allowed Priority Tax Claims or Allowed Other Priority Claims, (iii) any amounts remaining in the Disputed General Unsecured Claims Reserve following the payment of amounts reserved therein on account of Disputed General Unsecured Claims; and (iv) any other Cash held by the Debtors or the Liquidating Trustee, net of the Liquidating Trust Operating Reserve.

67.     "*Liquidating Trust Operating Reserve*" means the reserve maintained by the Liquidating Trustee from the Liquidating Trust Assets for the reasonable costs and expenses of administering the Liquidating Trust, including the reasonable costs and expenses incurred by the Liquidating Trustee and the Liquidating Trustee Professionals.

68.     "*Liquidating Trustee*" means Jeffrey T. Varsalone, or any successor trustee of the Liquidating Trust duly appointed pursuant to the Liquidating Trust Agreement, to act as the administrator of the Plan, to make or facilitate Distributions pursuant to the Plan, and to serve as the trustee of the Liquidating Trust.

69.     "*Liquidating Trustee Professionals*" means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Liquidating Trustee (in their capacities as such).

70. "*Notice and Claims Agent*" means Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

71. "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

72. "*Other Secured Claim*" means a Secured Claim other than the Prepetition Credit Agreement Claims.

73. "*Oversight Board*" means the Liquidating Trust Oversight Board established pursuant to the provisions of Article V.F of this Plan and the Liquidating Trust Agreement.

74. "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

75. "*Petition Date*" means August 26, 2019.

76. "*Plan*" means this *Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated February 13, 2020, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits hereto, which are incorporated herein by reference.

77. "*Plan Proponents*" means collectively, the Debtors and the Committee.

78. "*Plan Supplement*" means the supplemental appendix to this Plan, Filed with the Bankruptcy Court no later than seven (7) calendar days prior to the Voting Deadline, which contains, among other things, draft forms or signed copies, as the case may be, of the Liquidating Trust Agreement, the Schedule of Retained Causes of Action, Designated Litigation Counsel, and any schedules, lists, or documents contemplated by this Plan that are identified as part of the Plan Supplement.

79. "*Prepetition Agents*" means the Prepetition Senior Agent and the Prepetition Junior Agent.

80. "*Prepetition Credit Agreements*" means the Prepetition Senior Credit Agreement and the Prepetition Junior Credit Agreement.

81. "*Prepetition Credit Agreement Claims*" means the Prepetition Senior Credit Agreement Claims and the Prepetition Junior Credit Agreement Claims.

82. "*Prepetition Credit Agreement Collateral*" means the Prepetition Senior Credit Agreement Collateral, together with the Prepetition Junior Credit Agreement Collateral.

83. "*Prepetition Junior Agent*" means Acqua Liana as administrative agent under the Prepetition Junior Credit Agreement.

84. "*Prepetition Junior Credit Agreement*" means that certain Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 among Epic Companies, LLC as borrower, Epic Diving & Marine Services, LLC, Epic Applied Technologies, LLC, Epic Specialty Services, LLC, Epic San Francisco Shipyard, LLC, King Aire, Inc., Zuma Rock Energy Services, LLC, Epic Alabama Steel, LLC, TSB Holding Company, LLC, TSB Offshore, Inc., and ERP Environmental Fund, Inc. as guarantors, and the Prepetition Junior Agent.

8

85.     "*Prepetition Junior Credit Agreement Claims*" means any and all Claims asserted against the Debtors and their Estates arising under the Prepetition Junior Credit Agreement, including the Prepetition Junior Credit Agreement Deficiency Claim, in the aggregate principal amount as of the Petition Date of not less than $65,340,299.28. For the avoidance of doubt, the Prepetition Junior Credit Agreement Claims are subject to avoidance, disallowance, recharacterization, subordination, setoff, and other potential defenses and remedies pursuant to the Challenge.

86.     "*Prepetition Junior Credit Agreement Collateral*" means the "Collateral" as defined in the Prepetition Junior Credit Agreement, which includes substantially all of the Debtors' assets but does not include the Unencumbered Real Property.

87.     "*Prepetition Junior Credit Agreement Deficiency Claim*" means any deficiency Claims asserted by the Prepetition Junior Agent under the Prepetition Junior Credit Agreement.

88.     "*Prepetition Secured Parties*" means the "Prepetition Secured Parties" as defined in the Final DIP Order.

89.     "*Prepetition Senior Agent*" means White Oak as administrative agent under the Prepetition Senior Credit Agreement.

90.     "*Prepetition Senior Credit Agreement*" means that certain Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 among Epic Companies, LLC as borrower, Epic Diving & Marine Services, LLC, Epic Applied Technologies, LLC, Epic Specialty Services, LLC, Epic San Francisco Shipyard, LLC, King Aire, Inc., Zuma Rock Energy Services, LLC, Epic Alabama Steel, LLC, TSB Holding Company, LLC, TSB Offshore, Inc., and ERP Environmental Fund, Inc. as guarantors, and the Prepetition Senior Agent.

91.     "*Prepetition Senior Credit Agreement Claims*" means any and all Claims asserted against the Debtors and their Estates arising under the Prepetition Senior Credit Agreement, including the Prepetition Senior Credit Agreement Deficiency Claims, in the aggregate principal amount of $50,295,463.69. For the avoidance of doubt, the Prepetition Senior Credit Agreement Claims are subject to avoidance, disallowance, recharacterization, subordination, setoff, and other potential defenses and remedies pursuant to the Challenge.

92.     "*Prepetition Senior Credit Agreement Collateral*" means the "Collateral" as defined in the Prepetition Senior Credit Agreement, which includes substantially all of the Debtors' assets but does not include the Unencumbered Real Property.

93.     "*Prepetition Senior Credit Agreement Deficiency Claim*" means any deficiency Claims asserted by the Prepetition Senior Agent under the Prepetition Senior Credit Agreement.

94.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

95.     "*Pro Rata*" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

96.     "*Professional*" means an Entity employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

97.     "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

98.     "*Professional Fee Account*" means the Debtors' segregated bank account funded by the Debtors and Liquidating Trustee in an amount equal to the Professional Fee Reserve; *provided* that any remaining amounts in the Professional Fee Account after payment in full of all Allowed Professional Fee Claims shall constitute "Liquidating Trust Cash."

99.     "*Professional Fees*" means all fees, costs and expenses incurred in these Chapter 11 Cases by any Professional and awarded by Final Order of the Bankruptcy Court pursuant to sections 328, 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

100.    "*Professional Fee Reserve*" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.2.

101.    "*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Chapter 11 Cases.

102.    "*Purchase Agreement*" means that Asset Purchase Agreement, dated as of January 13, 2020, by and between the Debtors, as sellers, and White Oak or its affiliated designee as buyer, to purchase certain specified assets of the Debtors free and clear of all liens, claims and encumbrances pursuant to a sale under sections 363 and 365 of the Bankruptcy Code.

103.    "*Release Opt-Out*" means the election, to be made solely through validly-submitted Ballots, to opt-out of the release provisions of this Plan.

104.    "*Released Party*" means, collectively, and in each case in its capacity as such, (a) the Debtors, (b) the Chief Restructuring Officer, (c) G2 Capital Advisors, LLC, (d) Kelton C. Tonn, and (e) with respect to each of the foregoing Entities in clauses (a) through (c), each such Entity's current subsidiaries and its officers, directors, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals as of the Petition Date, including in any such persons' capacity as director and/or officer (or any similar position) of any of the Debtors or any of the Debtors' subsidiaries, and successors in interest of any such party. Notwithstanding anything herein to the contrary, the definition of "Released Party" shall not include any Insiders, either of the Prepetition Agents, nor any Prepetition Secured Parties.

105.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors, (b) each Holder of a Claim that is deemed to accept the Plan, (c) each other Holder of a Claim that is entitled to vote on the Plan and does not elect the Release Opt-Out on its Ballot, and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current subsidiaries, and its and their managed accounts or funds, such Entity and its current officers, directors, employees, agents,

financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals, in their capacities as such, including but not limited to in any such persons' capacity as director and/or officer (or any similar position) of any of the Debtors or any of the Debtors' subsidiaries, and predecessors and successors in interest of any such party. Notwithstanding anything herein to the contrary, the definition of "Releasing Parties" shall not include any Insiders, either of the Prepetition Agents, nor any Prepetition Secured Parties.

106.    "*Reserves*" means, collectively, the Liquidating Trust Operating Reserve, the Disputed General Unsecured Claims Reserve, the Claims Reserve and the Professional Fee Reserve.

107.    "*Retained Causes of Action*" means, collectively, all Causes of Action which may be asserted by or on behalf of the Debtors or the Estates, a nonexclusive list of which is set forth in the Schedule of Retained Causes of Action, against any third parties, investors, individuals, or Insiders that the Debtors or the Estates own or have an interest in or can assert in any fashion, whether prepetition or postpetition, including, without limitation, litigation claims, whether such Causes of Action arise from contract, tort theories of liability, insurance claims, statutory claims, common law claims, equitable claims or other claims, objections to Claims, adversary proceedings, Avoidance Actions against any Entity identified in the Statement of Financial Affairs of any Debtor as a recipient of a payment made or property transferred by or on behalf of such Debtor prior to the Petition Date, and all Challenge Causes of Action, claims, demands and rights, in each case, that have not been released, exculpated, waived, settled or barred pursuant to the Final DIP Order or this Plan or that have not been assigned pursuant to the Purchase Agreement.

108.    "*Sale*" means the sale of substantially all of the Debtors' assets pursuant to the Purchase Agreement and the Sale Order.

109.    "*Sale Order*" means the *Order (I) Approving Successful Bidder's APA and Authorizing the Sale of Assets Outside the Ordinary Course of Business, (II) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 418].

110.    "*Schedule of Assets and Liabilities*" mean the Summary of Assets and Liabilities Schedules for Non-Individual, Schedule A/B: Property Non-Individual, Schedule D Non-Individual-Creditors Having Claims Secured by Property, Schedule E/F: Creditors Who Have General Unsecured Claims Non-Individual, Schedule G Non-Individual- Executory Contracts and Unexpired Leases, Schedule H Non-Individual- Codebtors Filed by each of the Debtors on September 16, 2019 and as later amended [Docket Nos. 128, 130, 132, 134, 136, 138, 181, 183, 243, 244, 245, 305, 342, 403, 472, 473, and 474].

111.    "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action to be retained by the Estates and contributed to the Liquidating Trust, which shall be included in the Plan Supplement.

112.    "*Secured*" means: when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

113.     "*Statement of Financial Affairs*" means the Statement of Financial Affairs Filed by each of the Debtors on September 16, 2019 [Docket Nos. 129, 131, 133, 135, 137, 139, and 182].

114.     "*Subsequent Distribution Date*" means any date after the Effective Date on which the Liquidating Trustee makes a Distribution after determining that a Distribution should be made in light of, *inter alia*, resolutions of Disputed Claims, the administrative costs of such a Distribution, and the Liquidating Trust Cash for Distribution.

115.     "*Third Party Released Claims*" shall have the meaning set forth in Article X.D.

116.     "*Unencumbered Real Property*" means the real property located at 168 Menard Road, Houma, Louisiana, 70363, 306 Menard Road, Houma, Louisiana, 70363, 403 Menard Road, Houma, Louisiana, 70363, and 600 Thompson Road, Houma, Louisiana, 70363, and 3019 West Admiral Doyle Drive, New Iberia, Louisiana 70560.

117.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

118.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

119.     "*Unsecured*" means not Secured.

120.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

121.     "*Voting Deadline*" means March 24, 2020, the deadline for submitting votes to accept or reject the Plan as set by the Bankruptcy Court.

122.     "*White Oak*" means White Oak Global Advisors, LLC, including its current subsidiaries, and its and their managed accounts or funds, and its current officers, directors, and agents, in their capacities as such, and predecessors and successors in interest of any such Entity.

B.     *Rules of Interpretation*

For purposes of this Plan, unless otherwise specified herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (6) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended

to be a part of or to affect the interpretation of this Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Plan Proponents or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time*

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors not incorporated in Texas shall be subject to principles of conflict of laws.

E.      *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Plan Proponents or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Administrative Claim, and to the extent not paid before the Effective Date, each Holder of an Allowed Administrative Claim shall be paid in full in Cash first from the Claims Reserve on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Administrative Claims arising between the Petition Date and the Effective Date must be Filed and served on the Liquidating Trustee pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the requesting party no later than 90 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

B.      *Professional Compensation*

1.      <u>Final Fee Application</u>

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash first from the Professional Fee Account, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim shall be Filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules. Upon payment in full of all Allowed Professional Fee Claims, any balance of Cash remaining in the Professional Fee Account shall become Liquidating Trust Cash and shall be transferred to the Liquidating Trustee.

2.      <u>Professional Fee Account and Reserve</u>

On the Effective Date, the Debtors and Liquidating Trustee shall establish and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve. The Professional Fee Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals. The funds in the Professional Fee Account shall not be considered property of the Estates or of the Debtors, *provided, however,* that following the payment in full of all Allowed amounts owing to Professionals, any remaining amount in the Professional Fee Account shall promptly be turned over to the Liquidating Trustee without any further action or order of the Bankruptcy Court.

Professionals shall reasonably estimate their unpaid Professional Fee Claims before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) Business Days after the Confirmation Date, *provided, however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

C.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Plan Proponents or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

D.      *Statutory Fees*

All fees due and payable pursuant to section 1930 of the Judicial Code prior to the Effective Date shall be paid by the Debtors on the Effective Date or as soon as reasonably practicable thereafter. After the Effective Date, the Liquidating Trustee shall pay any and all post-Effective Date fees pursuant to section 1930 of the Judicial Code when due and payable from Liquidating Trust Cash. The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall File with the Bankruptcy Court quarterly post-confirmation operating reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trustee during the applicable period, attested to by an authorized representative of the Liquidating Trustee.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.      *Summary of Classification*

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote |

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| | | | (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition Senior Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Junior Credit Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Subordinated Claims | Impaired | Not Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Epic Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

    C.    *Treatment of Claims and Interests*

      1.    Class 1: Other Secured Claims

          (a)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive either (i) Cash from the Claims Reserve in an amount equal to the proceeds of the collateral securing such Holder's Allowed Other Secured Claim after satisfaction in full of all superior liens up to the amount of the Allowed Other Secured Claim; or (ii) solely to the extent the amount of an Allowed Other Secured Claim is greater than the value of the collateral securing such Allowed Other Secured Claim and there are no Liens on such collateral senior to the Lien held by or for the benefit of the Holder of such Allowed Other Secured Claim, the collateral securing such Allowed Other Secured Claim in full and final satisfaction of such Claim. Any purported Secured Claim on the Prepetition Credit Agreement Collateral that is not senior to the Prepetition Credit Agreement Claims under applicable state or federal law shall be a General Unsecured Claim.

          (b)    *Voting*: Class 1 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

2. Class 2: Other Priority Claims

    (a) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive Cash first from the Claims Reserve equal to the unpaid portion of the Allowed Other Priority Claim.

    (b) *Voting*: Class 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3. Class 3: Prepetition Senior Credit Agreement Claims

    (a) *Treatment*: The Prepetition Senior Credit Agreement Claims are subject to the Challenge. The Holders of the Prepetition Senior Credit Agreement Claims (i) received, in exchange for their credit bid of $50 million of their Prepetition Senior Credit Agreement Claims, the Prepetition Senior Credit Agreement Collateral included in the Sale pursuant to the Purchase Agreement, and (ii) following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (x) any proceeds from any Prepetition Senior Credit Agreement Collateral not included in the Sale; and (y) with respect to any Allowed Prepetition Senior Credit Agreement Deficiency Claim, the same treatment as Class 5 (General Unsecured Claims).

    (b) *Voting*: Class 3 is Impaired. The Holder of the Class 3 Prepetition Senior Credit Agreement Claims, to the extent not Disallowed is entitled to vote to accept or reject the Plan.

4. Class 4: Prepetition Junior Credit Agreement Claims

    (a) *Treatment*: The Prepetition Junior Credit Agreement Claims are subject to the Challenge. Following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, the Holders of the Prepetition Junior Credit Agreement Claims not otherwise assumed pursuant to the Sale shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (i) any proceeds from any Prepetition Junior Credit Agreement Collateral not included in the Sale after the Prepetition Senior Credit Agreement Claims are paid in full; and (ii) with respect to any Allowed Prepetition Junior Credit Agreement Deficiency Claims, the same treatment as Class 5 (General Unsecured Claims).

    (b) *Voting*: Class 4 is Impaired. The Holder of the Class 4 Prepetition Junior Credit Agreement Claims, to the extent not Disallowed is entitled to vote to accept or reject the Plan.

5.      Class 5: General Unsecured Claims

    (a)      *Treatment*: Each Holder of an Allowed Class 5 General Unsecured Claim shall receive its Pro Rata share of the Liquidating Trust Cash available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of this Plan and the Liquidating Trust Agreement.

    (b)      *Voting*: Class 5 is Impaired. Holders of Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.      Class 6: Subordinated Claims

    (a)      *Treatment*: Each Holder of an Allowed Class 6 Subordinated Claim, to the extent Allowed and only following the payment in full of all Allowed Claims in Class 5, shall receive its share of any remaining Liquidating Trust Cash, Pro Rata with all other Allowed Class 6 Subordinated Claims, available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of this Plan and the Liquidating Trust Agreement.

    (b)      *Voting*: Class 6 is Impaired. As of the date of this Plan the Plan Proponents are not aware of any Class 6 Subordinated Claims. Accordingly, Class 6 is a vacant class as provided in Article IV.A.5 of this Plan and is, therefore, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

7.      Class 7: Intercompany Claims

    (a)      *Treatment*: Class 7 Intercompany Claims shall be cancelled and discharged, with the Holders of such Class 7 Intercompany Claims receiving no Distribution on account of such Intercompany Claims.

    (b)      *Voting*: Class 7 is Impaired. Holders of Class 7 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.      Class 8: Intercompany Interests

    (a)      *Treatment*: Class 8 Intercompany Interests shall be cancelled and discharged, with the Holders of such Class 8 Intercompany Interests receiving no Distribution on account of such Intercompany Interests.

    (b)      *Voting*: Class 8 is Impaired. Holders of Class 8 Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9.      Class 9: Epic Interests

    (a)    *Treatment*: Class 9 Epic Interests shall be cancelled and discharged, with the Holders of such Class 9 Epic Interests receiving no Distribution on account of such Epic Interests.

    (b)    *Voting*: Class 9 is Impaired. Holders of Class 9 Epic Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Epic Interests are not entitled to vote to accept or reject the Plan.

D.      *Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors', Estates' or the Liquidating Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

## ARTICLE IV.
## ACCEPTANCE REQUIREMENTS

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

A.      *Acceptance or Rejection of this Plan*

1.      Deemed Acceptance of the Plan

Classes 1 and 2 are Unimpaired under the Plan. Therefore, Classes 1 and 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.      Voting Classes

Classes 3, 4, and 5 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

3.      Deemed Rejection of the Plan

Classes 7, 8, and 9 are Impaired under the Plan and are not entitled to receive or retain any property on account of the Claims and Interests in Classes 7, 8, and 9. Therefore, Classes 7, 8, and 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.      Deemed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

5.        Elimination of Vacant Classes

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of Confirmation shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Class 6 (Subordinated Claims) shall be deemed eliminated for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

B.        *Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Plan Proponents reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

C.        *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of this Plan.

A.        *Deemed Consolidation*

The Plan constitutes a motion for the deemed consolidation of the Debtors and their respective Estates solely for purposes of voting on the Plan, confirming the Plan, and making Distributions pursuant to the Plan. Deemed consolidation solely for the purposes of voting on the Plan, confirming the Plan and making Distributions pursuant to the Plan is a condition precedent to the Effective Date. Accordingly, voting on the Plan shall be conducted and counted on a consolidated basis. On the Effective Date, (a) the assets of the Debtors will be merged and/or treated as if they are merged for the purpose of paying Allowed Claims against the Debtors; (b) any Claim Filed or asserted against any of the Debtors will be deemed a Claim against all of the Debtors (and any duplication of claims arising from both primary operative documents and guaranty and/or other secondary obligations shall be eliminated and all such claims against the Debtors shall be treated as a single claim that eliminates such duplications); (c) all Intercompany Claims and Interests will be eliminated; and (d) any obligation of any of the Debtors will be deemed to be an obligation of each of the Debtors. Except as set forth in this paragraph, such deemed consolidation shall not affect the legal and corporate structure of the Debtors nor affect Retained Causes of Action, including Avoidance Actions. Notwithstanding anything to the contrary herein, all Retained Causes of Action are preserved as they existed immediately before the Effective Date for the Liquidating Trustee to prosecute on behalf of the Liquidating Trust. The deemed consolidation under this Plan shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of deemed consolidation under this Plan; *provided*, *however*, that the deemed consolidation shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such deemed consolidation. Holders of Allowed Claims who assert identical Claims against multiple Debtors shall be entitled to only a single satisfaction of such Claims.

20

B.     *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other Entity.

C.     *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in this Plan, (1) the obligations of the Debtors under the Prepetition Credit Agreements, and any other membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest, shall be cancelled solely as to the Debtors, and the Liquidating Trustee shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; *provided, however*, notwithstanding Confirmation or the occurrence of the Effective Date, that any such agreement that governs the rights of the holder of a Claim or the rights of a Prepetition Agent shall, as the case may be and unless the Bankruptcy Court separately, expressly orders otherwise, continue in effect solely for purposes of (a) allowing Holders of Prepetition Credit Agreement Claims (as applicable) to receive Distributions under the Plan and the Liquidating Trust Agreement as provided herein, (b) allowing the Prepetition Agents to distribute Plan proceeds available to Holders of Prepetition Senior Credit Agreement Claims and Prepetition Junior Credit Agreement Claims, as applicable, as provided herein and in the Liquidating Trust Agreement, and to perform such other related administrative functions with respect thereto, including, without limitation, reducing the amount of Plan proceeds available to Holders of Allowed Prepetition Credit Agreement Claims for the compensation, fees and expenses (including the reasonable fees and out-of-pocket expenses of counsel) due the Prepetition Agents under the Prepetition Credit Agreements, and (c) allowing the Prepetition Agents to continue to maintain their liens on the Prepetition Credit Agreement Collateral and, if necessary, release or take other action with respect to such liens, in all cases subject to the terms and conditions in the Prepetition Credit Agreements, the Challenge, and any orders of this Bankruptcy Court; *provided, further,* that the Prepetition Agents shall be relieved of all duties and obligations under the Prepetition Credit Agreements upon the Debtors or the Liquidating Trustee making all required Distributions to the Prepetition Agents under this Plan.

D.     *The Liquidating Trust*

On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the applicable Liquidating Trust Beneficiaries, the Liquidating Trust Assets, including but not limited to, (a) all Liquidating Trust Cash, (b) the Retained Causes of Action, (c) the Reserves, and (d) any other assets vested in the Liquidating Trust pursuant to the terms of this Plan and the Liquidating Trust Agreement. As of the Effective Date, the Liquidating Trust Assets shall be vested in the Liquidating Trust free and clear of all Liens, Claims, Interests and encumbrances to the fullest extent possible under applicable law, except as otherwise specifically provided in the Plan, the Confirmation Order, or the Final DIP Order.

On the Effective Date, the Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidating Trust shall be established for the

primary purpose of reasonably maximizing the proceeds from liquidation of its assets (as applicable) for the benefit of Liquidating Trust Beneficiaries, and for making Distributions in accordance with the Plan and the Liquidating Trust Agreement, including Distributions to Allowed Professional Fee Claims and other Allowed Administrative Claims, statutory fees in accordance with Article II.D, Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed General Unsecured Claims and Allowed Subordinated Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

Subject to Article V.F. herein and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be the sole entity responsible for, (a) administering the Liquidating Trust Assets; (b) adjudicating, objecting to, settling, compromising or otherwise liquidating General Unsecured Claims and other Claims for all purposes; (c) prosecuting, compromising, and resolving the Retained Causes of Action; and (d) defending compromising, and resolving any Causes of Action against the Debtors.

E.     *The Liquidating Trustee*

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Any successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement.

Pursuant to 11 U.S.C §§ 1123(a)(5)(B), 1123(b)(3), and 1123(b)(6), the Liquidating Trustee shall be the successor to the Debtors for all purposes. The Liquidating Trustee shall also be the successor to the Committee for all purposes.

Compensation of the Liquidating Trustee shall be at the rate of $750 per hour, and such compensation and the actual costs and expenses of the Liquidating Trustee and the Liquidating Trust (including without limitation, the actual fees and expenses of the Liquidating Trustee Professionals) shall be paid from Liquidating Trust Cash. The Liquidating Trustee shall be compensated in the manner set forth in the Liquidating Trust Agreement.

Subject to Article V.F. herein and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to exercise all powers and duties as set forth in the Liquidating Trust Agreement, including, but not limited to: (i) entering into and granting settlements, releases, and compromises, for which approval from the Bankruptcy Court shall not be required; and (ii) retaining professionals and advisors, attorneys and accountants, including but not limited to Porter Hedges LLP and/or G2 Capital Advisors, as the Liquidating Trustee deems appropriate and advisable, and to pay such professionals as professionals and expenses of administration of the Liquidating Trust, without the need for Bankruptcy Court approval or authorization.

F.     *Liquidating Trust Oversight Board*

1.     Appointment and Creation of Oversight Board

On the Effective Date, an Oversight Board for the Liquidating Trust shall be created. The Oversight Board shall be comprised of three members (each a "Board Member"): (a) one member selected by the Committee, (b) one member selected by the Debtors, and (c) an independent member that the Committee and the Debtors shall agree upon (the "Jointly Designated Member"). The Committee shall also select a successor member (the "Designated Successor") in case the term of the initial Board Member selected by the Committee ends pursuant to the Plan and the Liquidating Trust Agreement. The initial members of the Oversight Board are set forth on **Exhibit A** to the Liquidating Trust Agreement.

2.      Duties and Powers of Oversight Board

The Oversight Board shall be responsible for (a) approving any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties; (b) determining to abandon, not pursue or cease pursuit of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties, including approving the filing of any complaint, claim objection or amendment thereof; (c) approving the Liquidating Trustee's decision to hire or replace any Liquidating Trust Professional employed to prosecute a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties, *provided, however,* that no action of the Oversight Board shall be required for the Liquidating Trustee to engage the Liquidating Trust Professionals identified in Article V.I of this Plan; (d) approving the termination or dissolution of the Liquidating Trust and the Liquidating Trust Agreement; (e) approving any proposed agreement or expenditure exceeding $350,000.00; (f) approving whether to remove a Board Member; and (g) consenting to any amendment to the Liquidating Trust Agreement.

3.      Compensation of Oversight Board

Each Board Member shall receive compensation not to exceed $675 per hour and be entitled to reimbursement of reasonable, out of pocket expenses until the Liquidating Trust Agreement and the Liquidating Trust are terminated and dissolved pursuant to the Plan and the Liquidating Trust Agreement.

4.      Term of Board Members

The Board Members shall serve until death, resignation, or removal.

(a)      Resignation / Successors

A Board Member may resign at any time by providing a written notice of resignation to the Liquidating Trustee and remaining members of the Oversight Board. Such resignation shall be effective after such notice is delivered and the resigning Board Member's successor is designated.

In the event of resignation or removal of a Board Member, the exiting member shall designate its replacement, *provided, however,* that: (i) in the case of the Committee-appointed Board Member, if the exiting Board Member is unable to select a successor, the Designated Successor shall be appointed; and (ii) if a Board Member's term expires because of death or incapacity without the Board member's designation of a successor, the remaining Board members shall agree upon the successor. Any Board Member designated to replace the Jointly Designated Member shall be a bankruptcy professional with no connection with the Debtors, Committee members, any Insiders, a Prepetition Agent, or any Prepetition Secured Parties. A notice shall be Filed with the Bankruptcy Court if any successor Board Member is appointed.

(b)      Removal

A Board Member may be removed solely for fraud, gross negligence, or willful misconduct.

5.      Voting

The affirmative vote of a majority of the Board Members is required with respect to any matter listed in Article V.F.2 that requires the determination, consent, approval or agreement of the Oversight Board, *provided, however*, that amendments to the Liquidating Trust Agreement following the Effective Date are governed by Section 11.11 of the Liquidating Trust Agreement and must be approved by:

(i) unanimous consent of the Oversight Board; or (ii) an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

G.    *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations*

For U.S. federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received a Distribution from the Estates of an undivided interest in each of the assets of the Liquidating Trust (to the extent of the value of their respective shares therein) and then contributed such interests to the Liquidating Trust.

1.    Liquidating Trust Assets Treated as Owned by Beneficiaries of Liquidating Trust

For all U.S. federal income tax purposes, all parties shall treat the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the Liquidating Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Liquidating Trust (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Liquidating Trust (net of any applicable liabilities) by the beneficiaries of the Liquidating Trust (to the extent of the value of their respective share in the assets of the Liquidating Trust) to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and the owners of the assets thereof.

2.    Tax Reporting

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors and the Liquidating Trust. The Liquidating Trustee shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article V. Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns. The Liquidating Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidating Trust with respect to each holder of a beneficial interest to the extent required by the IRC and applicable law.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority.

The Liquidating Trustee may request an expedited determination of the tax obligations of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

3.      Payment of Taxes

The Liquidating Trustee shall be responsible for payments of all Allowed tax obligations of the Debtors including Priority Tax Claims, Other Secured Claims and Administrative Claims, in addition to any taxes imposed on the Liquidating Trust or its assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Claims Reserve associated with the Liquidating Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Liquidating Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

H.      *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

Except as set forth in Article V.F of this Plan, from and after the Effective Date, (i) the Liquidating Trust shall be solely responsible for prosecution and settlement of all Retained Causes of Action pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement and (ii) the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action. Notwithstanding the foregoing, the Oversight Board must approve any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties.

**The Liquidating Trust reserves and retains any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Liquidating Trust may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; (ii) any recipient of a transfer identified in the Debtors' Statements of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Cases based on Retained Causes of Action under chapter 5 of the Bankruptcy Code; or (iii) any Insiders, Prepetition Agent, or any Prepetition Secured Parties. THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE LIQUIDATING TRUSTEE RELATING TO RETAINED CAUSES OF ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.**

**On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors or their Estates without need for further order of the Bankruptcy Court.**

**The Schedule of Retained Causes of Action, listing Causes of Action known by the Debtors to be retained by the Liquidating Trustee is included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

I.    *Engagement for Causes of Action v. Insiders, Prepetition Agents, and any Prepetition Secured Parties*

Promptly following the latter of the date on which the Bankruptcy Court has authorized the Challenge to proceed and the Effective Date, the Liquidating Trustee shall engage the Designated Litigation Counsel to pursue Retained Causes of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties. Solely in the event that the Liquidating Trustee's engagement of an expert in connection with the Liquidating Trustee's pursuit of Retained Causes of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties is determined to be necessary or appropriate pursuant to the provisions of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall retain GlassRatner Advisory & Capital Group LLC for such purposes.

J.    *Filing of Monthly and Quarterly Reports*

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee until such time as the Liquidating Trust terminates.

K.    *Directors and Officers of the Debtors*

On and after the Effective Date, the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable.

L.    *Books and Records*

Upon the Effective Date, the Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors. Upon the Effective Date, the Committee shall transfer and assign to the Liquidating Trust the books and records related to the Committee's investigations of Causes of Action during the Chapter 11 Cases. Any such books and records transferred by either the Debtors or the Committee shall be protected by the attorney-client privilege. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records transferred under the Plan for the duration of the Liquidating Trust as specified in Article V.Q of the Plan, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtors shall cooperate with the Liquidating Trustee to facilitate the delivery and storage of their books and records in accordance with this Plan. The Debtors (as well as their current and former officers and directors) shall be entitled to reasonable access to any books and records transferred in accordance with the Plan for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing

tax returns, and addressing personnel matters. For purposes of this Article V.L of the Plan, books and records include computer-generated or computer maintained books and records and computer data, as well as electronically-generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all the claims and rights of the Debtors in and to their books and records, wherever located.

The Committee and its advisors, notwithstanding the Committee's dissolution following the Effective Date, are permitted to share any discovery obtained relating to the Debtors or Retained Causes of Action with the Liquidating Trustee and his representatives without waiver of any privileges. The Liquidating Trustee shall automatically succeed to the Committee's rights and duties under any protective order applicable to any such discovery, without the need for any further order of the Bankruptcy Court or action by any other Entity.

M.      *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the stockholders, directors, members, or managers of the Debtors. After the Effective Date, to the extent necessary, the Liquidating Trustee shall have all authority, subject to the terms of this Plan and the Liquidating Trust Agreement, to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of one or more of the Debtors.

N.      *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Plan Proponents shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

O.      *Employee Agreements*

All employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place with the Debtors' employees that have not been previously terminated shall be terminated as of the Effective Date.

P.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

Q.      *Duration of the Liquidating Trust*

The Liquidating Trust shall have an initial term of five (5) years from the Effective Date, *provided*, *however*, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the purpose of the Liquidating Trust, the Liquidating Trustee shall be authorized, on two or more successive occasions, to extend the Liquidating Trust for six (6) months or longer *provided* that such extension is formally requested by motion before the Bankruptcy Court prior to the beginning of such requested, extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by this Plan and the Liquidating Trust Agreement.

R.      *Wind Down of Liquidating Trust*

After the termination of the Liquidating Trust and for the purpose of liquidating and winding down the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed. Upon termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of one year the books, records, lists of the Liquidating Trust Beneficiaries, the registry of claims and Liquidating Trust Beneficiaries, and other documents and files that have been delivered to or created by the Liquidating Trustee. Except as otherwise specifically provided herein, upon the termination of the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust's professionals and agents shall have no further duties or obligations hereunder.

# ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected (including by operation of section 365(d)(4) of the Bankruptcy Code), assumed, or assumed and assigned, including in connection with the Sale, and (2) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.

C.      *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 5 General Unsecured Claim. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Liquidating Trust, without the**

**need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity.**

    D.    *Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Plan Proponents that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Estate has any liability thereunder.

# ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

    A.    *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

    1.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided herein, and only after the funding of the Reserves, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on a Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement. Notwithstanding any other provision of this Plan to the contrary, no Distribution shall be made on account of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; (iii) is the subject of a pending and unresolved claim objection; or (iv) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries consistent with the requirements of this Plan and the Liquidating Trust Agreement. In connection with each Distribution to Holders of General Unsecured Claims, the Liquidating Trustee shall withhold from property that would otherwise be distributed on account of Class 5 General Unsecured Claims entitled to Distributions, in the Disputed General Unsecured Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions (minus the Liquidating Trust Operating Reserve) to which Holders of Disputed General Unsecured Claims would be entitled under this Plan if such Disputed General Unsecured Claims were Allowed in their Disputed Claim Amount. The Liquidating Trustee may request, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, and shall withhold the applicable portion of the Disputed General Unsecured Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.

    2.    Entitlement to Distributions

On and after the Effective Date, the Liquidating Trustee shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date and those Holders of Claims that Filed Proofs of Claims by the Claims Bar Date. Accordingly, the Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

B.    *Liquidating Trustee to make Distributions*

All Distributions under the Plan shall be made by the Liquidating Trustee in accordance with this Plan. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.    *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim Distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If as of the date of the final Distribution the Liquidating Trustee is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article VII.E.2 of this Plan.

D.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Liquidating Trustee, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General

Except as provided below, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address, or (d) at the addresses set forth in the other records of the Debtors or the Liquidating Trustee at the time of the Distribution.

Distributions shall be made by the Liquidating Trust in accordance with the terms of this Plan and, if applicable, the Liquidating Trust Agreement.

In making Distributions under this Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Notice and Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

For the avoidance of doubt, Holders of the Prepetition Credit Agreement Claims were not required to File a Proof of Claim with the Bankruptcy Court pursuant to the Claims Bar Date Order.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trustee (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

3.      Failure to Present Checks

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtors and their Estates, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

F.      *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The Liquidating Trustee shall have the authority to condition any Distribution upon the receipt of a completed IRS Form W-9 or applicable IRS Form W-8.

G.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors or the Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action,

order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the Effective Date.

2.      Claims Payable by Third Parties

No Distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Applicability and Preservation of Insurance Policies

Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

H.      *Claims Already Satisfied*

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors or any third party prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules shall be deemed amended and reduced to reflect that such payments were made. The Liquidating Trustee is authorized, and without any further notice to or action, order or approval of the Bankruptcy Court, to direct the Notice and Claims Agent to update the official claims register maintained in the Chapter 11 Cases in accordance with any Claims satisfied or reduced pursuant to the Plan. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

I.      *Allocation of Plan Distributions between Principal and Interest*

Each Holder of an Allowed Claim shall have the option to apply such Holder's Pro Rata share of consideration distributed under the Plan (cash or value) to satisfy outstanding principal of or accrued interest on such Holder's Allowed Claim, as such allocation is determined by such Holder in its sole discretion.

J.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and Holders of Claims shall not be entitled to postpetition interest,

dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
## AND DISPUTED CLAIMS

A.      *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Liquidating Trust after Consummation will have and retain any and all rights, objections, and defenses the Debtors or their Estates had with respect to any Claim as of the Petition Date.

**Except as provided herein or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

B.      *Prosecution of Objections to Claims*

The Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. From and after the Effective Date and subject to Article V.F of this Plan and the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim. The Liquidating Trustee may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

C.      *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall File all objections to Claims by no later than one year after the Effective Date, except to the extent that such Claims are Filed on or after the Effective Date, in which case, the Liquidating Trustee shall have until the later of one year after the Effective Date or 90 days after such claim is Filed to File an objection to such claim. Notwithstanding the foregoing, if the Liquidating Trustee determines that an extension of time is warranted, the Liquidating Trustee may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to the Liquidating Trustee's request to seek additional extensions from the Bankruptcy Court.

D.      *Estimation of Claims*

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or

unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

E.     *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Liquidating Trustee, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

F.     *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, and subject to the administration of the Reserves and Liquidating Trust in the Liquidating Trustee's discretion, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE
## PLAN AND THE EFFECTIVE DATE

A.     *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1.     All provisions, terms and conditions hereof are approved in the Confirmation Order.

2.     A Confirmation Order shall have been entered by the Bankruptcy Court, in form and substance acceptable to the Plan Proponents.

3.     The Confirmation Order shall provide that, among other things, the Plan Proponents and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.     All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

5.     All required consents, approvals, and authorizations, if any, have been obtained.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article IX.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.      The Debtors shall have fully funded (a) the Claims Reserve with all amounts that may be paid to Holders of Disputed Administrative Claims, Disputed Other Secured Claims, Disputed Priority Tax Claims, or Disputed Other Priority Claims under the Plan; and (b) the Professional Fee Account with all amounts contemplated to be paid to Holders of Professional Claims under the Plan.

2.      The Confirmation Order shall be a Final Order in form and substance acceptable to the Plan Proponents, each in their sole discretion. The Confirmation Order shall provide that, among other things, the Plan Proponents and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

3.      The Liquidating Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

4.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.      *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article IX may be waived with the consent of the Plan Proponents without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur within six months from the date the Plan was Filed, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Committee, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, Committee, the Estates, any Holders or any other Entity in any respect.

## ARTICLE X.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan and except as otherwise provided herein and in the Liquidating Trust Agreement, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtors or their Estates and Causes of Action against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. The foregoing "*Discharge of Claims and Termination of Interests*" shall not operate to waive, release or adversely impact any Retained Causes of Action, or any Claims or Causes of Action held by creditors, against any Insiders, Prepetition Agents, or any Prepetition Secured Parties, and shall be deemed limited solely to any extent necessary to prevent any such adverse impact.

C.    *Releases by the Debtors*

**Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest**

or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively, "*Debtor Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents and related property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; *provided*, *however*, that the foregoing "*Debtor Releases*" shall not operate to waive, release or adversely impact (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of such Released Party's actual fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan, or (iii) any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties.

D.    *Releases by Holders of Claims*

Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the other Released Parties from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively "*Third Party Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any other Released Party, on one hand, and any Releasing Party, on the other hand, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; *provided*, *however*, that the foregoing "*Third Party Releases*" shall not operate to waive or release (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of

such Released Party's actual fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan, or (iii) any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties; *provided, further*, that nothing contained in these provisions or in this Release shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots.

E.    *Exculpation*

Notwithstanding anything contained in this Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for (a) any prepetition act taken or omitted to be taken in connection with, related to or arising from the Debtors' out-of-court restructuring efforts, including authorizing, preparing for or Filing the Chapter 11 Cases and the Sale, or (b) any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan, the Disclosure Statement, or the Chapter 11 Cases, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the Chapter 11 Cases, or the confirmation or consummation of this Plan, including but not limited to (i) the Sale; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof if necessary), the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this Plan; or (iii) any Distribution made pursuant to this Plan, except for acts determined by a Final Order to constitute actual fraud, willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under or in connection with this Plan. Notwithstanding the foregoing, for the avoidance of doubt, this section of the Plan shall not (i) exculpate or release any Exculpated Party from anything other than as expressly identified in the preceding sentence, (ii) prevent or limit the ability of the Debtors, the Estates or the Liquidating Trustee to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, or (iii) prevent or limit the ability of the Debtors, the Estates or the Liquidating Trustee to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party. The foregoing exculpation shall not operate to waive or release any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties.

F.    *Injunction*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors, the Released Parties, the Exculpated Parties, the Liquidating Trust and/or the Liquidating Trustee: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind

38

against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to the Final DIP Order, or this Plan, which for the avoidance of doubt include the Third Party Releases, Debtor Releases and Exculpated Claims set forth herein; *provided, however*, that nothing contained in these provisions or in this Injunction shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots, against any parties other than the Debtors, the Exculpated Parties, the Liquidating Trust and/or the Liquidating Trustee.

G.   *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

H.   *Setoffs*

Except as otherwise expressly provided for in the Plan, each Debtor, Estate and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Cause of Action of any nature that such Debtor and/or its Estate, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor, Estate or Liquidating Trustee of any such Retained Causes of Action that such Debtor, Estate or Liquidating Trustee may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Retained Cause of Action unless such Holder has obtained an authorizing order from the Bankruptcy Court pursuant to a motion Filed on or before the Confirmation Date with the Bankruptcy Court and requesting the authority to perform such setoff.

I.   *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Retained Cause of Action, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**ARTICLE XI.**
**BINDING NATURE OF PLAN**

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS OR THEIR ESTATES TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL

RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, their Estates, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Retained Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the administration of the Liquidating Trust, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, administration, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VII;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, Liquidating Trust Agreement, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, Disclosure Statement, or Liquidating Trust Agreement;

15.     enter an order or final decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

17.     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     enforce all orders previously entered by the Bankruptcy Court; and

22.     adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

### ARTICLE XIII.
### MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.     *Modifications and Amendments*

Subject to the limitations contained herein, the Plan Proponents reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided, however,* that such modifications do not modify the treatment of General Unsecured Claims as provided in the Plan without the consent of the Committee. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their right to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement,

or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. After the Effective Date any modifications to the Plan must be approved by an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

B.     *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of the Plan*

The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Plan Proponents revoke or withdraw this Plan subject to the terms hereof, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor, Estate or any other Entity; (y) prejudice in any manner the rights of the Debtors, the Estates, the Committee, or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, the Committee, or any other Entity.

D.     *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

A.     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

B.     *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor or the Committee with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, its Estate or the Committee with respect to the Holders of Claims or Interests before the Effective Date.

C.      *Service of Documents*

Any pleading, notice, or other document required by this Plan to be served on or delivered to the Debtors or Liquidating Trustee shall be sent by overnight mail to:

G2 Capital Advisors
535 Boylston Street
11th Floor
Boston, Massachusetts 02116
Attn:      Jeffrey T. Varsalone
Phone:    (617) 918-7928
Email:     jvarsalone@g2cap.com

with copies to:

Porter Hedges LLP
1000 Main, 36th Floor
Houston, Texas 77002
Attn:      John F. Higgins
Phone:    (713) 226-6000
Fax:       (713) 226-6628
Email:     jhiggins@porterhedges.com

D.      *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except for purposes of filing applications for Professional compensation in accordance with Article II.B of this Plan.

E.      *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponents; *provided*, *further*, that the Plan Proponents may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified prior to the Effective Date without the Plan Proponents' consent, or after the Effective Date without the Liquidating Trustee's (and Oversight Board's) consent; and (3) nonseverable and mutually dependent.

F.      *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Entity at any time after the Petition Date shall be returned to the Liquidating Trustee within twenty (20) days after the Effective Date, without deduction or offset of any kind.

G.      *Entire Agreement*

Except as otherwise indicated herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Plan Proponents and each of their respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

J.      *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

[Remainder of Page Left Intentionally Blank]

Dated: February 13, 2020.

<div style="margin-left:40%">

Respectfully submitted,

**EPIC COMPANIES, LLC**
a Delaware limited liability company,
on behalf of itself and the other Debtors


By:  */s/ Jeffrey T. Varsalone*
      Jeffrey T. Varsalone
      Chief Restructuring Officer

           -and-


**TETRA TECHNOLOGIES INC.**, in its capacity as the Chairperson of **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EPIC COMPANIES, LLC, ET AL.**



      Carlos Longoria
Title:   Chief Compliance Officer and Assistant General
         Counsel - International

</div>

**EXHIBIT B**

**<u>Liquidation Analysis</u>**

**In re Epic Companies LLC - Illustrative Comparative Recovery Analysis:  Chapter 11/Chapter 7 Projected as at Date of Confirmation of Plan of Liquidation**

($000'S)

| | Amount Recovered | | |
|---|---|---|---|
| | LOW | MID | HIGH |
| **Encumbered Assets:** | | | |
| Encumbered Cash[1] | $ 218 | $ 330 | $ 441 |
| Remaining Hilco AR Share[2] | $ 153 | $ 191 | $ 229 |
| Shipyard / Navarro AR[3] | $ - | $ 337 | $ 673 |
| Insider AR[4] | $ 84 | $ 167 | $ 419 |
| LA Interpleader[5] | $ 474 | $ 532 | $ 592 |
| **Total Encumbered Assets** | **$ 929** | **$ 1,556** | **$ 2,354** |
| | | | |
| **Unencumbered Assets:** | | | |
| Unencumbered Cash[6] | $ 931 | $ 1,077 | $ 1,077 |
| New Iberia Proceeds[7] | $ 100 | $ 300 | $ 500 |
| Potential Chapter 5 Causes of Action - 90 Day Preference Claims[8] | $ 892 | $ 1,785 | $ 2,677 |
| Potential Chapter 5 Causes of Action - 1 Year Preference Claims[9] | $ 185 | $ 371 | $ 556 |
| Potential Chapter 5 Causes of Action - Fraudulent Transfer and D&O claims[10] | $ 994 | $ 2,340 | $ 4,026 |
| **Total Unencumbered Assets:** | **$ 3,102** | **$ 5,872** | **$ 8,836** |
| | | | |
| Class 3 Senior Lender Claims[11] | $ 50,295 | $ 50,295 | $ 50,295 |
| Senior Lender Credit Bid[12] | $ 44,624 | $ 44,624 | $ 44,624 |
| **Senior Lender Remaining Claims** | **$ 5,672** | **$ 5,672** | **$ 5,672** |
| | | | |
| Senior Lender Recovery[13] | $ 929 | $ 1,556 | $ 2,354 |
| Senior Lender Deficiency Claim[14] | $ 4,743 | $ 4,116 | $ 3,318 |
| **Total Unencumbered Asset Proceeds Remaining After Class 3 Claims** | **$ -** | **$ -** | **$ -** |
| | | | |
| Class 4 Junior Lender Claims[15] | $ 65,340 | $ 65,340 | $ 65,340 |
| Junior Lender Credit Bid[16] | $ 40,000 | $ 40,000 | $ 40,000 |
| **Junior Lender Remaining Claims** | **$ 25,340** | **$ 25,340** | **$ 25,340** |
| | | | |
| Junior Lender Recovery[17] | $ - | $ - | $ - |
| Junior Lender Deficiency Claim[18] | $ 25,340 | $ 25,340 | $ 25,340 |
| **Total Unencumbered Asset Proceeds Remaining After Class 4 Claims** | **$ -** | **$ -** | **$ -** |
| | | | |
| **Class 3 / 4 Deficiency Claims** | **$ 30,084** | **$ 29,456** | **$ 28,659** |
| | | | |
| Class 2 Priority Unsecured Claims[19] | $ 950 | $ 480 | $ 10 |
| **Total Proceeds Remaining After Priority Claims** | **$ 2,152** | **$ 5,392** | **$ 8,826** |
| | | | |
| Class 3 / 4 Deficiency Claims | $ 30,084 | $ 29,456 | $ 28,659 |
| Class 5 General Unsecured Claims[20] | $ 98,500 | $ 64,651 | $ 30,801 |
| **Total Potential General Unsecured Claims** | **$ 128,584** | **$ 94,107** | **$ 59,460** |
| | | | |
| **Chapter 11 Liquidating Trust Expenses[21]** | | | |
| Liquidating Trustee | $ 250 | $ 225 | $ 200 |
| Oversight Committee | $ 100 | $ 75 | $ 50 |
| Counsel | $ 380 | $ 720 | $ 1,250 |
| Financial Advisor/Accountant | $ 150 | $ 300 | $ 600 |
| **Total Chapter 11 Expenses** | **$ 880** | **$ 1,320** | **$ 2,100** |
| | | | |
| **Net Potential General Unsecured Creditor Pro-Rata Recovery - Chapter 11** | **1.0%** | **4.3%** | **11.3%** |
| | | | |
| **Chapter 7 Liquidation Expenses** | | | |
| Chapter 7 Trustee Commission[22] | $ 144 | $ 246 | $ 359 |
| Chapter 7 Trustee Fees | $ 100 | $ 150 | $ 500 |
| Chapter 7 Trustee Counsel | $ 950 | $ 1,500 | $ 2,500 |
| Chapter 7 Trustee Financial Advisor/Accountant | $ 450 | $ 900 | $ 1,500 |
| **Total Chapter 7 Expenses** | **$ 1,644** | **$ 2,796** | **$ 4,859** |
| | | | |
| **Net Potential General Unsecured Creditor Pro-Rata Recovery  - Chapter 7** | **0.4%** | **2.8%** | **6.7%** |

**Notes:**

This comparative recovery analysis is for illustrative purposes only. Recitation of the Senior and Junior Lenders' claims is qualified in all respects by the Challenge.

[1] Based on budget roll forward to April 3, 2020.  The encumbered cash is net of all accrued administrative expenses projected to be paid after the budget period.

[2] Mid recoveries based on Hilco's latest recovery forecast net of proceeds already received. A variance of 20% was applied to the mid recovery to calculate the estimated low and high recoveries.

[3] Recovery values are net of costs of recovery and are estimated at 0% for low, 5% for mid, and 10% for high.

[4] Recovery values are net of costs of recovery and are estimated at 5% for low, 10% for mid, and 25% for high.

[5] Recovery values are net of costs of recovery and are estimated at 80% for low, 90% for mid, and 100% for high.

[6] Net of Houma asset sale expenses and any professional fees exceeding the DIP budgeted amounts.

[7] Net of asset sale expenses and a to be negotiated split with Tetra.

[8] Net of costs of recovery and potential 502(h) claims.

[9] Net of costs of recovery and potential 502(h) claims.

[10] Potential illustrative recoveries include effect of Senior / Junior Lenders releasing liens on encumbered assets and waiving deficiency claims as well as other cash recoveries. The illustrative recoveries are not an admission of the value of any claims against the Senior / Junior Lenders or other potential defendants, the net results of which could be significantly higher or lower in light of the inherent uncertainties of litigation.

[11] Gross Senior Lender claims.

[12] Senior Lender credit bid after credit bid of DIP.

[13] The lesser of "Total Encumbered Assets" and "Senior Lender Remaining Claims".

[14] The Senior Lender deficiency claim remaining after all encumbered asset proceeds have been applied.

[15] Gross Junior Lender claims.

[16] Junior Lender credit bid.

[17] The lesser of "Total Unencumbered Asset Proceeds Remaining After Class 3 Claims" and "Junior Lender Remaining Claims".

[18] The Junior Lender deficiency claim remaining after all encumbered asset proceeds have been applied.

[19] Low recoveries are estimated based on gross proof of claim amounts, high recoveries are estimated based on scheduled amounts, and mid recoveries are an average of the two.

[20] Low recoveries are estimated based on gross proof of claims amounts, high recoveries are estimated based on scheduled amounts, and mid recoveries are an average of the two. The analysis does not include potential reclassified claims, potential contract rejection claims, or potential 502(h) claims.

[21] Chapter 11 Liquidating Trust professional fees assumed to be significantly lower than Chapter 7 due to the intimate knowledge of relevant facts, issues and information obtained by the Chapter 11 professionals throughout the Chapter 11 cases, as well as relevant experience.

[22] "Chapter 7 Trustee Commission" was calculated pursuant to section 326 of the bankruptcy code.