**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **EPIC COMPANIES, LLC,** | § **Case No. 19-34752** |
| | § |
| **Debtors.**[1] | § **(Jointly Administered)** |
| | § |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on February 19, 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. 592] (the "Disclosure Statement Order"), *inter alia*: (a) conditionally approving the *Disclosure Statement for the Joint Plan of Liquidation of Epic Companies, LLC and its Debtor Subsidiaries under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (b) approving certain procedures (the "Solicitation Procedures") for the solicitation and tabulation of votes to accept or reject the *Joint Plan of Liquidation of Epic Companies, LLC and its Debtor Subsidiaries under Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving the forms of ballots for submitting votes on the Plan; and (d) approving the form and manner of notice to the Non-Voting Classes (the "Notice of Non-Voting Status").

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order approving the Disclosure Statement, the Debtors hereby file the Plan Supplement. The Plan Supplement contains the following documents (each as defined in the Plan): (a) the Liquidating Trust Agreement; (b) the Schedule of Retained Causes of Action; and (c) the Designated Litigation Counsel. The Plan Proponents shall have the right to modify or amend the Plan or any Plan-related documents, including but not limited to documents contained in, and exhibits to, the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **April 1, 2020, at 2:00 p.m.** prevailing Central Time, before the Honorable David R. Jones, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 400, Houston, Texas 77002.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

[2] Capitalized terms not otherwise defined herein have the meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **March 24, 2020, at 5:00 p.m.** prevailing Central Time (the "Plan Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Epiq Corporate Restructuring, LLC, the notice and claims agent retained by the Debtors in the Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) visiting the Debtors' restructuring website at: https://dm.epiq11.com/case/ecl/info; (b) calling the Notice and Claims Agent at 1-855-958-0575 (domestic and Canada) or 1-503-597-5530 (international) and requesting to speak with a member of the Solicitation Team, or (c) emailing tabulation@epiqglobal.com with a reference to "Epic Companies" in the subject line.

---

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

10453840v3

Dated: March 17, 2020
Houston, Texas

**PORTER HEDGES LLP**

By:      */s/ John F. Higgins*
          John F. Higgins (TX 09597500)
          Eric M. English (TX 24062714)
          M. Shane Johnson (TX 24083263)
          Genevieve M. Graham (TX 24085340)
          1000 Main Street, 36th Floor
          Houston, Texas 77002
          Telephone: (713) 226-6000
          Fax: (713) 226-6248

          **COUNSEL FOR DEBTORS
          AND DEBTORS IN POSSESSION**


                    **And**

          **MUNSCH HARDT KOPF & HARR, P.C.**

By:      */s/ Jay H. Ong*
          Jay H. Ong (TX 24028756)
          Christopher D. Johnson (TX 24012913)
          700 Milam Street, Suite 2700
          Houston, Texas 77002
          (713) 222-1470 (telephone)
          (713) 222-1475 (facsimile)
          jong@munsch.com
          cjohnson@munsch.com

          **COUNSEL FOR THE OFFICIAL
          COMMITTEE OF UNSECURED
          CREDITORS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **EPIC COMPANIES, LLC,** | § **Case No. 19-34752** |
| | § |
| **Debtors.**[1] | § **(Jointly Administered)** |
| | § |

**PLAN SUPPLEMENT FOR THE JOINT PLAN OF LIQUIDATION OF**
**EPIC COMPANIES, LLC AND ITS DEBTOR SUBSIDIARIES**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**TABLE OF CONTENTS**

| **Exhibit** | **Description** |
|---|---|
| A | Liquidating Trust Agreement |
| B | Schedule of Retained Causes of Action |
| C | Designated Litigation Counsel |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

Certain documents, or portions thereof, contained in the Plan Supplement remain subject to continuing negotiations among the Debtors and the Committee. The Plan Proponents reserve all rights to modify, amend, revise, or supplement the Plan or any Plan-related documents, including but not limited to the Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan, applicable law or by order of the Court.[2]

---

[2] Capitalized terms used but not otherwise defined in this Plan Supplement shall have the meanings ascribed to such terms in the Plan.

## EXHIBIT A

### Liquidating Trust Agreement

This Exhibit A includes the Liquidating Trust Agreement. On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the applicable Liquidating Trust Beneficiaries, the Liquidating Trust Assets, including but not limited to, (a) all Liquidating Trust Cash, (b) the Retained Causes of Action, (c) the Reserves, and (d) any other assets vested in the Liquidating Trust pursuant to the terms of this Plan and the Liquidating Trust Agreement. As of the Effective Date, the Liquidating Trust Assets shall be vested in the Liquidating Trust free and clear of all Liens, Claims, Interests and encumbrances to the fullest extent possible under applicable law, except as otherwise specifically provided in the Plan, the Confirmation Order, or the Final DIP Order.

On the Effective Date, the Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidating Trust shall be established for the primary purpose of reasonably maximizing the proceeds from liquidation of its assets (as applicable) for the benefit of Liquidating Trust Beneficiaries, and for making Distributions in accordance with the Plan and the Liquidating Trust Agreement, including Distributions to Allowed Professional Fee Claims and other Allowed Administrative Claims, statutory fees in accordance with Article II.D of the Plan, Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed General Unsecured Claims and Allowed Subordinated Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

Subject to Article V.F of the Plan herein and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be the sole entity responsible for, (a) administering the Liquidating Trust Assets; (b) adjudicating, objecting to, settling, compromising or otherwise liquidating General Unsecured Claims and other Claims for all purposes; (c) prosecuting, compromising, and resolving the Retained Causes of Action; and (d) defending compromising, and resolving any Causes of Action against the Debtors.

10453840v3

## LIQUIDATING TRUST AGREEMENT

by and among

The Liquidating Debtors

And

Jeffrey T. Varsalone, as Liquidating Trustee

And

The Official Committee of Unsecured Creditors

Dated as of April [__], 2020

## LIQUIDATING TRUST AGREEMENT

## PREAMBLE

This Liquidating Trust Agreement (the "Agreement") is made this [__]th day of April 2020, by and among Epic Companies, LLC, Epic Diving & Marine Services, LLC, Epic Applied Technologies, LLC, Epic Specialty Services, LLC, Epic Alabama Steel, LLC, Epic San Francisco Shipyard, LLC, and Zuma Rock Energy Services, LLC (collectively, the "Liquidating Debtors") Jeffrey T. Varsalone, in his capacity as a Managing Director at G2 Capital Advisors, LLC (the "Liquidating Trustee"), and the Official Committee of Unsecured Creditors in accordance with that certain *Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries under Chapter 11 of the Bankruptcy Code* (as amended, the "Plan") and the *Order Approving Disclosure Statement and Confirming Debtors' and Committee's Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

## RECITALS

**WHEREAS**, on the Petition Date, the Liquidating Debtors Filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

**WHEREAS**, on February 13, 2020, the Liquidating Debtors Filed the Plan with the Bankruptcy Court [Docket No. 581];

**WHEREAS**, on April [__], 2020, the Plan was confirmed and the Confirmation Order was entered by the Bankruptcy Court [Docket No. __];

**WHEREAS**, on [_____], 2020, the Effective Date of the Plan occurred;

**WHEREAS**, the Plan contemplates that the Liquidating Trustee shall be appointed to perform his duties in accordance with the Plan, the Confirmation Order, and this Agreement;

**WHEREAS**, the Plan provides that the Liquidating Trustee shall, among other things, object to Claims, seek to maximize value in liquidating Liquidating Trust Assets for the benefit of Liquidating Trust Beneficiaries, administer the Claims allowance process, and authorize and make Distributions to Holders of Claims, in each case, as set forth in the Plan, the Confirmation Order, and this Agreement;

**WHEREAS**, except as set forth in the Plan and this Agreement, the Liquidating Trustee shall be the sole entity responsible for, (a) administering the Liquidating Trust Assets; (b) adjudicating, objecting to, settling, compromising or otherwise liquidating General Unsecured Claims and other Claims for all purposes; (c) prosecuting, compromising, and liquidating the Retained Causes of Action; and (d) defending, compromising, and resolving the Causes of Action against the Liquidating Debtors.

**WHEREAS**, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan;

**WHEREAS**, pursuant to the Plan, Jeffrey T. Varsalone, in his capacity as a Managing Director at G2 Capital Advisors, LLC ("Varsalone") shall serve as the Liquidating Trustee, effective upon the date hereof, and Varsalone is willing to serve as Liquidating Trustee pursuant to the Plan, the Confirmation Order, and this Agreement.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein and therein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## Article I.

### Acceptance of Positions; Fiduciary of the Estate

Section 1.1    Creation and Purpose of Liquidating Trust. The Liquidating Debtors, the Liquidating Trustee, and the Committee hereby create the Liquidating Trust for the primary purpose of reasonably maximizing the net proceeds from Liquidating Trust Assets and distributing such net proceeds to the Liquidating Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and applicable tax statutes, rules, and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business. In particular, and without limiting any other provisions hereof, the Liquidating Trustee shall (a) liquidate and administer the Liquidating Trust Assets; (b) adjudicate, object to, settle, compromise or otherwise liquidate the Claims; and (c) prosecute, compromise, and resolve the Retained Causes of Action, subject to Article V.F of the Plan and Article VII of this Agreement.

Section 1.2    Declaration of Trust. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Liquidating Debtors, the Liquidating Trustee, and the Committee have executed this Agreement and, effective on the Effective Date, the Liquidating Debtors hereby irrevocably transfer to the Liquidating Trust, all right, title, and interests of the Liquidating Debtors in and to the Liquidating Trust Assets, pursuant and subject to the terms of the Plan and the Confirmation Order for the benefit of the Liquidating Trust Beneficiaries and their permitted successors and assigns as provided for in this Agreement and in the Plan and Confirmation Order.

Section 1.3    Transfer and Vesting of the Liquidating Trust Assets. (a) On the Effective Date, pursuant to the terms of the Plan, the Liquidating Trust Assets (not otherwise abandoned pursuant to the terms of the Plan), including all such assets held or controlled by third parties, if any, shall be vested in the Liquidating Trust, which also shall, without limiting any of the other provisions hereof, own and be authorized to obtain, liquidate, and collect all of the Liquidating Trust Assets in the possession of third parties, if any, pursue all of the Retained Causes of Action, and make Distributions of the net proceeds thereof to Liquidating Trust Beneficiaries. All Liquidating Trust Assets shall be transferred and delivered to the Liquidating Trust free and clear of interests, Claims, Liens, or other encumbrances of any kind, except as otherwise specifically provided in the Plan, the Confirmation Order, or the Final DIP Order. The Liquidating

3

Trustee shall have no duty to arrange for any of the transfers of Liquidating Trust Assets or books and records contemplated to the Liquidating Trust or to ensure that such transfers are in compliance with the terms of the Plan and the Confirmation Order, and the Liquidating Trustee shall be conclusively entitled to rely on the legality and validity of such transfers as made by or on behalf of the Liquidating Debtors. The Liquidating Trust will be the successor-in-interest to each of the Liquidating Debtors and the Committee with respect to any Retained Causes of Action (including, without limitation, all arbitrations, mediations and other dispute resolutions) and shall have standing to pursue any that could have been commenced by any of the Liquidating Debtors or the Committee prior to the Effective Date that is a Liquidating Trust Asset and shall be deemed substituted for the same as the party in all such Retained Causes of Action.

(b)     This Agreement is intended to create a trust and a trust relationship and the Liquidating Trust is to be governed and construed in all respects as a trust. The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee, or the Liquidating Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Liquidating Trust Beneficiaries, on the one hand, to the Liquidating Trust and the Liquidating Trustee, on the other, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement and the Plan.

(c)     In accordance with Section 1123(b) of the Bankruptcy Code, the Liquidating Trustee has standing to and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action from and after the Effective Date. Without in any way limiting anything set forth in the Plan, the Confirmation Order, or this Agreement, no Entity may rely on the absence of a specific reference in the Plan to any Retained Causes of Action against any Entity as any indication that the Liquidating Trustee will not or may not pursue any and all available Retained Causes of Action against such Entity. Unless any Retained Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, including the Confirmation Order, the Liquidating Trustee expressly reserves all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Plan, confirmation of the Plan, entry of the Confirmation Order or occurrence of the Effective Date. Any objections to the allowance of any Claims Filed with the Bankruptcy Court that dispute liability, priority, and/or amount (or any objections, affirmative defenses and/or counterclaims, whether or not litigated to Final Order) shall not in any way limit the ability or the right of the Liquidating Trustee to assert, commence or prosecute any Retained Causes of Action against the Holder of such Claim.

(d)     In furtherance of the terms of the Plan, on the Effective Date, each of the Liquidating Debtors' directors, officers, and employees shall be terminated automatically by the Liquidating Debtors without the need for any corporate action or approval and without the need for any corporate filings, and, following the occurrence of the Effective Date, the terminated directors, officers and employees shall have no continuing obligations to the Liquidating Debtors

and the Liquidating Trust shall have no obligations to the terminated directors, officers and employees in their respective capacities as such.

Section 1.4    Acceptance. Varsalone hereby (a) accepts appointment as the Liquidating Trustee and (b) agrees to observe and perform all duties and obligations imposed upon the Liquidating Trustee under the Plan, the Confirmation Order, this Agreement, and other orders of the Bankruptcy Court and applicable law.

Section 1.5    Appointment. The Liquidating Trustee has been selected pursuant to the provisions of the Plan and has been appointed as of the Effective Date. The Liquidating Trustee's appointment shall continue until the earlier of (a) the termination of this Agreement as set forth herein, or (b) the Liquidating Trustee's resignation, death, or removal, in each case in accordance with the provisions of this Agreement and the Plan.

Section 1.6    Fiduciary. The Liquidating Trustee shall be a fiduciary of the Liquidating Debtors and their Estates, and shall perform his obligations consistent with the Plan, the Confirmation Order, this Agreement, and other orders of the Bankruptcy Court and applicable law.

Section 1.7    Capacity of Liquidating Trustee. Notwithstanding any state or federal law to the contrary or anything herein, the Liquidating Trustee shall himself have the capacity to act or refrain from acting, on his own behalf, including the capacity to sue and be sued, subject to the limitations herein. The Liquidating Trustee may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other cases or proceedings brought by or against him, and may settle and compromise all such matters in his own name, and the Liquidating Trustee shall be deemed to be a party in interest for purposes of contesting or settling objections to Claims against the Liquidating Debtors. The Liquidating Trustee shall be vested with all the powers and authority that has been granted to him under the Plan, the Confirmation Order, and this Agreement. The Liquidating Trustee shall be authorized to use Bankruptcy Rule 2004 and any other bankruptcy or other tools of discovery available to the Liquidating Debtors or their Estates, solely as it relates to administering the Liquidating Trust Assets.

## Article II.

## Funding of Liquidating Trustee's Fees and Expenses

Section 2.1    Prior to the Effective Date, an amount of Cash estimated by the Liquidating Debtors sufficient to perform the functions of the Liquidating Trustee in connection with his responsibilities, including fees for his counsel, shall be placed into a segregated account held by the Liquidating Trustee, and which segregated amount shall not limit the fees and expenses, including fees and expenses for professionals of the Liquidating Trustee in the performance of his duties. Any excess amount remaining in the account in connection with the closing of the Chapter 11 Cases will be treated as distributable Cash to Holders of Allowed General Unsecured Claims.

## Article III.

### Role of Liquidating Trustee

Section 3.1 <u>Role of Liquidating Trustee</u>. As more fully set forth in Article VI herein, the Liquidating Trustee shall have the power to administer the Liquidating Trust Assets and make or authorize Distributions to Holders of Allowed Claims.

Section 3.2 <u>No Implied Obligations</u>. The Liquidating Trustee shall not be liable to the Liquidating Debtors or any other party except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Liquidating Trustee.

Section 3.3 <u>Employment of Other Persons</u>. The Liquidating Trustee may employ one or more persons to assist him with performing his duties under the Plan as described in further detail in Sections 6.4 and 6.5 herein and such persons may be employees of the Liquidating Debtors and Professionals employed in the Chapter 11 Cases.

Section 3.4 <u>Limitations on Liquidating Trustee</u>. Notwithstanding anything to the contrary under applicable law, the Liquidating Trustee shall not take, assert, commence, pursue, bring, continue or obtain, as applicable, any Retained Cause of Action against any Released Party.

## Article IV.

### Distributions to Holders of Allowed Claims

Section 4.1 <u>Distributions</u>. The Liquidating Trustee shall make Distributions on account of Allowed Claims in accordance with the Plan.

Section 4.2 <u>Interest on Claims</u>. Unless otherwise specifically provided by the Plan, the Confirmation Order, any other order of the Bankruptcy Court or by applicable bankruptcy law, postpetition interest, fees, costs, and other charges shall not accrue and shall not be paid on any Allowed Claim.

Section 4.3 <u>Record Date for Distributions</u>. On the Distribution Record Date, the Claims Register of the Liquidating Debtors shall be closed, subject to objections to Claims by the Liquidating Trustee and the resolution thereof, and the Liquidating Trustee shall be authorized and entitled to recognize only those record Holders of Claims listed on such Claims Register as of the close of business on the Distribution Record Date.

Section 4.4 <u>Cash Distributions</u>. Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Liquidating Trustee, except that Cash payments made to foreign Holders of Allowed Claims may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

Section 4.5    Delivery of Distributions.

(a)    Addresses for Delivery

Distributions to Holders of Allowed Claims shall be made to the Holders of record as of the Distribution Record Date by the Liquidating Trustee as follows: (1) at the addresses set forth on the Proofs of Claim Filed by such Holders, (2) at the addresses set forth in any written notices of address changes delivered to the Liquidating Debtors or Liquidating Trustee after the date of any related Proof of Claim, (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address, or (4) at the addresses set forth in the other records of the Liquidating Debtors or the Liquidating Trustee at the time of the Distribution. The Liquidating Trustee shall seek to use the most recent, currently valid address among the foregoing for purposes of making a Distribution to any particular Liquidating Trust Beneficiary, but shall not be responsible for ascertaining or verifying the accuracy of such addresses and shall not incur any liability whatsoever on account of any undeliverable Distributions under the Plan resulting from incorrect addresses.

(b)    Undeliverable Distributions

In the event that any Distribution to any Holder of an Allowed Claim is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee shall have determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest.

(c)    Reversion

Notwithstanding the foregoing provision, any Distribution under the Plan on account of an Allowed Claim that is an Unclaimed Distribution for a period of 90 days from the application Distribution Date, pursuant to Article VII.E.2 of the Plan, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. From and after the expiration of such period, all such unclaimed property or interests in property shall revert to the Liquidating Trustee (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) and shall be distributed in accordance with the terms of the Plan and this Agreement, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

Section 4.6    Claims Paid or Payable by Third Parties.

(a)    Claims Paid by Third Parties

The Liquidating Debtors or the Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claim(s) objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Liquidating Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Liquidating Debtor, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidating Trustee,

7

to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Effective Date.

        (b)      Claims Payable by Insurers

        Holders of Claims that are covered by the Liquidating Debtors' insurance policies shall first seek payment of such Claims from applicable insurance policies, *provided that* the Liquidating Debtors and the Liquidating Trustee, as applicable, shall have no obligation to pay any amounts in respect of prepetition deductibles or self-insured retention amounts. No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Liquidating Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Liquidating Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

        (c)      Applicability of Insurance Policies

        Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Agreement or the Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Liquidating Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including any coverage defenses, held by such insurers.

        Section 4.7      <u>Withholding and Reporting Requirements/Allocation</u>. In connection with the Plan and Distributions to the Holders of Allowed Claims, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on the Liquidating Trustee by any Governmental Unit and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, each Holder of an Allowed Claim shall have the option to apply such Holder's Pro Rata share of consideration distributed under the Plan (cash or value) to satisfy outstanding principal of or accrued interest on such Holder's Allowed Claim, as such allocation is determined by such Holder in its sole discretion. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with any tax withholding and reporting requirements, including:

        (a)      liquidating a portion of the Distributions to be made to Holders of Allowed Claims under the Plan to generate sufficient funds to pay applicable withholding taxes;

        (b)      withholding Distributions pending receipt of receipt of a completed IRS Form W-9 or applicable IRS Form W-8, and any other information necessary to accomplish such Distributions; or

(c)     establishing any other mechanisms he believes are reasonable and appropriate.

The Liquidating Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances.

Section 4.8     <u>Minimum Distributions</u>. No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim Distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If as of the date of the final Distribution the Liquidating Trustee is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article VII.E.2 of the Plan.

## Article V.

## Procedures for Resolving Disputed, Contingent and Unliquidated General Unsecured Claims

Section 5.1     <u>Objections to Claims</u>.

(a)     Authority

Except as otherwise specifically provided in the Plan or this Agreement and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan and this Agreement. From and after the Effective Date and subject to Article V.F of the Plan and this Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim without the necessity of Bankruptcy Court approval. The Liquidating Trustee may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)     Claims Objection Deadline

Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall File all objections to Claims by no later than one year after the Effective Date, except to the extent that any such Claim is Filed on or after the Effective Date, in which case, the Liquidating Trustee shall have until the later of one year after the Effective Date or 90 days after such claim is Filed to File an objection to such Claim. Notwithstanding the foregoing, if the Liquidating Trustee determines that an extension of time is warranted, the Liquidating Trustee may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to the Liquidating Trustee's request to seek additional extensions from the Bankruptcy Court.

Section 5.2     <u>Estimation of Claims</u>. The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Liquidating Trustee has

10414559v7

previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

Section 5.3    No Distributions Pending Allowance. No payment or Distribution provided under the Plan shall be made to the extent that any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in Article VIII of the Plan, unless and until such Disputed Claim becomes an Allowed Claim; *provided that* any portion of a Claim that is an Allowed Claim shall receive the payment or Distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

Section 5.4    Distributions After Allowance. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, and subject to the administration of the Reserves and Liquidating Trust in the Liquidating Trustee's discretion, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date.

Section 5.5    Disputed Claims Reserve. The Liquidating Trustee shall hold Cash in a Disputed General Unsecured Claims Reserve and a Claims Reserve from the Liquidating Trust Cash in trust and solely for the benefit of the Holders of Claims as provided in the Plan and ultimately determined to be Allowed after the Effective Date. The Liquidating Trustee shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided in the Plan or herein, as such Disputed Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Disputed Claims as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date.

Section 5.6    Claims Already Satisfied. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Liquidating Debtors or any third party prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules shall be deemed amended and reduced to reflect that such payments were made. The Liquidating Trustee is authorized, and without any further notice to or action, order or approval of the Bankruptcy Court, to direct the Notice and Claims Agent to update the official claims register maintained in the Chapter 11 Cases in accordance with the satisfaction or reduction of any Claims pursuant to the Plan or this Section 5.6. Nothing in the Plan

10414559v7

shall preclude the Liquidating Trustee from paying Claims that the Liquidating Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

## Article VI.

### General Powers; Rights and Obligations of the Liquidating Trustee

Section 6.1    General Powers.

(a)    The Liquidating Trustee shall be a fiduciary of the Liquidating Debtors and their Estates and shall have all powers, authority, and responsibilities specified in the Plan and this Agreement. In particular, the Liquidating Trustee's rights, duties, and powers shall include, but are not limited to, the following:

(1)    exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken, by any officer, director or shareholder of the Liquidating Debtors or their Estates with like effect as if duly authorized, exercised and taken by unanimous action of such officers, directors and shareholders hold and administer the Cash that comprises the Liquidating Trust Cash;

(2)    pay, from the Liquidating Trust Cash, all out of pocket expenses incurred in connection with the discharge of his duties under the Plan;

(3)    make Distributions to Holders of Allowed Claims as provided in the Plan and in this Agreement;

(4)    to the extent necessary, open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, draw checks and drafts thereon by the sole signature of the Liquidating Trustee, and terminate such accounts as the Liquidating Trustee deems appropriate, and take other actions consistent with the Plan and the implementation thereof, including but not limited to the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidating Trust, provided that the Liquidating Trustee need not maintain the Liquidating Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Liquidating Trust; *provided, however*, that the Liquidating Trust shall treat all such reserved funds as being held in segregated accounts in its books and records;

(5)    File, prosecute, and/or withdraw objections to Claims, and compromise or settle any Claims and/or objections thereto, whether prior to or after objection;

(6)    commence, prosecute, compromise, settle, withdraw, abandon, or resolve any or all Retained Causes of Action, or otherwise preserve. protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

11

(7)     coordinate with the Notice and Claims Agent to administer and adjust the official claims register maintained for the Chapter 11 Cases (solely with respect to Claims) to reflect any such settlements or compromises authorized by the Bankruptcy Court or under the Plan and this Agreement, without any further notice to or action, order or approval by the Bankruptcy Court;

(8)     hold legal title to, and exercise authority with respect to, any and all Liquidating Trust Assets;

(9)     retain or engage professionals, employees, and consultants, and pay such professionals, employees, and consultants the reasonable fees and expenses incurred by the Liquidating Trustee as set forth in Section 6.5 herein;

(10)     wind-down or close the corporate affairs of any of the Liquidating Debtors, finalize the dissolution of the Liquidating Debtors to the extent required, and hire, if appropriate, former Professionals of the Debtors or their Estates, and/or employees of the Debtors or Liquidating Debtors to the extent their services assist with such or other actions concerning the Liquidating Trust;

(11)     such other activities as necessary and consistent to fulfill the Liquidating Trustee's duties as set forth in the Plan and this Agreement and to effect the provisions of the Plan.

(b)     The Liquidating Trustee shall not at any time enter into or engage in any trade or business that would create a conflict with the Liquidating Debtors.

(c)     The Liquidating Trustee shall be required to obtain the prior consent or authorization of the Oversight Board in order to take any of the actions set forth in Section 7.2 of this Agreement, and as provided in Article V.F of the Plan.

Section 6.2     <u>Resignation or Incapacity of Liquidating Trustee</u>. In the event of the resignation or incapacity of the Liquidating Trustee, a successor Liquidating Trustee may be appointed in accordance with this Agreement. The Liquidating Trustee may resign at any time upon 30 days' notice Filed with the Bankruptcy Court (the "<u>Resignation Notice</u>"), *provided that* such resignation shall only become effective upon the appointment of a successor Liquidating Trustee. Any successor Liquidating Trustee appointed under this Section 6.2 shall execute an engagement letter and an instrument accepting its appointment under the Plan, the Confirmation Order, and this Agreement, and shall File copies of each with the Bankruptcy Court. Thereupon, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor under the Plan, the Confirmation Order, and this Agreement, and all responsibilities of the predecessor Liquidating Trustee shall be terminated.

Upon the death, disability, or resignation of the Liquidating Trustee, the Oversight Board shall select the successor Liquidating Trustee by its majority determination.

Section 6.3     <u>Maintenance of Privileges</u>. (a) The attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar

12

immunities, of the Liquidating Debtors and the Committee shall extend to the Liquidating Trustee and his representatives, and there shall be no waiver of any privileges for sharing information and/or documents with the Liquidating Trustee. Any dispute over whether such privileges, immunities or documents are waived shall be determined by the Bankruptcy Court.

(b)     The Committee and its advisors, notwithstanding the Committee's dissolution following the Effective Date, shall be permitted to share any discovery obtained relating to the Liquidating Debtors or Retained Causes of Action with the Liquidating Trustee and his representatives without waiver of any privileges. The Liquidating Trustee shall automatically succeed to the Committee's rights and duties under any protective order applicable to any such discovery, without the need for any further order of the Bankruptcy Court or action by any other Entity.  In addition, notwithstanding the Committee's dissolution following the Effective Date, all rights and privileges of the Committee in connection with all Bankruptcy Rule 2004 examinations, orders, protective orders, and agreements related thereto shall vest in the Liquidating Trustee, and the Liquidating Debtors, Committee and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such rights and privileges.

Section 6.4     <u>Retention of Attorneys, Accountants and Other Professionals</u>. The Liquidating Trustee may retain professionals to aid the Liquidating Trustee in the performance of his responsibilities under the terms of the Plan, the Confirmation Order, and this Agreement, including reconciliation of Disputed Claims and Distributions to Holders of Allowed Claims. The professionals retained by the Liquidating Trustee may include:

(a)     law firm(s) as the Liquidating Trustee may deem advisable to aid the Liquidating Trustee in the performance of his duties and to perform such other functions as may be appropriate to carry out the primary purposes of the Plan.  In particular, the Liquidating Trustee expressly may engage Porter Hedges LLP as the Liquidating Trustee deems appropriate and advisable, without the need for consent by the Oversight Board, *provided, however*, that Porter Hedges LLP agrees to a 10% discount from its standard rates otherwise applicable at the time that it renders such services to the Liquidating Trustee, to reasonably attempt to maximize the performance of the underlying billable services by its associates; and

(b)     such other accountants, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as are advisable to carry out and effect the terms of the Plan, the Confirmation Order, and this Agreement.  In particular, the Liquidating Trustee expressly may engage G2 Capital Advisors, LLC ("<u>G2 Capital</u>") as the Liquidating Trustee deems appropriate and advisable, without the need for consent by the Oversight Board, *provided, however*, that: (i) G2 Capital agrees that its highest rate of services, for Senior Managing Directors (presently $850 per hour), shall not apply to the engagement and G2 Capital Advisors will bill the Liquidating Trustee at rates that are no greater than its standard rates at the time that its services are rendered, and (ii) G2 Capital and the Liquidating Trustee agree to use their best efforts to keep their blended hourly rate at a rate of not more than $400/hour, including by, but not limited to, routing and concentrating and the work to be performed to and with G2 Capital's professionals having the lowest rates and having prior institutional knowledge where reasonably possible.

10414559v7

Section 6.5     Compensation of Liquidating Trustee and Professionals.

(a)     The Liquidating Trustee shall receive compensation for services rendered and expenses incurred in fulfilling his duties pursuant to the Plan, the Confirmation Order, and this Agreement, including any necessary services rendered and reasonable expenses incurred prior to the date that this Agreement becomes effective. The Liquidating Trustee shall be compensated at his current rate of $750/hour. The Liquidating Trustee shall also be entitled to reimbursement for all reasonable out-of-pocket expenses incurred in connection with this Agreement, such as travel, lodging and meals, in accordance with and subject to the Plan. The compensation of the Liquidating Trustee and his professionals, as well as for reimbursement of their out of pocket expenses, shall not be subject to approval of the Bankruptcy Court. For the avoidance of doubt, the Liquidating Trustee's fees and expenses will be paid solely from the Liquidating Trust Cash.

(b)     On or before the last day of each month following the month for which compensation is sought, each Liquidating Trustee professional seeking compensation shall serve a monthly statement on the Liquidating Trustee detailing the compensation sought; *provided, however,* that any professional's failure to serve a monthly statement for any one or more months shall not waive or impair the right of such professionals to subsequently seek compensation for all or any number of such months in a later statement delivered to the Liquidating Trustee. The Liquidating Trustee shall have five (5) business days from the date such statement is received to review the statement and object to such statement by serving a written objection on the professional setting forth the precise nature of the objection and the amount at issue. At the expiration of the five (5) business-day period, the Liquidating Trustee shall promptly pay 100% of the amounts requested, except for the portion of such fees and disbursements to which an objection has been made. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution, such professional may seek payment of such fees by filing a motion with the Bankruptcy Court on proper notice to the Liquidating Trustee.  The Liquidating Trustee shall provide copies of its professional fee invoices, including any dispute of such invoices, to the Oversight Board.

Section 6.6     Timely Performance. In accordance with the terms of the Plan, the Liquidating Trustee shall make reasonable continuing efforts to object to and reconcile Claims, including such Claims that are Disputed Claims, and make timely Distributions to Allowed Claims.

Section 6.7     Conflicts of Interest. Conflicts of interest of the Liquidating Trustee will be addressed by the Liquidating Trustee appointing a disinterested person to handle any matter where the Liquidating Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists. In the event the Liquidating Trustee is unwilling or unable to appoint a disinterested person to handle any such matter, or a party in interest objects to a disinterested person appointed by the Liquidating Trustee, such party in interest may File an objection with the Bankruptcy Court, on notice to the Liquidating Trustee, setting forth such objection and seeking entry of an order of the Bankruptcy Court appointing a disinterested person.

Section 6.8     Insurance. Using any available Liquidating Trust Cash, the Liquidating Trustee shall purchase directors' and officers' liability insurance that covers the Board Members in addition to the Liquidating Trustee in an amount not less than $5 million. In addition,

14

the Liquidating Trustee may purchase, using the Liquidating Trust Cash, and carry, any additional insurance policies and pay all insurance premiums and costs the Liquidating Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Agreement.

Section 6.9    Final Accounting. The Liquidating Trustee (or any such successor Liquidating Trustee) shall within 30 days after termination of this Agreement pursuant to Article X hereunder, or the death, disability, or resignation of the Liquidating Trustee, render an accounting (and File it with the Bankruptcy Court) containing the following information:

(a)    a summarized accounting of all disbursements, payments and any other transactions in connection with the Liquidating Trust Cash;

(b)    a description of all Disputed Claims and the status thereof; and

(c)    a copy of the official claims register.

## Article VII.

## Oversight Board

Section 7.1    Appointment and Creation of Oversight Board. On the Effective Date, an Oversight Board for the Liquidating Trust shall be created ("Oversight Board"). The Oversight Board shall be comprised of three members (each a "Board Member"): (a) one member selected by the Committee, (b) one member selected by the Liquidating Debtors, and (c) an independent member that the Committee and the Liquidating Debtors shall agree upon ("Jointly Designated Member"). The Committee shall also select a successor member (the "Designated Successor") in case the term of the Board Member selected by the Committee ends pursuant to Section 7.4 herein. The initial members of the Oversight Board are set forth on **Exhibit A**.

Section 7.2    Duties of Oversight Board. The Oversight Board shall be responsible for (a) approving any settlement of a Retained Cause of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties; (b) determining to abandon or not pursue a Retained Cause of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties, including approving the filing of any complaint or claim objection; (c) approving the Liquidating Trustee's decision to hire or replace any counsel or expert employed for the purposes of the Liquidating Trustee's prosecution of a Retained Cause of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties; (d) approving the termination or dissolution of the Liquidating Trust and this Agreement pursuant to Section 10.1 herein; (e) approving any proposed agreement or expenditure exceeding $350,000.00; (f) approving whether to remove a Board Member pursuant to Section 7.4 herein; and (g) consenting to any amendment to this Agreement pursuant to Section 11.11 herein, or proposed modification of the Plan.

Section 7.3    Compensation of Oversight Board. Each Board Member shall receive compensation not to exceed $675 per hour and be entitled to reimbursement of reasonable

expenses until this Agreement and the Liquidating Trust are terminated and dissolved pursuant to Section 10.1 herein.

Section 7.4    Term of Board Members. The Board Members shall serve until death, resignation, or removal.

(a)    Resignation

A Board Member may resign at any time by providing a written notice of resignation to the remaining members of the Oversight Board. Such resignation shall be effective after such notice is delivered and the resigning Board Member's successor is designated.

In the event of resignation or removal of a Board Member, the exiting member shall designate its replacement, *provided, however*, that, (i) in the case of the Committee-appointed Board Member, if the exiting Board Member is unable to select a successor, the Designated Successor shall be appointed; and (ii) if a Board Member's term expires because of death or incapacity without the Board member's designation of a successor, the remaining Board members shall agree upon the successor.

Any Board Member designated to replace the Jointly Designated Member shall be a bankruptcy professional with no connection with the Debtors, Committee members, any Insiders, a Prepetition Agent, or any Prepetition Secured Parties.

(b)    Removal

A Board Member may be removed solely for fraud, gross negligence, or willful misconduct.

Section 7.5    Voting. The affirmative vote of a majority of the Board Members is required with respect to any matter listed in Section 7.2 that requires the determination, consent, approval or agreement of the Oversight Board, *provided, however*, that amendments to this Agreement are governed by Section 11.11 of this Agreement and must be approved by: (i) unanimous consent of the Oversight Board; or (ii) an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

## Article VIII.

### Standard of Care; Limitations on Liability

Section 8.1    Standard of Care; Exculpation.

(a)    Standard of Care

The Liquidating Trustee shall perform the duties and obligations imposed on the Liquidating Trustee by this Agreement in the utmost good faith.

16

(b)     Exculpation

Neither the Liquidating Trustee, nor any director, officer, affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee, each in its capacity as such (the "Exculpated Parties") shall be liable for losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Exculpated Party's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court or applicable law or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to any acts or omissions determined by Final Order to be the direct result of such Exculpated Party's fraud, willful misconduct, or gross negligence. None of the Exculpated Parties is deemed to be responsible for any other Exculpated Party's actions or inactions. The foregoing exculpation with respect to any Exculpated Party shall survive the termination of such Exculpated Party from the capacity for which it was deemed exculpated.

Section 8.2     Limitation of Liability. No Exculpated Party shall be liable under any legal theory, including, without limitation, for punitive, remote or speculative damages under any circumstances, even if it has been advised of the possibility of such damages.

Section 8.3     Indemnification. The Liquidating Debtors shall jointly indemnify the Liquidating Trustee, and its (as applicable) partners, employees, managers, principals, agents, affiliates, independent contracts, insurers (collectively, the "Indemnified Persons") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the services provided pursuant to this Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses); *provided*, *however*, that in no event shall the Liquidating Debtors' liability under this provision exceed amounts remaining available from the Liquidating Trust Cash and such indemnification shall be satisfied solely from the Liquidating Trust Cash. The Liquidating Trustee shall be authorized, but shall not be required, to purchase additional director and officer liability insurance coverage (in addition to the coverage required in Section 6.8 hereof) which specifically names the Liquidating Trustee as a direct or additionally insured party, provided that any such policy shall be paid for solely from the Liquidating Trust Cash. The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, willful misconduct or fraudulent acts of the Indemnified Person.

Section 8.4     No Liability for Good Faith Error of Judgment. The Liquidating Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order that the Liquidating Trustee was grossly negligent in ascertaining the pertinent facts.

## Article IX.

## Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, under the Plan, the Confirmation Order and sections 105(a) and 1142(g) of the Bankruptcy Code, the Bankruptcy Court shall retain jurisdiction over all matters arising out of or related to the Chapter 11 Cases to the fullest extent legally permissible, including but not limited to jurisdiction to:

(a)     allow in whole or in part, disallow in whole or in part, determine, liquidate, classify, estimate, or establish the amount of any Claim, including hearing and determining any and all objections to the allowance or estimation of Claims Filed and adjudicating any disputes between Holders of Claims regarding rights to payment or turnover of consideration distributed under the Plan, both before and after the Effective Date, including any objections to the classification of any Claim;

(b)     ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to Distributions under this Agreement and the Plan; and

(c)     adjudicate, decide, or resolve any disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, this Agreement, or actions involving the Liquidating Trustee.

## Article X.

## Termination

Section 10.1   Termination. In accordance with the Plan and this Agreement, this Agreement shall terminate immediately once (a) the Liquidating Trustee has distributed all of the Liquidating Trust Cash (net of the Liquidating Trustee's fees and expenses) to Holders of Allowed Claims; and (b) the Oversight Board has approved the termination of the Liquidating Trust.

Section 10.2   Maximum Term. The term of this Agreement shall end no later than the fifth (5th) anniversary of the Effective Date; *provided, however*, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the purpose of the Liquidating Trust, the Liquidating Trustee shall be authorized, on two or more successive occasions, to extend the Liquidating Trust for six (6) months or longer *provided* that each such extension is formally requested by motion Filed with the Bankruptcy Court prior to the beginning of such requested, extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by the Plan and this Agreement.

## Article XI.

### Miscellaneous

Section 11.1   <u>Governing Document</u>. Upon the Effective Date, and subject to the terms of the Plan and the Confirmation Order, this Agreement shall govern the Liquidating Trustee. To the extent of any inconsistency between the Confirmation Order, the Plan, and this Agreement, the terms of the Confirmation Order shall govern. To the extent of any inconsistency between the Plan and this Agreement, the Plan shall govern.

Section 11.2   <u>Notices</u>. All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be made in writing and delivered personally, by facsimile transmission or electronic mail, or mailed by first class mail or by overnight delivery service:

If to the Liquidating Trustee:

G2 Capital Advisors
535 Boylston Street
11th Floor
Boston, Massachusetts 02116
Attn:  Jeffrey T. Varsalone
Phone:          (516) 410-6215
Email:          jvarsalone@g2cap.com


with copies to:

Porter Hedges LLP
1000 Main, 36th Floor
Houston, Texas 77002
Attn:  John F. Higgins
Phone:          (713) 226-6000
Fax:             (713) 226-6628
Email:          jhiggins@porterhedges.com

Notices sent out by (a) electronic or facsimile transmission shall be deemed delivered when actually received, (b) first class mail shall be deemed delivered three Business Days after mailing, and (c) by overnight delivery service shall be deemed delivered the next Business Day after mailing.

Section 11.3   <u>Effectiveness</u>. This Agreement shall become effective on the Effective Date.

Section 11.4   <u>Counterparts</u>. This Agreement may be executed in one or more counterparts (via facsimile, electronic mail, or otherwise), each of which shall be deemed an original but which together shall constitute but one and the same instrument.

19

Section 11.5    <u>Governing Law</u>. This Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of Texas without giving effect to the principles of conflict of laws thereof.

Section 11.6    <u>Headings</u>. Sections, subheadings, and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

Section 11.7    <u>Interpretative Provisions</u>.

(a)    All references to the plural herein shall also mean the singular and to the singular shall also mean the plural, unless the context otherwise requires.

(b)    All references to the Liquidating Debtors and the Liquidating Trustee pursuant to the definitions set forth in the Recitals hereto, or to any other person herein, shall include their respective successors and assigns.

(c)    The words "hereof", "herein", "hereunder", "this Agreement," and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not any particular provision of this Agreement, and as this Agreement now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated, or replaced.

(d)    The word "including" when used in this Agreement shall mean "including, without limitation".

Section 11.8    <u>Severability</u>. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions of this Agreement, and any such prohibition or unenforceability in any jurisdiction shall neither invalidate nor render unenforceable any such provision in any other jurisdiction.

Section 11.9    <u>No Suits by Creditors</u>. No creditor of the Estates shall have any right arising by virtue of any provision of this Agreement to institute any action or proceeding, in law or in equity, against any party with respect to the Estates' assets.

Section 11.10   <u>Enforcement and Administration</u>. The Bankruptcy Court shall enforce and administer the provisions of this Agreement, as set forth in the Plan and herein.

Section 11.11   <u>Amendment</u>. This Agreement may only be amended by (i) unanimous consent of the Oversight Board; or (ii) an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority vote of the Oversight Board.

Section 11.12   <u>Waiver</u>. No failure by the Liquidating Trust or the Liquidating Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

Section 11.13   <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

10414559v7

Section 11.14  <u>No Bond Required</u>. Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor Liquidating Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 11.15  <u>Cooperation</u>. The Liquidating Trustee is the owner and holder of all of the Debtors' and Liquidating Debtors' books and records.   The Liquidating Debtors agree to provide their reasonable cooperation and commercially reasonable best efforts, as necessary, to assist the Liquidating Trustee with his efforts to assume ownership and possession of such  books and records.

Section 11.16  <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties hereto and supersedes all prior or contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the date first above written.

10414559v7

**LIQUIDATING TRUSTEE**

By: _____
Name: Jeffrey T. Varsalone
Title:   In his Capacity as Liquidating Trustee

**EPIC COMPANIES, LLC**
on behalf of itself and the other Debtors

By: _____
Name: Jeffrey T. Varsalone
Title:   In his Capacity as Chief Restructuring
Officer

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,** BY **TETRA TECHNOLOGIES
INC.,** in its capacity as the Chairperson of **THE
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF EPIC COMPANIES, LLC, ET
AL.**

By: _____
Carlos Longoria
Title:   Chief Compliance Officer and Assistant
General Counsel - International

22

## **EXHIBIT A**

**Oversight Board Members**

## **Oversight Board Members**

The following individuals are hereby appointed as the initial members of the Oversight Board: (i) Drew McManigle, MACCO Restructuring Group, LLC, (drew@maccorestructuringgroup.com); (ii) Bryan Ryniker, Ryniker Consultants LLC, (Brian@RynikerLLC.com); and (iii) Scott D. Brownell, APLC (scott@sbrownell.com). Drew McManigle is the Jointly Designated Member, Bryan Ryniker was selected by the Debtors, and Scott D. Brownell was selected by the Committee. In addition, Raymond Riddle, Cashman Equipment Corporation (riddle@4barges.com) shall be the Designated Successor.

24

## EXHIBIT B

### Schedule of Retained Causes of Action

Article V.H of the Plan provides as follows:

Except as set forth in Article V.F of this Plan, from and after the Effective Date, (i) the Liquidating Trust shall be solely responsible for prosecution and settlement of all Retained Causes of Action pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement and (ii) the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action[1] unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action. Notwithstanding the foregoing, the Oversight Board must approve any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties.

**The Liquidating Trust reserves and retains any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Liquidating Trust may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; (ii) any recipient of a transfer identified in the Debtors' Statements of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Cases based on Retained Causes of Action under chapter 5 of the Bankruptcy Code; or (iii) any Insiders, Prepetition Agent, or any Prepetition Secured Parties. THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE LIQUIDATING TRUSTEE RELATING TO RETAINED CAUSES OF**

---

[1] Under the Plan, "Retained Causes of Action" means, collectively, all Causes of Action which may be asserted by or on behalf of the Debtors or the Estates, a nonexclusive list of which is set forth in the Schedule of Retained Causes of Action, against any third parties, investors, individuals, or Insiders that the Debtors or the Estates own or have an interest in or can assert in any fashion, whether prepetition or postpetition, including, without limitation, litigation claims, whether such Causes of Action arise from contract, tort theories of liability, insurance claims, statutory claims, common law claims, equitable claims or other claims, objections to Claims, adversary proceedings, Avoidance Actions against any Entity identified in the Statement of Financial Affairs of any Debtor as a recipient of a payment made or property transferred by or on behalf of such Debtor prior to the Petition Date, and all Challenge Causes of Action, claims, demands and rights, in each case, that have not been released, exculpated, waived, settled or barred pursuant to the Final DIP Order or this Plan or that have not been assigned pursuant to the Purchase Agreement.

**ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.**

**On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors or their Estates without need for further order of the Bankruptcy Court.**

**The Schedule of Retained Causes of Action, listing Causes of Action known by the Debtors to be retained by the Liquidating Trustee is included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

Notwithstanding and without limiting the generality of Article V.H of the Plan, the following Exhibit B(i) through Exhibit B(iv) (each of which is attached hereto) include specific types of Causes of Actions expressly preserved as Liquidating Trust Assets including:

Exhibit B(i): Claims related to any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers;

Exhibit B(ii): Claims related to any recipient of a transfer identified in the Debtors' Schedules (as defined below), including any amendments thereto, Filed in these Chapter 11 Cases based on chapter 5 of the Bankruptcy Code;

Exhibit B(iii): Claims related to any Insiders, Prepetition Agent, or any Prepetition Secured Parties; and

Exhibit B(iv): Claims related to Accounts Receivable and Accounts Payable.

For the avoidance of doubt, the Plan Proponents reserve all rights to amend, revise, or supplement the list of Retained Causes of Action at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

## **EXHIBIT B(i)**

### **Claims Related to Insurance Policies**

Exhibit B(i) includes the Debtors' insurance brokers. Unless otherwise released under Article X of the Plan, the Debtors and the Estates expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is included on Exhibit B(i), including Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters. Additionally, on September 25, 2019, each of the Debtors filed its *Schedules of Assets and Liabilities and Statement of Financial Affairs*, which included, among other things, claims and Causes of Action each of the Debtors had reflected as a liability on its books and records (collectively, and as amended, the "Schedules"). The Debtors and the Estates expressly reserve all claims and Causes of Action related to the insurance contracts and policies listed on Schedule A/B and Schedule G for each of the Debtors to the extent the Debtors or Reorganized Debtors may have claims and Causes of Action against such insurance contracts and policies now or in the future.

# Epic Companies, LLC, et al.

Retained Causes of Action
Claims Related to Insurance Policies

| Name of Counter Party | Address | | | |
|---|---|---|---|---|
| AIG PROPERTY CASUALTY INC | 1100 POYDRAS ST, STE 3100 | NEW ORLEANS | LA | 70163 |
| ALLIANZ GLOBAL CORPORATE AND SPECIALTY | 28 LIBERTY ST. 24TH FLOOR | NEW YORK | NY | 10005 |
| AMERICAN LONGSHORE MUTUAL ASSOC LTD | 1100 POYDRAS ST, STE 3100 | NEW ORLEANS | LA | 70163 |
| BLUE CROSS BLUE SHIELD OF TEXAS | 2600 NETWORK BLVD, STE 400 | FRISCO | TX | 75034 |
| IMPERIUM INSURANCE COMPANY | 800 GESSNER ROAD, STE 600 | HOUSTON | TX | 77024 |
| LLOYD'S OF LONDON | ONE LIME ST | LONDON | | EC3M 7HA |
| MANUFACTURERS ALLIANCE INSURANCE COMPANY | 20 BRACE RD, STE 400 | CHERRY HILL | NJ | 08034 |
| MARKEL AMERICAN INSURANCE COMPANY | 4521 HIGHWOODS PARKWAY | GLEN ALLEN | VA | 23068 |
| WATER QUALITY INSURANCE SYNDICATE | 60 BROAD ST, 33RD FLOOR | NEW YORK | NY | 10004 |

## <u>EXHIBIT B(ii)</u>

### Claims Related to Chapter 5 Causes of Action

<u>Exhibit B(ii)</u> includes claims and Causes of Action the Debtors and the Estates expressly retain based in whole or in part upon any receipt of a transfer under chapter 5 of the Bankruptcy Code. Unless otherwise released under Article X of the Plan, the Debtors and the Estates expressly reserve all Causes of Action against or related to all Entities related to transfers under chapter 5 of the Bankruptcy Code, regardless of whether such Entity is included on <u>Exhibit B(ii)</u>. Additionally, on September 25, 2019, each of the Debtors filed its Schedules, which disclosed certain payments or transfers to creditors within 90 days before filing these Chapter 11 Cases. Unless otherwise released under Article X of the Plan, the Debtors and the Estates expressly reserve all claims and causes of Action against any Entity disclosed on the Schedules of each Debtor, in each case to the extent such Entities are liable for causes of action under chapter 5 of the Bankruptcy Code.

# Epic Companies, LLC, et al.

Retained Causes of Action
Claims Related to Chapter 5 Causes of Action

| Name of Counter Party | Address | | | |
|---|---|---|---|---|
| 4J SUBSEA SOLUTIONS, LLC | 4819 MENIO PARK DRIVE | SUGAR LAND | TX | 77479 |
| ABEL GARCIA | 8811 LADY LAURA LANE | RICHMOND | TX | 77469 |
| ACCOUNT TEMPS | PO BOX 743295 | LOS ANGELES | CA | 90074 |
| ADVANCED TECHNICAL STAFFING SOLUTIONS INC. | PO BOX 1844 | MOBILE | AL | 36633 |
| ALABAMA POWER COMPANY | PO BOX 242 | BIRMINGHAM | AL | 35292 |
| ALLIANCE MECHANICAL SOLUTIONS LLC | 33981 HWY 59 | LOXLEY | AL | 36551 |
| ALMA | 6TH FLOOR, CUMBERLAND HOUSE 1 VICOTRIA STREET | BERMUDA | | |
| AMERICAN EQUITY UNDERWRITERS | 11 N WATER ST, 32ND FL | MOBILE | AL | 36602 |
| AMERICAN LONGSHORE MUTUAL ASSOCIATION LT | 6TH FLOOR, CUMBERLAND HOUSE 1 VICOTRIA STREET | BERMUDA | | |
| APTIM CORP DBA APTIM PORT SERVICES, LLC | 39001 TREASURY CENTER DR. | CHICAGO | IL | 60694 |
| ARAGON, ARTHUR | 5341 NOLDA ST. UNIT B | HOUSTON | TX | 77007 |
| ARC CONTROLS, INC. | 4875 TUFTS ROAD | MOBILE | AL | 36619 |
| BCBS | 300 EAST RANDOLPH STREET | CHICAGO | IL | 60601 |
| BILL POOLE VALVES & CONTROLS, INC. | 710 W ADMIRAL DOYLE DRIVE | NEW IBERIA | LA | 70560 |
| BILLY BRATOWSKI | 33 STONEBRIDGE COURT | MANDEVILLE | LA | 70448 |
| BLAKE MARINE GROUP LLC | 4900 GRAND AVENUE | PITTSBURGH | PA | 15225 |
| BLETSCH STEAM SHIP CO. | P.O. BOX 1476 | LA PORTE | TX | 77572 |
| BLUE CROSS | P.O. BOX 650007 | DALLAS | TX | 75265 |
| BOXLEY GROUP, LLC | 770 S POST OAK LN, 300 | HOUSTON | TX | 77056 |
| CAILLOUET LAND, LLC | PO BOX 292 | THIBODAUX | LA | 70302 |
| CASHMAN EQUIPMENT CORP. | 41 BROOKS DRIVE, SUITE 1005 | BRAINTREE | MA | 02184 |
| CENTRAL BOAT RENTALS, INC. | DEPT. 0422 PO BOX 120422 | DALLAS | TX | 75312 |
| CHEROKEE CONSULTANTS INTERNATIONAL, LLC | PO BOX 21 | DELCAMBRE | LA | 70528 |
| CLIFFORD JAY GREGORY | PO BOX 926 | DAPHNE | AL | 36526 |

| | | | | |
|---|---|---|---|---|
| C-MAR AMERICA | PO BOX 4283 | HOUSTON | TX | 77210 |
| | DEPT 53 | | | |
| COMPANY WRENCH LTD | 4805 SCOOBY LANE | CARROLL | OH | 43112 |
| CONNECT YOUR CARE | 307 INTERNATIONAL CIRCLE SUITE 200 | HUNT VALLEY | MD | 21030 |
| CONTREX ENERGY SERVICES, LLC | PO BOX 441268 | HOUSTON | TX | 77244 |
| COWIN EQUIPMENT CO, INC. | PO BOX 10624 | BIRMINGHAM | AL | 35202 |
| CRESCENT TOWING & SALVAGE CO., INC. | PO BOX 1566 | mobile | AL | 36633 |
| CROSSMAR, INC | 1950 S. VAN AVE | HOUMA | LA | 70363 |
| CST CORP | 12210 BEDFORD ST | HOUSTON | TX | 77031 |
| DAN BUNKERING | 840 GESSNER SUITE 210 | HOUSTON | TX | 77024 |
| DEEP DELTA LLC | 8311 HWY 23, STE 104 | BELLE CHASE | LA | 70037 |
| DELTA RIGGING & TOOLS | 125 MCCARTY STREET | HOUSTON | TX | 77029 |
| DHD OFFSHORE SERVICES, LLC | 7889 HWY 182 EAST | MORGAN CITY | LA | 70380 |
| DIAMOND SCAFFOLDING SERVICES, INC. | PO BOX 242 | FAIRHOPE | AL | 36533 |
| DNV GL BUSINESS ASSURANCE | PO BOX 934927 | ATLANTA | GA | 31193 |
| ECOSOUTH SERVICES OF MOBILE, LLC | 12945 US HWY 43 N | AXIS | AL | 36505 |
| ENTERGY | PO BOX 8108 | BATON ROUGE | LA | 70891 |
| EYOS EXPEDITIONS LTD. | 16-18 FINCH ROAD | ISLE OF MAN | UK | IM1 2PT |
| F&S SUPERB MARINE & INDUSTRIAL SERVICES, INC. | 5730 I-10 INDUSTRIAL PARKWAY NORTH | THEODORE | AL | 36582 |
| FAST FORWARD RENTALS, INC. | 1428 SOUTH HUGH WALLIS ROAD | LAFAYETTE | LA | 70508 |
| FIRST INSURANCE FUNDING | 450 SKOKIE BLVD, STE 1000 | NORTHBROOK | IL | 60062 |
| FUGRO USA MARINE, INC. | P.O. BOX 301114 | DALLAS | TX | 75303 |
| GARBER BROTHERS | 5900 HWY 90 E | BROUSSARD | LA | 70518 |
| GERSON ARREOLA | 10370 RICHMOND AVE 1000 | HOUSTON | TX | 77042 |
| GULF STATES TRANSPORTATION LLC | 5210 LAPALCO BLVD SUITE H | MARRERO | LA | 70072 |
| HEALTH CARE SERVICES CORP. DBA BLUE CROSS BLUE SHIELD OF TX | 300 EAST RANDOLPH STREET | CHICAGO | IL | 60601 |
| HOLLOWAY HOUSTON, INC. | 5833 ARMOUR DRIVE | HOUSTON | TX | 77020 |
| HUNTING TITIAN, INC. | PO BOX 2316 | PAMPA | TX | 79066 |
| HUSQVARNA | PO BOX 2771 | CAROL STREAM | IL | 60132 |
| IHI E&C INTERNATIONAL CORPORATION | 15377 W MEMORIAL DR, STE 300 | HOUSTON | TX | 77079 |

| | | | | |
|---|---|---|---|---|
| ISLAND AUTOMATION, INC. | 14 INDUSTRIAL ROAD | ST. MARYS | ON | N4X 1B5 |
| ITC GLOBAL | 26200 ENTERPRISE WAY | LAKE FOREST | CA | 92630 |
| | BUILDING 5-2ND FLOOR | | | |
| JAVELER MARINE SERVICES LLC | PO BOX 309 | BROUSSARD | LA | 70518 |
| JOHN W. STONE OIL DISTRIBUTOR LLC | DEPT. 322 | GRETNA | LA | 70054 |
| | PO BOX 2010 | | | |
| JS HELD LLC | 50 JERICHO QUADRANGLE SUITE 117 | JERICHO | NY | 11753 |
| K&P MARINE SERVICES LLC | 37765 STATE HWY 59 | BAY MINETTE | AL | 36507 |
| KENNETH ROBICHAU | 1014 CANDLELIGHT LANE | HOUSTON | TX | 77018 |
| KNIGHT'S MARINE & INDUSTRAL SERVICES, Inc. | PO BOX 915183 | DALLAS | TX | 75391 |
| LAD SERVICES OF LOUISIANA LLC | 1043 E. STEPHENSVILLE ROAD | MORGAN CITY | LA | 70380 |
| LAWLER AND COMPANY, INC. | PO BOX 1135 | THEODORE | AL | 36590 |
| LINEAR CONTROLS, INC. | 107 1/2 COMMISSION BLVD | LAFAYETTE | LA | 70508 |
| LOWER COAST COMPANIES, LLC | PO BOX 1550 | AMELIA | LA | 70340 |
| MACTECH, INC. | 4079 PEPIN AVE., UNIT 4 | RED WING | MN | 55066 |
| MAGNETECH INDUSTRIAL SALES, INC. | 800 NAVE RD. SE | MASSILLON | OH | 44646 |
| MAGREM INVESTMENTS LTD. | ARCH. MAKARIOU III, 232 APOLLO COURT | LIMMASOL | | CYPRUS |
| | 1ST FLOOR, OFFICE 104 | | | |
| MARITIME SUBSEA CLAIMS, LTD. | PO BOX 5186 | LAFAYETTE | LA | 70505 |
| MCDONOUGH MARINE SERVICE | PO BOX 919227 | DALLAS | TX | 75391 |
| MCG WORKFORCE SOLUTIONS LLC | PO BOX 1586 | MOBILE | AL | 36633 |
| MCGRIFF, SEIBELS & WILLIAMS OF TEXAS, INC. | LOCKBOX DRAWER 456 | BIRMINGHAM | AL | 35246 |
| | PO BOX 11407 | | | |
| MEDSAFE | PO BOX 1929 | MARSHALL | TX | 75671 |
| MENCK GMBH | AM SPRINGMOOR 5A | KALTENKIRCHEN | | GERMANY |
| MOBILE AREA WATER & SEWER SYSTEM | PO BOX 830130 | BIRMINGHAM | AL | 35283 |
| MOBILE BAR PILOTS, LLC | PO BOX 831 | MOBILE | AL | 36601 |
| MORGAN CITY RENTALS | 125 MCCARTY DRIVE, BLDG. 1 | HOUSTON | TX | 77029 |
| MULE SERVICES, LLC | 1361 DUCHAMP ROAD | ST. MARTINVILLE | LA | 70582 |
| OCEAN TECHNICAL SERVICES, LLC | 2600 SOUTH SHORE BLVD., SUITE 300 | LEAGUE CITY | TX | 77573 |
| OCEANWIDE | PO BOX 59607 | LIMMASOL | | CYPRUS |
| OFFSHORE MEDICAL LOGISTICS LLC | 107 WALL BLVD, | GRETNA | LA | 70056 |
| ORACLE AMERICA INC. | PO BOX 203448 | DALLAS | TX | 75320 |

| | | | | |
|---|---|---|---|---|
| PHARMA-SAFE INDUSTRIAL SERVICES | 3639 AMBASSADOR CAFFERY PKWY SUITE 500 | LAFAYETTE | LA | 70503 |
| PROSERV - MARINE TECH | PO BOX 204311 | DALLAS | TX | 75320 |
| R.SHEALOR/DBA HR SENSE | 10007 DOLIVER | HOUSTON | TX | 77042 |
| RANGER ENVIRONMENTAL SERVICES, LLC | 10601 HWY 43 NORTH | CREOLA | AL | 36525 |
| RAPIDLOGGER SYSTEMS LLC | 10700 CORPORATE DRIVE SUITE 108 | STAFFORD | TX | 77477 |
| RECOVERED ENERGY, INC. | 11455 N. RIO VISTA RD. | POCATELLO | ID | 83202 |
| REDFISH RENTAL OF BELLE CHASSE - 8 | PO BOX 844541 | BOSTON | MA | 02284 |
| RETIF OIL & FUEL, LLC | PO BOX 919138 | DALLAS | TX | 75931 |
| REVIDNAV MARINE CONSULTING DBA RUSSELL VANDIVER | 16225 LEWIS STREET | JERSEY VILLAGE | TX | 77040 |
| RICARDO RODRIGUEZ | 121 N.POST OAK LANE, 905 | HOUSTON | TX | 77024 |
| SCURLOCK | 1903 GRAND CAILLOU RD | HOUMA | LA | 70363 |
| SMITH MANUS | 2307 RIVER ROAD SUITE 200 | LOUISVILLE | KY | 40206 |
| SMITH MARITIME, INC. | PO BOX 188 | GREEN COVE SPRINGS | FL | 32043 |
| SOFTCHOICE CORPORATION | 314 W. SUPERIOR STREET SUITE 402 | CHICAGO | IL | 60610 |
| SPEEDCAST COMMUNICATIONS, INC. | 4400 S. SAM HOUSTON PKWY E | HOUSTON | TX | 77048 |
| SUN COAST MATERIALS, LLC | PO BOX 31001-2542 | PASADENA | CA | 91110 |
| TAYLORS | PO BOX 81154 | LAFAYETTE | LA | 70598 |
| TEXTRON FINANCIAL CORPORATION | 26096 NETWORK PLACE LOCKBOX #26096 | CHICAGO | IL | 60673 |
| TRINITY CATERING, INC. | 219 CORPORATE DRIVE | HOUMA | LA | 70360 |
| ULTIMTE SOFTWARE | 2000 Ultimate Way | WESTON | FL | 33326 |
| UNITED RENTALS NORTH AMERICA, INC | PO BOX 840514 | DALLAS | TX | 75284 |
| UNITED VISION LOGISTICS | 4021 AMBASSADOR CAFFERY PKWY SUITE 200 BLDG A | LAFAYETTE | LA | 70503 |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | PO BOX 409548 | ATLANTA | GA | 30384 |
| US COATINGS, LLC | PO BOX 1019 | SATSUMA | AL | 36572 |
| VERSABAR | 11349 FM 529 ROAD | HOUSTON | TX | 77041 |

| | | | | |
|---|---|---|---|---|
| VISION SERVICE PLAN | PO BOX 742788 | LOS ANGELES | CA | 90074 |
| WEST JEFFERSON INDUSTRIAL MEDICINE, LLC | 107 WALL BLVD. SUITE A | GRETNA | LA | 70056 |
| WHITE OAK GLOBAL ADVISORS, LLC | 3 EMBARCADERO CENTER, SUITE 550 | SAN FRANCISCO | CA | 94111 |

## EXHIBIT B(iii)

### Claims Related to Insiders, the Prepetition Agent, or any Prepetition Secured Parties

Exhibit B(iii) includes claims and Causes of Action the Debtors expressly retain against any and all Insiders, the Prepetition Agent, or any Prepetition Secured Parties. Unless otherwise released under Article X of the Plan, the Debtors, the Committee and the Estates expressly reserve all Causes of Action against or related to all Insiders, the Prepetition Agent, or any Prepetition Secured Parties, regardless of whether such Entity or cause of action is specifically included on Exhibit B(iii). Additionally, On September 25, 2019, each of the Debtors filed its Schedules (defined above), which disclosed certain payments to insiders within the year prior to these Chapter 11 Cases. Unless otherwise released under Article X of the Plan, the Debtors, the Committee and the Estates expressly reserve all claims and Causes of Action against any Entity disclosed on the Schedules of each Debtor, in each case to the extent such Entities are claims related to Insiders, the Prepetition Agent, or any Prepetition Secured Parties.

# Epic Companies, LLC, et al.

Retained Causes of Action
Claims Related to Insiders, the Prepetition Agent, or any Prepetition Secured Parties

| Name of Counter Party | Address | | | |
|---|---|---|---|---|
| ACQUA LIANA CAPITAL PARTNERS | 192 SUMMERFIELD COURT, SUITE 203 | ROANOKE | VA | 24019 |
| BECK, KENNETH D | 77 SUNDOWN RIDGE PLACE | THE WOODLANDS | TX | 77381 |
| CLARKE INVESTMENTS, LLC | 192 SUMMERFIELD COURT SUITE 203 | ROANOKE | VA | 24019 |
| CLARKE INVESTMENTS GROUP CORP. | 192 SUMMERFIELD COURT SUITE 203 | ROANOKE | VA | 24019 |
| CLARKE, TOM | 192 SUMMERFIELD COURT SUITE 203 | ROANOKE | VA | 24019 |
| GILBERT, ROB | 427 W 31ST STREET | HOUSTON | TX | 77018 |
| LAM, BILL | 32711 WHITEHAVEN PLACE | FULSHEAR | TX | 77441 |
| LAM, JIM | 12538 ROCKY KNOLL | HOUSTON | TX | 77077 |
| OAKRIDGE ENERGY PARTNERS | 1080 ELDRIDGE PARKWAY SUITE 1300 | HOUSTON | TX | 77077 |
| ORINOCO NATURAL RESOURCES | 192 SUMMERFIELD COURT SUITE 203 | ROANOKE | VA | 24019 |
| PINTAR, PETER | 526 S 3RD STREET | BELLAIRE | TX | 77401 |
| SPEASE, STEVEN J | 24 W WEDGEWOOD GLEN | THE WOODLANDS | TX | 77381 |
| WHITE OAK GLOBAL ADVISORS, LLC | 3 EMBARCADERO CENTER, SUITE 550 | SAN FRANCISCO | CA | 94111 |
| WILEY, DAVID A. | 2630 TANGLEWILDE ST APT 283 | HOUSTON | TX | 77063 |
| WRIGHT, DAVID C | 2000 BERING DR, STE #700 | HOUSTON | TX | 77057 |
| WRIGHT'S WELL CONTROL, LLC | 2000 BERING DR, STE #700 | HOUSTON | TX | 77057 |

## EXHIBIT B(iv)

### Claims Related to Accounts Receivable and Accounts Payable

Exhibit B(iv) includes claims against Entities that currently owe money to the Debtors or their Estates. Unless otherwise released under Article X of the Plan, the Debtors and the Estates expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or the Estates regardless of whether such Entity is included on Exhibit B(iv). Additionally, on September 25, 2019, each of the Debtors filed its Schedules, which included, among other things, claims and Causes of Action each of the Debtors had reflected as a liability on its books and records. The Debtors and the Estates expressly reserve all claims and Causes of Action against any Entity listed on Schedule A/B, Schedule D, and Schedule E/F of each Debtor to the extent such Entities owe or may in the future owe money to the Debtors, the Estates or Reorganized Debtors. Furthermore, unless otherwise released under Article X of the Plan, the Debtors and the Estates expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors, the Estates or Reorganized Debtors owe money to them.

# Epic Companies, LLC, et al.

Retained Causes of Action
Claims Related to Accounts Receivable

| Name of Counter Party | Address | | | |
|---|---|---|---|---|
| ACBL TRANSPORT SERVICES, LLC | 1701 E. MARKET ST. | JEFFERSONVILLE | IN | 47130 |
| AM/NS CALVERT LLC | 1 STEEL DR. | CALVERT | AL | 36513 |
| BLAKE MARINE GROUP, LLC | 4900 GRAND AVE | PITTSBURGH | PA | 15225 |
| GREAT LAKES DREDGE AND DOCK COOMPANY, LLC | 2122 YORK ROAD | OAK BROOK | IL | 60523 |
| HELIX ENERGY SOLUTIONS GORUP, INC | 3505 W SAM HOUSTON PKWY N, STE 400 | HOUSTON | TX | 77043 |
| HOC OFFSHORE S. DE RL DE CV | CALLE 67 NO 8 ENTRE 26 Y 2-A PLAYA NORTE | CAMPECHE | MX | CP 24115 |
| INDUSTRIAL OILFIELD AND MARINE COMPONENTS INC | 906 S PERSIMMON ST. | TOMBALL | TX | 77375 |
| JAVELIN GLOBAL COMMODITIES (UK) LTD | 7 HOWICK PLACE | LONDON | UK | SW1P 1 BB |
| OCEAN CONSTRUCTOR STABBERT MARINE | 2629 NW 54TH ST. #201 | SEATTLE | WA | 98107 |
| RAYTHEON ENERGY LTD | 807 WINTER ST. | WALTHAM | MA | 02451 |
| SA RECYCLING LLC | 2411 N GLASSELL ST. | ORANGE | CA | 92865 |
| SAPURAKENCANA MEXICANA SAPI DE CV | AV ISLA DE TRIS 281 | CAMPECHE | MX | 24030 |
| TOM CLARKE USCGC BRAMBLE LLC | 1080 ELDRIDGE PKWY, STE 1300 | HOUSTON | TX | 77077 |
| VERSABAR | 11349 FM 529 ROAD | HOUSTON | TX | 77041 |
| ENERGY XXI GULF COAST | 1021 MAIN ST. #2626 | HOUSTON | TX | 77022 |
| KEWA US | 725 COOL SPRINGS BLVD, STE 600 | FRANKLIN | TX | 37067 |
| MARITECH RESOURCES | 25025 I-45 N, STE 600 | THE WOODLANDS | TX | 77380 |
| MODERN AMERICAN RECYCLING SERVICE, INC | 1100 POYDRAS ST., STE 2250 | NEW ORLEANS | LA | 70163 |
| MONFORTE EXPLORATION LLC | 3200 SOUTHWEST FREEWAY, STE 3300 | HOUSTON | TX | 77027 |
| NORTHSTAR OFFSHORE GROUP LLC | 11 GREENWAY PLAZA, STE 2880 | HOUSTON | TX | 77046 |
| OAKRIDGE ENERGY PARTNERS | 4613 OLD JACKSBORO HIGHWAY | WICHITA FALLS | TX | 76302 |
| SANARE ENERGY PARTNERS LLC | 11 GREENWAY PLAZA, STE 2880 | HOUSTON | TX | 77046 |

## EXHIBIT C

### Designated Litigation Counsel

Reid Collins & Tsai LLP is hereby designated as the Designated Litigation Counsel to pursue Retained Causes of Action against any Insiders, the Prepetition Agents, and/or the Prepetition Secured Parties on a contingency fee basis. Munsch Hardt Kopf & Harr, P.C. also is hereby designated as supporting Designated Litigation Counsel on a contingency fees basis to provide assistance with respect to Retained Causes of Action held against Insiders.

10453840v3