**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **EPIC COMPANIES, LLC,** *et al.,* | § | **Case No. 19-34752** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**ORDER APPROVING PLAN PROPONENTS'**
**DISCLOSURE STATEMENT AND CONFIRMING PLAN**
**PROPONENTS' JOINT PLAN OF LIQUIDATION OF EPIC COMPANIES, LLC AND**
**ITS DEBTOR SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Epic Companies, LLC and certain of its subsidiaries, as debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors") having filed:

    a.    on August 26, 2019 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.    on February 13, 2020, together with the Official Committee of Unsecured (the "Committee," and collectively with the Debtors for purposes of the Plan, the "Plan Proponents"), the *Joint Plan of Liquidation of Epic Companies, LLC and Its Debtors Subsidiaries under Chapter 11 of the Bankruptcy Code* [Docket No. 581], as such has been modified or amended consistent with this Order (the "Plan"),[2] attached as **Exhibit A**;

    c.    on February 13, 2020, also together with the Committee, the *Disclosure Statement for Joint Plan of Liquidation of Epic Companies, LLC and Its Debtors Subsidiaries under Chapter 11 of the Bankruptcy Code* [Docket No. 582] (the "Disclosure Statement");

    d.    on March 17, 2020, also together with the Committee, the *Notice of Filing Plan Supplement* [Docket No. 628] (the "Plan Supplement"); and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

e.      on March 30, 2020, the *Plan Proponents' Memorandum of Law in Support of Confirmation of the Chapter 11 Plan of Liquidation* (the "<u>Confirmation Brief</u>");

And the Bankruptcy Court having:

a.      entered its *Order (I) Conditionally Approving Disclosure Statement; (II) Approving Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, and (III) Granting Related Relief* [Docket No. 592] (the "<u>Disclosure Statement Order</u>"), which granted conditional approval of the Disclosure Statement, approved the solicitation procedures, vote tabulation procedures, and forms of ballots, and set approval of the Debtors' Disclosure Statement and Plan for a combined hearing on April 1, 2020 at 2 p.m. (the "<u>Combined Hearing</u>");

b.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c.      held the Combined Hearing;

a.      heard the statements and arguments made by counsel in respect of Confirmation;

b.      considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

d.      overruled any and all objections to the Plan or Disclosure Statement and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein.

The Bankruptcy Court finds that notice of the Combined Hearing and the opportunity for any party in interest to object to the Disclosure Statement, the Plan, and/or Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan. The Bankruptcy Court further finds that the transactions contemplated under the Plan, the legal and factual bases set forth in the documents filed in support of Confirmation, the evidence proffered or adduced by counsel at the Combined Hearing, and the entire record of the Chapter 11 Cases establish just cause for the relief granted herein. After due deliberation and finding good cause to

10346439v5

grant the relief in this Order, the Bankruptcy Court makes the following Findings of Fact and Conclusions of Law:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

a.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. The findings and conclusions of the Bankruptcy Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing are incorporated as if set forth herein. In accordance with Bankruptcy Rule 7052, to the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

<u>**Jurisdiction and Venue**</u>

b.      <u>Jurisdiction and Core Proceeding</u>. The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

c.      <u>Eligibility for Relief</u>. The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

d.      <u>Retention of Jurisdiction</u>. The Bankruptcy Court finds and concludes that the Bankruptcy Court's retention of jurisdiction as set forth in Article XII of the Plan comports with 28 U.S.C. § 1334. The Bankruptcy Court further finds that the Debtors are proper debtors under section 109 of the Bankruptcy Code.

**Notice, Solicitation and Acceptance**

c.        <u>Adequate Notice of Combined Hearing</u>. The Bankruptcy Court finds and concludes that under the particular circumstances (a) proper, timely and adequate notice of the Disclosure Statement, Plan, Plan Supplement, and time for filing objections to the Disclosure Statement and Plan, together with all deadlines for voting to accept or reject the Plan, was provided, and (b) proper, timely and adequate notice of the Combined Hearing was provided to all Holders of Claims and Interests. No other or further notice of approval of the Disclosure Statement, Confirmation of the Plan or the Combined Hearing is necessary or required.

d.        <u>Time for Solicitation</u>. The period during which the Plan Proponents solicited acceptances to the Plan was a reasonable and adequate period of time and the manner of such solicitation was an appropriate process for creditors to have made an informed decision to accept or reject the Plan.

e.        <u>Adequate Information</u>. The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.

f.        <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Bankruptcy Court finds and concludes that the Plan Proponents have solicited acceptances of the Plan in good faith, in compliance with the Bankruptcy Code and in accordance with the Disclosure Statement Order. The Plan Proponents and each of their agents, managers, officers, employees, attorneys, and other professionals are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan and are therefore entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and are not, and shall not be, on account of such issuance or solicitation, liable at any time for the violation of any

4

10346439v5

law, rule, or regulation governing the solicitation of acceptances of the Plan or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, and any and all related documents. The Debtors have complied with the Disclosure Statement Order.

g.      Voting. As evidenced by the *Affidavit of Service of Solicitation Materials* [Docket No. 607] and the *Declaration of Joseph Arena of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries under Chapter 11 of the Bankruptcy Code* [Docket No. 645], votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

**Compliance with Section 1129 of the Bankruptcy Code**

h.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

(i)      Proper Classification and Contents of Plan (11 U.S.C. §§ 1122 and 1123). In accordance with sections 1122(a) and 1123(a) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the Plan: (a) in addition to Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which need not be classified, classifies nine Classes of Claims and Interests for the Estates' creditors and interest holders. The Claims and Interests allocated to each Class are substantially similar to other Claims and Interests, as applicable, in each such Class, and such Classes do not unfairly discriminate among Holders of Claims and Interests; (b) specifies Classes of Claims and Interests that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Interests that are Impaired under the Plan; (d) provides the same treatment for each Claim or Interest of a particular Class, unless the Holder of a particular Claim or Interest agreed to less favorable treatment of its respective Claim or Interest; (e) provides for adequate means for the Plan's implementation; (f) does not provide for the issuance of non-voting equity securities; and (g) contains only provisions that are consistent with the interests of

5

creditors and equity security holders and with public policy with respect to the manner of selection of the Liquidating Trustee. Following the Effective Date, the Liquidating Trustee shall take such actions as may be required under state law to wind down the Debtors' affairs and effectuate dissolution of each corporate entity. Based on the foregoing, the Plan satisfies the requirements of sections 1122(a) and 1123(a) of the Bankruptcy Code.

(ii)     <u>Permissive Contents of Plan (11 U.S.C. § 1123(b))</u>. As permitted by section 1123(b) of the Bankruptcy Code, the Plan: (a) impairs the rights of the Holders of certain Classes of Claims and Interests; (b) provides for rejection of all Executory Contracts and Unexpired Leases not assumed or rejected as of the Effective Date; (c) provides for the settlement or adjustment of Claims or Interests owned by the Debtors or their Estates; (d) incorporates procedures for resolving disputed, contingent and unliquidated Claims; (e) contains procedures for making Distributions to Allowed Claims and establishing reserves for Claims that have not become Allowed Claims; (f) releases certain Claims and Causes of Action against specified parties; (g) enjoins certain acts by Holders of Claims or Interests; (h) exculpates the Debtors, the Committee and their Professionals from certain Claims and Causes of Action; and (i) includes other appropriate provisions consistent with the applicable provisions of the Bankruptcy Code. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates. Based on the foregoing, the Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.

i.     <u>Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. In accordance with section 1129(a)(2) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and all related documents and notices, and in soliciting and tabulating votes on the Plan.

j.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. In accordance with section 1129(a)(3) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, and the

Plan Proponents and each of the constituents involved in negotiating the Plan, and each of their respective members, advisors and professionals, have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan. The Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. All transactions contemplated by the Plan were negotiated and consummated at arm's length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation and solicitation of the Plan. The Debtors filed these Chapter 11 Cases and the Plan Proponents proposed the Plan with legitimate and honest purposes including, among other things, (1) facilitating the efficient and economic resolution of all disputes between the Debtors and the other parties in interest concerning Claims, Distributions, releases and payment of Professional Fees; (2) maximizing the recovery to Holders of Allowed Claims, including those in Class 5 consisting of General Unsecured Claims, under the circumstances of these Chapter 11 Cases; and (3) aiding the orderly liquidation and Distribution of the Debtors' remaining assets. Furthermore, the Plan is in the best interests of the Debtors' Estates and Holders of Claims and Interests.

k.      <u>Releases, Exculpations and Injunctions</u>. The releases, exculpations, and injunction provisions set forth in Article X of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such provisions (a) are within the jurisdiction of the Bankruptcy Court; (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) are integral elements of the Plan and the resolution of the Chapter 11 Cases, such that the failure to effect such provision would seriously impair the Debtors' ability to confirm the Plan; (c) confer material benefits on, and are in the best interests, of the Debtors, the

Debtors' Estates, and Holders of Claims and Interests; (e) are, *inter alia*, supported by extensive consideration; (f) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (g) are consistent with sections 105, 1123, 1129, and other applicable sections of the Bankruptcy Code.

l.       Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). In accordance with section 1129(a)(4) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that all payments made or to be made by the Debtors for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court retains jurisdiction to hear and determine all applications for Professional Fees incurred on or before the Effective Date. Reasonable fees and expenses incurred by the Liquidating Trustee and Professionals retained by the Liquidating Trustee after the Effective Date shall be paid in Cash from the Liquidating Trust Assets, in the ordinary course of business, without any further notice to or action or approval of the Bankruptcy Court, in accordance with the Plan and the Liquidating Trust Agreement.

m.       Identity of Officers (11 U.S.C. § 1129(a)(5)). In accordance with section 1129(a)(5) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable. The Plan Proponents have disclosed the identity of the Liquidating Trustee in the Plan. The Plan Proponents have disclosed in the

8

Liquidating Trust Agreement that Scott D. Brownell, Drew McManigle, and Bryan Ryniker will serve as members of the Oversight Board (with Raymond Riddle serving as the Designated Successor), and have disclosed that their compensation may not exceed a rate of $675 per hour.

n.      <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. In accordance with section 1129(a)(7) of the Bankruptcy Code, based on the liquidation analysis attached to the Disclosure Statement, the Bankruptcy Court finds and concludes that with respect to Impaired Classes of Claims or Interests (*i.e.*, Classes 3, 4, 5, 6, 7, 8, and 9), each Holder of a Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

o.      <u>Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8))</u>. In accordance with section 1129(a)(8) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that: (1) Class 1, consisting of Other Secured Claims and Class 2, consisting of Other Priority Claims, are not Impaired under the Plan and are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code; (2) Class 3, consisting of Prepetition Senior Credit Agreement Claims, Class 4, consisting of Prepetition Junior Credit Agreement Claims, and Class 5, consisting of General Unsecured Claims, are Impaired Classes that have accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code and the Disclosure Statement Order; and (3) Class 6, consisting of Subordinated Claims, Class 7, consisting of Intercompany Claims, Class 8, consisting of Intercompany Interests, and Class 9, consisting of Epic Interests, are Impaired Classes deemed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code. With respect to Class 4 and any class that has rejected the Plan, the

10346439v5

Bankruptcy Court finds and concludes that, pursuant to sections 1129(b)(1) and (2) of the Bankruptcy Code, the Plan does not discriminate unfairly, and is fair and equitable because subject to the Challenge, the Holder in Class 4 retains its junior liens and no Holder junior to the Holder in Class 4 or any class that has rejected the Plan will receive or retain any property under the Plan. Accordingly, the Plan can and should be confirmed under section 1129(b) of the Bankruptcy Code with respect to these Classes.

p.      <u>Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The Bankruptcy Court finds and concludes that the Plan's treatment of Claims of a kind specified in sections 507(a)(1) through (8) of the Bankruptcy Code satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

q.      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. In accordance with section 1129(a)(10) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the following Classes of Claims that are Impaired under the Plan have voted to accept the Plan: Class 3 (Prepetition Senior Credit Agreement Claims), Class 4 (Prepetition Junior Credit Agreement Claims), and Class 5 (General Unsecured Claims).

r.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan contemplates the liquidation of the Debtors' and Estates' remaining assets for Distribution in accordance with the Plan. The Plan provides sufficient measures for the funding of Distributions to be made under the Plan. Confirmation of the Plan is not likely to be followed by the liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

s.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. In accordance with section 1129(a)(12) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that, to the

extent that fees payable to the U.S. Trustee under 28 U.S.C. § 1930 have not been paid, the Plan provides for the payment of all such fees on the Effective Date and as they come due after the Effective Date.

t.     Other Provisions of 11 U.S.C. 1129(a). The Bankruptcy Court finds and concludes that the provisions of sections 1129(a)(6), (a)(13), (a)(14), (a)(15), and (a)(16) of the Bankruptcy Code are not applicable to the Debtors or their Estates.

u.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Plan does not discriminate unfairly and is fair and equitable with respect to Class 4 and any Class that has rejected the Plan, as required by section 1129(b)(1) of the Bankruptcy Code. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes.

v.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, the Bankruptcy Court finds and concludes that section 1129(c) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

w.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The Bankruptcy Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.[3]

x.     Based on the foregoing, the Plan Proponents have met their burden of proving the elements of section 1129 of the Bankruptcy Code.

---

[3] The Bankruptcy Court finds and concludes that section 1129(e) of the Bankruptcy Code does not apply to the Debtors or the Plan.

10346439v5

**Modifications to the Plan**

y.       The Bankruptcy Court finds and concludes that all modifications made to the Plan after solicitation of votes on the Plan had commenced, as reflected in this Order, or as set forth on the record at the Combined Hearing, satisfy the requirements of section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, are not material or do not adversely affect the treatment and rights of the Holders of any Claims or Interests under the Plan who have not otherwise accepted such modifications. Accordingly, the Plan Proponents have satisfied section 1127(c) of the Bankruptcy Code and Bankruptcy Rule 3019 with respect to the Plan, as modified, and Holders of Claims or Interests that have accepted or rejected the Plan (or are deemed to have accepted or rejected the Plan) are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of this Order, pursuant to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019.

**Exemptions**

z.       Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a)). The Bankruptcy Court finds and concludes that, in accordance with section 1146(a) of the Bankruptcy Code, any transfers from the Debtors or their Estates to the Liquidating Trust or any other Entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment. The appropriate federal, state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents as set forth in the Plan without the payment of any such tax or governmental assessment.

10346439v5

**Transactions Pursuant to the Plan**

aa.    <u>Rule 9019 Settlement; Releases and Discharges</u>. The Bankruptcy Court finds and concludes that pursuant to Bankruptcy Rule 9019 and in consideration of the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Impaired Claims against and Interests in the Debtors and their Estates. Such compromises and settlements are made in exchange for consideration and are in the best interests of the Holders of Impaired Claims and Interests, are within the range of possible litigation outcomes, are fair, equitable, reasonable, and are integral elements of the resolution of these Chapter 11 Cases in accordance with the Plan.

bb.    <u>Release and Exculpation</u>. The failure to effect the release and exculpation provisions of the Plan would impair the ability to confirm the Plan. Accordingly, the compromises and settlements embodied in the release and exculpation provisions described in Article X of the Plan are approved and incorporated by reference into and as an integral part of this Order.

cc.    <u>Plan Provisions Valid and Binding</u>. The Bankruptcy Court finds and concludes that, upon entry of this Order, each term and provision of the Plan and the Plan Supplement, including the Liquidating Trust Agreement, is valid, binding, and enforceable pursuant to its terms.

dd.    <u>Plan Documents Valid and Binding</u>. The Bankruptcy Court finds and concludes that the Liquidating Trust Agreement and all other documents reasonably necessary to implement the Plan shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements. The Bankruptcy Court further finds and concludes that the Liquidating Trust Agreement and all other documents reasonably necessary to implement the Plan are in the

best interests of the Debtors, their Estates and the Liquidating Trust and have been negotiated in good faith and at arm's length.

ee.    Executory Contracts and Unexpired Leases. The Bankruptcy Court finds and concludes that the Debtors have exercised reasonable business judgment in determining to reject Executory Contracts and Unexpired Leases pursuant to Article VI of the Plan.

ff.    Compliance with Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Bankruptcy Court finds and concludes that the Plan is dated and the entities that submitted it, and filed it, are identified.

gg.    Deemed Consolidation. The deemed consolidation of the Debtors' Estates provided for in the Plan (*i.e.* solely for the purposes of voting and receiving Distributions) is in the best interests of the Debtors and their Estates. All of the Debtors are owned by the same Debtor parent and shared operations and certain financial obligations.

## Miscellaneous Provisions

hh.    The Bankruptcy Court finds that Confirmation of the Plan is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and all other parties in interest.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is **ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    Disclosure Statement. The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and is **APPROVED** on a final basis, and all objections, statements, and reservations of rights with respect to the Disclosure Statement are overruled.

2.    Confirmation. The Plan, as attached to this Order as **Exhibit A** and with the modifications and clarifications embodied in this Order, is hereby **CONFIRMED**. The terms of

this Order are controlling if any inconsistency exists between the Plan, the Liquidating Trust Agreement, and this Order. All objections and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived, or settled are overruled on the merits. The failure specifically to include or to refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

3.      <u>Binding Effect</u>. The Plan, its provisions and this Order shall be, and hereby are, binding upon the Debtors and any creditor or equity security holder of the Debtors, whether or not the Claim or Interest of such creditor or equity security holder is Impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan.

4.      <u>Deemed Consolidation</u>. The deemed consolidation solely for purposes of voting and determining Distributions under the Plan, as described more particularly in Article V.A of the Plan, is **APPROVED**. Each Holder of an Allowed Claim who asserts a Claim with an identical basis against multiple Debtors shall be entitled to a single satisfaction of such Claims. Further, this deemed consolidation will not affect (other than for purposes related to funding Distributions under the Plan) the legal and organizational structure of the Debtors or pre- and post-Petition Date guaranties, Liens, and security interests, or Distributions out of any insurance policies or proceeds of policies. No Holder of an Allowed Claim shall receive more favorable treatment on account of such Claims had this deemed consolidation not been effected.

5.      <u>Plan Classification Controlling</u>. The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of Distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or

10346439v5

Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors, the Liquidating Trustee or Holders of Claims or Interests except for voting purposes.

6.      <u>Allowance of Claims</u>. The deemed allowance of a Claim for voting purposes shall in no way limit the rights of any party to challenge any Claim in accordance with the Bankruptcy Code, Bankruptcy Rules, the Plan, and this Order.

7.      <u>Liquidating Trustee</u>. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in this Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets, pursuant to the Plan, for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee are set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall be required to perform his duties as set forth in the Plan and the Liquidating Trust Agreement.

8.      <u>Authority to Pursue, Settle, or Abandon Retained Causes of Action</u>. Subject to Article V.F of the Plan, from and after the Effective Date, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Liquidating Trustee pursuant to

10346439v5

the Plan, this Order, and the Liquidating Trust Agreement. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code, subject to any approval or consultation rights set forth in the Plan or Liquidating Trust Agreement. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors or the Committee. The Liquidating Trustee reserves and retains any and all claims and rights against any and all third parties to enforce the Liquidating Trust Assets whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date.

9. <u>Plan Distributions</u>. The Liquidating Trustee shall make payments and Distributions pursuant to the procedures established by Article VII of the Plan. Any payments or Distributions to be made to Claimants as required by the Plan shall be made only to the Holders of Allowed Claims. Any payments or Distributions to be made pursuant to the Plan shall be made on or about the Effective Date, or as soon thereafter as practicable, except as otherwise provided for in the Plan. Any payment, delivery or Distribution by the Liquidating Trustee pursuant to the Plan, to the extent delivered by United States mail, shall be deemed made when deposited into the United States mail. Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims. No payments or other Distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed. The Liquidating Trustee in his discretion may establish reserves for Disputed Claims,

and defer or delay Distributions to ensure an equitable and ratable Distribution to Holders of Allowed Claims, in accordance with the terms of the Plan and the Liquidating Trust Agreement.

10.     <u>Releases, Exculpation, Injunction</u>. The terms and conditions of the releases set forth in Article X of the Plan, the exculpation set forth in Article X.E of the Plan, and the injunction set forth in Article X.F of the Plan are approved as reasonable, fair, and equitable and in the best interests of the Debtors and their Estates and are authorized in their entirety. For the avoidance of doubt, nothing in the Plan or this Order releases, exculpates, or discharges any of the following persons or entities of or from any defense, demand, claim or cause of action held by the Debtors or their Estates, or adversely impacts or diminishes in any manner any such causes of action, all of which are Retained Causes of Action vested in the Liquidating Trust as Liquidating Trust Assets pursuant to the Plan and this Order: Thomas Clarke, Ana Clarke, David Wiley, Clarke Investments, LLC, Orinoco Natural Resources, LLC, Oakridge Energy Partners LLC, any Insiders as defined in the Plan, any Prepetition Agents and/or any Prepetition Secured Parties. Similarly, for the avoidance of doubt, nothing in the Plan or this Order releases, exculpates, or discharges any of the following persons or entities from any defense, demand, claim or cause of action held by any non-Debtor, or adversely impacts or diminishes in any manner any such non-Debtor causes of action: Thomas Clarke, Ana Clarke, David Wiley, Clarke Investments, LLC, Orinoco Natural Resources, LLC, Oakridge Energy Partners LLC, any Insiders as defined in the Plan, any Prepetition Agents and/or any Prepetition Secured Parties.

11.     <u>Executory Contracts and Unexpired Leases</u>. Pursuant to Article VI of the Plan, all Executory Contracts and Unexpired Leases not otherwise assumed or previously rejected shall be deemed automatically rejected as of the Effective Date. Entry of this Order shall constitute a Bankruptcy Court order approving the rejections.

12.     <u>Disputed, Contingent and Unliquidated Claims</u>. Any Disputed, contingent or unliquidated Claim shall be resolved in accordance with the procedures set forth in Article VIII of the Plan. As soon as practicable, but no later than one year after the Effective Date unless extended by the Bankruptcy Court, the Liquidating Trustee may file objections with the Bankruptcy Court and serve such objections on the creditors holding the Claims to which such objections are made.

13.     <u>U.S. Trustee Reporting and Payment of Fees</u>. The Debtors shall continue to file with the Bankruptcy Court separate monthly operating reports through the Effective Date. Following the Effective Date, the Liquidating Trust shall be responsible for filing with the Bankruptcy Court quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the U.S. Trustee. All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in full in Cash by the Debtors (before the Effective Date) or the Liquidating Trustee (on and after the Effective Date) for each quarter (including any fraction therein) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

14.     <u>Transfers by Debtors; Vesting of Assets</u>. All transfers of property of the Estates, including, without limitation, the vesting of the Liquidating Trust Assets in the Liquidating Trust, (a) are legal, valid and effective transfers of property, (b) vest the transferees with good title to such property free and clear of all Claims, Liens, interests, charges or other encumbrances, except as expressly provided in the Plan or this Order, (c) do not and will not constitute voidable transfers under the Bankruptcy Code or applicable law, (d) do not and will not subject the Liquidating Trust or the Liquidating Trustee to any liability by reason of such transfer under the Bankruptcy Code or under applicable law, including without limitation, any

laws affecting successor, transferee, or stamp or recording tax liability, and (e) are for good consideration and value.

15. <u>Cancellation of Interests</u>. Pursuant to Article V.C of the Plan, except as otherwise specifically provided in the Plan or this Order, on the Effective Date, all Interests shall be deemed automatically cancelled, discharged and surrendered and shall be of no further force, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

16. <u>Appointment of Liquidating Trustee; Plan Implementation by Liquidating Trustee</u>. Pursuant to the Plan Supplement, the selection and appointment of Jeffrey T. Varsalone to serve as the Liquidating Trustee from and after the Effective Date, as set forth in the Plan and the Liquidating Trust Agreement, is hereby approved. The proposed compensation for the Liquidating Trustee is hereby approved. All implementing actions required or contemplated by the Plan, including but not limited to the appointment of the Liquidating Trustee and the vesting of the Liquidating Trust Assets in the Liquidating Trust, are hereby authorized and approved in all respects. The Liquidating Trustee shall be authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan or any exhibits or supplement thereto, without further order of the Bankruptcy Court except as specifically required in the Plan or Liquidating Trust Agreement. From and after the Effective Date, the Liquidating Trust may manage its affairs and property in accordance with the Plan and the Liquidating Trust Agreement without supervision of or approval by the Bankruptcy Court, free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan, Liquidating Trust Agreement or this Order.

10346439v5

17.     <u>Term of Stays</u>. Except as otherwise provided in the Plan, all injunctions and the stay pursuant to section 362 of the Bankruptcy Code, shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

18.     <u>Setoffs</u>. Pursuant to Article X.H of the Plan, each Debtor and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Causes of Action of any nature that such Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Liquidating Trustee of any such Retained Causes of Action that such Debtor or Liquidating Trustee may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Retained Cause of Action of the Debtor unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.

19.     <u>Recoupment</u>. Pursuant to Article X.I of the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any asset or Retained Cause

of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date.

20.     <u>United States</u>. Nothing in this Order or the Plan discharges, releases, precludes, or enjoins any liability to a Governmental Unit on the part of any non-Debtor. Nothing in this Order or the Plan shall affect any valid right of setoff or recoupment of any Governmental Unit.

21.     <u>Mississippi Department of Revenue</u>. Notwithstanding anything in the Plan to the contrary: (i) the Mississippi Department of Revenue (the "<u>MDOR</u>") shall not be required to file a request for payment in the Chapter 11 Cases for any Administrative Claims with respect to liabilities described in sections 503(b)(1)(B) and (C) of the Bankruptcy Code; (ii) to the extent provided by section 511 of the Bankruptcy Code, the Debtors shall pay the MDOR postpetition interest on any Allowed Priority Tax Claim or Allowed Administrative Claim at the applicable rate of interest under nonbankruptcy law; (iii) the MDOR may amend the amount of any proof of claim that was Filed by the Claims Bar Date based on a timely audit without seeking leave from the Bankruptcy Court; (iv) the Chapter 11 Cases shall have no effect on the MDOR's rights as to non-Debtor third parties; (v) nothing shall preclude any valid right of setoff under section 553 of the Bankruptcy Code or right of recoupment of the MDOR against any of the Debtors; and (vi) nothing shall affect or relieve the Debtors' obligations to timely submit returns and remit payment for all taxes due or coming due under applicable Mississippi state law after the Effective Date; *provided*, that notwithstanding anything contained herein to the contrary, the Court shall retain jurisdiction to determine the extent, priority and allowance of the MDOR's Claims.

22.     <u>Freeport-McMoRan</u>. Notwithstanding any other language in the Plan or this Order, all rights of Freeport-McMoRan Oil and Gas LLC and its affiliates (collectively,

22

"FMOG") set forth in the *Order Authorizing and Approving the Sale of Certain Accounts Receivable Free and Clear of Liens, Claims, and Encumbrances* [Docket No. 323] are expressly preserved, including, but not limited to, rights of setoff and recoupment related to such accounts receivable and FMOGs Filed proofs of claim, and all such rights may be asserted in any proceeding involving Retained Causes of Action or any other proceeding related to the Debtors' accounts receivable. Further, notwithstanding Article VIII.E of the Plan, FMOG may amend their Filed proofs of claim after the Effective Date without seeking prior leave of the Bankruptcy Court or the Liquidating Trustee; *provided, however,* that any amendment to FMOG's Filed claims that seek to reclassify and assert administrative treatment, secured treatment, or priority characterization will require leave of the Bankruptcy Court.

23.     <u>Cypress Pipeline and Process Services, LLC</u>. Notwithstanding anything to the contrary in the Plan or this Order, Proofs of Claim Nos. 10247, 10248, and 10249 (the "<u>Cypress Claims</u>") are not and will not be deemed disallowed or expunged by operation of the Plan or this Order as of the Effective Date. The Debtors, the Liquidating Trustee, and Cypress Pipeline and Process Services, LLC ("<u>Cypress</u>") retain and reserve all rights to assert any arguments in favor of allowance or disallowance of the Cypress Claims, including for the avoidance of doubt, the Debtors' and the Liquidating Trustee's right to object to the Cypress Claims based on the terms of the Claims Bar Date Order and Cypress' rights to assert that the Cypress Claims should be deemed timely filed.

24.     <u>Intercreditor Agreement</u>. For the avoidance of doubt and notwithstanding anything else in the Plan or this Order, that certain Intercreditor and Subordination Agreement dated as of July 22, 2019 by and between the Prepetition Senior Agent and the Prepetition Junior Agent (the "<u>Prepetition Intercreditor Agreement</u>") shall remain in effect as between such parties.

10346439v5

The Prepetition Intercreditor Agreement shall continue to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties. Furthermore, with respect to any distributions received under the Plan, the Prepetition Senior Agent shall be able to enforce the Prepetition Intercreditor Agreement against the Prepetition Junior Agent. Notwithstanding anything to the contrary in this Order, the Prepetition Senior Credit Agreement Claims and the Prepetition Junior Credit Agreement Claims are subject to the Challenge.

25.     Post-confirmation Modifications. Without need for further order or authorization of the Bankruptcy Court, the Plan Proponents or the Liquidating Trustee, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions or modifications set forth in the Plan, the Plan Proponents expressly reserve their respective rights prior to the Effective Date to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII of the Plan.

26.     Order Effective and Enforceable Immediately. Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry.

10346439v5

27.     <u>Substantial Consummation</u>. The Plan shall be deemed to be substantially consummated on the Effective Date.

28.     <u>Notice of the Effective Date</u>. On or before seven (7) days after occurrence of the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court and mail or cause to be mailed to all Holders of Claims and Interests a notice that informs such Holders of: (i) entry of this Order; (ii) the occurrence of the Effective Date; (iii) the Administrative Claims Bar Date, the Professional Claims Bar Date, and the bar date for filing Rejection Damages Claims; and (iv) such other matters as the Debtors deem to be appropriate; *provided, however*, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any Person hereunder. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

29.     <u>Order Nonseverable</u>. The provisions of this Order are nonseverable and mutually dependent.

30.     <u>Captions and Headings</u>. Captions and headings herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Order.

31.     <u>Final Order</u>. This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

32.     <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the

10346439v5

governing law of each such agreement shall control); *provided, however*, that corporate governance matters relating to the Debtors shall be governed by the laws of their respective jurisdictions of incorporation.

    **Signed: _____, 2020.**

                                                                 _____

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

26

10346439v5

## **EXHIBIT A**

**Plan of Liquidation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EPIC COMPANIES, LLC, *et al.*, | § | Case No. 19-34752 |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

JOINT PLAN OF LIQUIDATION OF EPIC COMPANIES, LLC
AND ITS DEBTOR SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PORTER HEDGES LLP**
John F. Higgins
Eric M. English
M. Shane Johnson
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:(713) 226-6648
Facsimile: (713) 226-6628
Email:      jhiggins@porterhedges.com
            eenglish@porterhedges.com
            sjohnson@porterhedges.com

*Counsel to the Debtors and Debtors in Possession*

**MUNSCH HARDT KOPF & HARR, P.C.**
Jay H. Ong
Christopher D. Johnson
John D. Cornwell
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
Email:      jong@munsch.com
            cjohnson@munsch.com
            jcornwell@munsch.com

*Counsel to the Official Committee of Unsecured Creditors*

Dated: February 13, 2020

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 23603 W. Fernhurst Drive, Katy, Texas 77494.

**TABLE OF CONTENTS**

Page

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME
AND GOVERNING LAW......................................................................... 1
 A. Defined Terms .......................................................................................... 1
 B. Rules of Interpretation ............................................................................ 12
 C. Computation of Time .............................................................................. 13
 D. Governing Law ........................................................................................ 13
 E. Reference to Monetary Figures ............................................................... 13
 F. Controlling Document ............................................................................. 13

ARTICLE II. ADMINISTRATIVE CLAIMS and PRIORITY CLAIMS........................ 13
 A. Administrative Claims ............................................................................. 14
 B. Professional Compensation ..................................................................... 14
 C. Priority Tax Claims ................................................................................. 15
 D. Statutory Fees ......................................................................................... 15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.................. 15
 A. Introduction ............................................................................................ 15
 B. Summary of Classification ....................................................................... 15
 C. Treatment of Claims and Interests .......................................................... 16
 D. Provision Governing Unimpaired Claims ................................................ 19

ARTICLE IV. ACCEPTANCE REQUIREMENTS.................................................... 19
 A. Acceptance or Rejection of this Plan........................................................ 19
 B. Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code ........ 20
 C. Controversy Concerning Impairment ....................................................... 20

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ............................... 20
 A. Deemed Consolidation ............................................................................ 20
 B. Transactions Effective as of the Effective Date......................................... 21
 C. Cancellation of Securities and Agreements .............................................. 21
 D. The Liquidating Trust .............................................................................. 21
 E. The Liquidating Trustee ........................................................................... 22
 F. Liquidating Trust Oversight Board............................................................ 22
 G. Federal Income Tax Treatment of the Liquidating Trust for the Liquidating
   Trust Assets; Tax Reporting and Tax Payment Obligations......................... 24
 H. Authority to Pursue, Settle, or Abandon Retained Causes of Action ........... 25
 I. Engagement for Causes of Action v. Insiders, Prepetition Agents, and any
   Prepetition Secured Parties....................................................................... 26
 J. Filing of Monthly and Quarterly Reports ................................................. 26
 K. Directors and Officers of the Debtors....................................................... 26
 L. Books and Records .................................................................................. 26
 M. Corporate Authorization .......................................................................... 27
 N. Effectuating Documents and Further Transactions ................................... 27
 O. Employee Agreements.............................................................................. 27
 P. Exemption from Certain Taxes and Fees................................................... 27
 Q. Duration of the Liquidating Trust............................................................. 28
 R. Wind Down of Liquidating Trust ............................................................. 28

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............28
    A.    Treatment of Executory Contracts and Unexpired Leases ............................28
    B.    Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases ........................................................................................28
    C.    Rejection Damages Claim ...........................................................................28
    D.    Reservation of Rights ..................................................................................29

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................29
    A.    Timing and Calculation of Amounts to Be Distributed; Entitlement to
        Distributions ...............................................................................................29
    B.    Liquidating Trustee to make Distributions .................................................30
    C.    No De Minimis Distributions Required.......................................................30
    D.    Distributions on Account of Claims Allowed After the Effective Date .......30
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...30
    F.    Compliance with Tax Requirements/Allocations.........................................31
    G.    Claims Paid or Payable by Third Parties ....................................................31
    H.    Claims Already Satisfied .............................................................................32
    I.    Allocation of Plan Distributions between Principal and Interest.................32
    J.    No Postpetition Interest on Claims .............................................................32

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
        DISPUTED CLAIMS.....................................................................................33
    A.    Allowance and Disallowance of Claims......................................................33
    B.    Prosecution of Objections to Claims ..........................................................33
    C.    Deadline to Object to Claims......................................................................33
    D.    Estimation of Claims ..................................................................................33
    E.    Amendments to Claims ...............................................................................34
    F.    Distributions After Allowance ....................................................................34

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE
        EFFECTIVE DATE .......................................................................................34
    A.    Conditions Precedent to Confirmation .......................................................34
    B.    Conditions Precedent to the Effective Date.................................................35
    C.    Waiver of Conditions...................................................................................35
    D.    Effect of Nonoccurrence of Conditions ......................................................35

ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS.................35
    A.    Compromise and Settlement of Claims, Interests, and Controversies...........35
    B.    Discharge of Claims and Termination of Interests ......................................36
    C.    Releases by the Debtors...............................................................................36
    D.    Releases by Holders of Claims ...................................................................37
    E.    Exculpation .................................................................................................38
    F.    Injunction....................................................................................................38
    G.    Term of Injunctions or Stays ......................................................................39
    H.    Setoffs.........................................................................................................39
    I.    Recoupment ................................................................................................39

ARTICLE XI. BINDING NATURE OF PLAN ...................................................................... 39

ARTICLE XII. RETENTION OF JURISDICTION ............................................................... 40

ARTICLE XIII. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ................. 41
    A.    Modifications and Amendments ................................................................. 41
    B.    Effect of Confirmation on Modifications ................................................... 42
    C.    Revocation or Withdrawal of the Plan ....................................................... 42
    D.    Substantial Consummation of the Plan ...................................................... 42

ARTICLE XIV. MISCELLANEOUS PROVISIONS .............................................................. 42
    A.    Successors and Assigns ............................................................................... 42
    B.    Reservation of Rights .................................................................................. 42
    C.    Service of Documents .................................................................................. 43
    D.    Dissolution of Committee............................................................................ 43
    E.    Nonseverability of Plan Provisions ............................................................ 43
    F.    Return of Security Deposits........................................................................ 44
    G.    Entire Agreement ........................................................................................ 44
    H.    Exhibits........................................................................................................ 44
    I.    Votes Solicited in Good Faith ..................................................................... 44
    J.    Filing of Additional Documents ................................................................. 44

## INTRODUCTION

Epic Companies, LLC and certain of its subsidiaries in the above-captioned Chapter 11 Cases, together with the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, respectfully propose the following joint plan of liquidation under Chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I hereof. As a Co-Proponent, the Committee supports this Plan.

## DEEMED CONSOLIDATION

The Plan is being proposed as a joint plan of liquidation for all of the Debtors. The Plan also constitutes and incorporates a motion requesting that the Bankruptcy Court substantively consolidate the Debtors' Estates solely for purposes of voting and making Distributions as more fully set forth below. Thus, the Plan must meet the requirements for section 1129 of the Bankruptcy Code with respect to the Debtors on a consolidated basis in order to be confirmed.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.      *Defined Terms*

Unless the context otherwise requires and subject to the Challenge, the following terms shall have the following meanings when used in capitalized form herein:

1.       "*Acqua Liana*" means Acqua Liana Capital Partners, LLC, including its current subsidiaries, and its and their managed accounts or funds, and its current officers, directors, and agents, in their capacities as such, and predecessors and successors in interest of any such Entity.

2.       "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code to the extent such request is granted by the Bankruptcy Court. With respect to Administrative Claims that are allowed pursuant to sections 503(b)(1), 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claims Bar Date.

3.       "*Administrative Claims Bar Date*" means (other than for (i) quarterly U.S. Trustee fees and (ii) Professional Fee Claims) the 30th day after the Effective Date unless otherwise established by a Final Order.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.      "*Allowed*" means, with reference to any Claim or Interest: (a) any Claim or Interest as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, either before or after the Effective Date, to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, either before or after the Effective Date; (c) any Claim or Interest expressly deemed Allowed by the Plan; or (d) any Claim or Interest affirmatively Allowed by the Debtors, or following the Effective Date, by the Liquidating Trustee.

6.      "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of an interest in property or an obligation incurred by the Debtors, the Debtors in Possession, the Estates, or other appropriate party arising under Chapter 5 of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, or 547 through 553, or under similar or related state or federal statutes and/or common law, including without limitation, fraudulent transfer laws, and including without limitation, Claims or Causes of Action to recover preferences and fraudulent transfers from any entity that received cash or other property from any Debtor as identified in the Plan, Disclosure Statement, any schedule or exhibit thereto, a Debtor's Statement of Financial Affairs or as identified in the Debtors' accounts payable system.

7.      "*Ballots*" means the ballots approved by the Bankruptcy Court in the Disclosure Statement Order upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Notice and Claims Agent on or before the Voting Deadline.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended, and as applicable to the Chapter 11 Cases.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

11.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

13.      "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, claims for relief, rights, suits, debts, dues, damages, reckonings, accounts, rights to legal remedies, rights to equitable remedies, rights to payment, controversies, agreements, covenants, promises, judgments of every type, responsibilities, disputes, assertions, allegations, proceedings, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity

2

claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date and also includes, without limitation: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or federal law fraudulent transfer claim.

14.     "*Challenge*" has the meaning set forth in the Final DIP Order, and is comprised of the Retained Causes of Action preserved under the Committee's *Motion for Authority to Pursue Certain Claims and Causes of Action on Behalf of the Estates* [Docket No. 546], to the extent granted by the Bankruptcy Court.

15.     "*Chapter 11 Cases*" means the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16.     "*Chief Restructuring Officer*" means Jeffrey T. Varsalone.

17.     "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

18.     "*Claims Bar Date*" means the applicable deadline by which proofs of Claim must be Filed under the Claims Bar Date Order or under this Plan.

19.     "*Claims Bar Date Order*" means the order of the Bankruptcy Court establishing the deadline by which proofs of Claim must be Filed [Docket No. 226].

20.     "*Claims Reserve*" means a reserve to be established by the Debtors into which Cash in an amount that the Liquidating Trustee reasonably estimates to satisfy Disputed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D, Disputed Other Secured Claims, Disputed Priority Tax Claims and Disputed Other Priority Claims shall be deposited on or before the Effective Date, which account shall vest in the Liquidating Trust as of the Effective Date; *provided* that any amounts in the Claims Reserve not required to pay Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D, Allowed Other Secured Claims, Allowed Priority Tax Claims or Allowed Other Priority Claims shall constitute Liquidating Trust Cash. For the avoidance of doubt, the Claims Reserve does not include funds for Disputed General Unsecured Claims unless and until the Liquidating Trustee pursuant to the Liquidating Trust Agreement determines to release such funds from the Claims Reserve as Liquidating Trust Cash (*See also* Art.I.A.36 - Disputed General Unsecured Claims Reserve).

21.     "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

22.     "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 78], as such committee may be reconstituted from time to time.

23.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

24.    "*Confirmation Date*" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25.    "*Confirmation Hearing*" means the hearing or hearings held by the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time in the Debtors' sole discretion.

26.    "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.    "*Consummation*" means the occurrence of the Effective Date.

28.    "*Debtor*" or "*Debtor in Possession*" means one of the Persons in the above-captioned Chapter 11 Cases, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

29.    "*Debtor Party Released Claims*" shall have the meaning set forth in Article X.B.

30.    "*Debtor Releases*" shall have the meaning set forth in Article X.B of the Plan.

31.    "*Designated Litigation Counsel*" means the legal counsel designated by the Plan Proponents in the Plan Supplement to pursue Retained Causes of Action against Insiders, the Prepetition Agents, and/or any Prepetition Secured Parties.

32.    "*Disallowed*" means, with reference to any Claim, a finding or determination of the Bankruptcy Court in a Final Order, including the Bar Date Order, or a provision of the Plan, providing that a Claim shall not be Allowed, or as to which the Bankruptcy Court has otherwise ruled or ordered that such Claim should be temporarily disallowed pursuant to section 502(d) of the Bankruptcy Code.

33.    "*Disclosure Statement*" means the *Disclosure Statement for Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated February 13, 2020, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

34.    "*Disclosure Statement Order*" means the *Order (I) Conditionally Approving Disclosure Statement, (II) Approving Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, and (III) Granting Related Relief* [Docket No. 592].

35.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

36.    "*Disputed General Unsecured Claims Reserve*" means the Reserve established and maintained by the Liquidating Trustee in accordance with Article VII.A.1 hereof.

37.     "*Distribution*" means the payment of Cash or other property, as the case may be, in accordance with the Plan, the Confirmation Order, and, if applicable, the Liquidating Trust Agreement.

38.     "*Distribution Date*" means (a) the Effective Date or (b) any Subsequent Distribution Date.

39.     "*Distribution Record Date*" means the date on which the Confirmation Order is entered or such other date that is designated by the Plan Proponents or following the Effective Date, the Liquidating Trustee.

40.     "*Effective Date*" means the date declared by the Plan Proponents, after consultation with the Liquidating Trustee, on which the Confirmation Order becomes a Final Order and all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

41.     "*Epic Interests*" means any Interests in Epic Companies, LLC.

42.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

43.     "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

44.     "*Exculpated Party*" means each of (a) the Debtors, (b) the Chief Restructuring Officer, (c) G2 Capital Advisors, LLC (d) the Committee and the Committee's members, (e) Kelton C. Tonn, and (f) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's current subsidiaries, and its and their officers, directors, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals in any such persons' capacity as such. Notwithstanding anything herein to the contrary, the definition of "Exculpated Party" shall not include any Insiders, either of the Prepetition Agents, nor any Prepetition Secured Parties.

45.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

46.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in or in connection with the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent or the Bankruptcy Court through the PACER or CM/ECF website.

47.     "*Final DIP Order*" means the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of Bankruptcy Code and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 234].

48.     "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and

no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule may be Filed with respect to such order and shall not cause such order not to be a Final Order.

49.     "*General Unsecured Claim*" means any Unsecured Claim against any Debtor (including, for the avoidance of doubt, any Claim arising from the rejection of an Executory Contract or Unexpired Lease and any Prepetition Credit Agreement Deficiency Claim) that is not otherwise paid in full or otherwise satisfied during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court, other than an Administrative Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, or an Intercompany Claim.

50.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

51.     "*Holder*" means any Entity holding a Claim or an Interest.

52.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

53.     "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

54.     "*Insiders*" means an entity as defined in section 101(31) of the Bankruptcy Code, and includes, without limitation, Thomas Clarke, Ana Clarke, David Wiley, Orinoco Natural Resources, LLC, Oakridge Energy Partners LLC, or Clarke Investments, LLC, or any such Entity's current or former Affiliates (other than the Debtors). Notwithstanding anything herein to the contrary, the definition of "Insiders" shall not include Kelton C. Tonn.

55.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

56.     "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

57.     "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests in any Debtor, including, without limitation, any options, warrants, rights, or other securities or agreements to acquire any common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing, or to a Final Order providing for the recharacterization thereof.

58.     "*Interim Compensation Order*" means the *Order Granting Debtors' Motion for an Order under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 313].

59.     "*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

60.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

61.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

62.     "*Liquidating Trust*" means the "Liquidating Trust" established under the Plan pursuant to the Liquidating Trust Agreement.

63.     "*Liquidating Trust Agreement*" means the agreement creating the Liquidating Trust in a form and substance acceptable to the Debtors and the Committee to be Filed as part of the Plan Supplement, which will, among other things: (a) establish and govern the Liquidating Trust; (b) set forth the powers and duties of the Liquidating Trustee; (c) provide for Distribution of the Liquidating Trust Cash and amounts in the Disputed General Unsecured Claims Reserve to the Holders of Allowed General Unsecured Claims; (d) provide for Distribution, first from the amounts in the Claims Reserve, to Holders of Allowed Other Secured Claims, Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D and Allowed Priority Tax Claims; and (f) provide for Distribution, first from the amounts in the Professional Fee Account, to Holders of Allowed Professional Fee Claims.

64.     "*Liquidating Trust Assets*" means all of the Debtors' and Estates' assets on the Effective Date and the proceeds from such assets, including but not limited to the Liquidating Trust Cash, the Reserves, the Unencumbered Real Property (subject to TETRA Technologies, Inc.'s right to assert an interest in the real property located at 3019 West Admiral Doyle Drive, New Iberia, Louisiana 70560), and the Retained Causes of Action.

65.     "*Liquidating Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims.

66.     "*Liquidating Trust Cash*" means (i) any remaining funds in the Professional Fee Account after the payment of Allowed Professional Fee Claims, (ii) any amounts remaining in the Claims Reserve after the payment of Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article II.D hereof, Allowed Other Secured Claims, Allowed Priority Tax Claims or Allowed Other Priority Claims, (iii) any amounts remaining in the Disputed General Unsecured Claims Reserve following the payment of amounts reserved therein on account of Disputed General Unsecured Claims; and (iv) any other Cash held by the Debtors or the Liquidating Trustee, net of the Liquidating Trust Operating Reserve.

67.     "*Liquidating Trust Operating Reserve*" means the reserve maintained by the Liquidating Trustee from the Liquidating Trust Assets for the reasonable costs and expenses of administering the Liquidating Trust, including the reasonable costs and expenses incurred by the Liquidating Trustee and the Liquidating Trustee Professionals.

68.     "*Liquidating Trustee*" means Jeffrey T. Varsalone, or any successor trustee of the Liquidating Trust duly appointed pursuant to the Liquidating Trust Agreement, to act as the administrator of the Plan, to make or facilitate Distributions pursuant to the Plan, and to serve as the trustee of the Liquidating Trust.

69.     "*Liquidating Trustee Professionals*" means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Liquidating Trustee (in their capacities as such).

70.     "*Notice and Claims Agent*" means Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

71.     "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

72.     "*Other Secured Claim*" means a Secured Claim other than the Prepetition Credit Agreement Claims.

73.     "*Oversight Board*" means the Liquidating Trust Oversight Board established pursuant to the provisions of Article V.F of this Plan and the Liquidating Trust Agreement.

74.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

75.     "*Petition Date*" means August 26, 2019.

76.     "*Plan*" means this *Joint Plan of Liquidation of Epic Companies, LLC and Its Debtor Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated February 13, 2020, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits hereto, which are incorporated herein by reference.

77.     "*Plan Proponents*" means collectively, the Debtors and the Committee.

78.     "*Plan Supplement*" means the supplemental appendix to this Plan, Filed with the Bankruptcy Court no later than seven (7) calendar days prior to the Voting Deadline, which contains, among other things, draft forms or signed copies, as the case may be, of the Liquidating Trust Agreement, the Schedule of Retained Causes of Action, Designated Litigation Counsel, and any schedules, lists, or documents contemplated by this Plan that are identified as part of the Plan Supplement.

79.     "*Prepetition Agents*" means the Prepetition Senior Agent and the Prepetition Junior Agent.

80.     "*Prepetition Credit Agreements*" means the Prepetition Senior Credit Agreement and the Prepetition Junior Credit Agreement.

81.     "*Prepetition Credit Agreement Claims*" means the Prepetition Senior Credit Agreement Claims and the Prepetition Junior Credit Agreement Claims.

82.     "*Prepetition Credit Agreement Collateral*" means the Prepetition Senior Credit Agreement Collateral, together with the Prepetition Junior Credit Agreement Collateral.

83.     "*Prepetition Junior Agent*" means Acqua Liana as administrative agent under the Prepetition Junior Credit Agreement.

84.     "*Prepetition Junior Credit Agreement*" means that certain Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 among Epic Companies, LLC as borrower, Epic Diving & Marine Services, LLC, Epic Applied Technologies, LLC, Epic Specialty Services, LLC, Epic San Francisco Shipyard, LLC, King Aire, Inc., Zuma Rock Energy Services, LLC, Epic Alabama Steel, LLC, TSB Holding Company, LLC, TSB Offshore, Inc., and ERP Environmental Fund, Inc. as guarantors, and the Prepetition Junior Agent.

85.     "*Prepetition Junior Credit Agreement Claims*" means any and all Claims asserted against the Debtors and their Estates arising under the Prepetition Junior Credit Agreement, including the Prepetition Junior Credit Agreement Deficiency Claim, in the aggregate principal amount as of the Petition Date of not less than $65,340,299.28. For the avoidance of doubt, the Prepetition Junior Credit Agreement Claims are subject to avoidance, disallowance, recharacterization, subordination, setoff, and other potential defenses and remedies pursuant to the Challenge.

86.     "*Prepetition Junior Credit Agreement Collateral*" means the "Collateral" as defined in the Prepetition Junior Credit Agreement, which includes substantially all of the Debtors' assets but does not include the Unencumbered Real Property.

87.     "*Prepetition Junior Credit Agreement Deficiency Claim*" means any deficiency Claims asserted by the Prepetition Junior Agent under the Prepetition Junior Credit Agreement.

88.     "*Prepetition Secured Parties*" means the "Prepetition Secured Parties" as defined in the Final DIP Order.

89.     "*Prepetition Senior Agent*" means White Oak as administrative agent under the Prepetition Senior Credit Agreement.

90.     "*Prepetition Senior Credit Agreement*" means that certain Amended and Restated Loan and Security Agreement, dated as of July 22, 2019 among Epic Companies, LLC as borrower, Epic Diving & Marine Services, LLC, Epic Applied Technologies, LLC, Epic Specialty Services, LLC, Epic San Francisco Shipyard, LLC, King Aire, Inc., Zuma Rock Energy Services, LLC, Epic Alabama Steel, LLC, TSB Holding Company, LLC, TSB Offshore, Inc., and ERP Environmental Fund, Inc. as guarantors, and the Prepetition Senior Agent.

91.     "*Prepetition Senior Credit Agreement Claims*" means any and all Claims asserted against the Debtors and their Estates arising under the Prepetition Senior Credit Agreement, including the Prepetition Senior Credit Agreement Deficiency Claims, in the aggregate principal amount of $50,295,463.69. For the avoidance of doubt, the Prepetition Senior Credit Agreement Claims are subject to avoidance, disallowance, recharacterization, subordination, setoff, and other potential defenses and remedies pursuant to the Challenge.

92.     "*Prepetition Senior Credit Agreement Collateral*" means the "Collateral" as defined in the Prepetition Senior Credit Agreement, which includes substantially all of the Debtors' assets but does not include the Unencumbered Real Property.

93.     "*Prepetition Senior Credit Agreement Deficiency Claim*" means any deficiency Claims asserted by the Prepetition Senior Agent under the Prepetition Senior Credit Agreement.

94.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

95.     "*Pro Rata*" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

96.     "*Professional*" means an Entity employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

97.     "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

98.     "*Professional Fee Account*" means the Debtors' segregated bank account funded by the Debtors and Liquidating Trustee in an amount equal to the Professional Fee Reserve; *provided* that any remaining amounts in the Professional Fee Account after payment in full of all Allowed Professional Fee Claims shall constitute "Liquidating Trust Cash."

99.     "*Professional Fees*" means all fees, costs and expenses incurred in these Chapter 11 Cases by any Professional and awarded by Final Order of the Bankruptcy Court pursuant to sections 328, 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

100.    "*Professional Fee Reserve*" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.2.

101.    "*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Chapter 11 Cases.

102.    "*Purchase Agreement*" means that Asset Purchase Agreement, dated as of January 13, 2020, by and between the Debtors, as sellers, and White Oak or its affiliated designee as buyer, to purchase certain specified assets of the Debtors free and clear of all liens, claims and encumbrances pursuant to a sale under sections 363 and 365 of the Bankruptcy Code.

103.    "*Release Opt-Out*" means the election, to be made solely through validly-submitted Ballots, to opt-out of the release provisions of this Plan.

104.    "*Released Party*" means, collectively, and in each case in its capacity as such, (a) the Debtors, (b) the Chief Restructuring Officer, (c) G2 Capital Advisors, LLC, (d) Kelton C. Tonn, and (e) with respect to each of the foregoing Entities in clauses (a) through (c), each such Entity's current subsidiaries and its officers, directors, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals as of the Petition Date, including in any such persons' capacity as director and/or officer (or any similar position) of any of the Debtors or any of the Debtors' subsidiaries, and successors in interest of any such party. Notwithstanding anything herein to the contrary, the definition of "Released Party" shall not include any Insiders, either of the Prepetition Agents, nor any Prepetition Secured Parties.

105.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors, (b) each Holder of a Claim that is deemed to accept the Plan, (c) each other Holder of a Claim that is entitled to vote on the Plan and does not elect the Release Opt-Out on its Ballot, and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current subsidiaries, and its and their managed accounts or funds, such Entity and its current officers, directors, employees, agents,

financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals, in their capacities as such, including but not limited to in any such persons' capacity as director and/or officer (or any similar position) of any of the Debtors or any of the Debtors' subsidiaries, and predecessors and successors in interest of any such party. Notwithstanding anything herein to the contrary, the definition of "Releasing Parties" shall not include any Insiders, either of the Prepetition Agents, nor any Prepetition Secured Parties.

106.    "*Reserves*" means, collectively, the Liquidating Trust Operating Reserve, the Disputed General Unsecured Claims Reserve, the Claims Reserve and the Professional Fee Reserve.

107.    "*Retained Causes of Action*" means, collectively, all Causes of Action which may be asserted by or on behalf of the Debtors or the Estates, a nonexclusive list of which is set forth in the Schedule of Retained Causes of Action, against any third parties, investors, individuals, or Insiders that the Debtors or the Estates own or have an interest in or can assert in any fashion, whether prepetition or postpetition, including, without limitation, litigation claims, whether such Causes of Action arise from contract, tort theories of liability, insurance claims, statutory claims, common law claims, equitable claims or other claims, objections to Claims, adversary proceedings, Avoidance Actions against any Entity identified in the Statement of Financial Affairs of any Debtor as a recipient of a payment made or property transferred by or on behalf of such Debtor prior to the Petition Date, and all Challenge Causes of Action, claims, demands and rights, in each case, that have not been released, exculpated, waived, settled or barred pursuant to the Final DIP Order or this Plan or that have not been assigned pursuant to the Purchase Agreement.

108.    "*Sale*" means the sale of substantially all of the Debtors' assets pursuant to the Purchase Agreement and the Sale Order.

109.    "*Sale Order*" means the *Order (I) Approving Successful Bidder's APA and Authorizing the Sale of Assets Outside the Ordinary Course of Business, (II) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 418].

110.    "*Schedule of Assets and Liabilities*" mean the Summary of Assets and Liabilities Schedules for Non-Individual, Schedule A/B: Property Non-Individual, Schedule D Non-Individual- Creditors Having Claims Secured by Property, Schedule E/F: Creditors Who Have General Unsecured Claims Non-Individual, Schedule G Non-Individual- Executory Contracts and Unexpired Leases, Schedule H Non-Individual- Codebtors Filed by each of the Debtors on September 16, 2019 and as later amended [Docket Nos. 128, 130, 132, 134, 136, 138, 181, 183, 243, 244, 245, 305, 342, 403, 472, 473, and 474].

111.    "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action to be retained by the Estates and contributed to the Liquidating Trust, which shall be included in the Plan Supplement.

112.    "*Secured*" means: when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

113.    "*Statement of Financial Affairs*" means the Statement of Financial Affairs Filed by each of the Debtors on September 16, 2019 [Docket Nos. 129, 131, 133, 135, 137, 139, and 182].

114.    "*Subsequent Distribution Date*" means any date after the Effective Date on which the Liquidating Trustee makes a Distribution after determining that a Distribution should be made in light of, *inter alia*, resolutions of Disputed Claims, the administrative costs of such a Distribution, and the Liquidating Trust Cash for Distribution.

115.    "*Third Party Released Claims*" shall have the meaning set forth in Article X.D.

116.    "*Unencumbered Real Property*" means the real property located at 168 Menard Road, Houma, Louisiana, 70363, 306 Menard Road, Houma, Louisiana, 70363, 403 Menard Road, Houma, Louisiana, 70363, and 600 Thompson Road, Houma, Louisiana, 70363, and 3019 West Admiral Doyle Drive, New Iberia, Louisiana 70560.

117.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

118.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

119.    "*Unsecured*" means not Secured.

120.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

121.    "*Voting Deadline*" means March 24, 2020, the deadline for submitting votes to accept or reject the Plan as set by the Bankruptcy Court.

122.    "*White Oak*" means White Oak Global Advisors, LLC, including its current subsidiaries, and its and their managed accounts or funds, and its current officers, directors, and agents, in their capacities as such, and predecessors and successors in interest of any such Entity.

B.      *Rules of Interpretation*

For purposes of this Plan, unless otherwise specified herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (6) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended

12

to be a part of or to affect the interpretation of this Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Plan Proponents or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.     *Computation of Time*

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors not incorporated in Texas shall be subject to principles of conflict of laws.

E.     *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Plan Proponents or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Administrative Claim, and to the extent not paid before the Effective Date, each Holder of an Allowed Administrative Claim shall be paid in full in Cash first from the Claims Reserve on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Administrative Claims arising between the Petition Date and the Effective Date must be Filed and served on the Liquidating Trustee pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the requesting party no later than 90 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

B.      *Professional Compensation*

1.      Final Fee Application

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash first from the Professional Fee Account, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim shall be Filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules. Upon payment in full of all Allowed Professional Fee Claims, any balance of Cash remaining in the Professional Fee Account shall become Liquidating Trust Cash and shall be transferred to the Liquidating Trustee.

2.      Professional Fee Account and Reserve

On the Effective Date, the Debtors and Liquidating Trustee shall establish and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve. The Professional Fee Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals. The funds in the Professional Fee Account shall not be considered property of the Estates or of the Debtors, *provided, however,* that following the payment in full of all Allowed amounts owing to Professionals, any remaining amount in the Professional Fee Account shall promptly be turned over to the Liquidating Trustee without any further action or order of the Bankruptcy Court.

Professionals shall reasonably estimate their unpaid Professional Fee Claims before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) Business Days after the Confirmation Date, *provided, however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

C.     *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Plan Proponents or the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

D.     *Statutory Fees*

All fees due and payable pursuant to section 1930 of the Judicial Code prior to the Effective Date shall be paid by the Debtors on the Effective Date or as soon as reasonably practicable thereafter. After the Effective Date, the Liquidating Trustee shall pay any and all post-Effective Date fees pursuant to section 1930 of the Judicial Code when due and payable from Liquidating Trust Cash. The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall File with the Bankruptcy Court quarterly post-confirmation operating reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trustee during the applicable period, attested to by an authorized representative of the Liquidating Trustee.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.     *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.     *Summary of Classification*

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote |

15

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| | | | (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition Senior Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Junior Credit Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Subordinated Claims | Impaired | Not Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Epic Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.      *Treatment of Claims and Interests*

1.      Class 1: Other Secured Claims

(a)      *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive either (i) Cash from the Claims Reserve in an amount equal to the proceeds of the collateral securing such Holder's Allowed Other Secured Claim after satisfaction in full of all superior liens up to the amount of the Allowed Other Secured Claim; or (ii) solely to the extent the amount of an Allowed Other Secured Claim is greater than the value of the collateral securing such Allowed Other Secured Claim and there are no Liens on such collateral senior to the Lien held by or for the benefit of the Holder of such Allowed Other Secured Claim, the collateral securing such Allowed Other Secured Claim in full and final satisfaction of such Claim. Any purported Secured Claim on the Prepetition Credit Agreement Collateral that is not senior to the Prepetition Credit Agreement Claims under applicable state or federal law shall be a General Unsecured Claim.

(b)      *Voting*: Class 1 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

16

2.      Class 2: Other Priority Claims

      (a)      *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive Cash first from the Claims Reserve equal to the unpaid portion of the Allowed Other Priority Claim.

      (b)      *Voting*: Class 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.      Class 3: Prepetition Senior Credit Agreement Claims

      (a)      *Treatment*: The Prepetition Senior Credit Agreement Claims are subject to the Challenge. The Holders of the Prepetition Senior Credit Agreement Claims (i) received, in exchange for their credit bid of $50 million of their Prepetition Senior Credit Agreement Claims, the Prepetition Senior Credit Agreement Collateral included in the Sale pursuant to the Purchase Agreement, and (ii) following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (x) any proceeds from any Prepetition Senior Credit Agreement Collateral not included in the Sale; and (y) with respect to any Allowed Prepetition Senior Credit Agreement Deficiency Claim, the same treatment as Class 5 (General Unsecured Claims).

      (b)      *Voting*: Class 3 is Impaired. The Holder of the Class 3 Prepetition Senior Credit Agreement Claims, to the extent not Disallowed is entitled to vote to accept or reject the Plan.

4.      Class 4: Prepetition Junior Credit Agreement Claims

      (a)      *Treatment*: The Prepetition Junior Credit Agreement Claims are subject to the Challenge. Following the resolution of the Challenge by a Final Order and subject to section 502(d) of the Bankruptcy Code, the Holders of the Prepetition Junior Credit Agreement Claims not otherwise assumed pursuant to the Sale shall receive, to the extent Allowed and not recharacterized or subordinated pursuant to the Challenge: (i) any proceeds from any Prepetition Junior Credit Agreement Collateral not included in the Sale after the Prepetition Senior Credit Agreement Claims are paid in full; and (ii) with respect to any Allowed Prepetition Junior Credit Agreement Deficiency Claims, the same treatment as Class 5 (General Unsecured Claims).

      (b)      *Voting*: Class 4 is Impaired. The Holder of the Class 4 Prepetition Junior Credit Agreement Claims, to the extent not Disallowed is entitled to vote to accept or reject the Plan.

5.      Class 5: General Unsecured Claims

    (a)    *Treatment*: Each Holder of an Allowed Class 5 General Unsecured Claim shall receive its Pro Rata share of the Liquidating Trust Cash available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of this Plan and the Liquidating Trust Agreement.

    (b)    *Voting*: Class 5 is Impaired. Holders of Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.      Class 6: Subordinated Claims

    (a)    *Treatment*: Each Holder of an Allowed Class 6 Subordinated Claim, to the extent Allowed and only following the payment in full of all Allowed Claims in Class 5, shall receive its share of any remaining Liquidating Trust Cash, Pro Rata with all other Allowed Class 6 Subordinated Claims, available on any Distribution Date from the Liquidating Trust Assets in accordance with the terms of this Plan and the Liquidating Trust Agreement.

    (b)    *Voting*: Class 6 is Impaired. As of the date of this Plan the Plan Proponents are not aware of any Class 6 Subordinated Claims. Accordingly, Class 6 is a vacant class as provided in Article IV.A.5 of this Plan and is, therefore, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

7.      Class 7: Intercompany Claims

    (a)    *Treatment*: Class 7 Intercompany Claims shall be cancelled and discharged, with the Holders of such Class 7 Intercompany Claims receiving no Distribution on account of such Intercompany Claims.

    (b)    *Voting*: Class 7 is Impaired. Holders of Class 7 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.      Class 8: Intercompany Interests

    (a)    *Treatment*: Class 8 Intercompany Interests shall be cancelled and discharged, with the Holders of such Class 8 Intercompany Interests receiving no Distribution on account of such Intercompany Interests.

    (b)    *Voting*: Class 8 is Impaired. Holders of Class 8 Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9.      Class 9: Epic Interests

(a)      *Treatment*: Class 9 Epic Interests shall be cancelled and discharged, with the Holders of such Class 9 Epic Interests receiving no Distribution on account of such Epic Interests.

(b)      *Voting*: Class 9 is Impaired. Holders of Class 9 Epic Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Epic Interests are not entitled to vote to accept or reject the Plan.

D.      *Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors', Estates' or the Liquidating Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

# ARTICLE IV.
# ACCEPTANCE REQUIREMENTS

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

A.      *Acceptance or Rejection of this Plan*

1.      Deemed Acceptance of the Plan

Classes 1 and 2 are Unimpaired under the Plan. Therefore, Classes 1 and 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.      Voting Classes

Classes 3, 4, and 5 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

3.      Deemed Rejection of the Plan

Classes 7, 8, and 9 are Impaired under the Plan and are not entitled to receive or retain any property on account of the Claims and Interests in Classes 7, 8, and 9. Therefore, Classes 7, 8, and 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.      Deemed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

5.      Elimination of Vacant Classes

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of Confirmation shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Class 6 (Subordinated Claims) shall be deemed eliminated for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

B.      *Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Plan Proponents reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

C.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

# ARTICLE V.
# MEANS FOR IMPLEMENTATION OF THE PLAN

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of this Plan.

A.      *Deemed Consolidation*

The Plan constitutes a motion for the deemed consolidation of the Debtors and their respective Estates solely for purposes of voting on the Plan, confirming the Plan, and making Distributions pursuant to the Plan. Deemed consolidation solely for the purposes of voting on the Plan, confirming the Plan and making Distributions pursuant to the Plan is a condition precedent to the Effective Date. Accordingly, voting on the Plan shall be conducted and counted on a consolidated basis. On the Effective Date, (a) the assets of the Debtors will be merged and/or treated as if they are merged for the purpose of paying Allowed Claims against the Debtors; (b) any Claim Filed or asserted against any of the Debtors will be deemed a Claim against all of the Debtors (and any duplication of claims arising from both primary operative documents and guaranty and/or other secondary obligations shall be eliminated and all such claims against the Debtors shall be treated as a single claim that eliminates such duplications); (c) all Intercompany Claims and Interests will be eliminated; and (d) any obligation of any of the Debtors will be deemed to be an obligation of each of the Debtors. Except as set forth in this paragraph, such deemed consolidation shall not affect the legal and corporate structure of the Debtors nor affect Retained Causes of Action, including Avoidance Actions. Notwithstanding anything to the contrary herein, all Retained Causes of Action are preserved as they existed immediately before the Effective Date for the Liquidating Trustee to prosecute on behalf of the Liquidating Trust. The deemed consolidation under this Plan shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of deemed consolidation under this Plan; *provided*, *however*, that the deemed consolidation shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such deemed consolidation. Holders of Allowed Claims who assert identical Claims against multiple Debtors shall be entitled to only a single satisfaction of such Claims.

B.     *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other Entity.

C.     *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in this Plan, (1) the obligations of the Debtors under the Prepetition Credit Agreements, and any other membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest, shall be cancelled solely as to the Debtors, and the Liquidating Trustee shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; *provided, however*, notwithstanding Confirmation or the occurrence of the Effective Date, that any such agreement that governs the rights of the holder of a Claim or the rights of a Prepetition Agent shall, as the case may be and unless the Bankruptcy Court separately, expressly orders otherwise, continue in effect solely for purposes of (a) allowing Holders of Prepetition Credit Agreement Claims (as applicable) to receive Distributions under the Plan and the Liquidating Trust Agreement as provided herein, (b) allowing the Prepetition Agents to distribute Plan proceeds available to Holders of Prepetition Senior Credit Agreement Claims and Prepetition Junior Credit Agreement Claims, as applicable, as provided herein and in the Liquidating Trust Agreement, and to perform such other related administrative functions with respect thereto, including, without limitation, reducing the amount of Plan proceeds available to Holders of Allowed Prepetition Credit Agreement Claims for the compensation, fees and expenses (including the reasonable fees and out-of-pocket expenses of counsel) due the Prepetition Agents under the Prepetition Credit Agreements, and (c) allowing the Prepetition Agents to continue to maintain their liens on the Prepetition Credit Agreement Collateral and, if necessary, release or take other action with respect to such liens, in all cases subject to the terms and conditions in the Prepetition Credit Agreements, the Challenge, and any orders of this Bankruptcy Court; *provided, further,* that the Prepetition Agents shall be relieved of all duties and obligations under the Prepetition Credit Agreements upon the Debtors or the Liquidating Trustee making all required Distributions to the Prepetition Agents under this Plan.

D.     *The Liquidating Trust*

On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the applicable Liquidating Trust Beneficiaries, the Liquidating Trust Assets, including but not limited to, (a) all Liquidating Trust Cash, (b) the Retained Causes of Action, (c) the Reserves, and (d) any other assets vested in the Liquidating Trust pursuant to the terms of this Plan and the Liquidating Trust Agreement. As of the Effective Date, the Liquidating Trust Assets shall be vested in the Liquidating Trust free and clear of all Liens, Claims, Interests and encumbrances to the fullest extent possible under applicable law, except as otherwise specifically provided in the Plan, the Confirmation Order, or the Final DIP Order.

On the Effective Date, the Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidating Trust shall be established for the

primary purpose of reasonably maximizing the proceeds from liquidation of its assets (as applicable) for the benefit of Liquidating Trust Beneficiaries, and for making Distributions in accordance with the Plan and the Liquidating Trust Agreement, including Distributions to Allowed Professional Fee Claims and other Allowed Administrative Claims, statutory fees in accordance with Article II.D, Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed General Unsecured Claims and Allowed Subordinated Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

Subject to Article V.F. herein and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be the sole entity responsible for, (a) administering the Liquidating Trust Assets; (b) adjudicating, objecting to, settling, compromising or otherwise liquidating General Unsecured Claims and other Claims for all purposes; (c) prosecuting, compromising, and resolving the Retained Causes of Action; and (d) defending compromising, and resolving any Causes of Action against the Debtors.

E.     *The Liquidating Trustee*

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Any successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement.

Pursuant to 11 U.S.C §§ 1123(a)(5)(B), 1123(b)(3), and 1123(b)(6), the Liquidating Trustee shall be the successor to the Debtors for all purposes. The Liquidating Trustee shall also be the successor to the Committee for all purposes.

Compensation of the Liquidating Trustee shall be at the rate of $750 per hour, and such compensation and the actual costs and expenses of the Liquidating Trustee and the Liquidating Trust (including without limitation, the actual fees and expenses of the Liquidating Trustee Professionals) shall be paid from Liquidating Trust Cash. The Liquidating Trustee shall be compensated in the manner set forth in the Liquidating Trust Agreement.

Subject to Article V.F. herein and the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to exercise all powers and duties as set forth in the Liquidating Trust Agreement, including, but not limited to: (i) entering into and granting settlements, releases, and compromises, for which approval from the Bankruptcy Court shall not be required; and (ii) retaining professionals and advisors, attorneys and accountants, including but not limited to Porter Hedges LLP and/or G2 Capital Advisors, as the Liquidating Trustee deems appropriate and advisable, and to pay such professionals as professionals and expenses of administration of the Liquidating Trust, without the need for Bankruptcy Court approval or authorization.

F.     *Liquidating Trust Oversight Board*

1.     Appointment and Creation of Oversight Board

On the Effective Date, an Oversight Board for the Liquidating Trust shall be created. The Oversight Board shall be comprised of three members (each a "Board Member"): (a) one member selected by the Committee, (b) one member selected by the Debtors, and (c) an independent member that the Committee and the Debtors shall agree upon (the "Jointly Designated Member"). The Committee shall also select a successor member (the "Designated Successor") in case the term of the initial Board Member selected by the Committee ends pursuant to the Plan and the Liquidating Trust Agreement. The initial members of the Oversight Board are set forth on **Exhibit A** to the Liquidating Trust Agreement.

22

2.        Duties and Powers of Oversight Board

The Oversight Board shall be responsible for (a) approving any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties; (b) determining to abandon, not pursue or cease pursuit of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties, including approving the filing of any complaint, claim objection or amendment thereof; (c) approving the Liquidating Trustee's decision to hire or replace any Liquidating Trust Professional employed to prosecute a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties, *provided, however,* that no action of the Oversight Board shall be required for the Liquidating Trustee to engage the Liquidating Trust Professionals identified in Article V.I of this Plan; (d) approving the termination or dissolution of the Liquidating Trust and the Liquidating Trust Agreement; (e) approving any proposed agreement or expenditure exceeding $350,000.00; (f) approving whether to remove a Board Member; and (g) consenting to any amendment to the Liquidating Trust Agreement.

3.        Compensation of Oversight Board

Each Board Member shall receive compensation not to exceed $675 per hour and be entitled to reimbursement of reasonable, out of pocket expenses until the Liquidating Trust Agreement and the Liquidating Trust are terminated and dissolved pursuant to the Plan and the Liquidating Trust Agreement.

4.        Term of Board Members

The Board Members shall serve until death, resignation, or removal.

(a)        Resignation / Successors

A Board Member may resign at any time by providing a written notice of resignation to the Liquidating Trustee and remaining members of the Oversight Board. Such resignation shall be effective after such notice is delivered and the resigning Board Member's successor is designated.

In the event of resignation or removal of a Board Member, the exiting member shall designate its replacement, *provided, however,* that: (i) in the case of the Committee-appointed Board Member, if the exiting Board Member is unable to select a successor, the Designated Successor shall be appointed; and (ii) if a Board Member's term expires because of death or incapacity without the Board member's designation of a successor, the remaining Board members shall agree upon the successor. Any Board Member designated to replace the Jointly Designated Member shall be a bankruptcy professional with no connection with the Debtors, Committee members, any Insiders, a Prepetition Agent, or any Prepetition Secured Parties. A notice shall be Filed with the Bankruptcy Court if any successor Board Member is appointed.

(b)        Removal

A Board Member may be removed solely for fraud, gross negligence, or willful misconduct.

5.        Voting

The affirmative vote of a majority of the Board Members is required with respect to any matter listed in Article V.F.2 that requires the determination, consent, approval or agreement of the Oversight Board, *provided, however*, that amendments to the Liquidating Trust Agreement following the Effective Date are governed by Section 11.11 of the Liquidating Trust Agreement and must be approved by:

23

(i) unanimous consent of the Oversight Board; or (ii) an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

      G.    *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations*

For U.S. federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received a Distribution from the Estates of an undivided interest in each of the assets of the Liquidating Trust (to the extent of the value of their respective shares therein) and then contributed such interests to the Liquidating Trust.

      1.    Liquidating Trust Assets Treated as Owned by Beneficiaries of Liquidating Trust

For all U.S. federal income tax purposes, all parties shall treat the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the Liquidating Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Liquidating Trust (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Liquidating Trust (net of any applicable liabilities) by the beneficiaries of the Liquidating Trust (to the extent of the value of their respective share in the assets of the Liquidating Trust) to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and the owners of the assets thereof.

      2.    Tax Reporting

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors and the Liquidating Trust. The Liquidating Trustee shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article V. Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns. The Liquidating Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidating Trust with respect to each holder of a beneficial interest to the extent required by the IRC and applicable law.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority.

The Liquidating Trustee may request an expedited determination of the tax obligations of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

3.      Payment of Taxes

The Liquidating Trustee shall be responsible for payments of all Allowed tax obligations of the Debtors including Priority Tax Claims, Other Secured Claims and Administrative Claims, in addition to any taxes imposed on the Liquidating Trust or its assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Claims Reserve associated with the Liquidating Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Liquidating Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

H.      *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

Except as set forth in Article V.F of this Plan, from and after the Effective Date, (i) the Liquidating Trust shall be solely responsible for prosecution and settlement of all Retained Causes of Action pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement and (ii) the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon such Retained Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action. Notwithstanding the foregoing, the Oversight Board must approve any settlement of a Retained Cause of Action against any Insiders, a Prepetition Agent, or any Prepetition Secured Parties.

**The Liquidating Trust reserves and retains any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Liquidating Trust may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; (ii) any recipient of a transfer identified in the Debtors' Statements of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Cases based on Retained Causes of Action under chapter 5 of the Bankruptcy Code; or (iii) any Insiders, Prepetition Agent, or any Prepetition Secured Parties. THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE LIQUIDATING TRUSTEE RELATING TO RETAINED CAUSES OF ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.**

On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors or their Estates without need for further order of the Bankruptcy Court.

The Schedule of Retained Causes of Action, listing Causes of Action known by the Debtors to be retained by the Liquidating Trustee is included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

I.      *Engagement for Causes of Action v. Insiders, Prepetition Agents, and any Prepetition Secured Parties*

Promptly following the latter of the date on which the Bankruptcy Court has authorized the Challenge to proceed and the Effective Date, the Liquidating Trustee shall engage the Designated Litigation Counsel to pursue Retained Causes of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties. Solely in the event that the Liquidating Trustee's engagement of an expert in connection with the Liquidating Trustee's pursuit of Retained Causes of Action against any Insiders, Prepetition Agents or Prepetition Secured Parties is determined to be necessary or appropriate pursuant to the provisions of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall retain GlassRatner Advisory & Capital Group LLC for such purposes.

J.      *Filing of Monthly and Quarterly Reports*

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee until such time as the Liquidating Trust terminates.

K.      *Directors and Officers of the Debtors*

On and after the Effective Date, the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable.

L.      *Books and Records*

Upon the Effective Date, the Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors. Upon the Effective Date, the Committee shall transfer and assign to the Liquidating Trust the books and records related to the Committee's investigations of Causes of Action during the Chapter 11 Cases. Any such books and records transferred by either the Debtors or the Committee shall be protected by the attorney-client privilege. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records transferred under the Plan for the duration of the Liquidating Trust as specified in Article V.Q of the Plan, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtors shall cooperate with the Liquidating Trustee to facilitate the delivery and storage of their books and records in accordance with this Plan. The Debtors (as well as their current and former officers and directors) shall be entitled to reasonable access to any books and records transferred in accordance with the Plan for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing

tax returns, and addressing personnel matters. For purposes of this Article V.L of the Plan, books and records include computer-generated or computer maintained books and records and computer data, as well as electronically-generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all the claims and rights of the Debtors in and to their books and records, wherever located.

The Committee and its advisors, notwithstanding the Committee's dissolution following the Effective Date, are permitted to share any discovery obtained relating to the Debtors or Retained Causes of Action with the Liquidating Trustee and his representatives without waiver of any privileges. The Liquidating Trustee shall automatically succeed to the Committee's rights and duties under any protective order applicable to any such discovery, without the need for any further order of the Bankruptcy Court or action by any other Entity.

M.     *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the stockholders, directors, members, or managers of the Debtors. After the Effective Date, to the extent necessary, the Liquidating Trustee shall have all authority, subject to the terms of this Plan and the Liquidating Trust Agreement, to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of one or more of the Debtors.

N.     *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Plan Proponents shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

O.     *Employee Agreements*

All employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place with the Debtors' employees that have not been previously terminated shall be terminated as of the Effective Date.

P.     *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

Q.      *Duration of the Liquidating Trust*

The Liquidating Trust shall have an initial term of five (5) years from the Effective Date, *provided*, *however*, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the purpose of the Liquidating Trust, the Liquidating Trustee shall be authorized, on two or more successive occasions, to extend the Liquidating Trust for six (6) months or longer *provided* that such extension is formally requested by motion before the Bankruptcy Court prior to the beginning of such requested, extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by this Plan and the Liquidating Trust Agreement.

R.      *Wind Down of Liquidating Trust*

After the termination of the Liquidating Trust and for the purpose of liquidating and winding down the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed. Upon termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of one year the books, records, lists of the Liquidating Trust Beneficiaries, the registry of claims and Liquidating Trust Beneficiaries, and other documents and files that have been delivered to or created by the Liquidating Trustee. Except as otherwise specifically provided herein, upon the termination of the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust's professionals and agents shall have no further duties or obligations hereunder.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected (including by operation of section 365(d)(4) of the Bankruptcy Code), assumed, or assumed and assigned, including in connection with the Sale, and (2) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.

C.      *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 5 General Unsecured Claim. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Liquidating Trust, without the**

**need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity.**

      D.     *Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Plan Proponents that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Estate has any liability thereunder.

# ARTICLE VII.
# PROVISIONS GOVERNING DISTRIBUTIONS

      A.     *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

      1.     Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided herein, and only after the funding of the Reserves, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on a Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement. Notwithstanding any other provision of this Plan to the contrary, no Distribution shall be made on account of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; (iii) is the subject of a pending and unresolved claim objection; or (iv) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries consistent with the requirements of this Plan and the Liquidating Trust Agreement. In connection with each Distribution to Holders of General Unsecured Claims, the Liquidating Trustee shall withhold from property that would otherwise be distributed on account of Class 5 General Unsecured Claims entitled to Distributions, in the Disputed General Unsecured Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions (minus the Liquidating Trust Operating Reserve) to which Holders of Disputed General Unsecured Claims would be entitled under this Plan if such Disputed General Unsecured Claims were Allowed in their Disputed Claim Amount. The Liquidating Trustee may request, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, and shall withhold the applicable portion of the Disputed General Unsecured Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.

      2.     Entitlement to Distributions

On and after the Effective Date, the Liquidating Trustee shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date and those Holders of Claims that Filed Proofs of Claims by the Claims Bar Date. Accordingly, the Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

B.     *Liquidating Trustee to make Distributions*

All Distributions under the Plan shall be made by the Liquidating Trustee in accordance with this Plan. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.     *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim Distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If as of the date of the final Distribution the Liquidating Trustee is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article VII.E.2 of this Plan.

D.     *Distributions on Account of Claims Allowed After the Effective Date*

1.     Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.     Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Liquidating Trustee, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

E.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     Delivery of Distributions in General

Except as provided below, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address, or (d) at the addresses set forth in the other records of the Debtors or the Liquidating Trustee at the time of the Distribution.

Distributions shall be made by the Liquidating Trust in accordance with the terms of this Plan and, if applicable, the Liquidating Trust Agreement.

In making Distributions under this Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Notice and Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

For the avoidance of doubt, Holders of the Prepetition Credit Agreement Claims were not required to File a Proof of Claim with the Bankruptcy Court pursuant to the Claims Bar Date Order.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trustee (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

3.      Failure to Present Checks

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtors and their Estates, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

F.      *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The Liquidating Trustee shall have the authority to condition any Distribution upon the receipt of a completed IRS Form W-9 or applicable IRS Form W-8.

G.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors or the Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action,

  
order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the Effective Date.

2.      Claims Payable by Third Parties

No Distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Applicability and Preservation of Insurance Policies

Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

H.      *Claims Already Satisfied*

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors or any third party prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules shall be deemed amended and reduced to reflect that such payments were made. The Liquidating Trustee is authorized, and without any further notice to or action, order or approval of the Bankruptcy Court, to direct the Notice and Claims Agent to update the official claims register maintained in the Chapter 11 Cases in accordance with any Claims satisfied or reduced pursuant to the Plan. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

I.      *Allocation of Plan Distributions between Principal and Interest*

Each Holder of an Allowed Claim shall have the option to apply such Holder's Pro Rata share of consideration distributed under the Plan (cash or value) to satisfy outstanding principal of or accrued interest on such Holder's Allowed Claim, as such allocation is determined by such Holder in its sole discretion.

J.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and Holders of Claims shall not be entitled to postpetition interest,

32

dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
## AND DISPUTED CLAIMS

A.    *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Liquidating Trust after Consummation will have and retain any and all rights, objections, and defenses the Debtors or their Estates had with respect to any Claim as of the Petition Date.

**Except as provided herein or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

B.    *Prosecution of Objections to Claims*

The Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. From and after the Effective Date and subject to Article V.F of this Plan and the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim. The Liquidating Trustee may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

C.    *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall File all objections to Claims by no later than one year after the Effective Date, except to the extent that such Claims are Filed on or after the Effective Date, in which case, the Liquidating Trustee shall have until the later of one year after the Effective Date or 90 days after such claim is Filed to File an objection to such claim. Notwithstanding the foregoing, if the Liquidating Trustee determines that an extension of time is warranted, the Liquidating Trustee may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to the Liquidating Trustee's request to seek additional extensions from the Bankruptcy Court.

D.    *Estimation of Claims*

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or

unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

E.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Liquidating Trustee, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

F.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, and subject to the administration of the Reserves and Liquidating Trust in the Liquidating Trustee's discretion, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE
## PLAN AND THE EFFECTIVE DATE

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1.      All provisions, terms and conditions hereof are approved in the Confirmation Order.

2.      A Confirmation Order shall have been entered by the Bankruptcy Court, in form and substance acceptable to the Plan Proponents.

3.      The Confirmation Order shall provide that, among other things, the Plan Proponents and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.      All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

5.      All required consents, approvals, and authorizations, if any, have been obtained.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article IX.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.      The Debtors shall have fully funded (a) the Claims Reserve with all amounts that may be paid to Holders of Disputed Administrative Claims, Disputed Other Secured Claims, Disputed Priority Tax Claims, or Disputed Other Priority Claims under the Plan; and (b) the Professional Fee Account with all amounts contemplated to be paid to Holders of Professional Claims under the Plan.

2.      The Confirmation Order shall be a Final Order in form and substance acceptable to the Plan Proponents, each in their sole discretion. The Confirmation Order shall provide that, among other things, the Plan Proponents and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

3.      The Liquidating Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

4.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.      *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article IX may be waived with the consent of the Plan Proponents without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur within six months from the date the Plan was Filed, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Committee, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, Committee, the Estates, any Holders or any other Entity in any respect.

## ARTICLE X.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan and except as otherwise provided herein and in the Liquidating Trust Agreement, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtors or their Estates and Causes of Action against other Entities.

B.     *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. The foregoing "*Discharge of Claims and Termination of Interests*" shall not operate to waive, release or adversely impact any Retained Causes of Action, or any Claims or Causes of Action held by creditors, against any Insiders, Prepetition Agents, or any Prepetition Secured Parties, and shall be deemed limited solely to any extent necessary to prevent any such adverse impact.

C.     *Releases by the Debtors*

**Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest**

or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively, "*Debtor Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; *provided*, *however*, that the foregoing "*Debtor Releases*" shall not operate to waive, release or adversely impact (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of such Released Party's actual fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan, or (iii) any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties.

      D.     *Releases by Holders of Claims*

      Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the other Released Parties from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively "*Third Party Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any other Released Party, on one hand, and any Releasing Party, on the other hand, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; *provided*, *however*, that the foregoing "*Third Party Releases*" shall not operate to waive or release (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of

such Released Party's actual fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan, or (iii) any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties; *provided, further*, that nothing contained in these provisions or in this Release shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots.

      E.     *Exculpation*

Notwithstanding anything contained in this Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for (a) any prepetition act taken or omitted to be taken in connection with, related to or arising from the Debtors' out-of-court restructuring efforts, including authorizing, preparing for or Filing the Chapter 11 Cases and the Sale, or (b) any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan, the Disclosure Statement, or the Chapter 11 Cases, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the Chapter 11 Cases, or the confirmation or consummation of this Plan, including but not limited to (i) the Sale; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof if necessary), the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this Plan; or (iii) any Distribution made pursuant to this Plan, except for acts determined by a Final Order to constitute actual fraud, willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under or in connection with this Plan. Notwithstanding the foregoing, for the avoidance of doubt, this section of the Plan shall not (i) exculpate or release any Exculpated Party from anything other than as expressly identified in the preceding sentence, (ii) prevent or limit the ability of the Debtors, the Estates or the Liquidating Trustee to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, or (iii) prevent or limit the ability of the Debtors, the Estates or the Liquidating Trustee to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party. The foregoing exculpation shall not operate to waive or release any Causes of Action against any Insiders, Prepetition Agents, or any Prepetition Secured Parties.

      F.     *Injunction*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors, the Released Parties, the Exculpated Parties, the Liquidating Trust and/or the Liquidating Trustee: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind

against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to the Final DIP Order, or this Plan, which for the avoidance of doubt include the Third Party Releases, Debtor Releases and Exculpated Claims set forth herein; *provided, however*, that nothing contained in these provisions or in this Injunction shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots, against any parties other than the Debtors, the Exculpated Parties, the Liquidating Trust and/or the Liquidating Trustee.

G.      *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

H.      *Setoffs*

Except as otherwise expressly provided for in the Plan, each Debtor, Estate and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Cause of Action of any nature that such Debtor and/or its Estate, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor, Estate or Liquidating Trustee of any such Retained Causes of Action that such Debtor, Estate or Liquidating Trustee may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Retained Cause of Action unless such Holder has obtained an authorizing order from the Bankruptcy Court pursuant to a motion Filed on or before the Confirmation Date with the Bankruptcy Court and requesting the authority to perform such setoff.

I.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Retained Cause of Action, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**ARTICLE XI.**
**BINDING NATURE OF PLAN**

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS OR THEIR ESTATES TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL

RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, their Estates, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Retained Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the administration of the Liquidating Trust, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, administration, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VII;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, Liquidating Trust Agreement, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, Disclosure Statement, or Liquidating Trust Agreement;

15.     enter an order or final decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

17.     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     enforce all orders previously entered by the Bankruptcy Court; and

22.     adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

## ARTICLE XIII.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.     *Modifications and Amendments*

Subject to the limitations contained herein, the Plan Proponents reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided, however,* that such modifications do not modify the treatment of General Unsecured Claims as provided in the Plan without the consent of the Committee. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their right to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement,

or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. After the Effective Date any modifications to the Plan must be approved by an order of the Bankruptcy Court upon a motion by the Liquidating Trustee with the majority consent of the Oversight Board.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Plan Proponents revoke or withdraw this Plan subject to the terms hereof, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor, Estate or any other Entity; (y) prejudice in any manner the rights of the Debtors, the Estates, the Committee, or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, the Committee, or any other Entity.

D.      *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

A.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

B.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor or the Committee with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, its Estate or the Committee with respect to the Holders of Claims or Interests before the Effective Date.

C.      *Service of Documents*

Any pleading, notice, or other document required by this Plan to be served on or delivered to the Debtors or Liquidating Trustee shall be sent by overnight mail to:

G2 Capital Advisors
535 Boylston Street
11th Floor
Boston, Massachusetts 02116
Attn:       Jeffrey T. Varsalone
Phone:      (617) 918-7928
Email:      jvarsalone@g2cap.com

with copies to:

Porter Hedges LLP
1000 Main, 36th Floor
Houston, Texas 77002
Attn:       John F. Higgins
Phone:      (713) 226-6000
Fax:        (713) 226-6628
Email:      jhiggins@porterhedges.com

D.      *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except for purposes of filing applications for Professional compensation in accordance with Article II.B of this Plan.

E.      *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponents; *provided*, *further*, that the Plan Proponents may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified prior to the Effective Date without the Plan Proponents' consent, or after the Effective Date without the Liquidating Trustee's (and Oversight Board's) consent; and (3) nonseverable and mutually dependent.

F.      *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Entity at any time after the Petition Date shall be returned to the Liquidating Trustee within twenty (20) days after the Effective Date, without deduction or offset of any kind.

G.      *Entire Agreement*

Except as otherwise indicated herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Plan Proponents and each of their respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

J.      *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

[Remainder of Page Left Intentionally Blank]

Dated: February 13, 2020.

Respectfully submitted,

**EPIC COMPANIES, LLC**
a Delaware limited liability company,
on behalf of itself and the other Debtors

By: _/s/ Jeffrey T. Varsalone_
     Jeffrey T. Varsalone
     Chief Restructuring Officer

               -and-

**TETRA TECHNOLOGIES INC.**, in its capacity as the Chairperson of **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EPIC COMPANIES, LLC, ET AL.**

By: _/s/ Carlos Longoria_
Carlos Longoria
Title:   Chief Compliance Officer and Assistant General
           Counsel - International

45